UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

------------------------------------------------------------x
                                            :

In re                                      :          Chapter 11

THE COLONIAL BANCGROUP, INC.,   :          Case No. 09-32303 (DHW)

          Debtor.                     :

------------------------------------------------------------x

**MOTION OF DEBTOR PURSUANT TO
SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE
FOR ORDER APPROVING PROCEDURES FOR THE SALE OF
DEBTOR'S INTERESTS IN CERTAIN INVESTMENTS FREE AND CLEAR OF
LIENS, CLAIMS AND ENCUMBRANCES AND WITHOUT FURTHER COURT APPROVAL**

TO:    The Honorable Dwight H. Williams, Jr.,
         United States Bankruptcy Judge:

The Colonial BancGroup, Inc. (the "Debtor"), as debtor and debtor in possession, by this motion (the "Motion") seeks entry of an order pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2015-1 of the Local Rules of this Court for approval of procedures for the sale of certain investments free and clear of liens, claims and encumbrances, if any, without the need to obtain further Court approval.

In support of this Motion, the Debtor relies on the Amended and Restated Declaration of Sarah H. Moore in Support of Chapter 11 Petition and Certain Motions. In further support of the Motion, the Debtor states and shows as follows:

**Background**

1.    On August 25, 2009 (the "Petition Date"), the Debtor filed with this Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business as debtor in possession pursuant to sections 1107(a) and 1108.

1279491_3

2. The Debtor is a corporation formed under the laws of the State of Delaware and, prior to the Petition Date, was headquartered and conducted business at 100 Colonial Bank Boulevard, Montgomery, Alabama 36117.

3. Prior to the Petition Date, the Debtor was a bank holding company that owned Colonial Bank and also owned certain non-banking, non-debtor subsidiaries. As a bank holding company, the Debtor was subject to regulation by the Federal Deposit Insurance Corporation (the "FDIC"), and its banking and non-banking subsidiaries were overseen by various federal and state authorities.

4. On August 14, 2009, Colonial Bank was closed by the Alabama State Banking Department, and the FDIC was appointed as receiver for Colonial Bank. The Debtor understands that, prior to the Petition Date, the FDIC sold substantially all of the assets of Colonial Bank to Branch Banking and Trust Company ("BB&T").

5. The Debtor's assets include, among other things, its stock interests in Colonial Bank, its interests in its non-banking subsidiaries, joint ventures and partnerships, and approximately $38,000,000 in cash, of which approximately $24,000,000 is or may be set aside or designated for regulatory compliance purposes (which may no longer be applicable) in connection with certain affiliate loans and/or transactions.

6. For several days prior to the Petition Date and continuing to the date of this Motion, the FDIC has placed a "hold" on the Debtor's operating account (the "FDIC Account Hold"), which has prohibited the Debtor from withdrawing or otherwise utilizing funds in its operating accounts at BB&T. As a result of the FDIC Account Hold, checks previously issued by the Debtor have been returned by the drawee bank and the Debtor has been unable to pay lawful expenses in the ordinary course of business. The Debtor disputes the legality of the FDIC Account Hold.

7. No trustee, examiner or statutory creditors' committee has been appointed in this Chapter 11 case.

## Jurisdiction and Venue

8. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this Chapter 11 case and this Motion in this district is appropriate pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief sought herein are sections 105(a) and 363 of the Bankruptcy Code, Rules 2002 and 6004 of the Bankruptcy Rules & Local Rule 2015-1.

## The Investments

9. The Debtor is an investor in two (2) venture capital funds established for investing in target portfolio companies and 15 joint ventures established for developing residential real estate, each of which is governed by a limited partnership or limited liability company agreement (each, an "Investment Agreement" and collectively, the "Investment Agreements"). Pursuant to the Investment Agreements, each limited partner or member, including the Debtor, is required to contribute a certain pre-determined amount of capital (the "Capital Commitment"), which capital is used by the fund's general partner or manager (each, a "General Partner/Manager") to invest in either target portfolio companies (the venture capital funds) or residential real estate (the joint ventures). In exchange for capital contributions, each limited partner or member has a beneficial interest in the venture capital fund.

10. The following is a summary of the Debtor's investments (each, an "Investment" and collectively, the "Investments") as of the date hereof:

| Name of Partnership or LLC | Initial Investment Date | Status/Amount Invested to Date |
|---|---|---|
| BP 395 Nashville, LTD | May 12, 2006 | Underlying real estate still undergoing development with $949,479 currently invested |
| BP HWY 10 San Antonio, LTD | November 21, 2005 | Underlying real estate still undergoing development with $3,274,009 currently invested |
| CB Dogwood, LLC | November 22, 2002 | Underlying real estate development sold, all equity returned and preferential distributions made, legal entity not yet dissolved |
| CB Habersham, LLC | August 30, 2002 | Underlying real estate development sold, all equity returned and preferential |

| | | |
|---|---|---|
| | | distributions made, legal entity not yet dissolved |
| CB Habersham II, LLC | December 2, 2004 | Underlying real estate development sold, all equity returned and preferential distributions made, legal entity not yet dissolved |
| CD Peachtree Corners, LLC | May 28, 2003 | Underlying real estate development sold, all equity returned and preferential distributions made, legal entity not yet dissolved |
| Colonial Crabapple, LLC | August 15, 2002 | Underlying real estate development sold, remaining equity returns and preferential distributions of $47,195, legal entity not yet dissolved |
| Colonial Deerfield, LLC | July 1, 2003 | Underlying real estate development sold, all equity returned and preferential distributions made, legal entity not yet dissolved |
| Colonial Mead, LLC | April 23, 2003 | Underlying real estate development sold, all equity returned and preferential distributions made, legal entity not yet dissolved |
| Denton 1385 Partners, LP | September 22, 2006 | Underlying real estate still undergoing development with $2,686,240 currently invested |
| MCOL Development I, LP | September 23, 2005 | Underlying real estate development foreclosed, terminating development, no value remaining, legal entity not yet dissolved |
| MCOL Development II, LP | November 14, 2005 | Underlying real estate development sold, all equity returned and preferential distributions made, legal entity not yet dissolved |
| MCOL Development III, LP | March 6, 2006 | Underlying real estate development foreclosed, terminating development, no value remaining, legal entity not yet dissolved |
| MCOL Development IV, LP | March 31, 2006 | Underlying real estate development foreclosed, terminating development, pending charge-off of remaining book balance, legal entity not yet dissolved |
| Peachtree Hills Place, LLC | March 24, 2005 | Underlying real estate still undergoing development with $6,000,000 currently invested |
| Prairie Capital IV, L.P. | November 16, 2006 | Underlying venture capital fund still making investments with $1,120,598 invested to date |
| SOAM Capital Partners, L.P. | July 3, 2006 | Underlying venture capital fund still making investments with $1,282,316 invested to date |

11. For each Investment Agreement, the General Partner/Manager directs all activity and identifies favorable investment opportunities. Upon the identification of an investment opportunity, the General Partner/Manager may request, pursuant to the terms of the applicable Investment Agreement, that the limited partners or members (including the Debtor) contribute capital to the appropriate partnership in order to finance the investment (each, a "Capital Call").

12. Pursuant to the Investment Agreements, a limited partner or member's failure to satisfy a Capital Call may affect the value of the limited partner or member's investment. For example, pursuant to the Investment Agreement for Colonial Mead, LLC, one of the Investments, a member who fails to satisfy a Capital Call within 15 days after receiving written notice of the Capital Call from the General Partner/Manager becomes a "Defaulting Member" ("Defaulting Member"). Thereafter, another member may advance funds on behalf of the Defaulting Member for the amount of the Capital Call. Such an action constitutes a loan at a rate of 15% interest per annum from the member advancing the funds to the Defaulting Member, secured by any distributions from Colonial Mead. If the Capital Call is not paid for another 10 days following written notice of default, the General Partner/Manager may foreclose against a security interest in the Defaulting Member's membership interest in order to fund the unpaid capital contribution or sell the membership interest entirely.[1]

13. Pursuant to the Investment Agreement for BP HWY 10 San Antonio, LTD, another Investment, a limited partner who fails to satisfy a Capital Call within 10 days after written notice of the Capital Call from the General Partner/Manager becomes a defaulting limited partner. Once the General Partner/Manager provides notice of a limited partner's status as a defaulting limited partner, the other limited partners have the right to purchase the defaulting limited partner's share at its book value, regardless of the actual value of the share. The remaining Investment Agreements contain similar provisions for defaulting

---

[1] Debtor believes that the imposition of interest, foreclosure, forced sale or any other act to eliminate or decrease the value of the Debtor's invested capital by the General Partner/Manager, pursuant to the Investment Agreements, or any other party of interest, constitutes a violation of the automatic stay pursuant to Section 362 of the Bankruptcy Code, which prevents "any act to obtain possession of property of the estate or property from the estate or to exercise control over property of the estate." *See* 11 U.S.C. § 362(a)(3).

limited partners or defaulting members, depending on the particular Investment Agreement. Accordingly, pursuant to the terms of the Investment Agreements, failure to satisfy Capital Calls when due may result in a significant or total loss of contributed capital and investment value.

14. Since the Petition Date, Prairie Capital IV, L.P. has made a Capital Call. On November 16, 2006, Debtor became a limited partner of this Investment. Specifically, on or about August 24, 2009, the General Partner/Manager of Prairie Capital IV, L.P. issued a Capital Call requesting $100,000 from Debtor pursuant to the applicable Investment Agreement. However, as of the date hereof, the General Partner/Manager has not provided a written demand for payment.

15. In addition, SOAM Capital Partners, L.P. made a Capital Call after the Petition Date. On July 3, 2006, Debtor became a limited partner in this Investment. The General Partner/Manager issued a Capital Call requesting $200,000 from the Debtor pursuant to the applicable Investment Agreement and payable by September 24, 2009. However, as of the date hereof, the General Partner/Manager has not provided a written demand for payment.

16. Notwithstanding the terms of the Colonial Mead LLC Investment Agreement, the BP HWY 10 San Antonio LTD Investment Agreement or any other Investment Agreement, the Debtor believes that the imposition of interest, foreclosure, forced sale or any other act to eliminate or decrease the value of the Debtor's invested capital by any of its fellow limited partners or members constitutes a violation of the automatic stay pursuant to Section 362 of the Bankruptcy Code. Nevertheless, due to the capital collection mechanism set forth in the Investment Agreements and the default provisions relating thereto, the potential exercise of any of these remedies represents a substantial risk to the value of the Investments.

17. In light of the value of the Investments and the need to maximize the value of the Debtor's estate for the benefit of its creditors, the Debtor has determined to liquidate the Investments in accordance with the sale procedures hereinafter set forth (the "Sale Procedures").[2] The Debtor believes that establishment

---

[2] Each Investment Agreement sets forth guidelines and restrictions with respect to the sale of a limited partner's interest in the fund. For example, pursuant to the BP HWY 10 San Antonio, LTD Investment Agreement, limited partners have a right of first refusal with respect to disposition of other limited partners interest in the fund (the

of an orderly sale process for the Investments is necessary, appropriate, in the best interest of all stakeholders and that the proposed Sale Procedures will ensure that maximum value is obtained for the Investments.

18. Although the Debtor believes that the imposition of interest, foreclosure, forced sale and other potential actions as a result of the Debtor's failure to satisfy the Capital Calls pursuant to the various Investment Agreements would violate the automatic stay, the Debtor requests, out of an abundance of caution and to avoid unnecessary disputes, approval of the Sale Procedures, which will allow for the expeditious disposition and realization upon the Investments.

19. The Debtor has begun to solicit offers for the purchase of the Investments, in whole or in part, from its fellow limited partners, fellow members and other interested parties. The Sale Procedures would allow the Debtor to sell the Investments in an expeditious manner and to avoid unnecessary costs and delays associated with obtaining Court approval for each proposed sale. The Debtor and its advisors would evaluate any offers received for the Investments, and the Debtor, in its business judgment, would select the most competitive offer for the Investments. Many of the interested purchasers may be other limited partners or members who are party to various of the Investment Agreements and are thus capable of an expeditious review and offer for any of the Investments.

**The Sale Procedures**

20. The Debtor proposes the following Sale Procedures for the sale of the Investments:

> (a) The Debtor will provide a notice in substantially the form of <u>Exhibit A</u> attached to the proposed form of Order approving this Motion (a "<u>Sale Notice</u>") via e-mail, facsimile or overnight delivery of each proposed Investment sale (a "<u>Proposed Sale</u>") to (i) the office of the Bankruptcy Administrator; (ii)(a)counsel to any statutory committee of creditors (the "<u>Creditors Committee</u>") or, pending appointment of the Creditors Committee, to (b) the holders of the 20 largest unsecured claims; (iii) counsel to the FDIC; and (iv) the State of Alabama Department of Revenue (collectively, the "<u>Notice Parties</u>"), specifying (i) the Investment to be sold, (ii) the identity of the purchaser and any relationship of the

---

"<u>Qualified Limited Partners</u>"). The other Investment Agreements also contain certain transfer restrictions, which include, among other things, General Partner approval of any transfers of interest. The Debtor intends to solicit offers for its Investments in accordance with the Investment Agreements. At the same time, the Debtor reserves all rights with respect to whether the restrictions contained in the Investment Agreements are enforceable against the Debtor in this Chapter 11 case.

purchaser with the Debtor and (iii) the major economic terms and conditions of the Proposed Sale.

(b) If the proposed purchaser of an Investment is an insider, as defined in section 101(31) of the Bankruptcy Code, the Sale Notice shall (i) identify the insider, (ii) describe the insider's relationship to the Debtor and (iii) set forth the measures taken to ensure the fairness of the sale process and the proposed transaction.

(c) If a Notice Party objects to a Proposed Sale (an "<u>Objection</u>"), such Objection must be in writing, be filed with the Court and served on the Notice Parties and counsel to the Debtor, Parker, Hudson, Rainer & Dobbs LLP, 285 Peachtree Center Avenue, N.E., Suite 1500, Atlanta, Georgia 30303, <u>Attn</u>: C. Edward Dobbs, Esq. and Rufus T. Dorsey, IV, Esq., so as to be received by all such parties within five (5) days after the date on which the Sale Notice is delivered to the Notice Parties (the "<u>Notice Period</u>"). Each Objection must state with specificity the grounds for the Objection.

(d) If no timely Objection is interposed, the Debtor may take such action as is reasonable or necessary to consummate the Proposed Sale. If an Objection to a Proposed Sale is properly filed and served, (i) the Objection will be deemed to be a request for a hearing on the Proposed Sale and the Objection shall be heard at the next scheduled Omnibus Hearing in the Chapter 11 case that is at least 10 days after service of the Objection and (ii) the Proposed Sale may not proceed absent written withdrawal of the Objection or entry of an order by the Court specifically approving the Proposed Sale.

(e) If any material economic terms of a Proposed Sale are amended after transmittal of the Sale Notice, but prior to the expiration of the Notice Period, the Debtor shall serve a revised Sale Notice to the Notice Parties describing the Proposed Sale as amended. If a revised Sale Notice is required, the Notice Period will be extended for an additional five (5) days.

(f) The Debtor may consummate a Proposed Sale prior to the expiration of the applicable Notice Period if the Debtor obtains written consent to the Proposed Sale from each Notice Party.

(g) Nothing in the foregoing procedures will prevent the Debtor, in its discretion, from seeking the Court's approval at any time of any Proposed Sale upon notice and a hearing.

### **Ample Authority Exists to Establish the Sales Procedures**

21. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1); *see* Fed. R. Bankr. P. 6004(f)(1) ("All sales not in the ordinary course of business may be by private sale or by public auction."). In determining whether to authorize the sale of property outside the ordinary course of business, courts require a debtor to show that a sound business

purpose justifies such actions. *See, e.g.*, In re Martin (Myers v. Martin), 91 F.3d 389, 395 (3d Cir. 1996) (citing In re Schipper (Fulton State Bank v. Schipper), 933 F.2d 513, 515 (7th Cir. 1991)); In re Abbotts Dairies of Penn., Inc., 788 F.2d 143 (3d Cir. 1986) (implicitly adopting the "sound business judgment" test of Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070 (2d Cir. 1983) and requiring good faith); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (D. Del. 1999) (concluding that the Third Circuit adopted the "sound business judgment" test in the Abbotts Dairies decision); In re Delaware and Hudson Ry. Co., 124 B.R. 169, 178 (D. Del. 1991) (affirming decision permitting debtor to sell assets where sound business reasons supported the sale); In re Tom's Foods, Inc., 2005 Bankr. LEXIS 2062, *4–6 (Bankr. M.D. Ga. 2005); In re Friedman's, Inc., 336 B.R. 891, 895 (Bankr. S.D. Ga. 2005); In re Gulf States Steel, 285 B.R. 497, 514 (Bankr. N.D. Ala 2002). When a sound business purpose exists, and the sale is made in good faith, a sale pursuant to section 363(b)(1) of the Bankruptcy Code should be approved. *See* In re Abbotts Dairies of Pa., Inc., 788 F.2d 143, 150-51 (3d Cir. 1986) (noting that when a court authorizes a sale of assets pursuant to section 363(b)(1), it is required to consider the "good faith" of the purchaser).

22. Furthermore, the notice and hearing requirements contained in section 363(b)(1) are satisfied if appropriate notice and an opportunity for hearing are given in light of the particular circumstances. 11 U.S.C. § 102(1)(A) (defining "after notice and a hearing" to mean such notice and an opportunity for hearing "as [are] appropriate in the particular circumstances"). Moreover, courts are authorized to limit notice of asset sales outside the ordinary course of a debtor's business, even without a prior showing of cause, to any official committee appointed under section 1102 of the Bankruptcy Code and any creditor or equity holder requesting notice. Bankruptcy Rule 2002(i).

23. Bankruptcy courts have recognized that, when determining whether notice is appropriate under the circumstances for purposes of section 102(1)(A) of the Bankruptcy Code, they are guided by fundamental notions of procedural due process. In re Slaughter Co. & Assoc., 251 B.R. 437, 440 (N.D. Ga. 1999); In re Lomas Fin. Corp., 212 B.R. 46, 54 (Bankr. D. Del. 1997). Due process requires that any notice be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339

U.S. 306, 314 (1950); Nash v. Auburn University, 812 F.2d 655, 661 (11th Cir. 1987); Dirt, Inc. v. Mobile County Comm'n, 739 F.2d 1562, 1566 (11th Cir. 1984); In re Grand Union Co., 204 B.R. 864, 871 (Bankr D. Del. 1997). In sum, if basic due process is afforded to interested parties and appropriate cause is established, a court may determine that shortened or limited notice of an asset sale is appropriate.

24. The sale of the Investments in accordance with the Sale Procedures is an exercise of sound business judgment and in the best interests of the Debtor's estate and its creditors. The Debtor, with the assistance of its advisors, has determined that selling the Investments will allow the Debtor to realize the best possible value of the Investments for the benefit of the Debtor's estate and creditors. The sale of the Investments pursuant to the Sale Procedures constitutes an efficient and cost-effective means of realizing the value of the Investments. Obtaining Court approval for each sale transaction would result in unnecessary administrative costs attendant to drafting, serving and filing pleadings, as well as time incurred by attorneys for appearing at Court hearings, which could significantly reduce the ultimate net value of the Investments. Specifically, the Debtor and its advisors, have determined that following the notice procedures set for in the Sale Procedures and notifying (i) the office of the Bankruptcy Administrator, (ii)(a) counsel to any statutory committee of creditors (the "Creditors Committee") or, pending appointment of the Creditors Committee, to the (b) holders of the 20 largest unsecured claims, (iii) counsel to the FDIC and (iv) the State of Alabama Department of Revenue (collectively, the "Notice Parties"), specifying (i) the Investment to be sold, (ii) the identity of the purchaser and any relationship of the purchaser with the Debtor and (iii) the major economic terms and conditions of the Proposed Sales will realize the best possible value of the Investments.

25. Moreover, the Sale Procedures will allow the Debtor to be responsive to the needs of interested purchasers, while still providing notice and an opportunity to object to the Notice Parties. The Debtor also believes that limiting the service of the Sale Notices to the Notice Parties is justified under the circumstances. The Notice Parties represent the key interested parties who should receive notice of any proposed sale, and under the circumstances, the Debtor believes that this manner of notice is appropriate.

26. As stated above, the sale of property outside of the ordinary course of business may occur only "after notice and a hearing." 11 U.S.C. § 363(b)(1). Such sales are authorized without an actual hearing,

however, if no party in interest timely requests such a hearing. 11 U.S.C. § 102(1)(B)(i) (notwithstanding any statutory requirement for "notice and a hearing," the Bankruptcy Code "authorizes an act without an actual hearing if such notice is given properly and if such a hearing is not requested timely by a party in interest"). Moreover, due process is satisfied if parties in interest are given "an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) (emphasis added). The Debtor believes that the Sales Procedures comport with the hearing requirements of the Bankruptcy Code and due process by providing an opportunity for the Notice Parties to object to any proposed sale and then have a hearing with respect to the proposed sale and objection. Under these circumstances, a proposed sale may be approved without a hearing if no Notice Party has filed an objection with respect to a proposed sale.

27. The Debtor's proposed sale of the Investments is in good faith as the Debtor represents that no insider will gain an unfair advantage from the sale proposed herein since full disclosure will be made with respect to any insider sales. *See* In re Abbotts Dairies of Pa., Inc., 788 F.2d at 147 ("[t]ypically the misconduct that would destroy a purchaser's good faith status . . . involves fraud, collusion . . . or an attempt to take grossly unfair advantage of other bidders.") (internal quotations and citations omitted). Moreover, as set forth above, the Debtor will provide notice of any proposed sale to the Notice Parties.

**Sale of the Investments Free and Clear of Liens, Claims and Encumbrances**

28. Pursuant to section 363(f) of the Bankruptcy Code, a debtor may sell property free and clear of liens, claims and encumbrances if one of the following conditions is satisfied:

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). *See* <u>Citicorp Homeowners Servs. v. Elliot (In re Elliot)</u>, 94 B.R. 343, 345 (E.D. Pa. 1988) (court may approve sale "free and clear" provided at least one of the subsections is met); <u>In re MMH Auto. Group, LLC</u>, 385 B.R. 347, 367 (Bankr. S.D. Fla. 2008) (court may approve sale free and clear "only if one of the elements" is met); <u>In re Gulf States Steel</u>, 285 B.R. 497, 506 (Bankr. N.D. Ala. 2002) (holding "[s]ince the five conditions listed in 11 U.S.C. § 363(f) are phrased in the disjunctive, property may be sold free and clear of interests if any one of the five conditions is satisfied"); <u>In re Healthco Int'l, Inc.</u>, 174 B.R. 174, 176 (Bankr. D. Mass. 1994) (section 363(f)(5) has been interpreted to mean "a payment constituting less than full payment of the underlying debt"). *See also* <u>Cheslock Bakker & Assocs., Inc. v. Kremer (In re Downtown Athletic Club)</u>, No. M-47 (JSM), 2000 WL 744126, at *3 (Bankr. S.D.N.Y. June 9, 2000) (free and clear sale under the debtor's plan of reorganization was binding on the debtor's creditors who received notice of the confirming hearings).

29. The Debtor does not believe that any liens, claims or encumbrances (collectively, the "<u>Liens</u>") on the Investments exist other than a tax lien asserted by the State of Alabama Department of Revenue in connection with taxes allegedly owed by the Debtor in the approximate amount of $7.5 million. The Debtor disputes its liability for the taxes asserted by the State of Alabama Department of Revenue and has previously filed with the Court a motion under section 505 of the Bankruptcy Code to determine the tax liability, which the Debtor claims to be zero. Accordingly, the Debtor is entitled under section 363(f)(4) of the Bankruptcy Code to sell the Investments free and clear of the Liens asserted by the State of Alabama Department of Revenue inasmuch as such Liens are the subject of a bona fide dispute. Other than the asserted tax lien filed by the State of Alabama Department of Revenue, the Debtor is not aware of any other Liens.

30. In approving the sales free and clear of Liens, the Debtor requests that the Court find and hold that all purchasers of the Investments, in accordance with the Sale Procedures, are entitled to the protections afforded by section 363(m) of the Bankruptcy Code. Such relief is appropriate in light of the opportunity for review by the Notice Parties. *See* <u>Esposito v. Title Ins. Co. of Pa. (In re Fernwood Market)</u>, 73 B.R. 616, 620 (Bankr. E.D. Pa. 1987) (good faith purchasers are protected under section 363(m) where notice is provided to

lienholders). *See also* <u>In re Edwards</u>, 962 F.2d 641, 645 (7th Cir. 1992) ("a bona fide purchaser at a bankruptcy sale gets good title," even where lienholders have not received notice).

31. The proposed Sale Procedures represent the exercise of sound business judgment, are fair and appropriate, in good faith and balance the need for an expeditious realization of value for the Debtor's estate with the provision of advanced notice to the Notice Parties of any Proposed Sales.

32. Based on the foregoing, Colonial BancGroup submits that the relief requested herein is necessary and appropriate, is in the best interests of its estate and creditors, and should be granted in all respects.

### **Notice and Prior Motions**

33. The Debtor proposes to serve notice of this Motion on (i) the Office of the Bankruptcy Administrator for the Middle District of Alabama, (ii) those creditors holding the largest 20 unsecured claims against the Debtor, (iii) the Internal Revenue Service, (iv) counsel for the FDIC, (v) counsel for the SEC, (vi) counsel for BB&T, (vii) those parties who have filed in this Chapter 11 case a request for notice and (viii) the Alabama Department of Revenue. In light of the nature of the relief requested, the Debtor submits that no other or further notice need be provided.

34. No previous request for the relief requested herein has been made to this Court.

### **Waiver of Bankruptcy Rules 6004(a) and (h)**

35. To implement the foregoing expeditiously and successfully, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 10-day stay of an order authorizing the use, sale or lease of property under Bankruptcy Rule 6004(h), with respect to each sale undertaken pursuant to the Sale Procedures.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an order substantially in the form annexed hereto as Exhibit A, and grant such other and further relief as this Court deems just and proper.

Dated: September 25, 2009
       Montgomery, Alabama

                              C. Edward Dobbs
                              E-mail: ced@phrd.com

                              Rufus T. Dorsey, IV
                              E-mail: rtd@phrd.com

                              PARKER, HUDSON, RAINER & DOBBS LLP
                              1500 Marquis Two Tower
                              285 Peachtree Center Avenue, N.E.
                              Atlanta, Georgia  30303
                              Telephone No.:  (404) 523-5300
                              Facsimile:  (404) 522-8409


                              By:  /s/
                                  Rufus T. Dorsey, IV

                              Attorneys for Debtor and Debtor in Possession

**EXHIBIT A**

Form of Order

## UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

```
-----------------------------------------------------------x
                                                           :
In re                                                      :    Chapter 11
                                                           :
THE COLONIAL BANCGROUP, INC.,                              :    Case No. 09-32303 (DHW)
                                                           :
                Debtor.                                    :
                                                           :
-----------------------------------------------------------x
```

### ORDER PURSUANT TO SECTIONS
### 105 AND 363 OF THE BANKRUPTCY CODE
### APPROVING PROCEDURES FOR THE SALE OF DEBTOR'S
### INTERESTS IN CERTAIN INVESTMENTS FREE AND CLEAR OF LIENS,
### CLAIMS AND ENCUMBRANCES AND WITHOUT FURTHER COURT APPROVAL

Upon the motion (the "Motion"), of The Colonial BancGroup, Inc., as debtor and debtor in possession (the "Debtor"), for entry of an order pursuant to sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code"), authorizing the Debtor to sell its interests in certain Investments[1] free and clear of all liens, claims and encumbrances (collectively, the "Liens") without further order of the Court and establishing the Sale Procedures with respect thereto, all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the parties listed therein, and it appearing that no other further notice need be provided; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtor, its creditors, and other parties in interest; and the Court having determined that the legal and factual basis set forth in the Motion establish good cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Motion

**ORDERED** that the Motion is granted; and it is further

**ORDERED** that, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtor is authorized to sell the Investments, in accordance with the Sales Procedures:

a. The Debtor shall provide notice (a "Sale Notice") via e-mail, facsimile or overnight delivery of each proposed Investment sale (a "Proposed Sale") to (i) the office of the Bankruptcy Administrator; (ii)(a) counsel to any statutory committee of creditors (the "Creditors Committee")or, pending appointment of the Creditors Committee, to (b) the holders of the 20 largest unsecured claims; (iii) counsel to the FDIC; and (iv) the State of Alabama Department of Revenue (collectively, the "Notice Parties"), specifying (i) the Investment to be sold, (ii) the identity of the purchaser and any relationship of the purchaser with the Debtor and (iii) the major economic terms and conditions of the Proposed Sale.

b. In the event that the proposed purchaser of any given Investment is an insider, as defined in section 101(31) of the Bankruptcy Code, the Sale Notice shall (i) identify the insider, (ii) describe the insider's relationship to the Debtor and (iii) set forth the measures taken to ensure the fairness of the sale process and the proposed transaction.

c. In the event a Notice Party objects to the Proposed Sale (an "Objection"), such Objection must be in writing, be filed with the Court and be served on the Notice Parties and counsel to the Debtor, Parker, Hudson, Rainer & Dobbs LLP, 285 Peachtree Center Avenue, N.E., Suite 1500, Atlanta, Georgia 30303, Attn: C. Edward Dobbs, Esq. and Rufus T. Dorsey, IV, Esq., so as to be received by all such parties within five (5) days after the date on which the Sale Notice is delivered to the Notice Parties (the "Notice Period"). Each Objection must state with specificity the grounds for the Objection.

d. If no timely Objection is interposed, the Debtor may take such actions as are reasonable or necessary to consummate the Proposed Sale. If an Objection to a Proposed Sale is properly filed and served, (i) the Objection will be deemed to be a request for a hearing on the Proposed Sale and the Objection shall be heard at the next scheduled omnibus hearing in the chapter 11 case that is at least 10 days after service of the Objection and (ii) the Proposed Sale may not proceed absent written withdrawal of the Objection or entry of an order by the Court specifically approving the Proposed Sale.

e. If any material economic terms of a Proposed Sale are amended after transmittal of the Sale Notice, but prior to the expiration of the Notice Period, the Debtor shall serve a revised Sale Notice to the Notice Parties describing the Proposed Sale, as amended. If a revised Sale Notice is required, the Notice Period will be extended for an additional five (5) days.

f. The Debtor may consummate a Proposed Sale prior to the expiration of the applicable Notice Period if the Debtor obtains written consent to the Proposed Sale from each Notice Party.

> g. Nothing in the foregoing procedures will prevent the Debtor, in its discretion, from seeking the Court's approval at any time of any Proposed Sale upon notice and a hearing.

**ORDERED** that the Sale Notice, in substantially the form annexed hereto as <u>Exhibit A</u>, is approved; and it is further

**ORDERED** that, pursuant to section 363(f) of the Bankruptcy Code, all sales of property pursuant to this Order shall be free and clear of all Liens, if any, with any and all such valid and perfected Liens to attach to proceeds of the sales with the same validity, priority, force and effect such Liens had on the property immediately prior to the sale, and subject to the rights, claims, defenses and objections, if any, of the Debtor and all other interested parties with respect to any such asserted Liens; and it is further

**ORDERED** that purchasers of property sold by the Debtor pursuant to this Order shall be entitled to the protections afforded by section 363(m) of the Bankruptcy Code in the event of a reversal or modification on appeal of this Order; and it is further

**ORDERED** that the Court shall retain jurisdiction over any and all disputes arising under or otherwise relating to the interpretation and enforcement of the procedures established by this Order and the transactions consummated thereunder; and it is further

**ORDERED** that nothing in this Order shall be construed to prevent the Debtor, in its sole discretion, from seeking Court approval at any time of any proposed sale transaction; and it is further

**ORDERED** that the Debtor is authorized to execute and deliver all instruments and documents, and take such other action as may be necessary or appropriate to implement and effectuate the transactions contemplated by this Order; and it is further

**ORDERED** that, with respect to each sale of property pursuant to the Sale Procedures and this Order, the requirements of Rule 6004(h) of the Federal Rules of Bankruptcy Procedure are waived.

Dated: _____ ____, 2009
      Montgomery, Alabama

                                                          _____
                                                          Honorable Dwight H. Williams, Jr.
                                                          United States Bankruptcy Judge

**Exhibit A to Order**

**UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

```
------------------------------------------------------------x
                                              :
In re                                         :      Chapter 11
                                              :
THE COLONIAL BANCGROUP, INC.,                 :      Case No. 09-32303 (DHW)
                                              :
        Debtor.                               :
                                              :
------------------------------------------------------------x
```

**NOTICE OF PROPOSED SALE OF DEBTOR' INTERESTS IN
CERTAIN INVESTMENTS PURSUANT TO INVESTMENT SALES PROCEDURES**

PLEASE TAKE NOTICE that, pursuant to the Order Pursuant to Sections 105 and 363 of the Bankruptcy Code Approving Procedures for the Sale of Debtor's Interests in Certain Investments Free and Clear of Liens, Claims and Encumbrances and Without Further Court Approval, for the sale of the interests of the above-captioned Debtor and debtor in possession (the "Debtor") in certain investments, entered by the United States Bankruptcy Court for the Middle District of Alabama (the "Bankruptcy Court") on _____, (Docket No. _____) (the "Sale Order"), the Debtor proposes to sell certain assets ("Assets") to _____ (the "Purchaser") pursuant to an agreement dated _____, 20____ (the "Purchase Agreement"). A copy of the Purchase Agreement is annexed hereto as Exhibit A. This Notice is being provided in accordance with and sets forth the information required under the Sale Order.

Description of the Assets. The Assets consist of _____, as more fully detailed on Exhibit A to the Purchase Agreement. Except as may be set forth in the Purchase Agreement, the Debtor is not aware of any appraisal or other indicia of value with respect to the Property.

Relationship of Purchaser to Debtor. [The Purchaser's relationship with the Debtor is as follows:_____.] [The Purchaser has no relationship with the Debtor.]

Economic Terms and Conditions of the Proposed Sale. The Debtor proposes to sell the Assets to Purchaser free and clear of all liens, claims encumbrances and other interests therein, pursuant to

section 363(f) of the Bankruptcy Code. The Purchaser has agreed to pay a purchase price of $_____ for the Assets. The other terms and conditions of the proposed sale (the "Proposed Sale") are set forth in the Purchase Agreement.

Procedures to Object to the Proposed Sale. Any objection to the Proposed Sale (an "Objection") must: (i) be in writing; (ii) state with specificity the nature of the objection; and (iii) be filed with the Bankruptcy Court and served on the parties identified on Exhibit B attached hereto (the "Notice Parties") so as to be received by 5:00 p.m. (Central Time) on or before _____, 20____ (the "Objection Deadline"). If no Objections are filed with the Bankruptcy Court and served on the Notice Parties by the Objection Deadline in accordance with the terms of the Sale Order, the Debtor, in its sole and absolute discretion, may consummate the Proposed Sale.

If the Debtor obtains the written consent of all Notice Parties to a Proposed Sale, the Bankruptcy Court may enter an order allowing the Debtor to consummate the Proposed Sale before the Objection Deadline.

Dated: _____, 2009
       Montgomery, Alabama

C. Edward Dobbs
E-mail: ced@phrd.com

Rufus T. Dorsey, IV
E-mail: rtd@phrd.com

PARKER, HUDSON, RAINER & DOBBS LLP
1500 Marquis Two Tower
285 Peachtree Center Avenue, N.E.
Atlanta, Georgia 30303
Telephone No.: (404) 523-5300
Facsimile: (404) 522-8409

By: /s/
    Rufus T. Dorsey, IV

Attorneys for Debtor and Debtor in Possession