IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **In re:** | Chapter 11 |
| **THE COLONIAL BANCGROUP, INC.,** | Case No. 09-32303(DHW) |
| Debtor. | |

**EMERGENCY MOTION OF THE FEDERAL DEPOSIT INSURANCE
CORPORATION, AS RECEIVER FOR COLONIAL BANK,
FOR AN ORDER MODIFYING THE AUTOMATIC STAY**

Pursuant to 11 U.S.C. § 362 and Local Bankruptcy Rule 4001-3, the Federal Deposit Insurance Corporation, in its capacity as receiver for Colonial Bank, Montgomery, Alabama (the "FDIC-Receiver"), respectfully submits this emergency motion (the "Motion") for an order modifying the automatic stay in this chapter 11 case of debtor and debtor in possession The Colonial BancGroup, Inc. (the "Debtor" or "Colonial BancGroup") to permit the FDIC-Receiver to exercise its setoff rights against the balances held in certain demand deposit accounts. The FDIC-Receiver respectfully requests that the Motion be set for hearing on October 13, 2009, to be heard together with the final hearing on the Debtor's motion for authorization to use cash collateral. In support of the Motion, the FDIC-Receiver respectfully states:

PRELIMINARY STATEMENT

Six weeks ago, the FDIC-Receiver was appointed receiver of Colonial Bank when that bank was closed by its primary regulator. The Colonial Bank receivership – the largest United States bank failure in 2009 – will cost the FDIC's Deposit Insurance Fund an estimated $2.8 billion. Only days before the receivership, Colonial Bank's holding company, the Debtor in

this case, disclosed that it was a target of a federal criminal investigation into accounting irregularities and other alleged misconduct.

By operation of law, the FDIC-Receiver succeeded to the rights, titles, powers and privileges of Colonial Bank, 12 U.S.C. § 1821(d)(2)(A), and it is empowered, among other things, to take over the assets of and operate that institution, collect all obligations and money due the institution, preserve and conserve the assets and property of the institution and place the institution in liquidation and proceed to realize upon its assets, 12 U.S.C. §§ 1821(d)(2)(D), (E).

In this instance, the assets of Colonial Bank include substantial obligations that are owed to it by the Debtor, including an uncured deficit of at least $1,003,972,000 that is owed by the Debtor under a capital maintenance commitment that was deemed to have been assumed as a condition to the Debtor obtaining relief under chapter 11. *See* 11 U.S.C. § 365(o) (debtor shall be "deemed to have assumed" and "shall immediately cure any deficit under any commitment by the debtor to a Federal depository institutions regulatory agency . . . to maintain the capital of an insured depository institution . . .").

Notwithstanding its substantial obligations to Colonial Bank and the FDIC-Receiver as its receiver, the Debtor has sought the authorization of this Court to use funds held in several deposit accounts that are under the control of the FDIC-Receiver, the balances of which are dwarfed by the FDIC-Receiver's claims, in order to pay the fees of professionals in this bankruptcy case. The Debtor's proposed adequate protection to the FDIC-Receiver is insufficient – replacement liens (which the Debtor refuses to acknowledge as to existence or priority) in speculative litigation recoveries. Although the FDIC-Receiver is willing to consider proposals regarding the resolution of this bankruptcy case, and, in fact, already has agreed to

fund over $500,000 in expenses under the Court's interim cash collateral order, the law is clear that the FDIC-Receiver has immediately enforceable setoff rights as to those funds.

The FDIC-Receiver therefore seeks an order modifying the automatic stay provided under section 362 of the Bankruptcy Code to permit it to enforce its setoff rights under applicable non-bankruptcy law with respect to certain funds held in the Debtor's accounts in order to make those funds available for distribution to the creditors of Colonial Bank through the receivership process.

## JURISDICTION AND VENUE

1. The FDIC-Receiver's hold on the deposit accounts at issue is not a violation of the automatic stay provided under section 362 of the Bankruptcy Code. *See Citizens Bank of Md. v. Strumpf*, 516 U.S. 16 (1995) (authorizing bank to place administrative hold on debtor's deposit accounts pending resolution of bank's setoff rights). In any event, under 12 U.S.C. § 1821(j), "no court may take any action . . . to restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or a receiver." Section 1821(j) "effect[s] a sweeping ouster of courts' power to grant equitable remedies" that would frustrate the FDIC's exercise of its statutory powers as receiver or conservator. *Freeman v. F.D.I.C.*, 56 F.3d 1394, 1399 (D.C. Cir. 1995); *see RPM Investments, Inc. v. R.T.C.*, 75 F.3d 618, 622 (11th Cir. 1996) (*per curiam*); *Gross v. Bell Sav. Bank*, 974 F.2d 403, 408 (3d Cir. 1992) (reversing injunction directing RTC to release deposit funds that were withheld pursuant to 12 U.S.C. § 1822(d)).

2. The FDIC-Receiver reserves all of its jurisdictional arguments, under section 1821(j) or otherwise. *See also* 12 U.S.C. § 1821(d)(13)(D) (in connection with statutory provisions setting forth receivership claims process, providing that "no court shall have jurisdiction" over specified claims or actions).

3. Subject to the foregoing, subject matter jurisdiction for the Motion arises under 28 U.S.C. § 1334. The Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue for the Motion is proper in this district under 28 U.S.C. § 1409.

## BACKGROUND

A.  The Debtor and the Colonial Bank Receivership.

4. By order of the Alabama State Banking Department dated August 14, 2009, Colonial Bank was closed and the FDIC-Receiver was appointed as its receiver. That day, the FDIC-Receiver entered into a Purchase and Assumption Agreement with Branch Banking & Trust Company ("BB&T"), under which BB&T purchased certain assets and assumed certain liabilities of Colonial Bank from the FDIC-Receiver (the "P&A Agreement").[1]

5. The Debtor was a bank holding company that owned Colonial Bank until its receivership. On August 25, 2009, the Debtor filed a voluntary petition in this Court under chapter 11 of the Bankruptcy Code. The Debtor continues as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code but currently has no business operations or reasonable prospects of generating future revenue or reorganizing.

6. No trustee or examiner has been appointed. On September 28, 2009, the Court entered an order appointing a committee of unsecured creditors. [D.I. 130]

B.  The Accounts and the Security Interests.

7. In its cash collateral motion, the Debtor identified seven accounts that it asserts are demand deposit accounts in its name held by BB&T with account numbers ending in 1127, 5437, 5460, 5452, 5445 and 3218 (the "Accounts"). According to the Debtor's recent cash collateral motion, the aggregate balances in the Accounts is $38,408,337.34. Pursuant to section

---

[1] *See* http://www.fdic.gov/bank/individual/failed/colonial-al_P_and_A.pdf for a publicly available copy of the P&A Agreement.

9.5 of the P&A Agreement, the FDIC-Receiver has instructed BB&T to withhold these balances. Pursuant to the P&A Agreement, the FDIC-Receiver controls the accounts.[2] *See Gross*, 974 F.2d at 405-06 (discussing hold pursuant to similar provision of purchase and assumption agreement).

8. The balances in the Accounts are subject to an Amended and Restated Security Agreement dated January 1, 2009 (the "Security Agreement"), under which Colonial BancGroup granted a security interest to Colonial Bank. *See* Rich Decl., Exh. A.[3] Under the Security Agreement, Colonial BancGroup granted a security interest to Colonial Bank in certain "Collateral," which was defined to mean:

> certificates of deposit, bank deposits, deposit accounts, and other property of Pledgor, as described on Exhibit A . . . , all rights now or hereafter accruing the Pledgor in connection with the ownership thereof, together with any and all interest, payments, instruments, dividends and distributions with respect thereto, and all substitutions therefore, and all

---

[2] Section 9.5 of the P&A Agreement provides, in pertinent part:

> At any time, the Receiver or the Corporation may, in its discretion, determine that all or any portion of any deposit balance assumed by the Assuming Bank pursuant to this Agreement does not constitute a "Deposit" (or otherwise, in its discretion, determine that it is the best interest of the Receiver or Corporation to withhold all or any portion of any deposit), and may direct the Assuming Bank to withhold payment of all or any portion of any such deposit balance. Upon such direction, the Assuming Bank agrees to hold such deposit and not to make any payment of such deposit balance to or on behalf of the depositor, or to itself, whether by way of transfer, set-off, or otherwise. The Assuming Bank agrees to maintain the "withheld payment" status of any such deposit balance until directed in writing by the Receiver or the Corporation as to its disposition. At the direction of the Receiver or the Corporation, the Assuming Bank shall return all or any portion of such deposit balance to the Receiver or the Corporation, as appropriate, and thereupon the Assuming Bank shall be discharged from any further liability to such depositor with respect to such returned deposit balance. . . .

P&A Agreement, § 9.5.

[3] Citations to "Rich Decl." refer to the accompanying Declaration of Timothy D. Rich dated October 5, 2009.

> other property from time to time purchased, received, receivable, or otherwise distributed or distributable with respect thereto or in exchange therefore, whether by way of dividends, distributions, or otherwise, and the proceeds of all of the foregoing.

Security Agreement, § 1.

9. The security interest was granted in order to:

> secure the payment and performance of any and all liabilities, obligations, agreements and undertakings of Pledgor to Bank now existing or hereafter arising on the part of Pledgor or any subsidiary thereof (other than a bank) . . . for or on account of, or as a result of any transaction, payment, disbursement, advance, or other act of or by Bank, made for or on behalf of Pledgor or any such subsidiary; and all costs of collection including reasonable attorneys' fees (all the foregoing hereinafter collectively referred to as the "Affiliate Liabilities").

Security Agreement, § 2. In the Security Agreement, Colonial BancGroup further agreed that Colonial Bank "may at any time and from time to time, without notice to, or the consent of Pledgor . . . (ii) retain or obtain a security interest or lien in any property in addition to the Collateral to secure payment or performance of any of the [secured loans] . . . ." Security Agreement, § 5.

10. The account that the Debtor refers to as its "operating account" (account number ending in 1127) was not included in the list of accounts defined as Collateral. However, that account includes $8,676,075.69 representing proceeds from pledged certificates of deposit that were liquidated in the weeks prior to the Colonial Bank receievership. *See* Rich Decl., ¶ 3 Under the Security Agreement, these funds are also Collateral. *See* Security Agreement, § 1.

11. Based on the FDIC-Receiver's investigation to date, it has determined that the Debtor's Affiliate Liabilities secured by the Collateral under the Security Agreement are approximately $43,471,057 (other than liabilities owed with respect to the Debtor's capital maintenance obligation to the extent that obligation might also constitute an Affiliate Liability under the Security Agreement). Colonial BancGroup also is obligated to Colonial Bank as

Affiliate Liabilities for unreimbursed fees and expenses of approximately $340,000 arising from defaults by two Colonial BancGroup joint ventures and for deficiency claims of as much as $3,068,053 with respect to those joint ventures.[4] Rich Decl., ¶ 4.

    C.    <u>The Debtor's Capital Maintenance Commitment.</u>

    12.    On January 21, 2009, the board of directors of Colonial BancGroup entered into a Memorandum of Understanding with the Federal Reserve Bank of Atlanta and the Alabama State Banking Department under which the holding company's board agreed, on behalf of Colonial BancGroup, to a number of measures related to the financial soundness of its subsidiary Colonial Bank. *See* Rich Decl., Exh. C. First among these was the holding company's commitment to "utilize its financial and managerial resources to assist its subsidiary bank in addressing weaknesses identified by its primary banking supervisors and achieving/maintaining compliance with [Colonial Bank's] December 15, 2008 Memorandum of Understanding with" the FDIC and the Alabama State Banking Department. *See id.,* ¶ 1. The board of directors of Colonial Bank, in turn, had agreed in the bank's own Memorandum of Understanding with bank regulators that by no later than February 28, 2009, Colonial Bank would bring its Tier I Leverage Capital ratio to a level of not less than 8 percent and its Total Risk-Based Capital Ratio to a level of not less than 12 percent. *See* Rich Decl., Exh. B, ¶ 14.

    13.    Both Colonial Bank and Colonial BancGroup failed to meet their obligations under their respective regulatory agreements. As a result, on June 15, 2009, Colonial Bank

---

[4] Certain of the loans comprising the Affiliate Liabilities may have been transferred to BB&T pursuant to the P&A Agreement. Because the amounts owed by the Debtor to the FDIC-Receiver far exceed the aggregate balances in the seven Accounts, the FDIC-Receiver is entitled to relief from the automatic stay with respect to all of the funds in the Accounts. Any subsequent reconciliation of amounts held in the Accounts between the FDIC-Receiver and BB&T will be a receivership issue under the P&A Agreement that is beyond the jurisdiction of the Bankruptcy Court.

consented to the entry of a cease and desist order by the FDIC and the Alabama Superintendent of Banks under which Colonial Bank again agreed to raise its Tier 1 Leverage Capital Ratio to not less than 8 percent and its Total Risk-Based Capital Ratio to not less than 12 percent. *See* Rich Decl., Exh. D, at 6-7. On the same date, Colonial BancGroup consented to a similar cease and desist order by the Board of Governors of the Federal Reserve System and the Alabama State Banking Department in which Colonial BancGroup agreed, among other things, to "take appropriate steps to ensure that the [Colonial Bank] complies with the Cease and Desist Order, and any other supervisory action taken by [Colonial Bank's] federal or state regulators." Rich Decl., Exh. E, ¶ 1.

14. As of June 30, 2009, the date of Colonial Bank's last quarterly Call Report, its Tier I leverage capital ratio was 4.18%, far below the 8% required under its Memorandum of Understanding. This was a substantial decline from its inadequate capital at the end of the previous quarter, March 31, 2009, when its Tier I leverage capital ratio was 5.54%. *See* Rich Decl., Exh. F at page 2 of 26.

15. Translated into dollars, the shortfall from the capital level that Colonial Bank had agreed in its Memorandum of Understanding to achieve by no later than February 28, 2009 was $669,676,120 as of March 31, 2009 and $1,003,972,000 as of June 30, 2009.[5] Undoubtedly, the amount of the capital shortfall would have been substantially higher as of the next quarter-end, September 30, 2009, had Colonial Bank filed a Call Report for that date.

---

[5] The shortfall is readily calculable from statistics provided in Colonial Bank's Uniform Bank Performance Report, which is a publicly available financial report of statistics and data included in Colonial Bank's quarterly Call Reports. *See* Rich Decl., Exh. F. The amount of capital required to meet the agreed 8% Tier I leverage capital ratio is determined by multiplying the bank's total assets by .08. The shortfall from this agreed capital level is then determined by subtracting Colonial Bank's reported Tier I leverage capital from the product of this equation. For June 30, 2009, the calculation is as follows: ($26,210,000,000 * 0.08) = $2,096,800,000 - $1,092,828,000 = $1,003,972,000.

16. Colonial BancGroup made its own commitment to use its financial resources to ensure that Colonial Bank met these capital obligations. Accordingly, the Debtor has an uncured deficit under its capital maintenance commitment of no less than $1,003,972,000, and in all likelihood substantially more. Pursuant to 11 U.S.C. § 365(o), the Debtor was deemed to have assumed its capital maintenance commitment as a condition to entering chapter 11 and is required to immediately cure this deficit. Further, the FDIC-Receiver's claim for these amounts is entitled to administrative priority under section 507(a)(9) of the Bankruptcy Code.

## RELIEF REQUESTED

17. By this Motion, the FDIC-Receiver seeks an order pursuant to 11 U.S.C. §§ 362(d) and 553 modifying the automatic stay in order to permit setoff against the funds held in the seven Accounts in partial satisfaction of the FDIC-Receiver claims.

ARGUMENT

## THE FDIC-RECEIVER IS ENTITLED TO MODIFICATION OF THE AUTOMATIC STAY TO EXERCISE ITS SETOFF RIGHTS

18. The automatic stay should be modified to permit the FDIC-Receiver to exercise its setoff rights pursuant to non-bankruptcy law.

### A. The FDIC-Receiver Has Valid Setoff Rights.

19. The FDIC-Receiver has valid setoff rights pursuant to federal statutes and common law, as recognized under section 553 of the Bankruptcy Code

20. "The right of setoff (also called 'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the 'absurdity of making A pay B when B owes A.'" *Strumpf*, 516 U.S. at 18 (quoting *Studley v. Boylston Nat. Bank*, 229 U.S. 523, 528 (1913)). The Bankruptcy Code does not disturb a creditor's right to setoff if such right arose under non-bankruptcy law prior to the filing of a petition. *See* 11 U.S.C. § 553(a)

(Bankruptcy Code "does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against the claim of such creditor that arose before the commencement of the case").

21. There is "practically a presumption in favor of allowing setoff" where such rights exist under applicable non-bankruptcy law. *Carlton Co. v. Jenkins (In re Jenkins)*, No. 03-60548, 2004 WL 768574, at* 2 (Bankr. S.D. Ga. Mar. 30, 2004) (citing *S.E.C. v. Elliott*, 953 F.2d 1560, 1572 (11th Cir. 1992)). The FDIC-Receiver is entitled to setoff against the funds in the Debtor's accounts on two different grounds under nonbankruptcy law.

22. First, 12 U.S.C. § 1822(d) provides the FDIC-Receiver with a statutory right of setoff against any portion of a depositor's insured deposits with a failed bank to the extent required "to provide for the payment of any liability of [the] depositor to the" failed institution.[6] *See Villafane Neris v. Citibank, N.A.*, 845 F. Supp. 930, 934 (D.P.R. 1994) (collecting cases); *see also Gross*, 974 F.2d at 408; *Northern Trust Co. v. F.D.I.C.*, 619 F. Supp. 1340, 1342 (W.D. Okla. 1985).

23. The accounts at issue here are insured deposits that are subject to the FDIC-Receiver's setoff rights under section 1822(d). While the standard maximum deposit insurance amount currently is $250,000, 12 C.F.R. § 330.1(n), under FDIC temporary regulations this deposit insurance limit does not apply to "a depositor's funds in a noninterest-bearing transaction

---

[6] Section 1822(d) provides:

> The [FDIC] may withhold payment of such portion of the insured deposit of any depositor in a depository institution in default as may be required to provide for the payment of *any liability of such depositor to the depository institution in default or its receiver*, which is not offset against a claim due from such depository institution, pending the determination and payment of such liability by such depositor or any other person liable therefor.

12 U.S.C. § 1822(d) (emphasis added).

account maintained at a participating entity that is an insured depository institution . . . ." 12 C.F.R. § 370.4(a). The accounts at issue here fall within this exception.

24. Second, the FDIC-Receiver is entitled to setoff under applicable state law. Under Alabama law:

> [a] bank customer's deposit in a banking account becomes a debt from the bank to the customer. When . . . mutual debts exist . . . the bank may, when the [the debt owed by the depositor] matures, apply the money it owes the depositor towards the depositor's debt to the bank. *Rainsville Bank v. Willingham*, 485 So.2d 319 (Ala. 1986).

*In re Peterson*, 967 F.2d 505, 510 (11th Cir. 1992).

25. Exercise of the FDIC-Receiver's setoff rights here meets the requirements set forth in section 553 of the Bankruptcy Code, which provides that, with certain exceptions not applicable here, a right to setoff otherwise existing under nonbankruptcy law is preserved in bankruptcy where: (1) a creditor holds a prepetition claim against the debtor; (2) the creditor owes a prepetition debt to the debtor; (3) the claim and the debt are mutual; and (4) the claim and the debt are valid and enforceable. 11 U.S.C. § 553; *see In re Akincibasi*, 372 B.R. 80, 84 (Bankr. M.D. Fla. 2007); *In re Nase*, 297 B.R. 12, 19 (Bankr. W.D. Pa. 2003).

26. All of these criteria are satisfied. Both the deposit liabilities allegedly owed to the Debtor and the Debtor's substantial obligations to the FDIC-Receiver arose prepetition.[7] The

---

[7] The Debtor entered into its capital maintenance commitment prior to its bankruptcy petition, in December 2008, and reaffirmed that commitment in June 2009. By operation of law, the Debtor was deemed to have assumed its prepetition capital maintenance commitment as a condition to obtaining relief under chapter 11 of the Bankruptcy Code. *See* 11 U.S.C. § 365(o); *R.T.C. v. FirstCorp., Inc. (In re FirstCorp., Inc.)*, 973 F.2d 243, 247 (4th Cir. 1992). For purposes of setoff analysis, however, the fact that the Debtor is now obligated to cure its commitment as a post-petition obligation is not relevant. "[A] debt arises pre-petition for set-off purposes when some 'right to payment' exists prepetition; that is, when an enforceable obligation exists at the time the debtor files his bankruptcy petition." *United States v. Myers (In re Myers)*, 362 F.3d 667, 673 (10th Cir. 2004) (citation omitted); *see United States v. Gerth*, 991 F.2d 1428, 1432 (8th Cir. 1993) (amounts owed under prepetition contract assumed by debtor postpetition

11
Case 09-32303    Doc 156    Filed 10/05/09    Entered 10/05/09 17:02:30    Desc Main
                Document      Page 11 of 20

amount of the FDIC-Receiver's claims against the Debtor far exceeds the total balance of the accounts, and there can be no genuine dispute that the Debtor's obligations to Colonial Bank and the FDIC-Receiver, both those that are secured by the Security Agreement and those arising under the Debtor's capital maintenance commitment, are valid and enforceable.[8] The mutuality requirement is also satisfied because the same party, the Debtor, owes debts to the FDIC-Receiver and simultaneously holds a claim against the FDIC-Receiver. *See Jenkins*, 2004 WL 768574, at *3 (citation omitted).

27. Under section 553(a), the FDIC-Receiver is entitled to setoff against the entire amount of the Account balances. Given the substantial amounts owed by the Debtor, a substantial deficiency will still be owed the FDIC-Receiver on the Debtor's obligations after such setoff.

### B. Cause Exists to Modify the Automatic Stay.

28. Cause exists for modification of the automatic stay in order to permit the FDIC-Receiver to exercise its setoff rights against the funds in the Accounts.

29. Because the automatic stay in bankruptcy applies to "the setoff of any debt owing to the debtor that arose before commencement of the case under this title against any claim against the debtor," a creditor must seek relief from the stay in order to exercise its setoff rights. 11 U.S.C. § 362(a)(7). Section 362(a)(7), however, "simply stays [a creditor's] enforcement [of setoff] pending an orderly examination of the debtor's and creditors' rights." H.R. Rep. No. 595,

---

could be setoff against prepetition debts). The Debtor's capital maintenance commitment here arose prepetition for purposes of setoff.

[8] Section 553 authorizes setoff even when, unlike here, a creditor's claim is unliquidated, unmatured or even contingent. *See, e.g., Braniff Airways v. Exxon Co.*, 814 F.2d 1030, 1035 (5th Cir. Tex. 1987). Once some definite liability has accrued, setoff is proper. *In re Rozel Industries, Inc.*, 120 B.R. 944, 949 (Bankr. N.D. Ill. 1990); *In re Glenn*, 207 B.R. 419 (Bankr. E.D. Pa. 1997).

95th Cong., 1st Sess., at 342 (1977); S. Rep. No. 989, 95th Cong., Sess., at 51 (1978). Thus, a party may assert its right of setoff in a bankruptcy proceeding but must first obtain relief from the automatic stay or obtain an order allowing setoff. *In re NTG Indus., Inc.*, 103 B.R. 195, 197 (Bankr. N.D. Ill. 1989) (citations omitted). "[T]he stay is not meant to be indefinite or absolute, and in appropriate instances, relief may be granted." *Izzarelli v. Rexent Prods. Co. (In re Rexene Prods. Co.)*, 141 B.R. 574, 576 (Bankr. D. Del. 1992) (citing *Wedgewood Inv. Fund Ltd. v. Wedgewood Realty Group Ltd. (In re Wedgewood),* 878 F.2d 693, 697 (3d Cir. 1989)).

30. Under section 362(d)(1) of the Bankruptcy Code, the Court shall grant relief from the automatic stay "for cause, including lack of adequate protection of any interest in property of such party in interest." 11 U.S.C. § 362(d)(1). Courts generally recognize that once a creditor has established a right of setoff, it has made a prima facie showing of "cause" for relief from the automatic stay under section 362(d)(1). *In re Ealy*, 392 B.R. 408, 414 (Bankr. E.D. Ark. 2008); *In re Orlinski*, 140 B.R. 600, 603 (Bankr. S.D. Ga. 1991); *see also U.S. v. Gould*, 401 B.R. 415, 426 (9th Cir. B.A.P. 2009); *In re Nuclear Imaging Systems, Inc.*, 260 B.R. 724, 730 (Bankr. E.D. Pa. 2000). The right of setoff is the right not to part with one's own funds. *Strumpf*, 516 U.S. at 21. While a right of setoff is sometimes analogized to a security interest, a creditor holding a right of setoff is said to be "the best secured of creditors" because his "security" is "his own justified refusal to pay[.]" *United States v. Munsey Trust Co.*, 332 U.S. 234, 240 (1947).

31. Thus, in the absence of a showing of adequate protection, the creditor is entitled to relief from the automatic stay to exercise its setoff rights. *See In re George Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d 1017, 1019 (11th Cir. 1984); *In re Blanton*, 105 B.R. 321, 337 (Bankr. E.D. Va. 1989). Under the Bankruptcy Code, adequate protection is a form of relief afforded to creditors whose interest in the debtor's property is such that the passage of time or

continuation of the debtor's business could cause prejudice to the creditor. *See, e.g.*, *In re Engle*, 93 B.R. 58, 61 (E.D. Pa. 1987). Adequate protection is provided as an alternative to relief from the automatic stay and, conversely, relief from the automatic stay is justified where a lack of adequate protection exists. In short, adequate protection compensates a creditor for forebearing on its right to seek relief from the stay. *Id.* The purpose of adequate protection is to insure the creditor receives the value for which he bargained before the debtor's bankruptcy. *In re Swedeland Development Group, Inc.*, 16 F.3d 552, 564 (3d Cir. 1994); *In re Grant Broadcasting of Philadelphia, Inc.*, 71 B.R. 376, 386 (Bankr. E.D. Pa.), *aff'd*, 75 B.R. 819 (E.D. Pa. 1987).

32. Here, the FDIC-Receiver has received nothing in the way of adequate protection, either in the form of cash payments, a replacement lien, or other "indubitable equivalent." Relief from the automatic stay therefore is necessary and appropriate. Continuation of the automatic stay, on the other hand, would provide little or no benefit to the Debtor, its estate or creditors and is far outweighed by the benefit modification would provide the FDIC-Receiver. *See In re King*, No. 08-10892, 2008 Bankr. LEXIS 1983 (Bankr. N.D. Ga. May 29, 2008) (allowing modification of stay to permit setoff where turnover of funds could not be granted because it would destroy right to setoff and leaving stay in place would accomplish nothing). Given the FDIC-Receiver's right to setoff under both federal and state law, the FDIC-Receiver respectfully submits that it has met its initial burden of establishing cause for relief from the stay.

33. Modification of the stay also is warranted under section 362(d)(2) of the Bankruptcy Code, which permits modification of the stay "if – (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization . . . ." 11 U.S.C. § 362(d)(2). Relief from the automatic stay should be granted under section 362(d)(2) where the amount of a debtor's obligation to a creditor requesting relief exceeds the

value of collateral securing those debts. *In re Sunshine Books, Ltd.*, 41 B.R. 712 (Bankr. E.D. Pa. 1984).

34. "Once the movant under 362(d)(2) establishes that he is an undersecured creditor, it is the burden of the debtor to establish that the collateral at issue is "necessary to an effective reorganization." *See* 11 U.S.C. § 362(g); *see also United Sav. Assoc. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 376 (1988).

35. Courts have interpreted the term "equity" to refer to the difference between the value of the property and all encumbrances against it. *See, e.g., Nantucket Investors II v. California Fed. Bank (In re Indian Palms Assocs., Ltd.)*, 61 F.3d 197, 207 (3d Cir. 1995). In the instant case, the Debtor does not have any equity in the deposit accounts since the amount owed to the FDIC-Receiver of more than $1 billion far exceeds the balances in the Accounts of less than $40 million.

36. Further, the funds in the Accounts are not necessary for an effective reorganization because the Debtor has shown no ability to cure the outstanding deficit under its capital maintenance commitment, and if the Debtor cannot cure that deficit then its case is subject to conversion to a liquidation under chapter 7 of the Bankruptcy Code pursuant to Bankruptcy Code section 365(o). *See Wolkowitz v. Imperial Credit Indus., Inc (In re Imperial Credit Indus., Inc.)*, 527 F.3d 959, 975 (9th Cir. 2008); *O.T.S. v. Overland Park Fin. Corp. (In re Overland Park Fin. Corp.)*, 236 F.3d 1246, 1253 (10th Cir. 2001); *FirstCorp.*, 973 F.2d at 247.[9]

---

[9] The FDIC-Receiver reserves all of its rights under section 365(o) of the Bankruptcy Code, including its right to move to compel the Debtor to cure the substantial deficit existing under its capital maintenance commitment or, failing such cure, to convert this case to a liquidation under chapter 7 of the Bankruptcy Code.

## CONCLUSION

37. For the foregoing reasons, the FDIC-Receiver respectfully submits that cause exists to grant relief from the stay pursuant to Bankruptcy Code sections 362(d) to allow the FDIC-Receiver to exercise its setoff rights under applicable nonbankruptcy law and for the FDIC-Receiver and third parties to take such related actions as may be necessary to do so.

## NOTICE

38. Notice of this Motion has been provided to: (i) the Office of the Bankruptcy Administrator for the Middle District of Alabama, (ii) all members of Creditors' Committee, (iii) the Internal Revenue Service, (iv) counsel for the the Alabama Department of Revenue, (v) counsel for the SEC, (vi) counsel for BB&T, and (vii) those parties who have filed in this chapter 11 case a request for notice. In light of the nature of the relief requested, the FDIC-Receiver submits that no other or further notice need be provided.

## NO PRIOR REQUEST

39. No previous motion for the relief requested herein has been made to this or any other Court.

**WHEREFORE**, the FDIC-Receiver respectfully requests that this Court enter an order substantially in the form attached hereto modifying the automatic stay to permit the FDIC-Receiver to exercise its setoff rights under nonbankruptcy law and grant the FDIC-Receiver such other relief as may be just and proper.

Dated: Montgomery, Alabama
October 5, 2009

Respectfully submitted,

 /s/ Michael A. Fritz, Sr.
Michael A. Fritz, Sr.
Fritz & Hughes LLC
7020 Fain Park Drive Suite 1
Montgomery, AL 36117
(334) 215-4422

- and -

Thomas R. Califano
John. J. Clarke, Jr.
Jeremy R. Johnson
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
Telephone:  212-335-4500
Facsimile:  212-335-4501

Attorneys for the
Federal Deposit Insurance Corporation
as Receiver for Colonial Bank

Exhibit A
(Form of Order)

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **In re:** | Chapter 11 |
| **THE COLONIAL BANCGROUP, INC.,** | Case No. 09-32303(DHW) |
| **Debtor.** | |

**ORDER GRANTING EMERGENCY MOTION OF THE
FEDERAL DEPOSIT INSURANCE CORPORATION,
AS RECEIVER FOR COLONIAL BANK,
FOR RELIEF FROM THE AUTOMATIC STAY**

The Federal Deposit Insurance Corporation, as receiver for Colonial Bank, Montgomery, Alabama (the "FDIC-Receiver"), having moved for an order pursuant to 11 U.S.C. § 362(d) modifying the automatic stay (the "Motion") to permit the FDIC-Receiver to exercise its setoff rights with respect to the balances held in seven demand deposit accounts in the name of the debtor and debtor-in-possession The Colonial BancGroup, Inc. (the "Debtor") that are held by Branch Banking & Trust Company ("BB&T") under the control of the FDIC-Receiver, with account numbers ending in 1127, 5437, 5460, 5452, 5445 and 3218 (the "Accounts"); and the Court having reviewed the Motion and the responses thereto of the Debtor and other parties in interest; and a hearing having been held on the Motion on October __, 2009,

**NOW, THEREFORE**, the Court having determined that the legal and factual bases provided by the FDIC-Receiver in support of the Motion establish just cause for the relief granted herein, and due and sufficient notice having been provided;

**IT IS HEREBY ORDERED:**

1. The Motion of the FDIC-Receiver is granted.

2. The automatic stay provided under 11 U.S.C. § 362 in this bankruptcy case is hereby modified to permit the FDIC-Receiver to offset the aggregate balances held in the Accounts, $38,408,337.34, against and in partial satisfaction of the FDIC-Receiver's claims against the Debtor (the "Setoff") pursuant to 11 U.S.C. § 362(d) and 553, Alabama law and 12 U.S.C. §1822(d).

3. The FDIC-Receiver, BB&T, the Debtor and all other third parties are hereby authorized and directed to take such actions and file such documents as may be necessary to permit and facilitate the Setoff.

4. This Court will retain jurisdiction to address all disputes related to the interpretation or enforcement of this Order.

**SO ORDERED** this ___ day of _____, 2009.

_____
United States Bankruptcy Judge