UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

------------------------------------------------------------x
                     :

In re                                          :        Chapter 11 Case No.

THE COLONIAL BANCGROUP, INC.,    :        09-32303 (DHW)

            Debtor.                    :

------------------------------------------------------------x

**STATEMENT OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN SUPPORT OF DEBTOR'S MOTION FOR ENTRY OF A FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL AND GRANTING REPLACEMENT LIENS**

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtor (the "Debtor"), by its undersigned proposed counsel, hereby submits this statement (this "Statement") in support of the Debtor's Motion to Use Cash Collateral on an Emergency Interim and Final Basis and Grant Replacement Liens Pursuant to 11 U.S.C. §§ 105(a), 361, 363, 541 and 552 and Bankruptcy Rule 4001 (the "Cash Collateral Motion").

**Background**

1. On August 25, 2009 (the "Petition Date"), the Debtor filed with this Court a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2. The majority of the Debtor's business historically related to its ownership of Colonial Bank, Montgomery, Alabama ("Colonial Bank").

3. On August 14, 2009, the Alabama State Banking Department closed Colonial Bank, and the Federal Deposit Insurance Corporation (the "FDIC") was appointed as receiver.

1

4. Upon closing Colonial Bank, the FDIC entered into a Purchase and Assumption Agreement (the "PA Agreement") with Branch Banking and Trust Company ("BB&T"), pursuant to which, among other things, (i) the FDIC sold a significant portion of Colonial Bank's assets to BB&T and (ii) BB&T agreed to assume all of the deposits of Colonial Bank.

5. Among the deposit accounts assumed by BB&T under the PA Agreement were several deposit accounts of the Debtor (collectively, the "Debtor Accounts"). Upon information and belief, the aggregate amount of the Debtor's cash held by BB&T in the Debtor Accounts exceeds $38 million.

6. Upon information and belief, following the consummation of the sale transaction with BB&T, the FDIC placed a "freeze" on the Debtor Accounts, which has denied the Debtor access to its cash held at BB&T. Notwithstanding the commencement of this case and the imposition of the automatic stay -- which prevents all entities from, among other things, taking any action to exercise control over property of the estate -- the FDIC has continued this restraint on the Debtor's cash. As a result, the Debtor was forced to file the Cash Collateral Motion, which seeks the use of a portion of the cash in the Debtor Accounts.

7. On September 28, 2009, this Court entered an order (the "Interim Order") authorizing the Debtor to use the aggregate sum of $531,450 (the "Interim Cash Collateral") as cash collateral on an interim basis until the final hearing on the Cash Collateral Motion.

8. On September 28, 2009, upon recommendation by the Bankruptcy Administrator for the Middle District of Alabama, this Court appointed the Committee to serve as fiduciary to the many unsecured creditors in this case, who collectively hold claims against the Debtor in excess of $350 million.

9. On October 6, 2009, the Court entered an Order further extending the Debtor's use of cash collateral through October 13, 2009.

**Statement of the Committee**

10. Having just been formed, the Committee has been working to review and consider the many complex issues presented by this case. While the Committee's review is ongoing, the Committee respectfully submits that, based on the significant amount of unencumbered cash in the Debtor Accounts, all parties that arguably have an interest in the Debtor Accounts are adequately protected. Therefore, the Debtor's Cash Collateral Motion should be granted.

A. <u>A Significant Portion of the Debtor's Cash is Unencumbered</u>

11. By the Motion, the Debtor seeks the use of its own cash to run this chapter 11 case. To date, three entities have asserted potential security interests or other rights relating to the Debtor's cash. (The Committee understands that the Debtor disputes the claims and purported security interests of each of these entities.)

12. Specifically, (i) the State of Alabama Revenue Department (the "Revenue Department") has asserted that it has a tax lien that secures a claim of approximately $6,195,000; (ii) BB&T asserts a security interest in certain of the Debtor's cash that allegedly secures loans made by Colonial Bank to affiliates of the Debtor in the aggregate amount of approximately $24,000,000 and (iii) the FDIC asserts the same security interest asserted by BB&T as described in (ii) above, and also asserts that it is entitled to set-off the Debtor's cash (which is at BB&T) against unsupported priority claims that it alleges against the Debtor. Upon review of the positions taken by the Revenue Department, BB&T and the FDIC, however, it is clear that their respective rights and claims (assuming they are valid, which the Debtor disputes), are adequately protected.

3

13. For purposes of this analysis, the Committee assumes that the balance in the Debtor Accounts is $38 million (although the Committee understands that the balance may be higher). As noted above, the Revenue Department asserts a tax lien that secures a claim of approximately $6,195,000. While the Debtor has filed pleadings asserting that the underlying claim of the Revenue Department is zero, assuming that the entire claim and security interest was valid and enforceable, there would still be $31,805,000 of unencumbered cash in the Debtor Accounts.

14. BB&T asserts a security interest in certain of the Debtor's cash that secures loans made by Colonial Bank to affiliates of the Debtor in the aggregate amount of approximately $24,000,000. Upon information and belief, the Debtor believes that the amount of the affiliate loans is significantly less than $19 million and disputes the validity and enforceability of the purported security interest. However, even assuming that the security interest is valid and unavoidable and the affiliate loans are $24,000,000, the Debtor would still have $7,805,000 of unencumbered cash.

15. The FDIC asserts that it has a security interest in the cash in the Debtor Accounts based on the security agreement relating to the intercompany loans that were transferred to BB&T.[1] By all appearances, the intercompany loans have been transferred to BB&T. In any event, if there is a valid security interest in the Debtor Accounts as a result of the security agreement (which will be the subject of further review, analysis and potential dispute), it is clear that the amount of such security will not exceed the balance of the intercompany loans. Accordingly, it is clear that regardless of who owns the rights to the intercompany loans, the

---

[1] In its objection, the FDIC contends that "all of the funds in question, including the funds held in the Debtor's operating account, are subject to a security interest granted by Colonial BancGroup to Colonial Bank under an Amended and Restated Security Agreement dated as of January 1, 2009." The Security Agreement, however, at most, relates to certain certificates of deposit owned by the Debtor and the proceeds thereof. There is simply no basis for the FDIC's statement that it has a "blanket" security interest in the Debtor Accounts.

4

security interest can only be counted once and thus there is unencumbered cash of at least $7,805,000 in the Debtor Accounts.

      B.    The FDIC's Argument that the Debtor Accounts can be Set-Off Against the FDIC's Alleged Claims Violates Both the Bankruptcy Code and Clear and Well Settled Law on Set-Offs

16.    The FDIC next asserts that (i) the FDIC has a priority claim in excess of $1 billion under sections 507(a)(9) and 365(o) of the Bankruptcy Code and (ii) all of the Debtor Accounts being held at BB&T are subject to set-off against the FDIC's priority claim.

17.    Section 363(p) of the Bankruptcy Code provides that in any hearing under section 363 of the Bankruptcy Code, "the entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest." The FDIC did not and cannot meet this burden.

18.    As an initial matter, the FDIC's assertion that it has claims against the Debtor based on a capital maintenance commitment are baseless and without merit and will be the subject of future litigation in this case. However, for purposes of the Cash Collateral Motion at issue, it is not necessary for the Court to address the issue because regardless of the outcome of that litigation, the FDIC does not possess the cash in the Debtor Accounts and thus cannot effectuate a set-off under the Bankruptcy Code and applicable non-bankruptcy law.

19.    Pursuant to Section 2.1 of the PA Agreement, the deposits that had been held by Colonial Bank were transferred to, and assumed by, BB&T. In that regard, in a press release dated August 14, 2009, the FDIC stated that "BB&T's <u>acquisition</u> of all the deposits was the 'least costly' resolution for the FDIC's DIF compared to the alternatives." (Emphasis added.) A copy of the Press Release is attached as Exhibit A.

5

Case 09-32303    Doc 184    Filed 10/12/09    Entered 10/12/09 16:03:00    Desc Main
Document      Page 5 of 14

20. The law regarding set-off under section 553 of the Bankruptcy Code is clear and well settled -- set-off may only be permitted if there is mutuality between the debtor and creditor. Debts entitled to set off are mutual only when "they are due to and from the same persons in the same capacity." *Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138, 149 (2d Cir. 2002) (further citations omitted). Mutuality requires "that each party...own his claim in his own right severally, with the right to collect in his own name [and] in his own right and severally." *Braniff Airways, Inc. v. Exxon Co. USA*, 814 F.2d 1030, 1036 (5th Cir. 1987).

21. Set off requires a mutual debt and precludes "triangular" set off. *In re Berger Steel Co.*, 327 F.2d 401 (7th Cir.1964); *Depositors Trust Co. v. Frati Enterprises, Inc.*, 590 F.2d 377, 379 (1st Cir.1979). "[C]ourts have routinely held that triangular setoffs are impermissible in bankruptcy." *In re SemCrude, L.P.*, 399 B.R. 388, 393 (Bankr. D.Del. 2009) (citing *Matter of United Sciences of America, Inc.*, 893 F.2d 720, 723 (5th Cir.1990) ("The mutuality requirement is designed to protect against 'triangular' set-off; for example, where the creditor attempts to set off its debt to the debtor with the latter's debt to a third party.") and *In re Elcona Homes Corp. (Green Tree Acceptance, Inc.)*, 863 F.2d 483, 486 (7th Cir.1988) (noting the preclusion of "triangular set offs")).

22. In the present case, the FDIC appears to suggest that notwithstanding the fact that the FDIC transferred the Debtor Accounts to BB&T, it should still be permitted to set-off any claims that it may have against the Debtor against the Debtor Accounts held by BB&T. Among other things, taken to its logical conclusion, the FDIC is arguing that both the FDIC and BB&T may have rights of set-off relating to the same Debtor Accounts. (Both the FDIC and BB&T could use that same argument with respect to the tens of thousands of people that had deposits at

6

Colonial Bank at the time the deposits were transferred to BB&T.) The law on set-offs and basic common sense do not permit such an absurd interpretation.

23. FDIC also asserts that section 9.5 of the PA Agreement provides the FDIC with the right to demand that BB&T transfer the Debtor Accounts back to the Colonial Bank estate. Even assuming this was true, and assuming that such an action would not violate the automatic stay (which it would), section 553 of the Bankruptcy Code prevents set-offs in a scenario in which a debt owed to a debtor was incurred (a) after 90 days before the date of the filing of the petition, (b) while the debtor was insolvent and (c) for the purpose of obtaining a right of setoff against a debtor. See section 553(a)(3) of the Bankruptcy Code. Each of these tests is clearly satisfied and would prevent any efforts by the FDIC to set-off the Debtor Accounts if they were transferred back to the receivership. The Bankruptcy Code is clear. The law on set-offs is clear. The FDIC is not entitled to set-off the Debtor Accounts and thus has no interest in the cash collateral at issue in the Cash Collateral Motion.

C. The FDIC's Actions Violate the Automatic Stay

24. By placing a freeze on the Debtor Accounts and restraining BB&T from providing the Debtor with access to its cash, the FDIC has violated, and continues to violate the automatic stay. Section 362(a)(3) forbids any act to exercise control over property of the estate. That is exactly what the FDIC has done in this case. In furtherance of its litigation strategy, the FDIC has put the estate in jeopardy by exercising control over the Debtor's cash. The Committee reserves the right to seek sanctions against the FDIC for any and all harm and damages caused by the FDIC's actions.

D. <u>Reservation of Rights</u>

25. As noted above, the Committee was formed last week and continues its review and analysis of the issues presented by the Cash Collateral Motion and the FDIC's objection thereto. In that regard, the Committee expressly reserves the right to amend, modify or supplement this Statement and to introduce evidence in support of this Statement at the final hearing on the Cash Collateral Motion.

## Conclusion

For the reasons set forth herein, the Committee respectfully submits that the Court enter an order granting the relief requested in the Motion and granting such other and further relief as necessary and proper.

Dated: Birmingham, Alabama
October 12, 2009

BURR FORMAN LLP

By: *[signature]*
Robert B. Rubin, Esq.
Marc P. Solomon, Esq.
420 North 20th Street
Suite 3400
Birmingham, Alabama 35203

-and-

Brian Pfeiffer, Esq.
Alexis Chapin, Esq.
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, New York 10022
Telephone:  (212) 756-2000
Facsimile:  (212) 593-5955

*Proposed Co-Counsel for the Official Committee of Unsecured Creditors*

<u>Exhibit A</u>

**FDIC Press Release, 08/14/09**

Home > News & Events > Press Releases

# Press Releases

## BB&T, Winston-Salem, North Carolina, Assumes All of the Deposits of Colonial Bank, Montgomery, Alabama

**FOR IMMEDIATE RELEASE**
**August 14, 2009**

**Media Contact:**
Andrew Gray: (202) 898-7192
Cell: 202-494-1049
E-mail: angray@fdic.gov

Colonial Bank, Montgomery, Alabama, was closed today by the Alabama State Banking Department, which appointed the Federal Deposit Insurance Corporation (FDIC) as receiver. To protect the depositors, the FDIC entered into a purchase and assumption agreement with Branch Banking and Trust (BB&T), Winston-Salem, North Carolina, to assume all of the deposits of Colonial Bank.

Colonial Bank's 346 branches in Alabama, Florida, Georgia, Nevada and Texas will reopen under normal business hours beginning tomorrow and operate as branches of BB&T. Depositors of Colonial Bank will automatically become depositors of BB&T. Deposits will continue to be insured by the FDIC, so there is no need for customers to change their banking relationship to retain their deposit insurance coverage. Customers should continue to use their existing branches until BB&T can fully integrate the deposit records of Colonial Bank.

This evening and over the weekend, depositors of Colonial Bank can access their money by writing checks or using ATM or debit cards. Checks drawn on the bank will continue to be processed. Loan customers should continue to make their payments as usual.

"The past 18 months have been a very trying period in the financial services arena, but the FDIC and its staff have performed as Congress envisioned when it created the corporation more than 75 years ago," said FDIC Chairman Sheila C. Bair. "Today, after protecting almost $300 billion in deposits since the current financial crisis began, the FDIC's guarantee is as certain as ever. Our industry funded reserves have covered all losses to date. In fact, losses from today's failures are lower than had been projected. I commend our staff for their excellent work in assuring once again a smooth transition for bank customers with these resolutions. The FDIC continues to stand by the nation's insured deposits with the full faith and credit of the U.S. government. No depositor has ever lost a penny of their insured deposits."

Customers who have questions about today's transaction can call the FDIC toll-free at 1-800-405-8739. The phone number will be operational this evening until 9:00 p.m., Central Daylight Time (CDT); on Saturday from 9:00 a.m. to 6:00 p.m., CDT; on Sunday from noon to 6:00 p.m., CDT; and thereafter from 8:00 a.m. to 8:00 p.m., CDT. Interested parties can also visit the FDIC's Web site at http://www.fdic.gov/bank/individual/failed/colonial-al.html.

As of June 30, 2009, Colonial Bank had total assets of $25 billion and total deposits of approximately $20 billion. BB&T will purchase approximately $22 billion in assets of Colonial Bank. The FDIC will retain the remaining assets for later disposition.

The FDIC and BB&T entered into a loss-share transaction on approximately $15 billion of Colonial Bank's assets. BB&T will share in the losses on the asset pools covered under the loss-share agreement. The loss-sharing arrangement is projected to maximize returns on the assets covered by keeping them in the private sector. The agreement is also expected to minimize the disruptions for loan customers.

The FDIC estimates that the cost to the Deposit Insurance Fund (DIF) will be $2.8 billion. BB&T's

acquisition of all the deposits was the "least costly" resolution for the FDIC's DIF compared to alternatives. Colonial Bank is the 74th FDIC-insured institution to fail in the nation this year, and the first in Alabama. The last FDIC-insured institution to be closed in the state was Birmingham FSB, Birmingham, on August 21, 1992.

###

Congress created the Federal Deposit Insurance Corporation in 1933 to restore public confidence in the nation's banking system. The FDIC insures deposits at the nation's 8,246 banks and savings associations and it promotes the safety and soundness of these institutions by identifying, monitoring and addressing risks to which they are exposed. The FDIC receives no federal tax dollars – insured financial institutions fund its operations.

FDIC press releases and other information are available on the Internet at www.fdic.gov, by subscription electronically (go to www.fdic.gov/about/subscriptions/index.html) and may also be obtained through the FDIC's Public Information Center (877-275-3342 or 703-562-2200). **PR-143-2009**

Last Updated 8/14/2009

communications@fdic.gov

**Home   Contact Us   Search   Help   SiteMap   Forms**
Freedom of Information Act (FOIA) Service Center   Website Policies   USA.gov
FDIC Office of Inspector General

## CERTIFICATE OF SERVICE

    I hereby certify that I have served a copy of the foregoing document upon the attached Service List by Notice of Electronic Filing, or, if the party served does not participate in Notice of Electronic Filing, by U.S. First Class Mail, hand delivery, fax or email on this the 12th day of October, 2009:

                        /s/ Marc P. Solomon
                        OF COUNSEL

*In re: The Colonial BancGroup*, Chapter 11 Case No. 09-32303
Pending in the U.S. Bankruptcy Court for the Middle District of Alabama (Montgomery)
Updated 10/12/09

## SERVICE LIST

**VIA E-MAIL:**

| | |
|---|---|
| **The Colonial BancGroup, Inc.**<br>c/o C. Edward Dobbs<br>c/o Rufus T. Dorsey, IV<br>Parker, Hudson, Rainer & Dobbs, LLP<br>1500 Marquis Two Tower<br>285 Peachtree Center Avenue, N.E.<br>Atlanta, GA 30303<br>edobbs@phrd.com<br>rdorsey@phrd.com | **Bankruptcy Administrator**<br>U.S. Bankruptcy Administrator<br>One Church Street<br>Montgomery, AL 36104 |
| **The Colonial BancGroup, Inc.**<br>c/o W. Clark Watson<br>Balch & Bingham LLP<br>1901 Sixth Avenue North<br>Suite 1500<br>Birmingham, AL 35203<br>cwatson@balch.com | **Pension Benefit Guaranty Corporation**<br>c/o Marc S. Pfeuffer<br>Office of the Chief Counsel<br>1200 K Street, N.W.<br>Washington, D.C. 20005-4026<br>Pfeuffer.marc@pbgc.gov<br>efile@pbgc.gov |
| **Federal Deposit Insurance Corporation, as receiver for Colonial Bank**<br>c/o Michael A. Fritz, Sr.<br>FRITZ 7 HUGHES, LLC<br>7020 Fain Park Drive, Suite 1<br>Montgomery, AL 36117<br>Michael@fritzandhughes.com | **Ken Burton, Jr., Mantee County Tax Collector**<br>c/o Susan D. Profant, CFCA, CLA, FRP, Paralegal<br>P.O. Box 25300 (34206-5300)<br>819 U.S. 301 Blvd. West<br>Bradenton, FL 34205<br>susanp@taxcollector.com |
| **Federal Deposit Insurance Corporation, as receiver for Colonial Bank**<br>c/o Thomas R. Califano, Esq.<br>c/o John Clark, Esq.<br>c/o Jeremy R. Johnson, Esq.<br>DLA PIPER LLP (US)<br>1251 Avenue of the Americas<br>New York, NY 10020-1104<br>thomas.califano@dlapiper.com<br>john.clarke@dlapiper.com<br>jeremy.johnson@dlapiper.com | **Alabama Securities Commission**<br>c/o Edwin L. Reed<br>Post Office Box 304700<br>Montgomery, AL 36130-4700<br>ed.reed@asc.alabama.gov |

1780993 v1

Case 09-32303    Doc 184    Filed 10/12/09    Entered 10/12/09 16:03:00    Desc Main
                            Document      Page 13 of 14

*In re: The Colonial BancGroup*, Chapter 11 Case No. 09-32303
Pending in the U.S. Bankruptcy Court for the Middle District of Alabama (Montgomery)
Updated 10/12/09

**Branch Banking Trust Company**
c/o N. Christian Glenos, Esq.
c/o M. Leesa Booth, Esq.
Bradley Arant Boult Cummings LLP
1819 Fifth Avenue North
Birmingham, AL 35203
cglenos@babc.com
lbooth@babc.com

**Weingarten Nostat, Inc.**
c/o Jenny J. Hyun, Esq.
Weingarten Realty Investors
2600 Citadel Plaza Drive, Suite 125
Houston, TX 77008
bankruptcycases@weingarten.com

**Taylor, Bean & Whitaker Mortgage Corp.**
c/o Jeffrey W. Kelley
TROUTMAN SANDERS LLP
Bank of America Plaza, Suite 5200
600 Peachtree Street N.E.
Atlanta, GA 30308-2216
Jeffrey.kelley@troutmansanders.com

**State of Alabama Department of Revenue**
c/o Mark Griffin
c/o David Avery
P.O. Box 320001
Montgomery, AL 36132-0001
mark.griffin@revenue.alabama.gov
david.avery.legal@revenue.alabama.gov

**The Bank of New York Mellon Trust Company, N.A.**
c/o Eric J. Breithaupt
CHRISTIAN & SMALL, LLP
505 20th Street North, Suite 1800
Birmingham, AL 35203
ejb@csattorneys.com

**The Bank of New York Mellon Trust Company, N.A.**
c/o Samuel S. Kohn, Esq.
DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, NY 10019
skohn@dl.com

**TITAN Technology Partners, Limited**
c/o Robert L. Shields, III
c/o Justin G. Williams
c/o Brooke M. Nixon
TANNER & GUIN, LLC
Capital Park Center
2711 University Boulevard
P.O. Box 3206 (35403-3206
Tuscaloosa, AL 35401-1465
rshields@tannerguin.com
jwilliams@tannerguin.com
bnixon@tannerguin.com

**Tax Collector of Madison County, Alabama**
Attn: Lynda Hall
Madison County Courthouse
100 Northside Square
Huntsville, AL 35801
swells@co.madison.al.us