UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

```
-----------------------------------------------------------x
                                          :
In re                                     :     Chapter 11
                                          :
THE COLONIAL BANCGROUP, INC.,             :     Case No. 09-32303 (DHW)
                                          :
                  Debtor.                 :
                                          :
-----------------------------------------------------------x
```

### AGREED FINAL ORDER GRANTING DEBTOR'S
### EMERGENCY MOTION FOR USE OF CASH COLLATERAL

This matter came on for hearing before the Court on October 13, 2009 (the "Final Hearing"), on the Debtor's Emergency Motion for Entry of Interim and Final Orders Authorizing Use of Cash Collateral and Granting Replacement Liens [Doc. No. 87] (the "Motion"). Pursuant to the Motion, the Debtor seeks to use a portion of funds which, as of August 25, 2009 (the "Petition Date"), were on deposit in its depository accounts (collectively, the "Bank Accounts") at Branch Banking & Trust Company ("BB&T"), which Bank Accounts and balances therein as of the Petition Date were approximately as follows: Account No. XXXXXX1127 in the amount of $14,381,038.24 (the "Operating Account"); Account No. XXXXXX5437 in the amount of $4,000,000; Account No XXXXXX5460 in the amount of $5,091,170.82; Account No. XXXXXX5452 in the amount of $5,045,815.06; Account No. XXXXXX5445 in the amount of $2,282,904.24; and Account No. XXXXXX3218 in the amount of $7,607,409.38 (the balances in such Bank Accounts being collectively referred to as the "Cash Collateral"). A portion of the balance in the Operating Account, as of the Petition Date and on the date hereof, is attributable to funds that were transferred to the Operating Account on August 21, 2009 by wire transfer from SunTrust Bank in Atlanta, Georgia, in the amount of $1,425,000 in connection with the liquidation of an interest rate hedge agreement purchased by the Debtor from SunTrust Bank (the "Hedge Deposit").

The Debtor is aware of only three entities that assert any security interest in, lien upon or right of setoff with respect to any of the Cash Collateral, including the portion attributable to the Hedge Deposit. Those entities (the "Claimants") are the State of Alabama Department of Revenue (the "Revenue Department"), which asserts a tax lien with respect to the Cash Collateral; BB&T, which asserts a security interest in or right of offset with respect to the Cash Collateral; and the Federal Deposit Insurance Corporation, in its capacity as receiver for Colonial Bank, Montgomery, Alabama (in such capacity, the "FDIC-Receiver"), which asserts a security interest in and a right of offset with respect to the Cash Collateral. The Debtor does not concede that any of the Claimants has any lien upon, interest in or right of offset with respect to any of the Cash Collateral, and none of the Claimants concedes that any other Claimant has any lien upon, interest in or right of offset with respect to any Cash Collateral.

By order entered on September 28, 2009 [Doc No. 128], as amended by order of the Court entered on October 6, 2009 [Doc No. 161] (collectively, the "Interim Order"), the Court authorized the Debtor to use a portion of the Cash Collateral in the Operating Account attributable to the Hedge Deposit in the amount of $531,450, which amount was thereafter transferred to the Debtor and the Debtor's professionals in accordance with the Interim Order. Subject to all of the terms and conditions hereinafter set forth, each of the Claimants, as well as the Official Committee of Unsecured Creditors (the "Committee") consents to the Debtor's use of the balance of the Hedge Deposit for the purposes and in the aggregate amount specified in the budget, attached to this Order as Exhibit A (the "Budget").

NOW, THEREFORE, for cause shown and with the consent of the Debtor, each Claimant and the Committee, it is accordingly herewith:

**ORDERED** that the Motion be and is hereby granted as hereinafter set forth;

**ORDERED** that the Debtor shall be authorized to use Cash Collateral in the Operating Account attributable to the Hedge Deposit in the aggregate amount of $1,425,000 for purposes set forth in the Budget; provided; however; that the Debtor may reallocate amounts shown on the Budget for a particular use to another use, but may not reallocate amounts earmarked for professionals without the consent of such professionals; and it is further

**ORDERED** that this Order shall be without prejudice to the Debtor's right to request Court approval to use additional amounts of Cash Collateral, and the Debtor shall be authorized to use such additional amounts of Cash Collateral, without further order of the Court but subject to the provisions of this Order, if each entity claiming an interest therein and the Committee consent to such use (in which event the Debtor shall promptly file a revised Budget that reflects the use of such additional Cash Collateral); provided, however, that if the Debtor hereafter files a motion to use any additional amounts of Cash Collateral, the Debtor agrees not to seek a hearing on such motion for a date that is the earlier to occur of (i) December 9, 2009 or (ii) the date of any hearing on a motion by the FDIC-Receiver seeking relief that is, in whole or in part, predicated upon any of Sections 362, 365(o), 1104, or 1112. For the purpose of implementing the foregoing, the preliminary hearing scheduled for October 29, 2009 on the FDIC-Receiver's pending Motion for Relief from Stay [Doc No. 156] ("Stay Motion") shall be removed from the calendar; the FDIC-Receiver, by its consent hereto, hereby waives the necessity for a preliminary hearing and the termination of the automatic stay under Section 362(e)(1) of the Bankruptcy Code pending a final hearing; and the final hearing on the Stay Motion presently scheduled for November 17, 2009, shall be rescheduled for December 9, 2009 at 10:00 a.m.; and it is further

**ORDERED** that this Order shall be without prejudice to the Debtor's right, at any time, to request Court approval to use proceeds of any property of the estate (other than the Cash Collateral) that is (or is asserted to be) subject to liens or offset rights of a Claimant or other entity (the "Other Cash Collateral"), and the Debtor shall be authorized to use such Other Cash Collateral, without further order of the Court but subject to the provisions of this Order, if each entity claiming an interest therein and the Committee consent to such use (in which event the Debtor shall promptly file a revised Budget that reflects the use of such Other Cash Collateral); and it is further

**ORDERED** that the FDIC-Receiver shall promptly arrange for the Debtor to withdraw from the Operating Account the additional sum of $893,550, representing the remaining balance of Cash Collateral that is attributable to the Hedge Deposit and that is authorized to be used pursuant to the Budget and this Order, of which $213,550 shall be deposited in the Debtor's demand depository account at Sterling Bank

and the balance of $680,000, representing the allocated amounts to secure payment of the Chapter 11 professionals retained by the Debtor and the Committee, shall be deposited in accounts maintained by those professionals, to be held by them pending authorization by the Court prior to application to payment of professional fees and expenses; and it is further

**ORDERED** that nothing in this Order shall constitute a finding or adjudication that any Claimant has any legal, valid or enforceable lien upon, right of offset with respect to or other interest in any Cash Collateral, any Other Cash Collateral, or any monies, Bank Accounts or other assets of the Debtor, or the priority of any asserted lien, claim, interest or right of offset *vis-à-vis* any other lien, claim, interest or right of offset asserted by any other Claimant; and it is further

**ORDERED** that nothing in this Order shall constitute a finding or adjudication that the FDIC-Receiver is subject to this Court's jurisdiction, and all rights regarding jurisdictional defenses that have been or may be asserted by the FDIC-Receiver are reserved; and by its consent to this Order the FDIC-Receiver does not waive any arguments included in its objection with respect to any future requested use of Cash Collateral or in its pending Stay Motion (other than with respect to the Cash Collateral that the Debtor is authorized to use pursuant to this Order or any future order of the Court); and it is further

**ORDERED** that this Order is without prejudice to the right of any Claimant, the Committee or the Debtor to seek any other relief in this Chapter 11 case (other than with respect to the Cash Collateral or Other Cash Collateral authorized to be used pursuant to this Order), whether by motion, adversary proceeding or application, including, without limitation, in the case of the FDIC-Receiver, the right to file a motion seeking whatever relief may be available to it under Sections 362, 365(o), 1104 or 1112 of the Bankruptcy Code, or the right of any party in interest to object to any relief requested by another party in interest; and it is further

**ORDERED** that the Debtor has stipulated that, in exchange for the FDIC-Receiver's consent to this Order, the Debtor will not assert that the FDIC-Receiver's administrative hold on the Bank Accounts is violative of the automatic stay during the period from the filing of the Motion through the date Debtor

requests to use any additional Cash Collateral that is not consented to by the FDIC-Receiver; and it is further

**ORDERED** that none of the Claimants shall be deemed to have consented to, and each fully reserves all of its rights to object to, the allowance of any professional fees or expenses of any professional persons for whom amounts are allocated in the Budget, and neither the entry of this Order nor the approval herein of the Budget shall be deemed to constitute an agreement to allowance in any specific amount of any fees or reimbursement of expenses of any professional person retained by the Debtor or the Committee. The Claimants' bases for objection to the allowance of any professional fees, however, shall be limited to those bases set forth in 11 U.S.C. § 328 or 11 U.S.C. § 330(a) as applicable; and it is further

**ORDERED** that, if it is subsequently determined by final order of the Court that any amount of Cash Collateral used by the Debtor pursuant to the terms of this Order is subject to a valid security interest, lien or offset right of any Claimant and such security interest, lien or offset right is not subject to avoidance, nullification, invalidation or offset pursuant to any provisions of the Bankruptcy Code or other applicable law, then such Claimant shall have, and is hereby granted, a security interest in and lien upon (for each Claimant, a "Replacement Lien") all of the assets of the Debtor's estate (including after-acquired cash or proceeds) to secure the Debtor's repayment to such Claimant of an amount equal to the lesser of (i) the amount of Cash Collateral used and (ii) the diminution in the value of the interest of such Claimant in the Debtor's assets (including amounts on deposit in the Operating Account) resulting from the Debtor's use of such Cash Collateral; provided, however, that the Replacement Lien granted in favor of each Claimant (x) shall not attach to any Avoidance Claims or Avoidance Proceeds (as those terms are defined below) or any Cash Collateral authorized to be used pursuant to the Interim Order or this Order and (y) shall be subject to any legal, valid, perfected and unavoidable lien with respect to assets of the estate that existed as of the commencement of the Chapter 11 case (each a "Pre-Petition Lien") to the same extent that the security interest, lien or offset right of such Claimant was subject to any such Pre-Petition Lien. As used herein, the term "Avoidance Claim" shall mean any claim or cause of action that

could be asserted by the Debtor under Section 544, 545, 546, 547, 548, 550 or 553 of the Bankruptcy Code; and the term "Avoidance Proceeds" shall mean proceeds received from the prosecution or settlement of an Avoidance Claim, whether such Avoidance Claim is prosecuted or settled by the Debtor, a subsequently appointed Chapter 11 or Chapter 7 trustee, or any representative of creditors (including the Committee); and it is further

**ORDERED** that nothing herein shall constitute an admission by the Debtor, the Committee or any Claimant of the validity, extent or priority of any claim, security interest, lien, offset right or other interest that any Claimant may have or assert with respect to the Cash Collateral or any other asset of the Debtor's estate; an admission by the Debtor that it is not authorized to have unrestricted access to the Cash Collateral for any lawful purpose permitted by the Bankruptcy Code or order of the Court; or an admission by the Claimants that the Debtor is authorized to have unrestricted access to the Cash Collateral; or prejudice any right of any Claimant or any other interested party to seek a judicial determination by the Court of the relative priorities (*vis-à-vis* any other Claimant or entity) of any rights, interests and claims of such Claimant to the Cash Collateral or any other assets of the Chapter 11 estate; and it is further

SO ORDERED, this 14th day of October, 2009.

/s/ Dwight H. Williams, Jr.
United States Bankruptcy Judge

The Colonial BancGroup, Inc. (DIP)  Exhibit A
Estimated cash needs
Cumulative Budget

|  | First Amended Budget | Additions | Cumulative | |
|---|---:|---:|---:|---|
| **Bankruptcy Expenses** | | | | |
| Notice and mailing costs | 5,000 | 0 | 5,000 | ( LCS, Inc. for past and future copy costs) |
| Publication Cost | 30,000 | 20,000 | 50,000 | |
| BA quarterly fees | 10,250 | 10,250 | 20,500 | |
| Copy service | 5,000 | 5,000 | 10,000 | (Copies of FDIC held records) |
|  | **$50,250** | **$35,250** | **$85,500** | |
| **Bankruptcy Professionals** | | | | |
| Debtors counsel - PHR&D | 255,000 | 395,000 | 650,000 | |
| Debtors special counsel - B&B | 105,000 | 40,000 | 145,000 | |
| Other Professionals | 15,000 | 0 | 15,000 | |
| Committee | 0 | 245,000 | 245,000 | |
|  | **$375,000** | **$680,000** | **$1,055,000** | |
| **Operational expenses** | | | | |
| Board Chair /directors' compensation | 0 | 83,000 | 83,000 | (Subject to Court approval) |
| CRO salary | 76,250 | 76,250 | 152,500 | |
| CRO out of pocket expenses | 5,200 | 5,200 | 10,400 | |
| Postage and overnight mail | 500 | 500 | 1,000 | (Held by Debtor as petty cash for advance payments) |
| Office Supplies | 0 | 500 | 500 | |
|  | **$81,950** | **$165,450** | **$247,400** | |
| **Miscellaneous** | | | | |
| Technology infrastructure | 5,000 | 3,000 | 8,000 | (Relating to FDIC held electronic records) |
| Public company requirements | 10,000 | 5,000 | 15,000 | |
| Miscellaneous | 9,250 | 4,850 | 14,100 | |
|  | **$24,250** | **$12,850** | **$37,100** | |
| **Total** | **$531,450** | **$893,550** | **$1,425,000** | |

1296312