UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

-------------------------------------------------------------x
                                          :

In re                                    :          Chapter 11
                                          :

THE COLONIAL BANCGROUP, INC.,    :          Case No. 09-32303 (DHW)
                                          :

                Debtor.           :
                                        :
-------------------------------------------------------------x

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL
ORDERS AUTHORIZING USE OF CASH AND, TO THE EXTENT SUCH
CASH CONSTITUTES CASH COLLATERAL, GRANTING REPLACEMENT LIENS
PURSUANT TO 11 U.S.C. §§ 105(a), 361, 363 AND 541 AND BANKRUPTCY RULE 4001**

TO:    The Honorable Dwight H. Williams, Jr.,
         United States Bankruptcy Judge:

        The Colonial BancGroup, Inc. (the "Debtor"), as debtor and debtor in possession, by this motion (the "Motion") seeks entry of an order pursuant to Sections 105(a), 361, 363 and 541 of title 11 of the United States Code (the "Bankruptcy Code") and Bankruptcy Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing use of cash from sources other than the Deposits (as defined below) to supplement the use of cash collateral previously authorized by the Cash Collateral Orders (as defined below) for the purpose of paying: (a) monthly operating and bankruptcy expenses consistent with the monthly estimates contained in Exhibit A attached hereto (the "Budget"); and (b) professional fees and expenses to the extent payable under applicable Court orders. If and to the extent that any of the cash authorized to be used pursuant to this Order is subject to a Valid Lien (as defined below), the Debtor requests authority to grant replacement liens to affected parties. The Debtor requests that an interim hearing be held on this Motion on December 9, 2009.

        In support of this Motion, the Debtor relies on the Amended and Restated Declaration of Sarah H. Moore in Support of Chapter 11 Petition and Certain Motions. In further support of the Motion, the Debtor states and shows as follows:

**Background**

1. On August 25, 2009 (the "Petition Date"), the Debtor filed with this Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business as debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

2. The Debtor is a corporation formed under the laws of the State of Delaware and, prior to the Petition Date, was headquartered and conducted business at 100 Colonial Bank Boulevard, Montgomery, Alabama 36117.

3. Prior to the Petition Date, the Debtor was a bank holding company that owned Colonial Bank and also owned certain non-banking, non-debtor subsidiaries. As a bank holding company, the Debtor's banking and non-banking subsidiaries were overseen by various federal and state authorities.

4. On August 14, 2009, Colonial Bank was closed by the Alabama State Banking Department, and the Federal Deposit Insurance Corporation (the "FDIC") was appointed as receiver for Colonial Bank (in such capacity, the "FDIC-Receiver"). On or about August 14, 2009, the FDIC sold substantially all of the assets of Colonial Bank to Branch Banking and Trust Company ("BB&T").

5. As of the Petition Date, the Debtor's assets consisted primarily of cash on deposit at BB&T in the approximate amount of $38,408,337.74, stock in certain subsidiaries (including Colonial Bank), funds and/ or investments held in a Schwab trust account in the approximate amount of $1,900,000 in connection with a Debtor sponsored deferred compensation plan (the "Deferred Compensation Plan Assets"), unearned premiums under certain insurance policies, investments in certain partnerships and other entities, certain motor vehicles, causes of action and other unliquidated claims (including pending derivative actions seeking recoveries that are the subject of D&O insurance), potential tax refunds, and certain furniture and artwork located at the Debtor's headquarters as of the Petition Date.

6. The Debtor had on deposit as of the Petition Date in its depository accounts at BB&T the following approximate balances: in Account No. XXXXXX1127 (the "Operating Account"), the amount of $14,381,038.24; in Account No. XXXXXX5437, the amount of $4,000,000; in Account No XXXXXX5460, the amount of $5,091,170.82; in Account No. XXXXXX5452, the amount of $5,045,815.06; in Account No.

XXXXXX5445, the amount of $2,282,904.24; and in Account No. XXXXXX3218, the amount of $7,607,409.38 (the balances in such bank accounts being collectively referred to as the "Deposits").

7. The Debtor is aware of only three entities that assert any security interest in, lien upon or right of setoff with respect to any property of the Debtor's estate. Those entities (collectively, the "Claimants") are as follows:

    (a)    The State of Alabama Department of Revenue (the "Revenue Department"), which asserts a tax lien with respect to the Deposits and certain other property of the Debtor's estate. The Revenue Department's assertion is based on a notice of tax lien with respect to income and excise taxes in an aggregate principal amount exceeding $9,000,000. The Revenue Department has subsequently revised the amount of its claim to a sum less than $7 million. The Debtor disputes the amount of the Revenue Department's claim and has filed a motion with the Court pursuant to Section 505 of the Bankruptcy Code seeking a determination of the validity and amount of the asserted claim [Doc. No. 70];

    (b)    BB&T, which asserts a security interest in or right of offset with respect to a portion of the Deposits in the aggregate amount of $24,027,299.50, which amounts relate to the following account numbers: XXXXXX5437, XXXXXX5460, XXXXXX5452; XXXXXX5445, and XXXXXX3218. BB&T bases its assertion on the purchase of assets from Colonial Bank as previously referenced, which included an Amended and Restated Security Agreement dated January 1, 2009, executed by the Debtor in favor of Colonial Bank (the "Security Agreement"). BB&T states in its proof of claim [Claim No. 163] that the $24,027,299.50 secures certain loans (the "Affiliate Loans") made by Colonial Bank to various partnerships and other ventures in which the Debtor had made investments and that such loans are also secured by real property owned by the borrowers. BB&T does not assert in its proof of claim or

1353285_7
-3-
Case 09-32303    Doc 319    Filed 12/02/09    Entered 12/02/09 17:58:38    Desc Main
Document    Page 3 of 15

otherwise any lien or interest in the balance of $14,381,038.24 in the Operating Account or any other property of the Debtor's estate. The validity, extent and priority of BB&T's alleged lien interest is in dispute. The Debtor notes that the sum of $24,027,299.50 remains on deposit with BB&T under prior orders of the Court and the Debtor does not seek to make any change in the status quo as to such funds pursuant to this Motion; and

(c) The FDIC-Receiver, which asserts a security interest in and a right of offset with respect to the Deposits that is duplicative of the lien asserted by BB&T in the Deposits and is based upon the same Security Agreement asserted by BB&T as the basis of its claim. The FDIC-Receiver does not claim to have a security interest in or lien upon any other property of the estate as of the Petition Date. The FDIC-Receiver does, however, assert a priority claim in the case in excess of $1,000,000,000 and other contingent and unliquidated claims as described in its proof of claim [Claim No. 139]. The FDIC-Receiver's alleged lien, priority claim and other unsecured claims are disputed in this case.

8. The Debtor does not concede that any of the Claimants has any lien upon, interest in or right of offset with respect to any of the Deposits or other property of the Debtor's estate, and none of the Claimants concedes that any other Claimant has any lien upon, interest in or right of offset with respect to the Deposits or any other property of the estate.

9. On September 28, 2009, October 6, 2009, and October 13, 2009, the Court entered a series of orders (collectively, the "Cash Collateral Orders")[1] that ultimately authorized the Debtor to use cash in the aggregate amount of $1,425,000 for the purposes set forth in the budget annexed to the October 13, 2009 Order (the "First Budget"). The amount of $1,425,000 was derived from the balance of $14,381,038.24 in the Operating Account, leaving a balance of $12,956,038 in the Operating Account (the balance in which is not the subject of any asserted lien by BB&T or the FDIC to secure Affiliate Loans under the Security Agreement).

10. Since the commencement of this Chapter 11 case, the Debtor's primary focus has been upon the orderly wind down of the Debtor's business, the identification and realization upon its assets and claims, and the evaluation of claims against the Debtor.

11. The Debtor continues to make progress towards identifying and liquidating its assets for the benefit of its creditors and its estate. The Debtor is currently in the process of facilitating the sale of certain of the Debtor's investments, furnishings and vehicles; seeking determinations with respect to ownership of assets of the Debtor's deferred compensation plan; and seeking recovery of a potentially substantial unearned premium on its package policy as now authorized by the Court.

12. The Debtor is also having to address the merits of the substantial secured, priority and unsecured claims asserted in this case, the resolution of which will define the ultimate recipients of proceeds of the Debtor's estate.

13. In addition, the Debtor has devoted substantial time and resources to responding to the motion for relief from stay [Doc. No. 156] and the motion for determination under Section 365(o) of an alleged priority claim in excess of $1,000,000,000 [Doc. No. 257] filed by the FDIC-Receiver ("FDIC-

---

[1] On September 28, 2009, the Court entered the *Interim Order Granting Debtor's Emergency Motion for Use of Cash Collateral* [Doc. No. 28], which authorized the use of the aggregate sum of $531,450 for purposes specified in the budget annexed to that order. On October 6, 2009, the Court entered the *Order Continuing Final Hearing on Use of Cash Collateral* [Doc. No. 161], which authorized the Debtor to reallocate certain uses of the same sum of $531,450. On October 13, 2009, the Court entered the *Agreed Final Order Granting Debtor's Emergency Motion for Use of Cash Collateral* [Doc. No. 192], pursuant to which the Debtor was given final authorization to use $1,425,000 for the purposes set forth therein, which amount included the sum of $531,450 previously authorized.

Receiver Motions"), which disputed claims, if determined by the Court in favor of the FDIC-Receiver, would effectively eliminate the prospect of any distribution to the holders of approximately $370,000,000 of unsecured claims. The Motions are projected to be heard by the Court on February 24, 2010.

14. The Debtor is also addressing the Revenue Department's asserted secured claims in the approximate amount of $7,000,000 through the Debtor's pending motion pursuant to Section 505 of the Bankruptcy Code that seeks a determination of the validity and amount of such tax claims [Doc. No. 70]. The outcome of that motion also will affect dramatically the distributions to unsecured claimants in this case. The Debtor and the Revenue Department have been working cooperatively to address the merits of the Section 505 motion but it is unlikely that any hearing or other disposition will occur before February 2010.

15. BB&T's claim based on Affiliate Loans that are allegedly secured by some of the Deposits (in addition to real estate mortgages by the borrowers) has it own set of issues and must be resolved. It is unlikely that the merits of the claim will be resolved prior to February 2010.

16. Finally, a substantial claim (aggregating in excess of $313,000) has been filed by TITAN Technology Partners, Limited as an administrative claim, a claim which is disputed and will be vigorously contested.

17. Given the pending issues in this case and the contemplated time periods for liquidation of assets and adjudication or settlement of the major claims in this case, it is evident that the Debtor and the Official Committee of Unsecured Creditors (the "Committee") will need funds in addition to those previously allocated under the Cash Collateral Orders to properly conduct this case.

18. In order to avoid unnecessary litigation pending the hearing on the FDIC-Receiver Motions, the Debtor has agreed not to obtain from the Court a hearing on a request for a further use of any portion of the Deposits until the date of the hearing on the FDIC-Receiver Motions, which is now projected to be held on February 24, 2010. Accordingly, this Motion seeks the use of cash other than the Deposits.

19. Although the Debtor is not able to identify with certainty the first monies it will receive from sources other than the Deposits, the first source is likely to be the proceeds of the Deferred Compensation Plan Assets. A final determination of the ownership and disposition of those assets is set for hearing on

December 9, 2009. Other monies that are anticipated to be received prior to February 2010 include proceeds of unearned premiums under the cancelled "Package Policy," proceeds from the sale of the Debtor's investments in certain entities, distributions or dividends from certain subsidiaries, sale proceeds from certain motor vehicles, and proceeds from the liquidation of certain furniture, furnishings and artwork located at the Debtor's headquarters as of the Petition Date.

20. On an on going basis, the Debtor anticipates that it will incur, and need to pay, basic operating and bankruptcy expenses in accordance with the Budget on a monthly basis. These estimates are in keeping with the projections in the First Budget.

21. The Court has approved procedures for the monthly payment of professional fees and expenses of professionals in the case and for interim applications [Doc. No. 193] (the "<u>Fee Procedures Order</u>") and any cash proposed to be used to pay such fees and expenses is subject to the objection of certain interested parties as set forth in the Fee Procedures Order.

## Jurisdiction and Venue

22. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this Chapter 11 case and this Motion in this district is appropriate pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief sought herein are Sections 105(a), 361, 363 and 541 of the Bankruptcy Code, as complemented by Rule 4001 of the Bankruptcy Rules.

## Relief Requested

23. The Debtor seeks authority to use cash that may or may not be subject to liens asserted by one or more of the Claimants and from sources other than the Deposits to supplement the use of cash collateral previously authorized by the Cash Collateral Orders for the purpose of paying: (a) monthly operating and bankruptcy expenses consistent with the monthly estimates contained in the Budget; and (b) professional fees and expenses to the extent payable under the Fee Procedures Order or such other order of the Court. The Debtor seeks authority for such interim period as the Court may determine under Rule 4001(b) of the

Bankruptcy Rules and, after entry of the final order, for a continuous period until further order of the Court. To the extent that any of the cash is the subject of a valid security interest, lien or offset right of any Claimant and such security interest, lien or offset right is not subject to avoidance, nullification, invalidation or offset pursuant to any provisions of the Bankruptcy Code or other applicable law (a "<u>Valid Lien</u>"), the Debtor further requests authority to grant to each affected party holding a Valid Lien a replacement lien in all of the assets of the Debtor's estate (including after-acquired cash or proceeds) to secure the Debtor's repayment to such affected party of an amount equal to the <u>lesser</u> of (i) the amount of cash collateral used and (ii) the diminution in the value of the interest of such affected party in the Debtor's assets resulting from the Debtor's use of such cash collateral; <u>provided</u>, <u>however</u>, that the replacement lien granted in favor of any affected party (x) shall not attach to any Avoidance Claims or Avoidance Proceeds (as those terms are defined below) or any cash authorized to be used pursuant to the Cash Collateral Orders or this Order and (y) shall be subject to any legal, valid, perfected and unavoidable lien with respect to assets of the estate that existed as of the commencement of the Chapter 11 case (each a "<u>Pre-Petition Lien</u>") to the same extent that the pre-petition security interest, lien or offset right of such affected party was subject to any such Pre-Petition Lien. As used herein, the term "<u>Avoidance Claim</u>" shall mean any claim or cause of action that could be asserted by the Debtor under Section 544, 545, 546, 547, 548, 550 or 553 of the Bankruptcy Code; and the term "<u>Avoidance Proceeds</u>" shall mean proceeds received from the prosecution or settlement of an Avoidance Claim, whether such Avoidance Claim is prosecuted or settled by the Debtor, a subsequently appointed Chapter 11 or Chapter 7 trustee, or any representative of creditors (including the Committee).

**Applicable Authority**

24. Section 363 of the Bankruptcy Code authorizes the Debtor to use, sell or otherwise dispose of assets in the ordinary course of its business. The Debtor is also authorized to use, sell or otherwise dispose of assets outside the ordinary course of business "after notice and a hearing." With respect to property that constitutes "cash collateral," the Debtor is not authorized to use such property unless each entity that has an interest in the cash collateral consents or the Court, after notice and a hearing, authorizes such use. In the

1353285_7
-8-
Case 09-32303   Doc 319   Filed 12/02/09   Entered 12/02/09 17:58:38   Desc Main
Document     Page 8 of 15

absence of the consent of an affected creditor, the courts will condition the use of cash collateral upon the provision of adequate protection to the affected creditor.

25. The Debtor has need for the use of cash to conduct this case effectively and therefore use of such cash both in the ordinary course of business and outside the ordinary course of business is appropriate. Absent the use of such cash, the prosecution of this Chapter 11 case will, at least temporarily, come to a grinding halt. An efficient and cost-effective prosecution of this case may not proceed absent availability of funds to pay employees, nominal operating expenses, the fees and expenses of the chief restructuring officer and the fees and expenses of professional persons retained by the Debtor and the Committee whose involvement is essential for the conduct of this Chapter 11 case.

26. There is a substantial issue as to whether the cash proposed to be used is subject to any Valid Lien and is therefore "cash collateral." Based on their proofs of claim, neither BB&T nor the FDIC-Receiver assert a pre-petition security interest in or lien upon funds other than the Deposits. BB&T's asserted rights with respect to the Deposits is unaffected by the relief requested in this Motion. The Revenue Department does assert a lien beyond the scope of the Deposits, but the amount, extent and validity of such lien remains subject to a bona fide dispute. Whatever the ultimate determination may be as to the amount, extent, and validity of the asserted lien of the Revenue Department, such lien is adequately protected by the Deposits and the proceeds of the proposed liquidation process relating to other property of the estate. Further, the Debtor submits that the Revenue Department will be adequately protected by the use of cash by the Debtor because its use is critical to the orchestration of an orderly wind down of its business, collection and disposition of its assets, and resolution of claims. The alternative, most assuredly, will result in a significantly lower realization upon the assets available to pay any claim ultimately determined to exist in favor of the Revenue Department.

27. The Debtor respectfully requests the Court, pursuant to Rule 4001 of the Bankruptcy Rules, to schedule an interim hearing on an emergency basis to consider this Motion and to schedule a final hearing on this Motion to authorize the continued use of cash on terms proposed in this Motion.

### Notice and Prior Motions

28. The Debtor proposes to serve notice of this Motion on those entities listed on the Master Service List. In light of the nature of the relief requested, the Debtor submits that no other or further notice need be provided.

29. The Debtor has previously filed a motion for use of cash collateral which was the subject of the Cash Collateral Orders and this motion seeks to supplement that authorization. The Debtor reserves the right to file such additional motions for use of cash or cash collateral as it deems appropriate.

**WHEREFORE**, the Debtor respectfully requests that this Court; (a) hear this Motion on an interim and emergency basis on December 9, 2009; (b) at the interim hearing authorize the interim use of cash and, if necessary, grant replacement liens; (c) schedule a final hearing on the Motion; (d) at the final hearing authorize the final use of cash and, if necessary, grant replacement liens; and (e) grant such other relief as the Court deems appropriate.

Dated: December 2, 2009
       Montgomery, Alabama

C. Edward Dobbs
E-mail: ced@phrd.com

Rufus T. Dorsey, IV
E-mail: rtd@phrd.com

PARKER, HUDSON, RAINER & DOBBS LLP
1500 Marquis Two Tower
285 Peachtree Center Avenue, N.E.
Atlanta, Georgia 30303
Telephone No.: (404) 523-5300
Facsimile: (404) 522-8409

By: /s/
    Rufus T. Dorsey, IV

Attorneys for Debtor and Debtor in Possession

**Exhibit A**

**Proposed Monthly Operating Budget**

|                                  | **Monthly Amount** |
|----------------------------------|-------------------:|
| **Bankruptcy Expenses**          |                    |
| Notice and mailing costs         | 1,000              |
| BA quarterly fees reserve        | 3,416              |
| Copy service                     | <u>1,000</u>       |
|                                  | **$5,416**         |
| **Operational expenses**         |                    |
| Board compensation               | 6,000              |
| Chair compensation               | 5,000              |
| CRO salary                       | 35,000             |
| CRO out of pocket expenses       | 5,200              |
| Accounting staff                 | 30,000             |
| Postage and overnight mail       | 100                |
| Office Supplies                  | <u>100</u>         |
|                                  | **$81,400**        |
| **Miscellaneous**                |                    |
| Technology infrastructure        | 5,000              |
| Public company requirements      | 1,000              |
| Miscellaneous                    | <u>2,500</u>       |
|                                  | **$8,500**         |
| **Total**                        | **$95,316**        |

UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

---------------------------------------------------------x
                                          :

**In re**                                   :         **Chapter 11 Case No.**

**THE COLONIAL BANCGROUP, INC.,**     :         **09-32303 (DHW)**

                **Debtor.**            :

---------------------------------------------------------x

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was electronically served on December 2, 2009, by transmission of Notices of Electronic Filing generated by CM/ECF to persons registered as of issuance of filing and served on the same day by electronic mail on those counsel or parties listed on the Master Service List attached hereto.

This 2nd day of December, 2009.

                                        C. Edward Dobbs
                                        E-mail: ced@phrd.com

                                        Rufus T. Dorsey, IV
                                        E-mail: rtd@phrd.com

                                        PARKER, HUDSON, RAINER & DOBBS LLP
                                        1500 Marquis Two Tower
                                        285 Peachtree Center Avenue, N.E.
                                        Atlanta, Georgia 30303
                                        Telephone No.: (404) 523-5300
                                        Facsimile: (404) 522-8409


                                        By: /s/
                                            Rufus T. Dorsey, IV

                                        Attorneys for Debtor and Debtor in Possession

# MASTER SERVICE LIST

| The Debtor | Counsel to the Debtor |
|---|---|
| The Colonial BancGroup, Inc. <br> (Attn: Kevin O'Halloran, CRO) <br> One Commerce Street <br> Suite 400 <br> Montgomery, AL 36104 | Parker, Hudson, Rainer & Dobbs LLP <br> (Attn: C. Edward Dobbs, Esq. and Rufus T. Dorsey, IV, Esq.) <br> 1500 Marquis Two Tower <br> 285 Peachtree Center Avenue, N.E. <br> Atlanta, GA 30303 <br> edobbs@phrd.com <br> rdorsey@phrd.com |
| Special Counsel to the Debtor <br> Balch & Bingham LLP <br> (Attn: W. Clark Watson, Esq.) <br> 1901 Sixth Avenue North <br> Suite 1500 <br> Birmingham, AL 35203 <br> cwatson@balch.com | Bankruptcy Administrator <br> Office of the United States Bankruptcy Administrator/ALMD <br> Frank M. Johnson, Jr. Federal Building and United States Courthouse <br> 1 Church Street, Suite 103 <br> Montgomery, AL 36104 <br> ba@almb.uscourts.gov |
| State of Alabama Department of Revenue <br> Alabama Department of Revenue - Legal <br> (Attn: Mark Griffin Esq., Assistant Counsel & David Avery, Esq., Assistant Counsel) <br> P. O. Box 320001 <br> Montgomery, AL 36132-0001 <br> mark.griffin@revenue.alabama.gov <br> david.avery.legal@revenue.alabama.gov | Counsel for the Federal Deposit Insurance Corporation, as receiver for Colonial Bank <br> DLA Piper LLP (US) <br> (Attn: Thomas R. Califano, Esq. and Jeremy R. Johnson, Esq.) <br> 1251 Avenue of the Americas <br> New York, NY 10020-1104 <br> thomas.califano@dlapiper.com <br> john.clarke@dlapiper.com <br> jeremy.johnson@dlapiper.com |
| Committee Counsel <br> Schulte Roth & Zabel LLP <br> (Attn: Brian D. Pfeiffer, Esq.) <br> 919 Third Avenue <br> New York, New York 10022 <br> brian.pfeiffer@srz.com <br> alexis.chapin@srz.com | Fritz & Hughes, LLC <br> (Attn: Michael A. Fritz, Sr.) <br> 7020 Fain Park Drive, Suite 1 <br> Montgomery, AL 36117 <br> P: (334) 215-4422 <br> F: (334) 215-4424 <br> michael@fritzandhughes.com |
| Burr & Forman <br> (Attn: Robert B. Rubin, Esq., Derek F. Meek, Esq. and Marc P. Solomon, Esq.) <br> 420 North 20th Street, Suite 3400 <br> Birmingham, AL 35203 <br> brubin@burr.com <br> dmeek@burr.com <br> msolomon@burr.com | Local Counsel for the Bank of New York Mellon Trust Company, N.A. <br> Eric J. Breithaupt <br> 505 20th Street North, Suite 1800 <br> Birmingham, AL 35203 <br> ejb@csattorneys.com |

| | | |
|---|---|---|
| 1 | United States Department of Justice, Tax Division | Internal Revenue Service |
| 2 | Paul. A. Allulis | John W. Sheffield, III |
| | Trial Attorney, Tax Division | Associate Area Counsel, Internal Revenue Service |
| 3 | U.S. Department of Justice | (Attn: Patty Koehler) |
| 4 | P. O. Box 14198 | 801 Tom Martin Drive, Room 257 |
| | Ben Franklin Station | Birmingham, AL 35211 |
| 5 | Washington, D.C. 20044 | T: (205) 912-5464 |
| | T: (202) 514-5880 | john.w.sheffield@irscounsel.treas.gov |
| 6 | F: (202) 514-9868 | |
| 7 | paul.a.allulis@usdoj.gov | |
| 8 | Counsel to Lead Plaintiffs in *In re Colonial BancGroup, Inc. Securities Litigation* | |
| 9 | Lowenstein Sandler PC | |
| 10 | (Attn: Michael S. Etkin, Esq. and Ira M. Levee, Esq.) | |
| 11 | 65 Livingston Avenue | |
| | Roseland, NJ 07068 | |
| 12 | T: (973) 597-2500 | |
| | F: (973) 597-2400 | |
| 13 | metkin@lowenstein.com | |
| | ilevee@lowenstein.com | |

2