IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| IN RE: )<br>THE COLONIAL BANCGROUP, INC., )<br>     )<br>Debtor. )<br>     ) | Chapter 11<br>Case No. 09-32303 (DHW) |

## OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OBJECTION TO TITAN TECHNOLOGY PARTNERS, LIMITED'S APPLICATION FOR ALLOWANCE AND IMMEDIATE PAYMENT OF ADMINISTRATIVE EXPENSES

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtor (the "Debtor"), by its undersigned counsel, hereby objects to TITAN Technology Partners, Limited's ("TITAN") *Application for Allowance and Immediate Payment of Administrative Expenses* [Docket #315] (the "Application").

## BACKGROUND

1.      The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on August 25, 2009 (the "Petition Date").

2.      Prior to the Petition Date, TITAN and the Debtor entered into a contract (the "Contract") whereby TITAN agreed to provide certain services to the Debtor and its subsidiaries (including Colonial Bank). These services included facilitating the processing of payroll and storing and maintaining personnel, benefits, and payroll information.

3.      On September 29, 2009, the Debtor filed the *Motion of Debtor for Entry of Order Approving Rejection of Executory Contract with TITAN Technology Partners, Limited and Request For Expedited Hearing* (the "Rejection Motion") [Docket # 131]. The Court entered an order granting the Rejection Motion on October 6, 2009 *nunc pro tunc* to September 29, 2009 (the "Rejection Date"), the date of the filing of the Rejection Motion [Docket # 162].

4. On November 30, 2009, TITAN filed the Application and the *Affidavit of John P. Roberts in Support of the Application* [Docket # 317].

5. In its Application, TITAN has requested that the Court grant it an administrative expense claim in the amount of $127,043.00 for services allegedly provided after the Petition Date and prior to the date of the rejection of the Contract. Additionally, TITAN seeks an administrative expense claim in the amount of $186,150.00 for services allegedly provided following the Debtor's rejection of the Contract. Moreover, TITAN seeks immediate payment of the $313,193.00 administrative expense claim to which TITAN asserts it is entitled.

## ARGUMENT

6. The allowance of administrative expenses claims is governed by 11 U.S.C. § 503 which provides that:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including-
>
> > (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case.

7. "The Eleventh Circuit has interpreted this Code provision to not only require 'that the expense be "actual" and "necessary," but also that there be a concrete benefit to the debtor's estate.'" *In re Atlanta Retail, Inc.*, 287 B.R. 849, 858 (Bankr. N.D.Ga. 2002) (quoting *In re Beverage Canners Int'l Corp.*, 255 B.R. 89, 92 (Bankr. S.D.Fla. 2000))(citing *In re Subscription Television of Greater Atlanta*, 789 F.2d 1530 (11th Cir.1986)).

8. "In order for a claim on a postpetition expense to be allowed as an administrative priority claim, an estate must actually make beneficial use of any value received in exchange for the incurring of the expense." *In re Right Time Foods, Inc.*, 262 B.R. 882, 884 (Bankr.M.D.Fla.2001).

9. The "burden of establishing whether an expense is entitled to an administrative expense priority falls squarely on the movant." *In re Beverage Canners Intern. Corp.*, 255 B.R. 89, 92 (Bankr. S.D. Fla. 2000); *see also In re Communications Management and Information, Inc.*, 172 B.R. 136, 141 (Bankr. N.D. Ga. 1984). Furthermore, "[t]o ensure that the basic priorities among creditors and the goal of equality of distribution are not disrupted, <u>claims for administrative expense pursuant to § 503(b) are subject to strict scrutiny</u>." *See In re Communications Management*, 172 B.R. at 141 (emphasis added).

10. In support of its application, TITAN states that the "Debtor's use of TITAN's services after the Filing Date made it possible for Debtor to meet its obligations to its employees and the employees of its subsidiaries and affiliates." Application, ¶ 10. The TITAN application also refers to TITAN's system being accessed thousands of times both prior to and after the rejection of the Contract and asserts in conclusory fashion that this access was "for the benefit of the Debtor."[1] While TITAN filed the Roberts Affidavit in support of its Application, the Roberts Affidavit merely contains the same conclusory statements that appear in the Application. The Affidavit fails to demonstrate any concrete benefit received by the Debtor or the necessity of the services to the Debtor that is required to be shown by TITAN to meet its burden.

11. In fact, it appears that the Debtor neither benefited from, nor utilized, TITAN's services post-Petition Date. As set forth in the Debtor's Rejection Motion, "[w]hile the Contract was between TITAN and the Debtor, the services being provided thereunder were primarily for the benefit of the Debtor's subsidiaries, which employed substantially all of the workforce." Rejection Motion, ¶ 7. Moreover, the Debtor indicated in the Rejection Motion, filed on September 29, 2009, that "the Debtor has not used any services provided by TITAN for several

---

[1] TITAN vaguely alleges that it provided additional services to the Debtor in addition to allowing access to TITAN's system, but it provides no basis for this assertion. *See* Application, ¶ 10.

weeks and does not intend to use such services in the future." *Id.* at ¶ 12. Neither TITAN's Application, nor the Roberts Affidavit, demonstrate that the accessing of TITAN's system was done by the Debtor rather than the Debtor's subsidiaries.

12. In short, TITAN has failed to meet its burden of demonstrating that the services it alleged provided were actual and necessary services that provided a concrete benefit to the Debtor.

13. Additionally, TITAN asserts that it is entitled to an administrative expense claim for post-Rejection Date services which include "preparing back-up tapes for the benefit of Debtor", allowing access to TITAN's system, and "on-going contractual and other costs associated with the Contract." *See* Application, ¶ 13.

14. As previously addressed, TITAN has not met its burden of demonstrating that the Debtor received any benefit from the continued accessing of TITAN's system. Additionally, any "on-going contractual and other costs associated with the Contract" following the Rejection Date are clearly pre-Petition Date claims not entitled to administrative expense claim status.

15. Finally, the Debtor has indicated in the Rejection Motion that TITAN breached the Contract or otherwise terminated the Contract prior to the rejection of the Contract. *See* Rejection Motion, Footnote 1 & 2. Moreover, the Debtor has asserted that TITAN has violated the automatic stay. *Id.* at Footnote 3. These issues need to be resolved and the impact assessed on the situation prior to any final adjudication of TITAN's Application.

16. Moreover, assuming, *arguendo*, that TITAN is entitled to administrative priority, the distribution on account of TITAN's administrative expense claim should not be allowed prior to confirmation of the Chapter 11 plan. *See* 11 U.S.C.A. § 503(b).

17. The determination of the timing of payment of administrative expenses is a matter within the discretion of the bankruptcy court. *See, e.g., In re Colortex Industries, Inc.*, 19 F.3d 1371, 1384 (11th Cir. 1994) (holding that due to the existence of higher priority claims, it was within the discretion of the court to delay payment of administrative expenses); *In re Verco Industries*, 20 B.R. 664, 665 (9th Cir. BAP 1982); *In re Chi-Chi's, Inc.*, 305 B.R. 396, 401 (Bankr. D.Del. 2004) (denying immediate payment of administrative expenses finding that administrative expenses may be delayed when the estate may not be able to pay all administrative expenses in full or based on other factors); *In re LTV Steel Co.*, 288 B.R. 775, 779 (Bankr. N.D.Ohio 2002) (denying immediate payment of administrative expenses because the Bankruptcy Code does not require such immediate payment and instead requires parity amongst administrative claims).

18. In making this determination, courts consider bankruptcy's goal of an orderly and equal distribution among creditors and the need to prevent a race to a debtor's assets, as such, distributions prior to confirmation of a plan should be disallowed. *See In re HQ Global Holdings, Inc.*, 282 B.R. 169 (Bkrtcy. D.Del. 2002).

19. The Committee reserves all of its rights to assert any and all additional or further objections to TITAN's Application.

**THEREFORE** the Committee respectfully requests (1) that TITAN's Application be denied and the Court disallow any administrative expense claim for TITAN in the Debtor's case and (2) for such other, further or different relief as the Court deems just.

Dated: Birmingham, Alabama
December 15, 2009

BURR FORMAN LLP

By: /s/ Marc P. Solomon
Robert B. Rubin
Marc P. Solomon
420 North 20th Street
Suite 3400
Birmingham, Alabama 35203

-and-

Brian Pfeiffer
Alexis Chapin
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, New York 10022
Telephone: (212) 756-2000
Facsimile: (212) 593-5955

*Co-Counsel for the Official Committee of Unsecured Creditors*

# CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document by Notice of Electronic Filing, or, if the party served does not participate in Notice of Electronic Filing, by U.S. First Class Mail, hand delivery, fax or email on this the 15th day of December, 2009:

| | |
|---|---|
| **Ken Burton, Jr., Mantee County Tax Collector**<br>c/o Susan D. Profant, CFCA, CLA, FRP, Paralegal<br>P.O. Box 25300 (34206-5300)<br>819 U.S. 301 Blvd. West<br>Bradenton, FL 34205<br>susanp@taxcollector.com | **Alabama Securities Commission**<br>c/o Edwin L. Reed<br>Post Office Box 304700<br>Montgomery, AL 36130-4700<br>ed.reed@asc.alabama.gov |
| **Weingarten Nostat, Inc.**<br>c/o Jenny J. Hyun, Esq.<br>Weingarten Realty Investors<br>2600 Citadel Plaza Drive, Suite 125<br>Houston, TX 77008<br>bankruptcycases@weingarten.com | **State of Alabama Department of Revenue**<br>c/o Mark Griffin<br>c/o David Avery<br>P.O. Box 320001<br>Montgomery, AL 36132-0001<br>david.avery.legal@revenue.alabama.gov |
| **TITAN Technology Partners, Limited**<br>c/o Robert L. Shields, III<br>c/o Justin G. Williams<br>c/o Brooke M. Nixon<br>TANNER & GUIN, LLC<br>Capital Park Center<br>2711 University Boulevard<br>P.O. Box 3206 (35403-3206<br>Tuscaloosa, AL 35401-1465<br>rshields@tannerguin.com<br>jwilliams@tannerguin.com<br>bnixon@tannerguin.com | **Tax Collector of Madison County, Alabama**<br>Attn: Lynda Hall<br>Madison County Courthouse<br>100 Northside Square<br>Huntsville, AL 35801<br>swells@co.madison.al.us |
| **Arkansas Teacher Retirement System, State-Boston Retirement System, Norfolk County Retirement System and City of Brockton Retirement System**<br>Michael S. Etkin, Esq.<br>Ira M. Levee, Esq.<br>Lowenstein Sandler PC<br>65 Livingston Avenue<br>Roseland, New Jersey  07068<br>metkin@lowenstein.com | **Internal Revenue Service**<br>John W. Sheffield, III<br>Associate Area Counsel<br>Attention Patty Koehler<br>801 Tom Martin Drive<br>Room 257<br>Birmingham, Alabama 35211<br>john.w.sheffield@irscounsel.treas.gov |

| | |
|---|---|
| **Counsel for ERISA Class Action Plaintiffs**<br>Derek W. Loeser<br>Karin B. Swope<br>Keller Rohrback LLP<br>1201 Third Avenue, Suite 3200<br>Seattle, WA 98101<br>swope@kellerronrback.com | |

/s/ Marc P. Solomon
OF COUNSEL