UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

---------------------------------------------------------x
                                                             :

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| THE COLONIAL BANCGROUP, INC., | : | Case No. 09-32303 (DHW) |
| Debtor. | : | |

---------------------------------------------------------x

| | | |
|---|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for COLONIAL BANK, | : | |
| Movant, | : | |
| v. | : | CONTESTED MATTER |
| THE COLONIAL BANCGROUP, INC., | : | |
| Respondent. | : | |

---------------------------------------------------------x

**BRIEF IN SUPPORT OF DEBTOR'S (i) MOTION FOR SUMMARY JUDGMENT
AND (ii) OBJECTION TO FDIC-RECEIVER'S AMENDED STAY RELIEF MOTION**

**Introduction**

      This Brief is filed in support of (i) the Motion of The Colonial BancGroup, Inc., debtor and debtor in possession (the "Debtor"), for Summary Judgment with respect to the relief requested in the *Amended Motion of the Federal Deposit Insurance Corporation, as Receiver for Colonial Bank, for an Order Modifying the Automatic Stay* [Doc. No. 499] (the "Amended Stay Relief Motion") filed by the Federal Deposit Insurance Corporation, in its capacity as receiver for Colonial Bank (in such capacity, the "FDIC-Receiver"), filed on January 22, 2010, and (ii) the Debtor's concurrently filed objection to the Amended Stay Relief Motion. Through the Amended Stay Relief Motion, the FDIC-Receiver seeks to modify the automatic stay to allow a setoff of alleged Colonial Bank claims against balances in the bank accounts of the Debtor at Branch Banking and Trust Company ("BB&T").

Pursuant to Rules 7056 and 9014(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 56 of the Federal Rules of Civil Procedure (the "Federal Rules"), the Debtor moves the Court for entry of summary judgment against the FDIC-Receiver on the grounds that, based upon the undisputed material facts and for the reasons set forth in this Brief, the FDIC-Receiver is unable to establish a *prima facie* case in support of the Amended Stay Relief Motion, and the Debtor is entitled to judgment in its favor on the FDIC-Receiver's motion as a matter of law.

In support of its Motion, the Debtor relies upon the documents submitted in the Debtor's Appendix of Documents in Support of Motion for Summary Judgment [Doc. No. 469] filed with the Court on January 12, 2010. The Appendix includes the following documents: (a) the document which the FDIC-Receiver identifies as the Purchase and Assumption Agreement, Whole Bank, All Deposits, among the FDIC-Receiver, the Federal Deposit Insurance Corporation ("FDIC-Corporate") and BB&T, dated as of August 14, 2009 (the "P&A Agreement"); (b) the Amended and Restated Security Agreement dated January 1, 2009, executed by the Debtor in favor of Colonial Bank (the "Security Agreement"); (c) the Original Stay Relief Motion (as defined below); (d) the Proof of Claim filed by the FDIC-Receiver against the Debtor on or about November 30, 2009; (e) the Agreed Final Order Granting Debtor's Emergency Motion for Use of Cash Collateral [Doc. No. 199] (the "Final Cash Collateral Order"); (f) the Objections and Responses of the FDIC-Receiver to Debtor's First Request for Admissions served by the FDIC-Receiver on January 6, 2010 ("FDIC-Receiver Admissions"); (g) the Objections and Responses of the FDIC-Receiver to Debtor's First Set of Interrogatories served by the FDIC-Receiver on January 6, 2010 ("FDIC-Receiver Interrogatory Responses"); and (h) the Proof of Claim filed by BB&T against the Debtor on or about November 30, 2009 (the "BB&T Proof of Claim").

**Background and Undisputed Facts**

The Debtor is a corporation formed under the laws of the State of Delaware. Prior to August 14, 2009, the Debtor was a bank holding company that owned Colonial Bank. The Debtor also owned certain non-banking, non-debtor subsidiaries.

On August 14, 2009, Colonial Bank was closed by the Alabama State Banking Department, and the FDIC-Receiver was appointed as receiver of Colonial Bank. On or about August 14, 2009, the FDIC-Receiver sold substantially all of the assets of Colonial Bank to BB&T pursuant to the P&A Agreement. Among the assets transferred to BB&T were all of Colonial Bank's commercial loans and collateral securing such loans, including all rights and interests of Colonial Bank under the Security Agreement (P&A Agreement, Appendix Exhibit A, at 15 of 128, ¶ 3.1, and at 50 of 128 [Schedule 3.2]; FDIC-Receiver Admissions, Appendix Exhibit F, at 6-7, nos. 7-12). In addition, pursuant to the P&A Agreement, the FDIC-Receiver transferred to BB&T, and BB&T assumed responsibility for, certain demand deposit accounts of Colonial Bank, referred to as the "Assumed Deposits" in the P&A Agreement (P&A Agreement, Appendix Exhibit A, at 12, ¶ 2.1). The Assumed Deposits include the Debtor's deposit accounts that had been maintained at Colonial Bank.

On August 25, 2009 (the "Petition Date"), the Debtor filed with this Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On the Petition Date, the Debtor's assets included depository balances in bank accounts at BB&T, which BB&T had acquired and assumed pursuant to the P&A Agreement. As of the Petition Date, these demand depository accounts of the Debtor (collectively, the "Debtor Accounts") held aggregate balances of approximately $38,408,337.74, broken down by accounts as follows: Account No. XXXXXX1127 (the "Operating Account"), the amount of $14,381,038.24; Account No. XXXXXX5437, the amount of $4,000,000; Account No XXXXXX5460, the amount of $5,091,170.82; Account No. XXXXXX5452, the amount of $5,045,815.06; Account No. XXXXXX5445, the amount of $2,282,904.24; and Account No. XXXXXX3218, the amount of $7,607,409.38 (collectively, the "Debtor Deposits"). The Debtor Deposits are part of the Assumed Deposits transferred under the P&A Agreement to BB&T.

Notwithstanding the transfer of the Debtor Accounts to BB&T pursuant to the P&A Agreement , the FDIC-Receiver placed a "freeze" on the Debtor Accounts, with the result that the Debtor was unable to make withdrawals from any of these accounts (which freeze has continued to the present date) and numerous checks issued by the Debtor did not clear and were returned to the applicable payees. Shortly before the Petition

- 3 -
1506148_2 Case 09-32303    Doc 699    Filed 04/26/10    Entered 04/26/10 18:57:28    Desc Main
Document      Page 3 of 19

Date, but during the period that the FDIC-Receiver had "frozen" the Debtor Accounts at BB&T, the Debtor received a substantial wire transfer from SunTrust Bank in Atlanta, Georgia, in the approximate amount of $1,425,000. The Court authorized the Debtor to use the amount of that wire transfer ultimately with the consent of the FDIC-Receiver, as purported cash collateral of the FDIC-Receiver.[1]

On or about November 20, 2009, BB&T filed the BB&T Proof of Claim in which BB&T asserts a secured claim of $24,027,299.50. It is apparent from the BB&T Proof of Claim that its secured claim is based on the portions of the Debtor Deposits in the following Debtor Accounts: XXXXXX5437, XXXXXX5460, XXXXXX5452, XXXXXX5445, and XXXXXX3218. BB&T alleges in the BB&T Proof of Claim that $24,027,299.50 in the Debtor Deposits secures outstanding loans made by Colonial Bank and sold by the FDIC-Receiver to BB&T (BB&T Proof of Claim, Appendix Exhibit H, at 3). BB&T does not assert in the BB&T Proof of Claim or otherwise any lien or interest in or offset right with respect to the $14,381,038.24 balance in the Debtor Account that is the Operating Account.[2] As of the Petition Date and at all times thereafter, then, the Debtor Accounts were demand deposit accounts held at BB&T and not at Colonial Bank.

Despite the sale of assets to BB&T and the undisputed fact that the Debtor Accounts were at BB&T on and at all times after the Petition Date, the FDIC-Receiver asserts in its Amended Stay Relief Motion a security interest in and a right of offset with respect to the Debtor Deposits that is duplicative of the claim and lien asserted by BB&T. In other words, the FDIC-Receiver seeks stay relief as if the sale to BB&T had never occurred and Colonial Bank still holds the Debtor Deposits and the Security Agreement.

---

[1] It is highly doubtful that, under any theory advanced by the FDIC-Receiver to date, that the wire transfer from SunTrust Bank could constitute funds subject to offset by the FDIC-Receiver, and the Debtor will vigorously contest the FDIC-Receiver's entitlement to a replacement lien as adequate protection for the use of that purported cash collateral. *See* In re WACO Oil Co., Inc., 137 B.R. 544 (Bankr. M.D. Fla. 1992) (creditor bank not authorized to offset amounts in deposit account attributable to deposits made by debtor following creditor's administrative freeze on debtor's account as creditor bank never intended to become liable to debtor for such deposits, which therefore were not accepted in good faith and in regular course of business).

[2] The Operating Account is, and remains, one of the Debtor Accounts at BB&T. The Debtor disputes the validity, extent and priority of BB&T's alleged lien or interest in the Debtor Deposits, but this dispute is not material to the FDIC's Amended Stay Relief Motion.

## Procedural History

On October 5, 2009, the FDIC-Receiver filed the Emergency Motion of the Federal Deposit Insurance Corporation, as Receiver for Colonial Bank, for an Order Modifying the Automatic Stay (the "Original Stay Relief Motion") [Doc. No. 156], in which the FDIC-Receiver initially sought relief from the automatic stay to exercise alleged setoff rights against the Debtor Accounts. As the basis for its alleged setoff against the Debtor Accounts, the FDIC-Receiver contended that it held a perfected security interest in the Debtor Accounts pursuant to the Security Agreement and that the Debtor was obligated to Colonial Bank in the amount of approximately $1 billion under an alleged capital maintenance commitment. The Original Stay Relief Motion was scheduled originally for a preliminary hearing on October 29, 2009, and for a final hearing on November 17, 2009. With the consent of the parties, however, the hearing on the Original Stay Relief Motion was continued to a later date.

On January 11, 2010, the Debtor filed a motion for summary judgment [Doc. No. 468] against the FDIC-Receiver on its Original Stay Relief Motion. In its motion for summary judgment, the Debtor demonstrated that as a matter of law and undisputed fact, the FDIC-Receiver had no basis for a setoff against the Debtor Accounts and was not entitled to stay relief. By Agreed Order Amending Order Setting Hearing entered January 20, 2010 (the "Agreed Order") [Doc. No. 486], and with the consent of the Debtor and the FDIC-Receiver, the Court scheduled a hearing on the Debtor's summary judgment motion for February 24, 2010. In the Agreed Order, the Debtor and the FDIC-Receiver stipulated, among other things:

> That the Amended and Restated Security Agreement dated as of January 1, 2009 (the "Security Agreement") and the amounts owed to Colonial Bank by the borrowers listed on Exhibit B to the Security Agreement shall not form a basis for granting relief from the stay to the FDIC-Receiver in the FDIC-Receiver's Emergency Motion for an Order Modifying the Automatic Stay [Doc. No. 156] . . . .

(Agreed Order at ¶1).

Two days later, on January 22, 2010, the FDIC-Receiver filed its Amended Stay Relief Motion. In its Amended Stay Relief Motion, consistent with the parties' stipulation in the Agreed Order, the FDIC-Receiver did not assert, as a basis for a setoff against the Debtor Accounts and for stay relief, a security interest under the Security Agreement or the Affiliate Liabilities under (and as defined in) the Security Agreement but did

contend for the first time as a basis for setoff that, in addition to the claim of Colonial Bank against the Debtor under an alleged capital maintenance commitment, the Debtor owed Colonial Bank substantial amounts for additional claims (the "Additional Claims").  The FDIC-Receiver had asserted these Additional Claims in its proof of claim against the Debtor filed by the FDIC-Receiver on November 30, 2009 [Claim No. 139].

In the Stipulation and Scheduling Order for Proceedings with Respect to FDIC-Receiver Motions (the "Stipulation") entered by the Court on March 16, 2010 [Doc. No. 633], and with the consent of the Debtor, the FDIC-Receiver, and Official Committee of Unsecured Creditors (the "Committee"), the Court approved a schedule for the resolution of certain motions filed by the FDIC-Receiver, including the Amended Stay Relief Order.  In the Stipulation, among other provisions, the Debtor, the FDIC-Receiver and the Committee agreed as follows:

> The FDIC-Receiver has asserted claims against the Debtor in its Amended Motion for an Order Modifying the Automatic Stay [Doc. 499] and in its proof of claim, as amended (the "Additional Claims") that are in addition to the FDIC-Receiver's claims based on the Debtor's alleged capital maintenance commitment that were described in the FDIC-Receiver's original motion for relief from the automatic stay. The Debtor and the Committee stipulate that all of the rights the FDIC-Receiver may have, if any, with respect to the Additional Claims shall be preserved notwithstanding the Court's determination with respect to the Stay Relief Motion. On the basis of that stipulation, the FDIC-Receiver agrees that the issues relating to the Additional Claims and any objections thereto shall not be subject of the briefing or hearing schedule contained herein.

(Stipulation at ¶8).  In the Stipulation, the Court scheduled the hearing on the Amended Stay Relief Motion for May 26, 2010 (the "May 26 Hearing").  Therefore, as a result of the Agreed Order and the Stipulation, the issues to be resolved at the May 26 Hearing with respect to the Amended Stay Relief Motion have been narrowed such that, on the issue of whether the FDIC-Receiver is entitled to stay relief to assert a setoff, the only basis for any obligation owing by the Debtor is the alleged capital maintenance commitment.

## Argument and Citation of Authority

### A. Summary of Argument

To prevail on the Amended Stay Relief Motion, the FDIC-Receiver must carry its burden of proving that it is entitled to set off against the Debtor Accounts an obligation of the Debtor to Colonial Bank.  One essential element of the FDIC-Receiver's burden, however, is to demonstrate that the Debtor Accounts

Case 09-32303    Doc 699    Filed 04/26/10    Entered 04/26/10 18:57:28    Desc Main
Document      Page 6 of 19

constitute an obligation of Colonial Bank to the Debtor. As a matter of undisputed fact, the Debtor Accounts since prior to the Petition Date have been and continue to be maintained at BB&T by virtue of the sale to BB&T. BB&T, and not Colonial Bank or the FDIC-Receiver, is now the obligor to the Debtor with respect to the Debtor Accounts. Equally fatal to the FDIC-Receiver's setoff argument is that the Debtor owes no sum of money to Colonial Bank that could form the basis for the FDIC-Receiver to assert any right of offset.[3] The only obligation allegedly subject to setoff to be considered in connection with the Amended Stay Relief Motion is the alleged capital maintenance obligation claimed to be owed by the Debtor under an agreement to which neither the FDIC-Receiver nor Colonial Bank is a party.[4] As a matter of undisputed fact, the Debtor never made any commitment to maintain the capital levels at Colonial Bank, and, even assuming for the sake of argument that such a commitment was made, this obligation would not have been owed to Colonial Bank, but to the "Federal depository institutions regulatory agency" as defined in Sections 101(21B) and 365(o) of the Bankruptcy Code. Without any obligation owing to Colonial Bank, there is no basis for a setoff against the Debtor Accounts.

The FDIC-Receiver attempts to posit a counterfactual world by arguing that, even though BB&T is the unquestioned depository institution with respect to the Debtor Accounts, BB&T really is not because the FDIC-Receiver (by contract with BB&T, and not with the Debtor) "controls" these accounts -- a fiction that is not recognized by Section 553 of the Bankruptcy Code or, to the Debtor's knowledge, any reported judicial decision.

---

[3] To be clear, the Debtor does not have any indebtedness to the FDIC-Receiver. Indeed, the reverse is true, as evidenced by the Debtor's proof of claim filed in the FDIC-Receiver's receivership proceeding.

[4] The FDIC-Receiver contends that the Debtor is obligated to Colonial Bank in excess of $1 billion under an alleged capital maintenance commitment. On November 5, 2009, the FDIC-Receiver filed a Motion for an Order (A) to Require Cure of Deficiencies under 11 U.S.C. § 365(o) or (B) Converting Debtor's Bankruptcy Case to a Liquidation under Chapter 7 of the Bankruptcy Code (the "365(o) Motion") [Doc. No. 257] addressing this alleged capital maintenance commitment. In the Stipulation, the Court scheduled the 365(o) Motion to be heard at the May 26 Hearing, along with the Amended Stay Relief Motion. The Debtor denies the existence of any capital maintenance commitment and objects to the 365(o) Motion and, in conjunction with this Motion, the Debtor is filing a motion for summary judgment (the "Section 365(o) Summary Judgment Motion") on the 365(o) Motion. In the Section 365(o) Summary Judgment Motion, the Debtor demonstrates that, as a matter of law and undisputed fact, there never was any capital maintenance commitment made by the Debtor to or for the benefit of Colonial Bank. Rather than repeat those same arguments in this Motion, the Debtor incorporates by reference here the Section 365(o) Summary Judgment Motion.

## B. Summary Judgment Standard of Review

Pursuant to Bankruptcy Rules 7056 and 9014 and Rule 56 of the Federal Rules, the Debtor moves for summary judgment on the Amended Stay Relief Motion. Rule 56(c) of the Federal Rules is incorporated by reference under Rule 7056 of the Bankruptcy Rules and is made applicable to contested matters under Bankruptcy Rule 9014. Rule 56(c) provides that summary judgment should be granted when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). Summary judgment is proper "if the pleadings [and] affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Peppers v. Coates, 887 F.2d 1493 (11th Cir. 1989); Everett v. Napper, 833 F.2d 1507, 1510 (11th Cir. 1987); *see also* Celotex, 477 at 322, 106 at 2552.

The "purpose of summary judgment is to 'pierce the pleadings and to assess whether there is a genuine need for trial. '"Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Once the moving party establishes that there are no disputed issues of material fact as to the determinative issue, the burden then shifts to the non-moving party to demonstrate that summary judgment is not appropriate. FED.R.CIV.P. 56(e). To sustain this burden, the non-moving party may not rest upon the mere allegations or denials in pleadings, but must set forth "specific facts showing that there is a genuine issue for trial." Id. *See also* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); Van T. Junkins & Assoc. v. U.S. Industries, Inc., 736 F.2d 656, 658 (11th Cir. 1984). Under these well-established principles, "summary judgment is appropriate where the non-movant fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Johnson v. Fleet Finance, Inc., 4 F.3d 946, 948 (11th Cir. 1993) (quoting Celotex, 477 U.S. at 322).

To meet its burden of demonstrating a "genuine issue" for Rule 56 purposes, the FDIC-Receiver must produce "significant probative evidence" of an actual dispute as to a material fact. Anderson, 477 U.S. at 249 (quoting First Nat'l Bank of Arizona v. Cities Service Co., 391 U.S. 253, 290, 88 S. Ct. 1575, 20 L. Ed. 2d

569 (1968)). A "broad, conclusory allegation . . . without more is not sufficient to withstand a motion for summary judgment." Clay v. Equifax, Inc., 762 F.2d 952, 959 (11th Cir. 1985). Likewise, "[s]elf-serving statements are not, alone, substantial enough evidence . . . to survive a motion for summary judgment." Midwestern Waffles, Inc. v. Waffle House, Inc., 734 F.2d 705, 714 (11th Cir. 1984). As demonstrated below, the FDIC-Receiver cannot sustain its burden of demonstrating a genuine issue of material fact, and, therefore, the Debtor is entitled to summary judgment on the relief requested in the Amended Stay Relief Motion.

### C. Elements and Burden of Proof for Stay Relief

While the burden of proof with respect to a motion for relief from stay is a shifting one, 3 COLLIER ON BANKRUPTCY 362.10 (15th ed. rev. 2009), the FDIC-Receiver, as the moving party, must first establish a *prima facie* case. Id. *See also* In re Powell, 223 B.R. 225, 232 (Bankr. N.D. Ala. 1998) (holding a "movant must carry the initial burden of establishing a *prima facie* case for relief under § 362(d)(1) and/or (2) before the burden of proof shifts" (collecting cases)). Failure to establish a *prima facie* case requires denial of the requested relief. 3 COLLIER ON BANKRUPTCY 362.10 (15th ed. rev. 2009).

The requirements for establishing a *prima facie* case under Section 362(d) differ slightly depending upon the subsection invoked by the movant. The FDIC-Receiver relies upon both Section 362(d)(1) and (d)(2). Under Section 362(d)(2), the party seeking relief "must demonstrate (1) the amount of its claim, (2) that its claim is secured by a valid, perfected lien in property of the estate, and (3) that the debtor lacks equity in the property." In re Elmire Litho, Inc., 174 B.R. 892, 900–01 (Bankr. S.D.N.Y. 1994). If the movant makes a *prima facie* case, the burden of going forward with the evidence shifts to the debtor to controvert the movant's showing. If the debtor controverts any of the elements of the *prima facie* case, the court must deny the Section 362(d)(2) motion "without regard to whether the property is necessary for an effective reorganization." Id. at 901.

Under Section 362(d)(1), the movant must also carry the initial burden of showing entitlement to relief before the debtor must respond. Id. at 902. The nature of the movant's interest both outlines the need for adequate protection and the scope of the *prima facie* case under this prong. Id. Thus, the movant's *prima facie* case again includes proof that an obligation is owed by the debtor to the movant, the amount of the

- 9 -

1506148_2 Case 09-32303    Doc 699    Filed 04/26/10    Entered 04/26/10 18:57:28    Desc Main
Document      Page 9 of 19

obligation, evidence of a valid, perfected security interest in property of the estate to secure the obligation, and the basis of the movant's claim that adequate protection is not being provided. As to the final element, the movant must show either a decline in value of the collateral or the threat of such a decline. Id. at 902.

### D. The FDIC-Receiver is Not Entitled to Set Off Debtor Accounts

The FDIC-Receiver maintains that "cause" exists for stay relief under Section 362(d) "to preserve the FDIC-Receiver's setoff rights under applicable nonbankruptcy law." (Amended Stay Relief Motion at 17, ¶53). As demonstrated below, however, the FDIC-Receiver has no right of setoff against the Debtor Accounts as a matter of undisputed fact and law.

#### 1. Basis for Right to Setoff

Section 553 of the Bankruptcy Code recognizes a right of setoff. Section 553(a) states:

> [T]his title does not effect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . . .

11 U.S.C. § 553(a). Setoff under the Bankruptcy Code is a recognition of an established right of a creditor to cancel out mutual pre-petition debts against one another in full or in part to avoid the absurdity of making A pay B when B owes A. In re Prudential of Florida Leasing, Inc., 478 F.3d 1291, 1297 (11th Cir. 2007). "[M]utuality is strictly construed against the party seeking setoff." In re Bennett Funding Group, Inc., 212 B.R. 206, 212 (2d Cir. BAP 1997). Section 553, however, does not create a right of setoff but merely recognizes the right of setoff a creditor may have under non-bankruptcy law. E.g., In re Patterson, 967 F.2d 505, 509 (11th Cir. 1992). This non-bankruptcy law, usually state law, determines the validity of any setoff asserted by a creditor under Section 553. E.g., In re Prudential of Florida Leasing, Inc., 478 F.3d 1291, 1297 (11th Cir. 2007); In re Patterson, 967 F.2d 505, 509 (11th Cir. 1992).

The FDIC-Receiver bases its alleged right of setoff on Alabama law (Amended Stay Relief Motion at 19, ¶59) and federal statutory law (Amended Stay Relief Motion at 19, ¶58). Alabama, like most states, provides for a right of setoff. For a setoff to be asserted under Alabama law, there must be "mutuality." E.g., King v. Porter, 160 So. 101 (Ala. 1935). This requirement of "mutuality" means that the cross demands or debts must be between the same parties and in the same right or capacity. E.g., Kaufman v. First National

Bank of Opp, Alabama, 493 F.2d 1070, 1072 (5th Cir. 1974); First City National Bank of Oxford v. Long-Lewis Hardware Co., 363 So. 2d 770, 703 (Ala. 1978); King v. Porter, 160 So. 101, 104 (Ala. 1935) ("due from one party to another in the same right").  With respect to bank deposits, in Rainsville Bank v. Willingham, 485 So. 2d 319 (Ala. 1986), the Alabama Supreme Court has noted that a deposit in a banking institution is a debt from the bank to the depositor. Id. at 323.  When the bank loans money to the depositor, "mutual debts exist and the bank may, when the loan matures, apply the money it owes the depositor towards the depositor's debt to the bank."  Id.; *accord* Azalea City Motels, Inc. v. First Alabama Bank of Mobile, 551 So. 2d 967, 979 (Ala. 1989) ("a bank has the right of set-off to a customer's account when the bank and the customer are in a debtor-creditor relationship and there is a mutuality of demands").

The FDIC-Receiver maintains that it also has a right of setoff under 12 U.S.C. § 1822(d). (Amended Stay Relief Motion at 19, ¶58).  Section 1822(d), however, does not add to or alter the analysis under Alabama law and simply seems to permit the FDIC, solely in its capacity as receiver for a failed depository institution, to:

> withhold payment of any such portion of the insured deposit of any depositor in a depository institution in default as may be required to provide for the payment of any liability of such depositor to the depository institution in default or its receiver, which is not offset against a claim due from such depository institution, pending the determination and payment of such liability by such depositor or any other person liable therefore.

12 U.S.C. § 1822(d).  Courts have held that Section 1822(d) creates a federal statutory right of setoff. E.g., Villafane Neris v. Citibank, N.A., 845 F. Supp. 930, 934 (D.P.R. 1994); Northern Trust Co. v. Federal Deposit Insurance Corp., 619 F. Supp. 1340, 1342 (W.D. Okla. 1985).  Section 1822(d), though, does not grant any special right of setoff to the FDIC with elements different from what is required generally under Alabama law; Section 1822(d) seems to simply recognize that the FDIC-Receiver, stepping into the shoes of the failed institution, may exercise a right of setoff to the same extent as the failed institution.  The elements of setoff are the same, including the requirement of "mutuality."  The question, then, remains -- did Colonial Bank have rights of setoff as of the Petition Date?

### 2. The FDIC-Receiver Has No Right of Setoff Under 12 U.S.C. § 1822(d) or Alabama Law

For the FDIC-Receiver to have a right of setoff against the Debtor Accounts under either Section 1822(d) or Alabama law, Colonial Bank must be the depository institution for these accounts. As a matter of undisputed fact, however, prior to the Petition Date, the Debtor Accounts were sold and assigned to BB&T, and BB&T remains the depository institution for, and the obligor on, these accounts. Therefore, and for the additional reasons discussed below, the FDIC-Receiver has no right of setoff against the Debtor Accounts.

#### a. Section 1822(d) Does Not Create a Special Right of Setoff for the FDIC-Receiver

Putting aside the merits of the FDIC-Receiver's argument that the Debtor Accounts are subject to Section 1822(d) and any exception under 12 C.F.R. § 370.4(a) (see Amended Stay Relief Motion at 19, ¶58), Section 1822(d) simply does not grant to the FDIC-Receiver a right of setoff free of the same requirements for a setoff under Alabama law. Section 1822(d) clearly contemplates a situation when the "insured deposit" is held by the failed depository institution, and the FDIC, in its capacity as receiver, steps into the shoes of the failed institution and is in a position to withhold payment of that deposit, a situation where "mutuality" is present. 12 U.S.C. § 1822(d). As the court stated in a decision relied upon by the FDIC-Receiver, <u>Northern Trust Co. v. Federal Deposit Insurance Corp.</u>, 619 F. Supp. 1340 (W.D. Okla. 1985), "[w]e take this statute to recognize the Receiver's authority, on behalf of an insolvent bank, to effect an offset against a depositor for the 'claim due from' the bank, and to create a bank's federal statutory right to offset." 619 F. Supp. at 1342. The FDIC-Receiver cites no case suggesting that Section 1822(d) creates any right of setoff under the circumstances of this case, when BB&T, not Colonial Bank, is the depository institution for the Debtor Accounts.

#### b. The FDIC-Receiver has No Setoff Rights Under Alabama Law

Likewise, for the FDIC-Receiver to have a right of setoff against the Debtor Accounts under Alabama law, Colonial Bank must be the depository institution for the Debtor Accounts such that the FDIC-Receiver is obligated to the Debtor for these accounts. As a matter of undisputed fact, however, the Debtor Accounts

were sold and assigned to BB&T prior to the Petition Date. In clear recognition of this fact, BB&T has filed the BB&T Proof of Claim against the Debtor, asserting, among other claims, a right of setoff with respect to the Debtor Accounts. For the simple reason, then, that Colonial Bank is not the depository institution for, and is not obligated to the Debtor under, the Debtor Accounts, the FDIC-Receiver has no right of setoff and no "cause" exists for stay relief.[5]

### c. The FDIC-Receiver Does Not Control the Debtor Accounts, and Control Does Not Supply Mutuality

The FDIC-Receiver does not contend that Colonial Bank is the depository institution for the Debtor Accounts, but, in an effort to overcome this fundamental flaw in its argument, the FDIC-Receiver contends that it nonetheless "controls" the Debtor Accounts. (Amended Stay Relief Motion at 22, ¶66). As a matter of undisputed fact, however, BB&T, not the FDIC-Receiver, is the depository institution that holds and therefore controls the Debtor Accounts. Even assuming that, by virtue of the operation of Section 9.5 of the P&A Agreement, the FDIC-Receiver is deemed to "control" the Debtor Accounts, this "control" is not the equivalent of an obligation owing to the Debtor necessary to establish the required "mutuality" for a setoff.

To support its "control" argument, the FDIC-Receiver apparently is relying upon Section 9.5 of the P&A Agreement. Section 9.5 provides that:

> 9.5 **Withheld Payments**. At any time, the Receiver or the Corporation may, in its discretion, determine that all or any portion of any deposit balance assumed by the Assuming Bank pursuant to this Agreement does not constitute a "Deposit" (or otherwise, in its discretion, determine that it is the best interest of the Receiver or Corporation to withhold all or any portion of any deposit), and ***may direct the Assuming Bank to withhold payment*** of all or any portion of any such deposit balance. Upon such direction, the Assuming Bank agrees to hold such deposit and not to make any payment of such deposit balance to or on behalf of the depositor, or to itself, whether by way of transfer, set-off, or otherwise. The Assuming Bank agrees to maintain the "withheld payment" status of any such deposit balance until directed in writing by the Receiver or the Corporation as to its disposition. At the direction of the Receiver or the Corporation, the Assuming Bank shall return all or

---

[5] Although unnecessary to the Court's ruling on this Motion, it is the Debtor's position that certain of the Debtor Accounts were deposits made by the Debtor with Colonial Bank for a special purpose, to-wit: compliance by the Debtor with Regulation W of the Federal Reserve Board. It is commonly accepted that funds deposited in a bank for a special purpose, known to the bank, are not subject to setoff. *See* In re Ben Franklin Retail Store, Inc., 202 B.R. 955 (Bankr. N.D. Ill. 1996).

any portion of such deposit balance to the Receiver or the Corporation, as appropriate, and thereupon the Assuming Bank shall be discharged from any further liability to such depositor with respect to such returned deposit balance. If such deposit balance has been paid to the depositor prior to a demand for return by the Corporation or the Receiver, and payment of such deposit balance had not been previously withheld pursuant to this Section, the Assuming Bank shall not be obligated to return such deposit balance to the Receiver or the Corporation. ***The Assuming Bank shall be obligated to reimburse the Corporation or the Receiver, as the case may be, for the amount of any deposit balance or portion thereof paid by the Assuming Bank in contravention of any previous direction to withhold payment of such deposit balance or return such deposit balance the payment of which was withheld pursuant to this Section.***

(P&A Agreement, Appendix Exhibit A, at 29-30) (emphasis added). As is clear from Section 9.5, the FDIC-Receiver may have the contractual right to direct BB&T to withhold payment on any account purchased by and assigned to BB&T, including the Debtor Accounts. This contractual right, however, does not confer control over these accounts upon the FDIC-Receiver. BB&T clearly holds and controls these accounts.

The P&A Agreement, on its face, transfers all of Colonial Bank's cash and the Assumed Deposits to BB&T. (P&A Agreement, Appendix Exhibit A, at 15 of 128, ¶ 3.1 and at 49-50 of 128 [Schedules 3.1(a) and 3.2]). In addition, the orders authorizing use of cash collateral entered in this case (with the consent of the FDIC-Receiver) consistently have found that the Debtor Accounts are at BB&T (Final Cash Collateral Order, Appendix Exhibit E, at 1 of 7); the cash collateral was wire transferred by BB&T (not Colonial Bank) to the Debtor pursuant to the cash collateral orders; and the BB&T Proof of Claim and BB&T's consistent position in this case, to which the FDIC-Receiver has not objected, clearly indicate that the Debtor Accounts are maintained at BB&T. Indeed, if the Debtor accounts were not held and controlled by BB&T, why would it be necessary for the FDIC-Receiver to provide for a contractual right to "direct" BB&T to withhold payment on any of these accounts? Obviously, absent any such directive by the FDIC-Receiver, BB&T is free to administer the accounts as it deems appropriate, without any involvement whatsoever of the FDIC-Receiver. In addition, as Section 9.5 expressly contemplates, the decision whether to comply with the FDIC-Receiver's directive rests with BB&T, in its discretion. If BB&T refuses to comply with the FDIC-Receiver's directive, Section 9.5 provides a remedy for the FDIC-Receiver - - namely, a claim against BB&T for the amount of any deposit balance paid by BB&T in violation of a directive from the FDIC-Receiver.

The FDIC-Receiver cites no authority -- statutory, case law or otherwise -- to support its argument that it has "control" over the Debtor Accounts. Even assuming that the FDIC-Receiver is deemed to "control" the Debtor Accounts, the FDIC-Receiver offers no support for the proposition that such "control" would supply the necessary "mutuality" for the FDIC-Receiver to establish a right of setoff against the Debtor Accounts. In an effort to muster some support for its asserted setoff right, the FDIC-Receiver refers repeatedly to the Third Circuit's decision in Gross v. Bell Savings Bank PaSA, 974 F.2d 403 (3rd Cir. 1992). The Gross decision, however, lends no support to the FDIC-Receiver's argument and is easily distinguishable from the circumstances of this case.

In Gross, the Third Circuit reversed the district court's decision to require the Resolution Trust Corporation (the "RTC") to release certain pension and profit-sharing assets of Bell Savings Bank PaSA ("Bell Savings"), a failed savings institution. The RTC was appointed by the Office of Thrift Supervision as both the receiver for Bell Savings and as the conservator of Bell Federal Savings Bank ("Bell Federal") , a newly chartered savings institution formed for the purpose of acquiring certain assets and liabilities of Bell Savings, including demand deposits and vested liabilities under Bell Savings' pension and profit-sharing plans. When former officers of Bell Savings attempted to withdraw their deposits in the pension and profit-sharing plans, the RTC refused to distribute the funds, contending that the former officers were targets of an ongoing fraud investigation. In an action filed by these former officers, the district court issued a preliminary injunction directing the RTC, as both the receiver of Bell Savings and the conservator of Bell Federal, to place the former officer's funds in escrow with the court. On appeal, the Third Circuit reversed, holding that 12 U.S.C. § 1821(j) prohibited the district court from restraining the RTC's exercise of its legitimate statutory authority of "withholding deposits pending determination of a liability to the bank or as taking measures to preserve and conserve the assets of the institution." Gross, 974 F.2d at 408.

Clearly, then, Gross gives no credence to the FDIC-Receiver's argument that it has a right of setoff against the Debtor Accounts based on its alleged "control" over these accounts or on its alleged contractual right under Section 9.5 of the P&A Agreement to direct BB&T to transfer back the Debtor Accounts. In Gross, there was no pending bankruptcy case; the RTC was on both sides of the transaction, as the receiver

1506148_2 Case 09-32303   Doc 699   Filed 04/26/10   Entered 04/26/10 18:57:28   Desc Main
Document      Page 15 of 19

for Bell Savings and as the conservator for Bell Federal (unlike the situation here where the Debtor Accounts undisputedly are held by an independent third party, BB&T); there was no issue whatsoever of any asserted right to setoff; and the Third Circuit never addressed the validity or enforceability of the "clawback" provision in the purchase and assumption agreement for Bell Savings. Indeed, the Third Circuit in Gross expressly declined to even address the question of control. Gross, 974 F.2d at 405 n.4 ("we need not decide which entity [the RTC as receiver or conservator] maintained control of the funds").

### d. The FDIC-Receiver May Not Attempt to Establish Mutuality Post-Petition through the Clawback Provision

As the FDIC-Receiver notes in the Amended Stay Relief Motion, Section 9.5 of the P&A Agreement also grants the FDIC-Receiver a contractual right to direct BB&T to "return all or any portion of such deposit balance to the . . . [FDIC-Receiver]." (Amended Stay Relief Motion at 23, ¶68). Even assuming such a "clawback" is possible after the Petition Date, without the Debtor's consent,[6] the undeniable truths are that, as of the Petition Date, such a clawback had not occurred; as of the filing of the Amended Stay Relief Motion, such a clawback had not occurred; and as of the date of this Motion, the clawback has not occurred.

In its Amended Stay Relief Motion, the FDIC-Receiver requests "authority to provide such an instruction to BB&T, and for BB&T to carry it out, to the extent the automatic stay might be deemed to apply." Even if such a clawback of the Debtor Accounts can be effected after the Petition Date without the Debtor's consent, this clawback, as a matter of law, cannot be used by the FDIC-Receiver to establish the required "mutuality" for the FDIC-Receiver to assert a setoff against the Debtor Accounts. Section 553(a)(2) and (a)(3) evinces the clear Congressional intent of prohibiting a creditor from taking steps in anticipation of a bankruptcy filing to create a right of setoff by trading debts and claims. This same Congressional policy should apply with equal force here, to prevent the FDIC-Receiver from clawing back the Debtor Accounts for

---

[6] Section 9.5 of the P&A Agreement purports to authorize the FDIC-Receiver to direct BB&T to transfer back accounts BB&T purchased. As is apparent from cases cited in the Amended Stay Relief Motion, the FDIC-Receiver has used a provision substantially similar, if not identical, to Section 9.5 in other purchase and assumption agreements. The FDIC-Receiver, however, does not cite to any statutory or case law authority permitting the FDIC-Receiver, after the Debtor's bankruptcy case has been filed and without the Debtor's consent, to disrupt the debtor-creditor relationship between BB&T and the Debtor.

the purpose of creating a right of setoff. As of the Petition Date, there was no right in Colonial Bank (or in the FDIC-Receiver standing in its shoes) to set off the Debtor Accounts because those accounts were no longer maintained at Colonial Bank and, therefore, were not a "mutual" debt of Colonial Bank to the Debtor. Any attempt by the FDIC-Receiver post-petition to establish mutuality by acquiring a debt, through a clawback of the Debtor Accounts, with the now expressed intent to set off against that debt is contrary to the policy underlying Section 553. Even assuming that the FDIC-Receiver has allowable claims against the Debtor, the FDIC-Receiver should not be allowed to manufacture "mutuality" by exercising a contractual right under the P&A Agreement post-petition, with the end result that the FDIC-Receiver would be preferred over all of the Debtor's other creditors. *See* 11 U.S.C. §§ 101(10) ("creditor" is an entity with "a claim against the debtor that arose at the time of or before" bankruptcy), 502(b) (determine amount of claim "as of the date of the filing of the petition") & 506(a)(i) (allowed claim subject to setoff under Section 553 is secured claim). Section 553(a)(3) is intended to prevent a windfall for the benefit of one creditor over the debtor and its other creditors. *See* Aeroteam, 327 B.R. 852 at 867 ("The purpose of [Section 553(a)(3)] is to prevent a creditor from undertaking a build-up of its setoff rights in order to obtain a preference."); In re Iowa Il Co., No. C04-1002-LRR, 2004 WL 2326377, at *9 (N.D. Iowa Sept. 30, 2004) (Section 553(a)(3) "is intended to eliminate an opportunity for a creditor to engage in some form of manipulation at the expense of other creditors.") (quotation omitted).[7] Therefore, the Amended Stay Relief Motion should be denied. The FDIC-Receiver, acting on behalf of Colonial Bank, may not use the demand depository obligations owed by BB&T to the Debtor in connection with the Debtor Accounts to conjure up an obligation of Colonial Bank for purposes of setoff and cannot effect a post-petition clawback of these accounts under Section 9.5 of the P&A Agreement for this same purpose.

---

[7] Section 553(a)(2), concerning the transfer of claims, is grounded in similar equitable principles. Congress sought to "prohibit trafficking in claims against the debtor in order to effect setoff (which would provide a windfall to both parties to the transfer at the expense of the estate)." In re Denby Stores, Inc., 86 B.R. 768, 779 (Bankr. S.D.N.Y. 1988). Although here the FDIC-Receiver seeks transfer of a "debt," the terms "debt" and "claim" are used interchangeably by Congress. *See* Rake v. Wade, 508 U.S. 464, 474 n.11 (1993) (implying that "debt" and "claim" are synonymous); In re First Jersey Sec., 180 F.3d 504, 510 (3d Cir. 1999) ("As debt is denied as a liability on a claim, it is coextensive with the definition of a claim . . . ."); *see also* 11 U.S.C. § 101(12) (defining "debt" to mean "liability on a claim").

### c. The Debtor Made No Capital Maintenance Commitment

Even assuming that the FDIC-Receiver held the Debtor Accounts, the FDIC-Receiver still would have no right to a setoff against those accounts, because there is no cross-obligation owing by the Debtor to Colonial Bank. For the purposes of this Motion, in accordance with the Agreed Order and the Stipulation, the only claim asserted by the FDIC-Receiver against the Debtor at issue here is the alleged capital maintenance commitment. As set forth above (*see* footnote 4 at 7), the Debtor disputes the existence of any such alleged commitment and incorporates by reference the Section 365(o) Summary Judgment Motion. As set forth in the Section 365(o) Summary Judgment Motion, there never was any enforceable agreement by the Debtor to maintain the capital levels of Colonial Bank,[8] and, even if such a commitment existed, the obligation would be owing to the "Federal depository institutions regulatory agency" as defined in Sections 101(21B) and 365(o) of the Bankruptcy Code, not to Colonial Bank. Therefore, for the purposes of this Motion, there is no obligation owing by the Debtor to Colonial Bank which can be the basis for a setoff.

### 5. The Court Should Deny Any Setoff to FDIC-Receiver

Even assuming for the sake of argument that the FDIC-Receiver could establish a right of setoff under either 12 U.S.C. § 1822(b) or Alabama law, the Court still should deny any setoff requested by the FDIC-Receiver in exercise of its discretion. While Section 553(a) of the Bankruptcy Code recognizes any creditor's right to setoff, even if a right to setoff is firmly established, the Court has the discretion under Section 553 to deny the setoff. E.g., In re Larbar Corp., 177 F.3d 439 (6th Cir. 1999); In re Bennett Funding Group, Inc., 146 F.3d 136 (2nd Cir. 1998); In re Lykes Bros. S.S. Co., 217 B.R. 304 (Bankr. M.D. Fla. 1997) (setoff may be denied within court discretion when creditor has acted inequitably, setoff would jeopardize debtor's ability to reorganize, or in liquidation context, setoff would result in preference or priority over other unsecured creditors). In directing BB&T to place a hold on the Debtor Accounts, thereby denying the Debtor

---

[8] Assuming for the sake of argument that a capital maintenance obligation could be construed to be owed by the Debtor to the FDIC-Receiver, "mutuality" for setoff purposes would not exist as the FDIC-Receiver has no obligation to the Debtor with respect to the Debtor Accounts inasmuch as the FDIC-Receiver is not a depository institution. Nor could Colonial Bank offset the Debtor Accounts to satisfy a debt of the Debtor to the FDIC-Reciever or *vice versa*. There can be no right of setoff where a creditor seeks to offset its claim against one party in satisfaction of a debt owed to a third party. *See* In re Cullen, 329 B.R. 52 (Bankr. N.D. Iowa 2005).

access to property of its estate, the FDIC-Receiver has violated the automatic stay. Under the circumstances, the Court should deny any right of setoff asserted by the FDIC-Receiver.

### 6. **FDIC-Receiver May Not Seek Stay Relief on Behalf of Third Parties**

Through the Amended Stay Relief Motion, the FDIC-Receiver also seeks modification of the automatic stay "to permit third parties, including… BB&T, to take such actions as may be necessary to effectuate the other relief requested by this Amended Motion." (Amended Stay Relief Motion at 3, ¶6). The FDIC-Receiver, however, is not entitled to seek relief from the stay on behalf of any third party, including BB&T, and, therefore, this request should be denied. At the very least, the FDIC-Receiver should be required to identify which third parties, other than BB&T, are to be granted stay relief and what acts are being authorized. Such a vague request for relief does not give the Debtor and other interested parties sufficient notice of the precise stay relief being requested.

## Conclusion

For all of the foregoing reasons, the Debtor requests that summary judgment be granted in its favor with respect to the Amended Stay Relief Motion.

Dated:  April 26, 2010
        Montgomery, Alabama

C. Edward Dobbs
Email: ced@phrd.com

Rufus T. Dorsey, IV
Email: rtd@phrd.com

PARKER, HUDSON, RAINER & DOBBS LLP
1500 Marquis Two Tower
285 Peachtree Center Avenue, N.E.
Atlanta, Georgia  30303
Telephone No.:  (404) 523-5300
Facsimile:  (404) 522-8409

By: /s/ *Rufus T. Dorsey, IV*
    Rufus T. Dorsey, IV

Attorneys for Debtor and Debtor in Possession