UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

------------------------------------------------------------x
                                :
In re                              :          Chapter 11
                                :
THE COLONIAL BANCGROUP, INC.,   :          Case No. 09-32303 (DHW)
                                :
            Debtor.         :
                                :
------------------------------------------------------------x

**DEBTOR'S RESPONSE TO OBJECTION OF
THE FDIC-RECEIVER TO DEBTOR'S MOTION FOR
AN ORDER AUTHORIZING RULE 2004 EXAMINATION OF BB&T**

The Colonial BancGroup, Inc., debtor and debtor-in-possession herein (the "Debtor"), files this Response to the Objection of the FDIC-Receiver (the "Objection") to the Debtor's Motion for an Order Authorizing Rule 2004 Examination of BB&T (the "Motion").

In the Objection, the FDIC-Receiver advances the following arguments for denying the relief requested in the Motion for a Rule 2004 examination of Branch Banking and Trust Company ("BB&T") and production of certain of the Debtor's business records in connection therewith: (i) the Debtor's business operation was relatively "insignificant," representing "a mere fraction of those of the consolidated group"[1]; (ii) virtually all of the records of the consolidated group are records of the Bank; (iii) the FDIC-Receiver has devoted substantial time and expense to satisfy the "Debtor's demands" for access to its records; (iv) the Debtor has been unreasonable in declining to enter into document protocols with the FDIC-Receiver of the type that were acceptable to debtors in other unspecified Chapter 11 cases;

---

[1] The FDIC-Receiver misperceives (and therefore mischaracterizes) the "business" of the Debtor. As a holding company, the Debtor had no meaningful business other than owning, overseeing and supporting the operations of its subsidiaries, including the Bank. Hence, all of the records of the subsidiaries are highly relevant to the administration of the Debtor's estate. The notion that subsidiary business records to which the Debtor had free access prior to the Bank receivership are somehow privileged or clothed with confidentiality post-receivership is fatuous.

(v) the Debtor has already received a significant number of documents; and (vi) the Debtor has been unwilling to bear the costs of making available to it copies of those records.

Even if all of the factual assertions in the Objection are accepted as true (and the Debtor disputes the accuracy of most of those assertions), they do not provide a basis for the FDIC-Receiver to object to an otherwise lawful and proper request by the Debtor for the production, inspection and copying of the requested documents that are in BB&T's possession.

## Overview

1. It is undisputed that, on or about August 14, 2009, the date on which Colonial Bank (the "Bank") was closed by the Alabama Department of Banking and its assets sold to BB&T, the FDIC-Receiver seized substantially all of the tangible and electronic records of both the Bank and the Debtor. The bulk of the seized records were placed by the FDIC-Receiver in the custody of BB&T for use by BB&T in connection with its acquisition of Colonial Bank's assets. However, access to the books and records by third parties, including the Debtor, remain subject to the oversight and control of the FDIC-Receiver by virtue of a contract arrangement between BB&T and the FDIC-Receiver.

2. At the inception of this Chapter 11 case, the only documents available to the Debtor were copies of a small fraction of the Debtor's business records, which were in the possession of Sarah Moore (the Debtor's chief financial officer) and which Ms. Moore refused to turn over to the FDIC-Receiver. Since the commencement of this Chapter 11 case, the Debtor has been in almost daily contact with counsel for and other agents of the FDIC-Receiver. Hardly a day has elapsed during which there were no discussions regarding the Debtor's access to its records.

3. Despite the Debtor's lack of access to records necessary to administer properly this Chapter 11 case, ongoing demands were placed upon the Debtor by the Pension Benefit Guaranty Corporation, the U.S. Department of Justice, the Securities Exchange Commission, defense counsel for various officers and directors who are the subject of pending litigation, and various other interested parties for copies of documents in the custody of BB&T but subject to the FDIC-Receiver's control.

4.      From the outset of discussions with the FDIC-Receiver regarding the Debtor's request for access to its business records, the FDIC-Receiver has taken the position that virtually all of the records, irrespective of the officer, agent or employee of the entity who generated the record, constitute business records of the Bank; even if the record could be deemed a record of the Debtor, the FDIC-Receiver was entitled to the record if it related to any aspect of the business of the Bank; and the Debtor must bear the cost of copying all records, even those that were undisputedly records belonging to the Debtor's estate.  In short, the FDIC-Receiver has assumed the role of "gatekeeper" for access by third parties to all books and records of the Debtor and also assumed the role of judge and jury with respect to which documents would be made available to the Debtor, at what times and under what conditions.

5.      The FDIC-Receiver seeks to justify its dominion over all of the business records on two grounds -- (i) sorting out who owns or is entitled to specific documents is difficult and time-consuming (with the default rule apparently being that, where doubt exists, the FDIC-Receiver will decide); and (ii) the Bank receivership is really important, more so presumably than a Chapter 11 case of the holding company, and the Chapter 11 case must yield to the receivership on all close questions.

6.      Just as the FDIC-Receiver may have a legitimate need for documents relating to activities of the Bank, irrespective of the originator of the document, so too the Debtor has a vital need for business records regarding the assets, liabilities and business activities of the Debtor and its direct and indirect subsidiaries, including the Bank.

7.      For example, the Debtor is severely handicapped in preparing tax returns at the federal level for potential refunds, addressing the substantial tax claims of the Alabama Department of Revenue and pursuing its claims in the Bank's receivership without having access to its own records as well as those of its various subsidiaries.

8.      Similarly, the Debtor has yet to attain access to most of the business records relating to CBG Real Estate LLC ("CBG Real Estate"), which, according to limited information available to the Debtor, appears to have purchased from the Bank in excess of $100 million of real estate loans, the

collection of which is apparently being handled by BB&T.[2] It was only late in the evening on July 6, 2010, after the filing of the Motion, that the Debtor first received certain electronic records relating to CBG Real Estate.[3]

9. The Debtor's inability to review its business records has negatively impacted the administration of this Chapter 11 case by increasing the cost and expense of administration; rendering the Debtor frequently unable to provide accurate or complete information in its required monthly reportings and other informational reports, statement of financial affairs and schedule of assets filed with this Court; adversely affecting the Debtor's ability to pursue its proof of claim in the FDIC-Receiver's receivership proceeding and in the pending litigation in federal district court that resulted from the denial of that claim by the FDIC-Receiver; and delaying the Debtor's ability to identify and realize upon other assets of its estate.

### Response to Specific Assertions

10. In the subparagraphs that follow, the Debtor will detail some of the factual assertions made by the FDIC-Receiver that are at best misleading:

- The FDIC-Receiver states in paragraph 4 of the Objection that it has "devoted substantial time and expense in its attempt to satisfy the Debtor's demands for records since the Petition Date." While it may be true that the FDIC-Receiver has devoted a significant amount of time to that effort, the time devoted resulted from the Debtor's ongoing request for documents and the FDIC-Receiver's delays in making those documents available to the Debtor. It is doubtful that the FDIC-Receiver has incurred any significant expense in responding to the Debtor's repeated requests, other than legal fees in having conversations with Debtor's counsel about document access and in joint

---

[2] The Debtor believes that CBG Real Estate may have sold a 65% participation interest in the loans to the Debtor and that the Debtor, contemporarneously, contributed that participation interest to the Bank. The Debtor further believes, based upon the limited information available to it, that the realizable value of these real estate loans is significantly less than the unpaid balance of those loans. However, the Debtor is presently unable to verify the foregoing as a result of its lack of access to records.

[3] This production of electronic records is the only time the Debtor has been given access to any electronically stored information since the appointment of the FDIC-Receiver as receiver for the Bank almost 11 months ago.

1576258_6                                    - 4 -
Case 09-32303    Doc 801    Filed 07/07/10    Entered 07/07/10 16:17:15    Desc Main
                           Document      Page 4 of 8

preparation of a single stipulation that would preserve the attorney-client privilege for any privileged documents that were produced to the Debtor.[4]

- In paragraph 5, the FDIC-Receiver asserts that the Debtor placed on the "back burner" efforts to obtain its documents. In those rare periods of time when the Debtor was not seeking to gain access to its records, it was embroiled in controversies with the FDIC-Receiver on other pressing subjects, including seeking to use its cash to fund the operations of the estate and defending against the FDIC-Receiver's motions under Section 365(o) of the Bankruptcy Code and for stay relief.

- In paragraph 6, the FDIC-Receiver seeks to cast itself as the "victim" in this struggle by the Debtor to gain access to its documents. It is important to bear in mind that it is the FDIC-Receiver, not the Debtor, that has been in possession of substantially all of the records of both the Bank and the Debtor from the inception of this case. Far from being the victim, the FDIC-Receiver has perpetuated the status quo. The FDIC-Receiver blames the delay on the Debtor's refusal simply to submit to the terms and conditions served up by the FDIC-Receiver in its draft of a document-sharing protocol. The last sentence of paragraph 6 of the Objection states that the Debtor is to be faulted for its attempt to negotiate document protocols with BB&T and the Department of Justice. The irony is that both BB&T and the Department of Justice agreed to the document protocol, but it was never implemented because the FDIC-Receiver refused to go along with the agreement.

- In paragraph 8 of the Objection, the FDIC-Receiver observes that it "consented to" the delivery of 30 boxes of documents relating to benefit plans sponsored by the Debtor. The "rest of the story" is that the FDIC-Receiver never produced the documents; the existence of the documents was made known to the Debtor by an employee of BB&T in Winston-Salem, NC, who volunteered to deliver the boxes to the Debtor; and the FDIC-Receiver, having no legitimate reason to preclude the Debtor's access to the records and cognizant of the fact that the Debtor was unwinding these benefit plans at considerable expense to the estate, ultimately gave its consent. The fact that the documents had been withheld from the Debtor for so many months is reflective of the FDIC-Receiver's perspective that the administration of this bankruptcy case is subordinate to the needs and convenience of the FDIC-Receiver's administration of the receivership estate of the Bank.

- Paragraph 9 of the Objection is purposely worded to convey the impression that Mr. O'Halloran, the Debtor's chief restructuring officer, acted without authority (and without knowledge of either BB&T or the FDIC-Receiver) in "removing" books and records from the Colonial Bank headquarters and that those records (contained in 50 boxes) consisted "largely of records belonging to Colonial Bank." The truth is that the chief restructuring officer inspected the documents while at the headquarters building; requested BB&T agents, who were in possession of the boxes, to allow him to remove the boxes from the headquarters building; was told by BB&T agents that the permission of the FDIC-Receiver would first have to be obtained and the FDIC-Receiver wanted to review and index the documents prior to their "release"; was later told by BB&T agents that the FDIC-Receiver had given its consent, but wanted to delay the transfer of

---

[4] Even after signing the stipulation requested by the FDIC-Receiver, the Debtor still has not received numerous documents that it has requested, including electronic records.

documents until their review was complete; only after the FDIC-Receiver completed its review, did Mr. O'Halloran remove the 50 boxes from the premises, which was undertaken during normal business hours and in full view of agents and representatives of both BB&T and the FDIC-Receiver.[5] Furthermore, based upon counsel's review of the documents contained in the 50 boxes (which are now housed in a locked room at the offices of Debtor's counsel in Atlanta, Georgia), the documents not only are clearly records of the Debtor, a substantial portion of these records (estimated at approximately 50%) consist of documents that are subject to the attorney-client privilege. The closing thought in paragraph 9 of the Objection is that the FDIC-Receiver has been denied access to these documents. While it is true that the Debtor did temporarily withhold access from the FDIC-Receiver's counsel pending the Debtor's review to identify potentially privileged documents, the FDIC-Receiver has had a standing invitation since late May to inspect the documents and to date has not accepted that invitation.[6]

- The statement in paragraph 10 of the Objection that BB&T delivered 160,000 pages of documents to the Debtor is true as far as it goes -- BB&T was obliged to produce the documents, in CD format to the Department of Justice and simply copied that CD and made it available to the Debtor as part of an overall stipulation among the Department of Justice, BB&T and the Debtor regarding access to those documents.

- The overall thrust of the Objection is to convey the impression that the Debtor has been provided access to virtually all of its documents. Not only has the Debtor not received a substantial portion of its "paper documents," it has not as yet had access to <u>any</u> of its electronic records (other than the production of CBG Real Estate records two days ago), access to which is critical.

**Factual Assertions in Objection are Irrelevant**

11.     Quite apart from the revisionist history engaged in by the FDIC-Receiver in its Objection, that history is beside the point. The Motion does not seek a turnover of documents by the FDIC-Receiver. Rather, the Debtor has simply lodged a lawful request with BB&T to allow inspection and the right to copy paper documents and electronically stored information.[7] Without the intervention of the

---

[5] The FDIC-Receiver fails to mention that its agents at the Debtor's former headquarters in Montgomery actually reviewed and prepared a table of contents for substantially all of the documents prior to the transfer of the documents to Atlanta.

[6] It is interesting, indeed, to witness the FDIC-Receiver's reaction when the shoe is on the other foot and its access to documents is restricted, even if only for a brief period of time to facilitate the Debtor's review of those documents for potential privileged status.

[7] In the Objection, the FDIC-Receiver has accused the Debtor of choosing a "path of litigation" by filing the Motion. To the contrary, the Debtor is simply invoking a lawful right to examine and inspect records of the Debtor and its subsidiaries that are in the possession of BB&T. The FDIC-Receiver even concedes in the Objection that "Rule 2004 permits broad discovery of matters falling within its scope." The FDIC-Receiver does not cite a single

FDIC-Receiver, the Debtor and BB&T might readily have fashioned a mutually satisfactory arrangement for such access, as they did in connection with the production of substantial documents to the U.S. Department of Justice.

12. The Debtor fully appreciates that the Court has little interest in, or patience with, counsel quibblings over who has been diligent and who has not and who is at fault and who is not. The fact remains that the FDIC-Receiver still attempts to use its contractual rights with BB&T to obstruct the Debtor's access to a significant portion of the Debtor's paper documents and (with the exception of the very recent production on July 6 by BB&T of electronic records relating to CBG Real Estate) all of the Debtor's electronic records. Despite its views of the primacy of the administration of its receivership estate, it is not the province of the FDIC-Receiver to serve as the sole arbiter of the terms of the Debtor's access to documents essential to the administration of a bankruptcy case.

13. Whether (as the FDIC-Receiver maintains) the federal laws relating to bank receiverships are preeminent when they clash with the Bankruptcy Code is an issue for another day. But it is clear that these laws do not preempt the Bankruptcy Code or foreclose the right of examination, inspection and copying of information and materials pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure.

14. This Chapter 11 case is properly before the Court and the Debtor is obliged to prosecute it for the benefit of its creditors as contemplated by the Bankruptcy Code and Rules. To do so, the Debtor requires access to records relating to its business, assets and liabilities, including those of its subsidiaries.

15. The FDIC-Receiver has failed to articulate in the Objection any justification for denial of the relief requested in the Motion or for perpetuating the restrictions on the Debtor's access to its records.

---

instance in which the Debtor has requested discovery of matters that fall <u>outside</u> the scope of a Rule 2004 examination.

1576258_6

- 7 -

Case 09-32303   Doc 801   Filed 07/07/10   Entered 07/07/10 16:17:15   Desc Main
Document      Page 7 of 8

## Conclusion

For all of the foregoing reasons, and failing the parties' efforts to settle this matter before the continued hearing on July 8, 2010, the Debtor respectfully requests that the FDIC-Receiver's objection be denied in its entirety as utterly inapposite to any of the issues implicated by a Rule 2004 examination and production request.

Dated: July 7, 2010
       Montgomery, Alabama

    C. Edward Dobbs
    E-mail: ced@phrd.com

    Rufus T. Dorsey, IV
    E-mail: rtd@phrd.com

    PARKER, HUDSON, RAINER & DOBBS LLP
    1500 Marquis Two Tower
    285 Peachtree Center Avenue, N.E.
    Atlanta, Georgia 30303
    Telephone No.: (404) 523-5300
    Facsimile: (404) 522-8409

    By: /s/ *Rufus T. Dorsey, IV*
        Rufus T. Dorsey, IV

    Attorneys for Debtor and Debtor in Possession