UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                         Case No. 09-32303-DHW
                                              Chapter 11
THE COLONIAL BANCGROUP, INC.,

    Debtor.


ORDER DENYING MOTION TO ALTER OR AMEND

    The respondents filed a motion to alter or amend the June 25, 2010 order granting the debtor's second motion for authority to exercise ownership rights over deferred compensation plan assets. The motion came on for hearing on July 20, 2010.

    First, the respondents assert that the equitable interest in the plan assets is excluded from the estate under 11 U.S.C. § 541(d). The respondents contend that the equitable interest resides in the bank.[1] The respondents also request the court to impose a constructive trust on the plan assets attributable to contributions by Colonial Bank employees.

    The respondents state in brief as follows: "The property placed in the trust was clearly placed there by Colonial Bank for the benefit of Colonial Bank employees from the funds owed by Colonial Bank Employees and at all times, was the money of Colonial Bank and not Colonial Bancgroup." The respondents contend that the debtor held these funds "in name only" on behalf of the bank.

    A constructive trust "is a creature of equity that operates to prevent unjust enrichment." *In re Poffenbarger*, 281 B.R. 379, 388 (Bankr. S.D. Ala. 2002). The Alabama Supreme Court has adopted the following quote:

---

[1] The court has already addressed and rejected the argument that an equitable interest lies in the respondents.

> 'Equity may impress a constructive trust on property in favor of one beneficially entitled thereto when another holds title to the property by fraud, commission of wrong, abuse of a confidential relationship, or any other form of unconscionable conduct. Equity may also impress a constructive trust on property in favor of one beneficially entitled thereto against a person, who, against the rules of equity and against good conscience, in any way either has obtained or holds and enjoys legal title to property that in justice that person ought not to hold and enjoy.'

*Brown v. Brown*, 604 So. 2d 365, 370 (Ala. 1992) (citations and emphasis omitted). In other words, "'[w]hen property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee.'" *Id.* (citation omitted).

In the instant case, the debtor did not acquire the plan assets "by fraud, commission of wrong, abuse of a confidential relationship, or any other form of unconscionable conduct." Nor was the property "acquired in such circumstances" that the debtor should not "in good conscience retain the beneficial interest."

The contributions attributable to bank employees were made voluntarily by those employees to a plan sponsored solely by the debtor. Colonial Bank is not an "adopting employer" of the plan. For purposes of the plan, the bank is not the employer; the debtor is the employer. The plan unambiguously states that in the event of insolvency, the plan assets will be subject to the claims of the creditors of the debtor. The Charles Schwab trust agreement is equally clear on this point.

Under these circumstances, the court does not conclude that the debtor either acquired or held the property "against the rules of equity and against good conscience." *Id.* Therefore, the court concludes that the imposition of a constructive trust is not appropriate and that the equitable

2

Case 09-32303    Doc 821    Filed 07/21/10    Entered 07/21/10 13:38:43    Desc Main
          Document      Page 2 of 5

interest in the plan assets is not excluded from the debtor's estate under 11 U.S.C. § 541(d).

Second, the respondents argue that the top hat plan assets are excluded from property of the estate under 11 U.S.C. § 541(b)(7). The court rejected this argument for the primary reason that it would place the bankruptcy statute at odds with ERISA and the tax law. The debtor's counsel has advanced an additional reason for rejecting the argument which the court finds persuasive.

Subsection (b)(7) is one of three subsections added to 11 U.S.C. § 541 as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") that exclude from property of the estate funds invested in certain types of accounts. Subsection (b)(5) excludes funds placed by an individual debtor in an education individual retirement account. Subsection (b)(6) excludes funds used by an individual debtor to purchase a tuition credit or certificate or funds contributed to a qualified state tuition program. Both of these subsections apply exclusively to individual debtors.[2]

Subsection (b)(7) operates to exclude from property of the estate funds contributed by an employee to, *inter alia*, designated retirement accounts. The section appears to have operation only when the employee is bankruptcy and not when the employer is in bankruptcy. A leading bankruptcy treatise notes that section 541(b)(7) "hints" that it was "intended for the situation when the employee is in bankruptcy." 5 Alan N. Resnick and Henry J. Sommer, Collier on Bankruptcy ¶ 541.23, n.1

---

[2] The funds are protected only if the designated beneficiary of the amounts paid or contributed is the child, stepchild, grandchild, or stepgrandchild of the debtor. 11 U.S.C. § 541(b)(5)((A) and (b)(6)(A). Because only an individual has children and grandchildren, these sections do not apply to a corporate or other entity.

3

(15th ed. rev. 2010).[3]

The court notes that 11 U.S.C. § 541(b)(7) was not needed to exclude the assets of a qualified ERISA plan from a debtor/employer's estate. Those assets are held in trust by the employer for plan participants and are not subject to the employer's creditors. *See* 29 U.S.C. § 1103 and § 541(d). In addition, section 541(b)(7) as written is not adequate to exclude the entirety of a plan's assets from a debtor/employer's estate because the section does not embrace employer contributions to a plan or gains on an employee's contributions.

Further, if the section is intended to exclude plan assets from a debtor/employer's estate, there was no need to include certain government plans in the section, as neither the federal government nor any state government may be a debtor in a bankruptcy case. *See* U.S.C. § 109.

Moreover, section 541(b)(7) states that (b)(7) contributions "shall not constitute disposable income as defined in section 1325(b)(2)." 11 U.S.C. § 541(b)(7)(A) and (B). Section 1325(b)(2) applies only to individual debtors. The fact that (b)(7) references income indicates that the debtor in that situation is the employee and not the employer.

The court concludes that the assets of the debtor's top hat plan are not excluded from the debtor's estate under 11 U.S.C. § 541(b)(7) for the additional reason that this section has no application when the employer/sponsor is the debtor.

Third, the respondents also assert that the bank has legal ownership of the plan assets attributable to bank employees. For instance, the respondents contend that almost all of the assets in the plan came from the

---

[3] The treatise, however, proceeds to conclude that "if these withholdings are protected for the employee in bankruptcy, there seems no reason why they should not be protected for the employee when the employer is in bankruptcy." *Id.*

4

bank and that the court's order effectively "substantively consolidates" the estates of the debtor even though a bank is not eligible to be a debtor under the Bankruptcy Code. The respondents also assert that the bank meets the definition of "employer" under ERISA and that the court's ruling takes funds of the bank to pay the debtor's debts.

However, whether the bank theoretically qualifies as an employer is irrelevant to whether the bank is, in fact, the employer for purposes of the plan. For purposes of the plan, the employer is the debtor. Likewise, the provisions of the plan also make clear that the plan assets are the general assets of the debtor and subject to the claims of the debtor's creditors.

The respondents also reiterate many arguments previously made but already addressed by the court in the June 25, 2010 memorandum opinion. There is no need to re-address those arguments in this order.[4] Accordingly, it is

ORDERED that the motion filed by the respondents to alter or amend the June 25, 2010 order is DENIED.

Done this 21st day of July, 2010.

/s/ Dwight H. Williams, Jr.
United States Bankruptcy Court

c: C. Edward Dobbs, Attorney for Debtor
Richard D. Shinbaum, Attorney for Respondents

---

[4] For instance, the debtor argues that the plan is ambiguous, that the Charles Schwab Trust was not authorized under the plan, that the plan is not a valid top hat plan, and the plan was funded because employees were 100% vested.

5