## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| THE COLONIAL BANCGROUP, INC., | Case No. 09-32303(DHW) |
| Debtor. | |

## MOTION OF THE FDIC-RECEIVER FOR AN ORDER (1) CONFIRMING THAT THE AUTOMATIC STAY DOES NOT APPLY OR, (2) IN THE ALTERNATIVE, MODIFYING THE AUTOMATIC STAY TO PERMIT THE FDIC-RECEIVER TO EXERCISE CERTAIN TAX RIGHTS, AND MOTION FOR EXPEDITED HEARING

The Federal Deposit Insurance Corporation, as receiver for Colonial Bank (the "FDIC-Receiver"), respectfully moves for the entry of an order either (a) confirming that the automatic stay provided under section 362 of title 11 of the United States Code (the "Bankruptcy Code") does not apply to the FDIC-Receiver's exercise of certain Tax Rights granted to it under federal law (as defined below) to make certain filings with the Internal Revenue Service (the "IRS") on behalf of Colonial Bank and its subsidiaries, or, in the alternative, (b) granting the FDIC-Receiver relief from the automatic stay to facilitate the exercise of those rights.

The FDIC-Receiver also moves for an expedited hearing on this motion because if the FDIC-Receiver is unable to make the necessary tax filings by September 15, 2010, it could irrevocably lose the right to claim substantial federal income tax refunds and thereby irreparably damage creditors of the Colonial Bank receivership and potentially creditors of the estate of debtor and debtor in possession The Colonial BancGroup, Inc. (the "Debtor").

## PRELIMINARY STATEMENT

Under section 6402(k) of Title 26 of the United States Code (the "Internal Revenue Code" or "IRC") and 26 C.F.R. § 301.6402-7 ("Treas. Reg. § 301.6402-7"), the FDIC-Receiver, as a fiduciary of Colonial Bank, is entitled to:

    a.    file a claim for a refund and/or a loss return for the 2009 tax year,

    b.    file any amendments to prior years' returns as may be permitted under the law, and

    c.    take such other actions as may be necessary to protect and preserve the claims of the receivership estate to tax refunds

(collectively, the "Tax Rights"). This Treasury Regulation permits the FDIC-Receiver to file tax returns separate from a parent holding company and assert its own basis for tax refunds.

The FDIC-Receiver believes that the automatic stay provided under section 362 of the Bankruptcy Code does not apply to its exercise of the Tax Rights, and by this motion it seeks confirmation from the Court to that effect. *See* 26 U.S.C. § 6402(k) (FDIC as receiver granted right to claim tax refunds "notwithstanding any other provision of law"). However, and out of an abundance of caution, to the extent the automatic stay may be deemed to apply, the FDIC-Receiver seeks, in the alternative, an order modifying the automatic stay to permit the FDIC-Receiver to exercise its Tax Rights and make all filings with the IRS that may be necessary to preserve Colonial Bank's rights with respect to potentially substantial federal income tax refunds.

Under applicable federal law, the FDIC-Receiver faces a statutory deadline of September 15, 2010 to file a tax return electing to carryback certain net operating losses ("NOLs") of Colonial Bank. If it cannot make the required filings by that deadline, its ability to use these NOLs to claim refunds against taxes paid in earlier years will be forever lost. The filing of a tax return by the FDIC-Receiver, in accordance with IRC § 6402 and applicable

regulations, would give the FDIC-Receiver the opportunity to provide the IRS with the basis for tax treatment that the FDIC-Receiver believes is appropriate and fair in these circumstances.

Since the earliest months of this chapter 11 case, the FDIC-Receiver has urged the Debtor to cooperate in preparing and filing a single consolidated federal income tax return that would maximize the amount of tax refunds available to the parties and provide for the swiftest recovery of those refunds. While repeatedly stating a desire to cooperate, the Debtor has stalled in those efforts to the point that the statutory deadline for claiming refunds based on certain NOL carrybacks is only one month away.

Having received no assurance from the Debtor that it will cooperate in filing an agreed upon return – despite more than eight months of efforts to obtain such an assurance – the FDIC-Receiver is now left with no choice but to file this motion to protect the interests of the Colonial Bank receivership. The FDIC-Receiver is charged with the preservation and collection of all assets of a failed depository institution for the benefit of receivership creditors, the Deposit Insurance Fund and, ultimately, United States taxpayers. To fulfill this obligation, the FDIC-Receiver must preserve its rights to any tax refunds that may be owing to failed depository institutions.

The FDIC-Receiver is not seeking to recover a claim or exercise any rights against the Debtor, but merely seeks to preserve the status quo. The FDIC-Receiver does not seek a determination of ownership of federal income tax refunds as between Colonial Bank and the Debtor, which is an issue that will be decided in separate litigation brought against the FDIC-Receiver by the Debtor that is now pending before U.S. District Judge Myron H. Thompson in district court. *See Colonial BancGroup, Inc. v. F.D.I.C.*, No. 2:10-cv-0198 (MHT) (M.D. Ala.). No ownership determination is necessary to grant the relief requested in this motion.

Moreover, a determination that the FDIC-Receiver has the right to file its own tax return will not affect the ultimate determination of ownership. *See* Treas. Reg. § 301.6402-7(j) (IRS payment of refunds not determinative of ownership rights). This Court previously has approved a stipulation between the Debtor and the FDIC-Receiver under which any tax refunds that may be paid to either of them must be placed into an escrow account (the "Escrow Account") pending a final judicial determination of ownership in that separate litigation. *See* Stipulation and Order Regarding Establishment of Segregated Account for Tax-Related Payments, entered on March 10, 2010 [Doc. No. 621].

In sum, this Court should enter an order confirming that the automatic stay does not apply to the FDIC-Receiver's exercise of the Tax Rights, or, in the alternative, granting the FDIC-Receiver relief from the automatic stay for the sole purpose of permitting the FDIC-Receiver to exercise its rights under section 6402 (k) of the IRC and Treas. Reg. § 301.6402-7 as a fiduciary for Colonial Bank.

## BACKGROUND

### A. The Federal Deposit Insurance Corporation

1. The FDIC is a corporation organized pursuant to the Federal Deposit Insurance Act, 12 U.S.C. § 1811, *et seq.*, with its principal place of business located in Washington, D.C. The FDIC is an independent agency created by Congress that maintains the stability and public confidence in the nation's financial system by insuring deposits, examining and supervising financial institutions, and managing receiverships.

2. The FDIC acts to protect insured depositors and creditors of failed banks. Pursuant to 12 U.S.C. § 1821(d)(2)(A)(i), the FDIC, as receiver for a failed depository institution, succeeds by operation of law to "all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer,

or director of such institution with respect to the institution and the assets of the institution." *See* 12 U.S.C. § 1821(d)(2)(A)(i). Further, pursuant to 12 U.S.C. § 1821(g)(1), and notwithstanding any other provision of federal law, the FDIC, in its corporate capacity, is subrogated to all rights of any payment to any depositors upon either payment to depositors or the making of provisions for payment to the depositors of a failed bank. *See* 12 U.S.C. § 1821(g)(1).

3. In the wake of the savings and loan crisis, Congress enacted substantial amendments to the Federal Deposit Insurance Act, through the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183 (1989) ("FIRREA") in an effort to restore public confidence in the banking system. *See Praxis Props., Inc. v. Colonial Sav. Bank, S.L.A.*, 947 F.2d 49, 62 (3d Cir. 1991). Under FIRREA, the FDIC was granted broad powers to manage, reorganize and collect assets of a failed depository institution for the benefit of depositors (and taxpayers). *See Landmark Land Co. of Carolina, Inc. v. R.T.C. (In re Landmark Land Co.)*, 973 F.2d 283, 289 (4th Cir. 1992).

4. The powers of the FDIC, as receiver, include the power to:

(a) take over the assets of and operate the insured depository institution with all the powers of the members or shareholders, the directors, and the officers of the institution and conduct all business of the institution;

(b) collect all obligations and money due the institution;

(c) perform all functions of the institution in the name of the institution which are consistent with the appointment as conservator or receiver; and

(d) preserve and conserve the assets and property of such institution.

12 U.S.C. § 1821(d)(2)(B). Additionally, the FDIC may exercise "such incidental powers as shall be necessary" to carry out the powers specifically enumerated in title 12. 12 U.S.C. § 1821(d)(2)(J).

5.      Consistent with this broad legislative mandate, FIRREA prohibits any court from taking any action "to restrain or affect the exercise of powers or functions of the Corporation as a conservator or receiver." 12 U.S.C. § 1821(j). Indeed, the comprehensive and exclusive scheme of FIRREA evinces Congress' intent to allow the FDIC "full rein" to exercise its statutory authority to protect depositors and creditors without interference from the courts. *Landmark*, 973 F.2d at 290. Courts are without jurisdiction to enjoin or otherwise interfere with actions taken by the FDIC when acting as receiver or conservator for an insured depository institution. *See, e.g., Bank of Am., N.A. v. Colonial Bank*, 604 F.3d 1239, 1245-46 (11th Cir. 2010) ("we hold that § 1821(j) deprived the district court of jurisdiction to issue the injunction against the FDIC" as receiver for Colonial Bank); *see also Gross v. Bell Sav. Bank*, 974 F.2d 403, 408 (3d Cir. 1992) ("the district court does not have the ability to enjoin activity by the RTC where the Corporation is colorably acting within its enumerated powers."); *Telematics Int'l, Inc. v. NEMLC Leasing Corp.*, 967 F.2d 703 (1st Cir. 1992) (federal court lacks jurisdiction to enjoin FDIC from foreclosing on a certificate of deposit to which it acquired a secured interest as receiver); *281-300 Joint Venture v. Onion*, 938 F.2d 35 (5th Cir. 1991) (district court lacked ability to enjoin the RTC, acting as conservator, from foreclosing on property that served as security for the failed institution's loan).

**B.      The Colonial Bank Receivership and the Debtor's Chapter 11 Case**

6.      On August 14, 2009, the Alabama State Banking Department closed Colonial Bank and appointed the FDIC as its receiver. As of that date, the FDIC-Receiver entered into a purchase and assumption agreement with Branch Banking & Trust Company under which BB&T purchased certain assets and assumed certain liabilities of the failed bank. The FDIC-Receiver retained certain interests and assets, however, including Colonial Bank's rights to tax refunds.

7. Prior to the closing, the Debtor was the holding company for Colonial Bank. On August 25, 2009, the Debtor filed a voluntary petition in this Court for relief pursuant to chapter 11 of the Bankruptcy Code.

8. The Debtor continues to operate as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed. A creditors committee was appointed on September 28, 2009.

C. **The FDIC-Receiver's Tax Rights as a Fiduciary for Colonial Bank**

9. Section 6402(k) of the Internal Revenue Code provides:

> *Notwithstanding any other provision of law*, in the case of an insolvent corporation which is a member of an affiliated group of corporations filing a consolidated return for any taxable year and which is subject to a statutory or court-appointed fiduciary, the Secretary may by regulation provide that any refund for such taxable year may be paid on behalf of such insolvent corporation to such fiduciary *to the extent that the Secretary determines that the refund is attributable to losses or credits of such insolvent corporation.*

26 U.S.C. § 6402(k) (emphasis added). The applicable regulations are found in Treas. Reg. § 301.6402-7.

10. For the purposes of this statute, the FDIC-Receiver is a "fiduciary" to whom such refund may be remitted. *See* Treas. Reg. § 301.6402-7(b)(3)(i). Treas. Reg. § 301.6402-7(b)(3) provides, in pertinent part, that a "fiduciary is (i) [t]he Federal Deposit Insurance Corporation . . . in its capacity as an authorized receiver or conservator of an insolvent financial institution." Treas. Reg. § 301.6402-7(b)(3)(i).[1]

---

[1] The Treasury Regulations require the FDIC-Receiver to file a Form 56-F, Notice Concerning Fiduciary Relationship of Financial Institution, to inform the IRS of its fiduciary status. The FDIC-Receiver has filed a Form 56-F in accordance with this notice requirement. At no time has the FDIC-Receiver attempted to obtain tax refunds, seeking instead by this motion authority to exercise its Tax Rights.

11.     In relevant part, Treas. Reg. § 301.6402-7(e)(1) provides that "[i]f . . . the fiduciary does not accept a claim for refund filed by the common parent, the fiduciary may claim a refund under this section by filing its own claim for refund under section 6402 . . . ." Treas. Reg. § 301.6402-7(e)(1).

12.     If a fiduciary elects to file a claim for a refund or an application for a tentative carryback adjustment pursuant to the aforementioned provisions, the IRS "may, in its sole discretion, pay to the fiduciary all or any portion of the refund or tentative carryback adjustment that the Internal Revenue Service determines under this section to be attributable to the net operating losses of the institution." Treas. Reg. § 301.6402-7(g)(1).

13.     Importantly, Treas. Reg. § 301.6402-7(j) provides that the procedures established by the regulation are "*not determinative of ownership* of any such amount among current or former members of a consolidated group (including the institution)," but merely determine the party to whom the IRS will pay a refund or tentative carryback adjustment. Treas. Reg. § 301.6402-7(j) (emphasis added).

### D.     The Pre-Receivership Filing of Consolidated Tax Returns

14.     The Internal Revenue Code authorizes affiliated groups to file consolidated income tax returns. Section 1501 of the Internal Revenue Code provides that "[a]n affiliated group of corporations shall . . . have the privilege of making a consolidated return with respect to the income tax imposed by the [Internal Revenue Code] for the taxable year in lieu of separate returns." 26 U.S.C. § 1501. Consistent with section 1501 of the IRC, the Secretary of the Treasury has promulgated regulations that allow a parent holding company to file a consolidated tax return as agent for its subsidiaries. *See* Treas. Reg. § 1.1502-77.

15. Prior to the receivership of Colonial Bank and the Debtor's chapter 11 petition, the Debtor, Colonial Bank and their consolidated affiliates elected to file consolidated federal income tax returns under section 1501 of the Internal Revenue Code.[2]

16. Upon information and belief, before the petition date, the Debtor prepared and filed consolidated tax returns for tax years including 2003 through 2008. It is anticipated by the Debtor and the FDIC-Receiver that there may be refunds to be issued by the United States Treasury and/or by the taxing authorities of different states or municipalities with respect to the consolidated group for these years, for 2009 and perhaps other tax years.

17. Upon information and belief, Colonial Bank and its subsidiaries funded substantially all of the tax payments made by the consolidated group for the tax years at issue by paying those amounts to the Debtor, which in turn remitted payments to the IRS.

18. The FDIC-Receiver and the Debtor have recognized that they may have disputes as to the ownership of the Tax Refunds as between them. Accordingly, on February 24, 2010, the parties entered into a stipulation under which both parties agreed that any such amounts received by either of them would be deposited into the Escrow Account pending a final determination of that issue by a court of competent jurisdiction. The Court approved that stipulation in an order entered on March 10, 2010. *See* Stipulation and Order Regarding

---

[2] In judicial filings in other proceedings, the Debtor has asserted that the Debtor, Colonial Bank and other members of the consolidated group were parties to an alleged "tax sharing agreement," but the only document that the Debtor has identified for this assertion is an unsigned and undated "tax allocation policy" that is not an "agreement" and that, as a matter of law, is not enforceable. *See* 12 U.S.C. § 1823(e)(1); *Independent Bancgroup, Inc. v. F.D.I.C. (In re Independent Bancgroup, Inc.)*, 217 B.R. 442, 447-48 (Bankr. D. Vt. 1998) (tax refund was type of asset subject to written agreement requirement, and holding company claim to refunds based on alleged agreement was barred by section 1823(e)); *see also F.D.I.C. v. Brandt (In re Florida Park Banks, Inc.)*, 110 B.R. 986, 989 (Bankr. M.D. Fla. 1990) (internal policy statement on tax allocation was not an enforceable agreement entitling holding company to retain tax refunds based on losses and income of failed bank).

Establishment of Segregated Account for Tax-Related Payments, entered on March 10, 2010 [Doc. No. 621].

19. The Debtor has placed the issue of ownership of the Tax Refunds squarely at issue in three separate matters against the FDIC-Receiver that are pending before the district court, styled *Colonial BancGroup, Inc. v. F.D.I.C.*, No. 2:10-cv-0198 (MHT) (M.D. Ala.) (complaint seeking judicial determination of Debtor's disallowed receivership claim), *Colonial BancGroup, Inc. v. F.D.I.C.*, No. 2:10-cv-0410 (MHT) (M.D. Ala.) (declaratory judgment action), and *Colonial BancGroup, Inc. v. F.D.I.C.*, No. 2:10-cv-0409 (MHT) (M.D. Ala.) (objection to FDIC-Receiver's protective proof of claim in this bankruptcy case). That issue need not be addressed to grant the relief requested in this motion and must instead be resolved in these earlier filed district court proceedings.[3]

### E. The 2009 Consolidated Tax Return to be Filed

20. Colonial Bank and its subsidiaries sustained substantial NOLs during its 2008 and 2009 tax years that may available to claim federal income tax refunds. Pursuant to applicable tax law, the carryback of these NOLs would entitle the consolidated group to a refund of income taxes paid in the previous five years.[4] Because Colonial Bank and its subsidiaries funded substantially all of the tax payments made by the consolidated group and incurred almost all of

---

[3] Federal law requires the issue to be decided in the Debtor's action for a judicial determination of its disallowed receivership claim, *Colonial BancGroup, Inc. v. F.D.I.C.*, No. 2:10-cv-0198 (MHT) (M.D. Ala.). *See* 12 U.S.C. § 1821(d)(13)(D)(i) ("no court shall have jurisdiction:over action seeking determination of rights with respect to assets of failed bank except as provided under FIRREA). This issue also is not presented by this motion and need not be addressed to grant the requested relief.

[4] Under amendments to the Internal Revenue Code that were enacted in 2009, taxpayers other than TARP recipients may elect to carryback NOLs for a period of up to five years for either the 2008 or 2009 tax years. But for these amendments, NOL carrybacks are limited to the two preceding tax years. *See* Worker, Homeownership, and Business Assistance Act of 2009, Pub. L. No. 111-92, § 13, 123 Stat. 2992-93 (2009).

the losses, the FDIC-Receiver is the owner of all or almost all of the Tax Refunds based on the NOLs. Upon information and belief, any claim to the Tax Refunds by the Debtor would be based solely or almost entirely on the payment of taxes by or on behalf of Colonial Bank and its subsidiaries in prior years.

21. September 15, 2010 is the deadline for filing the 2009 consolidated tax return. This filing deadline, originally March 15, 2010, has been extended one time for a six-month period. No further extensions are legally permitted. *See* 26 U.S.C. § 6081(a) (prohibiting the IRS from granting any extension of more than six months except for taxpayers who are abroad).

**G.** **Exercise of the Tax Rights Does Not Determine**
**Ownership of the Tax Refunds**

22. Treas. Reg. § 301.6402-7(j) expressly provides that the payment by the IRS of any refund or tentative carryback adjustment to the fiduciary is "not determinative of ownership" of any such amount among the members of a consolidated group. Treas. Reg. § 301.6402-7(j).

23. This motion does not seek a determination of "ownership" of the Tax Refunds or whether the Tax Refunds are property of the Debtor's estate or the Colonial Bank receivership, nor is that question necessary to grant the requested relief. Those issues will be resolved at a later date in the district court litigation. The stipulation and order establishing the Escrow Account provides that any Tax Refunds that the FDIC-Receiver may receive as the result of the filings at issue will be deposited into the Escrow Account until such determination or until an earlier agreement between the Debtor and the FDIC-Receiver has been approved by this Court.

## JURISDICTION

24. Under 12 U.S.C. § 1821(j), "no court may take any action . . . to restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or a receiver." The FDIC-Receiver reserves all of its jurisdictional arguments, under section 1821(j) or otherwise. *See also*

Case 09-32303   Doc 836   Filed 08/13/10   Entered 08/13/10 12:06:17   Desc Main
Document    Page 11 of 39

12 U.S.C. § 1821(d)(13)(D). This Court has jurisdiction over this motion determining that the automatic stay does not apply or, in the alternative modifying the stay, pursuant to 28 U.S.C. §§ 157 and 1334, and such a motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue for the motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

25.     By this motion, the FDIC-Receiver seeks an order confirming that the automatic stay does not apply to the FDIC-Receiver's exercise of its Tax Rights or, in the alternative, granting the FDIC-Receiver relief from the automatic stay pursuant to 11 U.S.C. § 362(d) to permit the FDIC-Receiver to exercise its Tax Rights, including filing a claim for a refund and/or a loss return for the 2009 tax year and any amendments to prior years' returns as may be permitted under the law, as a fiduciary of Colonial Bank.

26.     Further, in light of the September 15, 2010 deadline, the FDIC-Receiver respectfully requests that if this Court grants relief from the automatic stay pursuant to Bankruptcy Code section 362, that any such order includes a waiver of the 14-day stay period provided in Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BASIS FOR RELIEF REQUESTED

### I.     The Automatic Stay Does Not Apply to the Exercise of the Tax Rights

27.     Section 362(a) of the Bankruptcy Code effectuates a stay of, *inter alia,* "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," and "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case. . . ." 11 U.S.C. § 362(a)(3) and (a)(6). The stay is not applicable to actions that neither take possession of estate property nor exercise control over it. *See Citizens Bank v. Strumpf*, 516 U.S. 16, 21 (1995) (bank's action of placing

Case 09-32303    Doc 836    Filed 08/13/10    Entered 08/13/10 12:06:17    Desc Main
Document    Page 12 of 39

an administrative freeze on debtor's account pending resolution of the bank's right of setoff did not violate the automatic stay because the temporary refusal to pay was neither a taking of possession of debtor's property nor an exercising of control over it).

28.     By taking the proposed actions at issue on this motion – to, among other things, file a claim for a refund and/or file a loss return for the 2009 tax year as a fiduciary of Colonial Bank – the FDIC-Receiver neither seeks to take possession of estate property nor exercise dominion over it.  Rather, the FDIC-Receiver wishes to exercise the rights expressly granted to it under section 6402 of the Internal Revenue Code and Treas. Reg. § 310.6402-7 in order to protect and preserve the Colonial Bank receivership's interest in such tax proceeds.  Any tax refunds received by the FDIC-Receiver as a result of the filing(s) will be held in escrow until a final determination of ownership by a court of competent jurisdiction.  Further, any payment by the IRS to the FDIC-Receiver as a result of such filings shall not determine ownership.  Treas. Reg. § 310.6402-7(j).

29.     The exercise by the FDIC-Receiver of its rights as a fiduciary of a failed depository institution under the aforementioned applicable tax law is pursuant to, and consistent with, its statutory duties under title 12 to, among other things, preserve and conserve the assets and property of such institution.  *See* 12 U.S.C. § 1821(d)(2)(B)(iv).

30.     Additionally, the automatic stay does not apply to the exercise of Tax Rights because section 6402(k) of the Internal Revenue Code states expressly that the rights granted to the FDIC-Receiver under that provision shall apply "[n]otwithstanding any other provision of law . . . ."  26 U.S.C. § 6402(k).  As a result, section 6402(k) controls in the event that there is any potential conflict between it and section 362 of the Bankruptcy Code.  As the Supreme Court

has explained, "notwithstanding" clauses consistently are interpreted to override conflicting provisions in other statutes:

> As we have noted previously in construing statutes, the use of such a "notwithstanding" clause clearly signals the drafter's intention that the provisions of the "notwithstanding" section override conflicting provisions of *any other section*. Likewise, the Courts of Appeals generally have "interpreted similar 'notwithstanding' language . . . to supersede all other laws, stating that "[a] clearer statement is difficult to imagine."

*Cisneros v. Alpine Ridge Group*, 508 U.S. 10, 18 (1993) (emphasis added).

## II.     To the Extent Deemed Applicable, Cause Exists to Modify the Automatic Stay

31.     For the reasons already discussed, the FDIC-Receiver does not believe the automatic stay applies to its exercise of the Tax Rights to file refund requests, tax returns or amendments of tax returns. However, if the Court determines that the automatic stay applies, the stay should be modified to permit the FDIC-Receiver to exercise the Tax Rights.

32.     "[T]he [automatic] stay is not meant to be indefinite or absolute, and in appropriate instances, relief may be granted." *Izzarelli v. Rexent Prods. Co. (In re Rexene Prods. Co.)*, 141 B.R. 574, 576 (Bankr. D. Del. 1992) (citing *Wedgewood Inv. Fund Ltd. v. Wedgewood Realty Group Ltd. (In re Wedgewood)*, 878 F.2d 693, 697 (3d Cir. 1989)). Under section 362(d)(1) of the Bankruptcy Code, the Court shall grant relief from the automatic stay "for

cause, including lack of adequate protection of an interest in property of such party in interest."

11 U.S.C. § 362(d)(1).[5]

33.      The decision to modify the stay is within the discretion of the bankruptcy court.

*In re Dixie Broad., Inc.*, 871 F.2d 1023, 1026 (11th Cir. 1989); *In re Stafford*, 123 B.R. 415, 422

(N.D. Ala. 1991).  What constitutes "cause" is a flexible concept, and courts conduct "a case-by-

case inquiry and apply a totality of the circumstances test to determine whether cause for relief

from the stay exists." *Mack v. Chambers (In re Mack)*, Case No. 06-1782, 2007 WL 1222575, at

*2 (M.D. Fla. Apr. 24, 2007) (citation omitted); *see also In re Aloisi,* 261 B.R. 504, 508 (Bankr.

M.D. Fla. 2001); *In re Bryan Road*, LLC, 382 B.R. 844, 854 (Bankr. S.D. Fla. 2008); *In re

Laminate Kingdom, LLC,* No. 07-10279 (AJC), 2008 WL 1766637, at *3 (Bankr. S.D. Fla. Mar.

13, 2008).

34.      Courts have also referred to a three-prong balancing test to determine whether to

grant relief from the stay, pursuant to which courts should (1) balance the prejudice to the debtor

against the hardship to the moving party if the stay remains in effect, (2) consider the efficient

use of judicial resources, and (3) on motions seeking stay relief to pursue litigation in another

forum, consider whether a creditor has a probability of success on the merits of his case.  *See In

re Aloisi,* 261 B.R. at 508; *In re Paxson Elec. Co.*, 242 B.R. 67, 70-71 (Bankr. M.D. Fla. 1999).

---

[5] Section 362(d)(1) of the Bankruptcy Code provides, in pertinent part, that:

> On request of a party in interest and after notice and a hearing, the court
> shall grant relief from the stay provided under subsection (a) of this
> section, such as by terminating, annulling, modifying or conditioning such
> stay – (1) for cause, including the lack of adequate protection of an
> interest in property of such party in interest. . . .

11 U.S.C. § 362(d)(1).

35.     In this case, the totality of the circumstances favor a finding of "cause" for relief from the automatic stay.  First, the Debtors' estates will not be prejudiced by the requested relief. The FDIC-Receiver's actions will not affect the ownership of the disputed Tax Refunds and will take nothing away from the Debtor's estates.  The FDIC-Receiver's exercise of its Tax Rights would ensure that the FDIC-Receiver preserves any claim it may have to the Tax Refunds, but would not preclude the Debtor from recovering any portion of the refunds to which it may be entitled.  Even if the IRS decided to remit the Tax Refunds to the FDIC-Receiver, under the stipulation and order that has been approved by this Court, those funds will be held in the Escrow Account until the parties' respective rights can be adjudicated.

36.     Second, the FDIC-Receiver will face substantial hardship if the stay is not lifted. The Debtors' filing of a tax return, without consulting the FDIC-Receiver or taking its interest into account, will undermine the rights accorded to the FDIC-Receiver, under law, to assert a basis for a refund on account of taxes paid by, and NOLs generated by losses of, Colonial Bank and its subsidiaries.  This would work a substantial prejudice on the FDIC-Receiver, as the statutory successor to Colonial Bank.  If the FDIC-Receiver were unable to preserve its rights by invoking section 6402 of the IRC and related regulations, the Debtors could gain a windfall while the FDIC-Receiver, which represents the interests of Colonial Bank and its receivership creditors, could be hindered in its ability to seek the equitable allocation of the Tax Refunds. The FDIC-Receiver should be permitted to exercise its Tax Rights in order to (i) officially state its claim to all or a portion of the Tax Refunds to which it is entitled, and (ii) preserve its rights with respect to such a claim and prevent the possibility that the FDIC-Receiver, in not taking the action that it has a right and a statutory duty to take, could be deemed by the IRS to have waived its right to recover all or a portion of the Tax Refunds.  *See United States v. Rodrigues*, 159 F.3d

439, 448 (9th Cir. 1998) (faulting the RTC for "complain[ing] about a situation it could have prevented from arising" because it failed to exercise its right, under Treas. Reg. § 301.6402-7, to apply for the tax refunds due to the failed depository institution for which it was a conservator).

37.    Finally, although this element of the balancing test is not directly at issue here, the FDIC-Receiver is also likely to succeed on the merits of its claim to the Tax Refunds, which will be decided in litigation that is pending before the district court.  A substantial body of case law holds that a member of a consolidated group is entitled to a tax refund arising from the filing of a consolidated tax return where the refund sought constitutes either taxes paid by the consolidated tax group member or losses sustained by that member in the years at issue.  *See, e.g., Capital Bancshares v. F.D.I.C.*, 957 F.2d 203, 208 (5th Cir. 1992) (FDIC entitled to the tax refund where bank generated the losses and bank paid to the parent company a sum greater in aggregate than the disputed refund for its annual tax contribution); *In re Revco D.S., Inc.*, 111 B.R. 631 (Bankr. N.D. Ohio 1990) (income tax refund belonged to the former subsidiary member of consolidated group where the NOL was entirely attributable to the subsidiary and the refund sought represented the income taxes paid by income generated by the subsidiary); *F.D.I.C. v. Mercer Bancorp, Inc.*, No. 89-0849, 1990 WL 515173 (W.D. Mo. Dec. 5, 1990) (FDIC, as receiver of subsidiary bank, was entitled to the tax refund because the bank was the entity who overpaid the tax which the IRS refunded and the entity upon whose business losses the refund was based), *aff'd*, 579 F.2d 449 (8th Cir. 1978); *Jump v. Manchester Life & Cas. Mgmt. Corp.*, 438 F. Supp. 185 (E.D. Mo. 1977) (bankrupt subsidiary was entitled to its share of the refund generated by its losses and the unrecovered taxes it previously paid, and parent held this portion in specific trust); *F.D.I.C. v. Brandt (In re Florida Park Banks, Inc.)*, 110 B.R. 986 (Bankr. M.D. Fla. 1990) (FDIC, as receiver for bank subsidiary, was entitled to the entire tax refund of taxes previously

paid by the bank subsidiary that resulted from its NOLs); *see generally In re Bob Richards Chrysler-Plymouth Corp.*, 473 F.2d 262, 265 (9th Cir.), *cert. denied*, 412 U.S. 919 (1973).

38.     Moreover, the Debtor's mere receipt of tax refunds does not render such funds property of its estate.  The parent, as agent for the consolidated group for the purposes of administrative convenience in connection with the filing of consolidated tax returns, holds any tax refunds remitted by the IRS on account of such filing in trust for the members of the consolidated group and is under a duty to return the tax refund to the appropriate member.  *Bob Richards*, 473 F.2d at 265.[6]  Given the foregoing jurisprudence, the FDIC-Receiver meets its burden to show that "cause" may be lifted to allow the FDIC-Receiver to exercise its Tax Rights.

## III.     ANY ORDER GRANTING STAY RELIEF SHOULD INCLUDE A WAIVER OF THE 14-DAY STAY PROVIDED FOR UNDER BANKRUPTCY RULE 4001(a)(3)

39.     Cause also exists to waive the 14-day stay provided for under Bankruptcy Rule 4001(a)(3) of an order granting the FDIC-Receiver relief from the automatic stay.  Bankruptcy Rule 4001(a)(3) expressly provides the Court with discretion to grant such a waiver.[7]

40.     As previously discussed, September 15, 2010 is the deadline for the FDIC-Receiver to file refund requests, tax returns and/or amended returns to claim refunds arising from

---

[6] A bank holding company may not enter into a tax sharing agreement with its bank subsidiary that alters the *Bob Richards* rule, because such an agreement would be deemed an unsafe and unsound banking practice.  *See* Interagency Policy Statement on Income Tax Allocation In A Holding Company Structure 63 Fed. Reg. 64757 (Nov. 23, 1998).  Moreover, any intention to override the principal-agent relationship in a tax sharing agreement is not effective unless such an intention is expressly or impliedly manifested in a written agreement, and even then the court must examine the economic reality of the transaction rather than the words used.  *See BSD Bancorp, Inc. v. F.D.I.C.*, No. 93-12207-A11 (S.D. Cal. Feb. 28, 1995) (a copy of the slip opinion is attached).  Here, there is no such tax sharing agreement.  The alleged internal policy that the Debtor has argued somehow modifies the *Bob Richards* rule does no such thing, for the reasons previously noted.  *See supra* note 1.

[7] Under Bankruptcy Rule 4001(a)(3), "[a]n order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after the entry of the order, *unless the court orders otherwise*."  (Emphasis added).

the one-time opportunity to elect to use 5-year NOL carrybacks that was provided for under recent amendments to the Internal Revenue Code. Aware of this deadline, over the past eight months the FDIC-Receiver has sought the Debtor's agreement to cooperate in making such filings. The Debtor has neither refused nor agreed, but instead has allowed the months to pass to the point that this motion is now necessary.

41. Under the circumstances, waiver of the 14-day stay period provided for under Bankruptcy Rule 4001(a)(3) plainly is warranted.

## NOTICE

42. Notice of this motion is being provided to: (i) counsel for the Debtor, (ii) the Office of the Bankruptcy Administrator for the Middle District of Alabama, (iii) counsel for the Official Committee of Unsecured Creditors, (iv) counsel for the Internal Revenue Service, (v) counsel for the Alabama Department of Revenue, (vi) counsel for BB&T, and (vii) through the ECF system, those parties who have filed in this chapter 11 case a request for notice. In light of the nature of the relief requested, the FDIC-Receiver submits that no other or further notice need be provided.

## NO PRIOR REQUEST

43. No previous motion for the relief requested herein has been made to this or any other Court.

## CONCLUSION

For the foregoing reasons, the FDIC-Receiver respectfully requests that this Court enter an Order in the form attached hereto, (i) confirming that the automatic stay does not apply to the FDIC-Receiver's exercise of its Tax Rights, or alternatively, (ii) modifying the automatic stay to permit the FDIC-Receiver to exercise its Tax Rights and waiving the 14-day stay period arising under Bankruptcy Rule 4001(a)(3) that otherwise would apply, and (iii) granting the FDIC-Receiver such other and further relief as this Court may deem just and proper.

Dated: Montgomery, Alabama
   August 13, 2010

Of Counsel:

Kathryn R. Norcross
Senior Counsel

Jeffrey E. Schmitt
Counsel

Federal Deposit Insurance Corporation
3501 Fairfax Drive
Arlington, Virginia  22226
(703) 562-2429

Respectfully submitted,

 _/s/ Michael A. Fritz, Sr._____
Michael A. Fritz, Sr.
michael@fritzandhughes.com
Fritz & Hughes LLC
7020 Fain Park Drive Suite 1
Montgomery, AL 36117
(334) 215-4422

John J. Clarke, Jr.
Thomas R. Califano
Jeremy R. Johnson
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York  10020-1104
(212) 335-4500


Attorneys for the
  Federal Deposit Insurance Corporation,
  as Receiver for Colonial Bank

**EXHIBIT A**
**(Form of Order)**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| **THE COLONIAL BANCGROUP, INC.,** | Case No. 09-32303(DHW) |
| Debtor. | |

Upon consideration of the motion (the "Motion") dated August ___, 2010 of the Federal Deposit Insurance Corporation, as receiver for Colonial Bank (the "FDIC-Receiver"), seeking entry of an order confirming that the automatic stay does not apply to the FDIC-Receiver's exercise of its Tax Rights (as defined below), or, in the alternative, relief from the automatic stay pursuant to section 362(d) of title 11 of the United States Code (the "Bankruptcy Code"), to the extent that it is deemed to apply, so that the FDIC-Receiver may exercise those Tax Rights, as provided for under section 6402(k) of Title 26 of the United States Code (the "Internal Revenue Code") and 26 C.F.R. § 301.6402-7 ("Treas. Reg. § 301.6402-7"); and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need to be provided; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtor's estate, its creditors, and all parties in interest; and the Court having determined that the legal and factual basis set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings before the Court and after due deliberation and sufficient cause appearing therefor,

It is hereby **ORDERED**:

1.      The Motion is granted.

2.     The Court finds that automatic stay provided for under 11 U.S.C. § 362 does not apply to (i) the FDIC-Receiver's exercise of its rights under section 6402(k) of the Internal Revenue Code and Treas. Reg. § 310.6402-7 to file a claim for a refund and/or file a loss return as a fiduciary of Colonial Bank, and any amendments to prior year's returns as may be permitted under law, and to take such other actions as may be necessary to protect and preserve the FDIC-Receiver's claim to tax refunds (collectively, the "<u>Tax Rights</u>") and (ii) the FDIC-Receiver's taking of such other actions as may be necessary in connection therewith.

3.     In the alternative, and to the extent that the automatic stay as provided in 11 U.S.C. § 362 is deemed to apply to the FDIC-Receiver's exercise of its Tax Rights, the Court finds that cause exists to modify the automatic stay and, pursuant to 11 U.S.C. § 362(d), the automatic stay is hereby modified to permit the FDIC-Receiver to exercise the Tax Rights .

4.     This Order shall be deemed effective immediately upon entry and the stay otherwise provided by Bankruptcy Rule 4001(a)(3) is waived.

5.     Any Tax Refunds received by the Debtor or the FDIC-Receiver shall be deposited into the escrow account established pursuant to the Order of this Court entered on March 10, 2010 [Docket No. 620], with all rights of the FDIC-Receiver and the Debtor fully preserved as set forth in that stipulated order.

###

**EXHIBIT B**
**(Slip opinion, *BSD Bancorp, Inc. v. F.D.I.C.*, No. 93-12207-A11 (S.D. Cal. Feb. 28, 1995)**

FEB 28 199?

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| In re | Case Number 93-12207-A11 |
| BSD BANCORP, INC., | DIST. CT. CASE NO. 94-1341-IEG |
| Debtor. | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND ORDERING FURTHER BRIEFING ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DOC. # 2] |
| BSD BANCORP, INC., | |
| Plaintiff, | |
| v. | |
| FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for the Bank of San Diego, | |
| Defendant. | |
| FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for the Bank of San Diego, | |
| Counterclaimant, | |
| v. | |
| BSD BANCORP, INC., | |
| Counterdefendant. | |

1

## BACKGROUND

BSD Bancorp Inc. ("Bancorp") was the corporate parent of the Bank of San Diego ("Bank"). On October 29, 1993, the Federal Deposit Insurance Corporation ("FDIC") was appointed receiver for the Bank. On November 3, 1993, Bancorp filed a petition under Chapter 11 of the Bankruptcy Code.

Bancorp and the corporations which it controlled, including the Bank, filed their tax returns as a consolidated group. When a group of affiliated corporations elects to file their tax returns as a consolidated group, the entire group is subject to one annual tax liability. Losses in one company can be offset against profits in another for purposes of computing this tax liability, and many intercompany transfers have no direct effect on tax liability. The group's parent corporation files the return, pays the tax, receives any refunds, and deals with the IRS generally. The corporations in the group are each severally liable for the entire amount of the tax. See generally Boris I. Bittker & James S. Eustice, Federal Taxation of Corporations and Shareholders ¶ 13.43 (6th ed. 1994).

Shortly after its bankruptcy filing, Bancorp received federal and state tax refunds totalling about $2 million. Those refunds are said to be Bancorp's primary asset. The refunds were concededly based on prior tax payments attributable to the Bank's earnings, and have been kept in a segregated account. The FDIC

///
///
///
///

2

1 filed a contingent claim against Bancorp in the bankruptcy
2 court,[1] contending that Bancorp held the tax refunds in trust for
3 the Bank and that they were thus not property of the bankruptcy
4 estate.

5      On March 24, 1994, Bancorp initiated an adversary proceeding
6 in the bankruptcy court against the FDIC as receiver of the Bank,
7 seeking a declaration that the tax refunds are property of the
8 estate and the avoidance of a number of prepetition payments
9 which Bancorp made to the Bank.  This Court withdrew the
10 reference on August 8, 1994.  Bancorp has now filed a motion for
11 summary judgment on its first declaratory judgment claim.  The
12 FDIC has filed a cross-motion for partial summary judgment.

13                              DISCUSSION

14 A.   Debt or Trust?

15      There is no dispute that Bancorp owes all or most of the
16 refund money to the Bank.  The primary issue here is whether this
17 is an ordinary debt or a sum of money which Bancorp holds in
18 trust for the Bank.  If the debt is an ordinary debt, the FDIC
19 has to share the refund money with Bancorp's other creditors in
20 bankruptcy.  If the money is held in trust, on the other hand,
21 ///
22
23
24      [1]The FDIC also tried to get the IRS to pay the federal
   refunds directly to it by following the procedure set out in
   Treas. Reg. § 301.6402-7.  That rule establishes a special
25 procedure by which the FDIC and other receivers for insolvent
   financial institutions can arrange to receive the institutions'
26 share of refunds owed to consolidated groups directly.  Bancorp
   contends that by invoking this procedure, the FDIC violated the
27 automatic stay.  At any rate, the FDIC was unsuccessful; the IRS
   paid the refunds to Bancorp.
28

                                    3

under 11 U.S.C. § 541(d) it is not part of the bankruptcy

estate,[2] and Bancorp has to hand it over to the FDIC.

In re Bob Richards Chrysler-Plymouth Corp., 473 F.2d 262,

265 (9th Cir. 1973), held that the parent of a consolidated group

acts as an agent for the rest of the group in collecting taxes

and refunds.  The court based this holding on Treas. Reg. §

1.1502-77, which provides that the parent corporation is an agent

of the remaining corporations for a number of purposes set out in

detail in the regulation.  This holding is thus apparently

federal common law.

Furthermore, because of the agency relationship, the parent

corporation holds the money owing to the subsidiaries in trust

for them.  473 F.2d at 265.  This accords with the general

principle that when an agent "is vested with the title to

property that he holds for his principal, he is also a trustee."

1 Austin W. Scott & William F. Fratcher, The Law of Trusts § 8,

at 95 (4th ed. 1987).[3]

The rules of Bob Richards would seem to resolve the issue

and lead to the conclusion that Bancorp holds the refunds in

trust.  Bancorp argues, however, that because it entered into a

---

[2]Ninth Circuit cases applying 11 U.S.C. § 541(d) have said
that assets held in trust might nonetheless be property of the
bankruptcy estate if the state law creating the trust was
contrary to federal bankruptcy policy.  See, e.g., In re Unicom,
13 F.3d 321, 325 & n.6 (9th Cir. 1994).  No case has yet
considered whether this "policy override" would apply to a trust
arising under federal law.

[3]The Third Circuit recently declared a similar federal
common law trust over certain refunds that a bankrupt gas
pipeline held for its customers pursuant to an order of the
Federal Energy Regulatory Commission.  In re Columbia Gas Sys.
Inc., 997 F.2d 1039, 1055-61 (3d Cir. 1993).

4

1  tax sharing agreement with the Bank, their relationship was

2  transformed in such a way that it holds the money as a debtor and

3  not in trust.  The FDIC attacks this tax allocation agreement on

4  a number of grounds.

5  B.   The Tax Allocation Agreement

6       Bancorp, the Bank, and other affiliated corporations entered

7  into a tax sharing agreement in 1991.  (Pl.'s Ex. 17.)  Their

8  boards of directors ratified it.  There are also some similar

9  agreements pertaining to earlier time periods.  The agreement

10 provides, in relevant part:

> Any subsidiary incurring an annual loss on a tax basis that
> results in a tax benefit on the consolidated return shall be
> reimbursed in cash in an amount determined in a manner
> consistent with the allocation of taxes to profitable
> subsidiaries.  Refunds due subsidiaries from the Company
> which cannot be fully funded when due then will be carried
> on the subsidiary's books as a "loan to parent" and will
> accrue interest at not less than the Federal Funds Rate.
> The occurrence of this event is unusual and its likelihood
> of happening is considered remote.  All loans between parent
> and subsidiary will be in accordance with applicable federal
> regulations regarding affiliate transactions.

18      The parties have proffered no extrinsic evidence bearing on

19 the interpretation of this contract.  The Court consequently

20 interprets it as a matter of law.  Cf. Southland Corp. v. Emerald

21 Oil Co., 789 F.2d 1441, 1443 (9th Cir. 1986).

22      Before interpreting the tax sharing agreement, however, it

23 is necessary to consider the FDIC's contentions that portions or

24 all of it are invalid.  It is convenient for these purposes to

25 consider two relevant aspects of the agreement separately.

26 First, the agreement appears to establish some guidelines for how

27 tax liabilities and refunds are allocated.  These will be

28 referred to as the "allocation guidelines."  Second, the

5

1  agreement appears to allow Bancorp to defer payment of refunds
2  by, in effect, "borrowing" the refund from the subsidiary.  This
3  will be referred to as the "line of credit."  Separate
4  consideration of these two portions of the agreement is useful
5  because "[t]he California cases take a very loose view of
6  severability, enforcing valid parts of an apparently indivisible
7  contract where the interests of justice or the policy of the law
8  . . . would be furthered."  1 B.E. Witkin, Summary of California
9  Law: Contracts § 432 (9th ed. 1987).

10  C.   Validity of the Tax Allocation Agreement

11       The FDIC argues that the agreement is invalid or not binding
12  on the FDIC for a number of reasons:[4]

13       1)   12 U.S.C. § 1823(e).  That subsection provides that

14       No agreement which tends to diminish or defeat the interest
         of the [FDIC] in any asset acquired by it . . . as receiver
15       of any insured depository institution, shall be valid
         against the [FDIC] unless such agreement--

16       . . .
         (B) was executed by the depository institution and any
17       person claiming an adverse interest thereunder, including
         the obligor, contemporaneously with the acquisition of the
18       asset by the depository institution . . . .

19  The FDIC argues that the agreement violates 12 U.S.C. § 1823(e)
20  because it is not "contemporaneous[] with the acquisition of the
21  asset by the depository institution."

22       If one views the "asset" as the refunds, this view seems
23  literally correct, since the refunds were paid long after the
24  agreement took effect.  However, this reasoning would ban all tax

25  _____

26       [4]Even if the agreement is binding, the FDIC as receiver
    appears to have the power to repudiate it under 12 U.S.C. §
27  1821(e).  The FDIC does not argue this issue, however, so it need
    not be considered further.

28

                                 6

1  allocation agreements because such agreements necessarily have to

2  be prospective.  "[S]atisfaction of the contemporaneousness

3  requirement should be considered in light of commercial reality."

4  RTC v. Midwest Fed. Sav. Bank, 4 F.3d 1490, 1501 (9th Cir. 1993).

5  In this case, it is consistent with commercial reality, and with

6  the FDIC's own recommendations, for consolidated groups of

7  corporations to enter into prospective tax allocation agreements.

8  It is likewise consistent with commercial reality for banks to

9  approve lines of credit in advance of the actual borrowing.

10  Consequently, the Court finds that § 1823(e) does not prevent the

11  tax allocation agreement from binding the FDIC.[5]

12      2)   The Common Law D'Oench Duhme Doctrine.  The common-law

13  D'Oench Duhme doctrine largely overlaps with 12 U.S.C. § 1823(e).

14  However, "[f]or D'Oench Duhme to apply, there at least must be a

15  showing that the [borrower] lent himself to a scheme or

16  arrangement whereby the banking authority . . . was or was likely

17  to be misled."  Murphy v. FDIC, 38 F.3d 1490, 1498 (9th Cir.

18  1994) (en banc) (internal quotation marks omitted).  Here, the

19  agreement was sufficiently explicit that the FDIC could not have

20  been misled as to Bancorp's potential right to "borrow" the

21  refunds.  The FDIC in fact knew in early 1993 that the

22

23      [5]The FDIC also argues that the ratification by the board of
    directors is ineffective because the tax portion of the agreement

24  was an addendum to the agreement as adopted by the board.  The
    addendum was incorporated by reference, however, and it appears

25  that an explicit incorporation by reference suffices for §
    1823(e).  See FDIC v. Kasal, 913 F.2d 486, 491 (8th Cir. 1991);

26  see also RTC v. Midwest Fed. Sav. Bank, 4 F.3d 1490, 1501 (9th
    Cir. 1993) (§ 1823(e) "does not require that such agreements be

27  confined to the face of any one particular lending/borrowing
    document") (quoting RTC v. Oak Apts. Joint Venture, 966 F.2d 995,

28  999 (5th Cir. 1992)).

7

1 arrangements for passing tax refunds through Bancorp were a

2 source of potential problems. (Pl.'s Ex. 19.)

3        3)    Indefiniteness.  The FDIC also contends that the tax

4 allocation agreement is too indefinite to be binding.  It cites

5 In re Florida Park Banks Inc., 110 B.R. 986 (Bankr. M.D. Fla.

6 1989), where the consolidated group had a "policy" regarding tax

7 allocation.  The court there found that the policy did not rise

8 to the level of an agreement that could override the rule of Bob

9 Richards, so the FDIC got the tax refund.

10       The tax allocation guidelines at issue here are extremely

11 vague.  They state that loss-making subsidiaries will receive tax

12 benefits "in an amount determined in a manner consistent with the

13 allocation of taxes to profitable subsidiaries" (emphasis added).

14 The agreement also provides that tax payments by profitable

15 subsidiaries "will be calculated based on the individual

16 subsidiary's stand-alone estimated payment liability" (emphasis

17 added).

18       The line of credit provision in the agreement is not as

19 vague.  However, nothing is said about how long Bancorp may

20 continue to hold on to the borrowed funds.  The interest rate

21 must be "not less than the Federal Funds Rate," but the actual

22 rate is not specified.

23       California courts are tolerant of indefinite terms in

24 contracts.  Thus, for example, courts may fill in an omitted

25 duration term.  1 Witkin, supra, § 152.  The interest rate could

26 be implied from that which comparable borrowers pay.  The

27 allocation guidelines may be seen as setting very broad outer

28 limits to how the tax burdens and benefits are spread, excluding,

8

1  for example, payments utterly unrelated to an individual

2  subsidiary's stand-alone payment liability. Consequently, the

3  tax allocation guidelines and line of credit provisions of the

4  tax allocation agreement are not so indefinite as to be

5  unenforceable.

6      4)  <u>Lack of Consideration.</u>  The FDIC also contends that the

7  agreement lacked consideration to the Bank. Consideration may be

8  any benefit however small or contingent. Consolidated group tax

9  reporting offered the Bank at least the possibility of lower tax

10  burdens as a consequence of the benefits of consolidation

11  discussed extensively in the FDIC's own papers. This is

12  sufficient consideration for the tax allocation agreement.

13      5)  <u>Illegality.</u>  The FDIC appears to argue that the tax

14  refund line of credit from the Bank to Bancorp is contrary to

15  applicable law and regulations. However, the tax allocation

16  agreement itself provides that credit will be extended only in a

17  way consistent with applicable regulations, which would seem to

18  cure any possible illegality.

19  <u>D.  Effect of the Agreement on the Agency and Trust Relationship</u>

20      Having concluded that the tax allocation agreement is

21  binding on the FDIC, it is now necessary to consider whether the

22  agreement destroys the principal-agent relationship recognized in

23  <u>Bob Richards</u>, <u>supra</u>.

24      Bancorp first contends that the very existence of a tax

25  allocation agreement destroys the principal-agent relationship.

26  It bases this contention on the fact that there was no such

27  agreement in <u>Bob Richards</u>. However, this is an excessively

28  ///

9

narrow interpretation of that case. This Court interprets <u>Bob Richards</u> as holding that unless the corporations in a consolidated group agree otherwise, the parent acts as their agent for payment of tax and refunds. This rule is like many other gap-filling rules in contract law which provide a default in the absence of applicable agreement by the parties, e.g. U.C.C. § 2-205 (offer by merchant in signed writing irrevocable "during the time stated or if no time is stated for a reasonable time"). Parties to a contract do not override a gap-filling rule simply by reaching explicit agreement on some other matter. Rather, the terms of their agreement must expressly or impliedly override the gap-filling rule itself. It is thus necessary to consider whether the terms of the tax allocation agreement expressly or impliedly override the <u>Bob Richards</u> principal-agent relationship.

Bancorp points to the language "[a]ny subsidiary incurring an annual loss on a tax basis that results in a tax benefit on the consolidated return shall be reimbursed in cash" in the tax allocation agreement. It contends that the use of the word "reimbursed" indicates that a debtor-creditor relationship was intended. It also argues that the refunds owing the Bank were recorded as a "receivable" on its books. It cites <u>In re Franklin Sav. Corp.</u>, 159 B.R. 9, 29 (Bankr. D. Kan. 1993), where the court relied on the words "reimbursement" and "credits" to conclude that a tax allocation agreement established a debtor-creditor relationship.

In deciding whether a transaction intended to create a debtor-creditor relationship, however, a court must examine the

1   economic reality of the transaction rather than the words used.

2   See In re Woodson Co., 813 F.2d 266, 272 (9th Cir. 1987).   The

3   economic reality here is that, except in the "unusual"

4   circumstances in which the agreement allowed Bancorp to borrow

5   the refund, the agreement required Bancorp to give the Bank its

6   share of the refund in cash and immediately.   This strongly

7   suggests an intent to maintain a principal-agent relationship

8   unless Bancorp borrowed the refund pursuant to the terms of the

9   agreement.

10      Furthermore, the agreement itself recognizes that any loan

11  from the Bank to Bancorp would be subject to regulations

12  governing loans to affiliates.   Although the parties do not

13  discuss these regulations in their papers,[6] it appears that 12

14  U.S.C. § 371c(c)(1) applies here.   That subsection forbids

15  unsecured loans from a Federal Reserve member bank to its holding

16  company, while § 371c(e) allows the Federal Reserve Board to

17  authorize such loans by regulation or order.   12 U.S.C.

18  § 1828(j)(1) extends the restrictions of § 371c to all federally

19  insured banks.   For a debtor-creditor relationship to arise

20  _____

21      [6]Bancorp does attach as an exhibit to its complaint some
    excerpts from an FDIC examination manual containing an extensive

22  discussion of § 371c.   (Pl.'s Ex. 4, at 8-11.)   The FDIC cites
    Lincoln Savings & Loan Association v. Wall, 743 F. Supp. 901

23  (D.D.C. 1990), where the court upheld the Federal Home Loan Bank
    Board's decision to put Charles Keating's thrift into

24  receivership.   In doing so, the court found that an agreement
    requiring the thrift to make large payments to its parent,

25  ostensibly for the purpose of paying the consolidated group's tax
    liability, fell afoul of the then-existing regulatory

26  restrictions on a thrift's lending to its parent.   Lincoln
    Savings, 743 F. Supp. at 908-11.   Those restrictions (then

27  codified at 12 C.F.R. § 583.4 (1986), and since repealed) were
    similar to those in 12 U.S.C. § 371c.

28

11

1  between Bancorp and Bank, then, there would presumably have to be

2  some further agreement through which Bancorp supplied collateral

3  meeting the requirements of § 371c(c)(1).

4       The Court consequently holds that the tax allocation

5  agreement intended to abrogate the principal-agent relationship

6  between Bank and Bancorp only when Bancorp borrowed the refunds

7  from Bank under the terms of the agreement.  Bancorp holds Bank's

8  share of the refunds in trust, as the Bank's agent, unless and

9  until Bancorp borrows them under the terms of the agreement.

10      There remains the question whether Bancorp could properly

11 borrow the refunds at issue here under the terms of the

12 agreement.  The language of the agreement itself provides the

13 answer.  Bancorp is allowed to borrow "[r]efunds . . . which

14 cannot be fully funded when due."  Bancorp received the refunds

15 at issue here in cash and placed them in a segregated account.

16 Therefore, it had the wherewithal to pay the refunds immediately

17 to the Bank.  The requirement that the refunds "cannot be fully

18 funded" was thus not met here.  Bancorp had no right to borrow

19 the refunds under the tax allocation agreement, and it therefore

20 continued to hold them in trust.[7]  Bancorp's motion for summary

21 judgment is thus DENIED.

22 E.   Funds in the Segregated Tax Refund Account

23      The FDIC's cross-motion for summary judgment seeks an order

24 directing that the whole of Bancorp's segregated tax refund

25 account be turned over to it.  To decide this motion, it is

26 ───────────────

27      [7]It is also possible that Bancorp had no right to borrow the
   refunds from the Bank because its doing so would be inconsistent

28 with applicable regulations.

12

necessary to determine what portion of that money represents
refunds owed to the Bank.

The Court does not believe that the parties have adequately
briefed the issue of what share of the refunds belongs to the
Bank. The resolution of that issue depends on how refunds
received by Bancorp are supposed to be allocated to other members
of the consolidated group. The tax allocation agreement may shed
some light on this question. Background rules of law, such as
those stated in Bob Richards, may also shed light on this
question. The Court consequently directs the parties to provide
further briefing on what share of the refunds belongs to the
Bank. The FDIC is to file an additional brief, no longer than 25
pages, by March 13, 1995. Bancorp may file an opposition by
March 27, 1995. The FDIC may file a 10-page reply by April 3,
1995. At that point, the Court may decide the FDIC's motion for
partial summary judgment on the papers, or it may schedule an
additional hearing.

F. Objections to Evidence

Bancorp objects extensively to the declaration of Carol
Turner filed by FDIC. The primary objection is that Ms. Turner
is rendering inadmissible lay opinion. Ms. Turner states that
she has worked for over fourteen years as a tax accountant for
the FDIC. This would normally justify her testifying as an
expert on tax accounting. The objections on the ground of
inadmissible lay opinion are thus overruled.

Ms. Turner's declaration appears to rely on tax records of
the Bank of San Diego. Such documents are admissible hearsay
under Fed. R. Evid. 803(6). Expert witnesses are also permitted

13

1  to rely on inadmissible evidence if "of a type reasonably relied
2  on by experts in the particular field." Fed. R. Evid. 703.
3  Hearsay objections to Ms. Turner's declaration are thus
4  overruled.
5      Ms. Turner's declaration contains expert opinion on pure
6  questions of law. The declaration of Diane L. Gilabert filed by
7  Bancorp also contains expert opinion on questions of law. Expert
8  opinion on questions of law is inappropriate. United States v.
9  Brodie, 858 F.2d 492, 496 (9th Cir. 1988). The Court has reached
10  an independent conclusion on all questions of law and has not
11  taken expert opinion as authoritative on such issues.
12      Bancorp has also filed evidentiary objections to the FDIC's
13  memorandum of points and authorities. A memorandum of points and
14  authorities is not evidence and evidentiary objections to it are
15  inappropriate.
16  G.  Conclusion
17      Bancorp's motion for summary judgment on its first claim is
18  DENIED. The FDIC's motion for partial summary judgment is
19  continued pending further briefing as directed by this order.
20      IT IS SO ORDERED.
21
22  Dated:  _Feb. 28, 1995_            _Irma E. Gonzalez_
23                                   IRMA E. GONZALEZ
                                     United States District Judge
24
25
26
27
28

14

1   Copies distributed/mailed to:

2   JEFFREY ISAACS ESQ
    GERALD P KENNEDY ESQ
3   MARTINA MENDE ESQ
    PROCOPIO CORY HARGREAVES AND SAVITCH
4   530 B ST STE 2100
    SAN DIEGO CA 92101

5
    SCOTT HUGHES ESQ
6   FEDERAL DEPOSIT INSURANCE CORPORATION
    LEGAL DIVISION
7   4 PARK PLAZA
    IRVINE CA 92715

8
    ANTHONY J DAIN ESQ
9   DAIN & LI
    555 WEST BEECH ST STE 222
10  SAN DIEGO CA 92101

11  MICHAEL F DUHL ESQ
    JOHN L ROGERS ESQ
12  HOPKINS & SUTTER
    THREE FIRST NATIONAL PLAZA STE 4100
13  CHICAGO IL 60602

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28