# UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

```
-----------------------------------------------------------x
                                        :
In re                                   :        Chapter 11
                                        :
THE COLONIAL BANCGROUP, INC.,           :        Case No.   09-32303 (DHW)
                                        :
        Debtor.                         :
                                        :
-----------------------------------------------------------x
                                        :
                                        :
THE COLONIAL BANCGROUP, INC.,           :
                                        :
        Movant,                         :
                                        :
v.                                      :        CONTESTED MATTER
                                        :
PATRICIA CHONG, MICHELLE                :
CONDON, HOWARD DAVIS, KENNETH           :
DELISLE, LISA FREE, ERNESTO             :
GONZALEZ, WALTER HARGROVE,              :
PATTI  HILL, CHARLES MALCOLM            :
HOLLAND, III, LEAH JUNKINS, KERRY       :
KIMMEL-GEIGER, CATHERINE                :
KISSICK, LINA MACKI, LEE MARTINO,       :
KENNETH MCCONWELL, JUDY MILLS,          :
WILLIAM PAINTER, HARLAN PARRISH,        :
RONALD PECK, JOSEPH ROYALS,             :
JULIETTE STAPF, JAMES THARPE,           :
AND PAMELA VITTO,                       :
                                        :
        Respondents.                    :
                                        :
-----------------------------------------------------------x
```

## DEBTOR'S MOTION TO APPROVE SETTLEMENT
## AGREEMENT BETWEEN DEBTOR AND CERTAIN PARTICIPANTS
## IN DEBTOR'S NON-QUALIFIED DEFERRED COMPENSATION PLAN

PURSUANT TO LBR 9007-1, THIS MOTION WILL BE TAKEN UNDER ADVISEMENT BY THE COURT AND MAY BE GRANTED UNLESS A PARTY IN INTEREST FILES A RESPONSE WITHIN 21 DAYS OF THE DATE OF SERVICE. RESPONSES MUST BE FILED WITH THE CLERK AND SERVED UPON THE MOVING PARTY. RESPONSES MUST BE FILED ELECTRONICALLY WITH THE CLERK OR BY U.S. MAIL ADDRESSED TO THE CLERK, U.S. BANKRUPTCY COURT, ONE CHURCH STREET, MONTGOMERY ALABAMA 36104.

TO:     The Honorable Dwight H. Williams, Jr.,
        United States Bankruptcy Judge:

The Colonial BancGroup, Inc. (the "Debtor"), as debtor and debtor in possession herein, by this motion (the "Motion") seeks entry of an order pursuant to Section 105 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9007-1 of the Local Rules of this Court, approving the Settlement Agreement, attached hereto as Exhibit A (the "Settlement Agreement") between the Debtor and certain participants in the Debtor's non-qualified deferred compensation plan (the "Settling Plan Participants")[1] and, pursuant to the terms thereof, to resolve the above-captioned contested matter.

In support of this Motion, the Debtor states and shows as follows:

## Background

1.      On August 25, 2009 (the "Petition Date"), the Debtor filed with this Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor continues to own its assets and operate its business as debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

2.      The Debtor is a corporation formed under the laws of the State of Delaware and, prior to the Petition Date, was headquartered and conducted business at 100 Colonial Bank Boulevard, Montgomery, Alabama 36117.

## Deferred Compensation Plan and Trust Agreement

3.      On or about November 2, 2007, the Debtor executed, and established effective as of January 1, 2006, "The Colonial BancGroup, Inc. Non-Qualified Deferred Compensation Plan" (the "Plan").

4.      On or about January 4, 2006, the Debtor, as grantor, and The Charles Schwab Trust Company, as trustee (the "Trustee"), entered into The Charles Schwab Nonqualified Deferred Compensation

---

[1] As will be discussed more fully herein, the "Settling Plan Participants" include all of the Respondents in the above-captioned matter and those participants in the Debtor's non-qualified deferred compensation plan who opt in to the Settlement Agreement pursuant to the terms and conditions thereof.

Case 09-32303    Doc 898    Filed 09/17/10    Entered 09/17/10 12:27:39    Desc Main
                        Document       Page 2 of 37

Plan Trust Agreement (the "Trust Agreement"). Pursuant to the Trust Agreement, the Debtor transferred to the Trustee the aggregate compensation deferrals elected by Plan participants pursuant to the Plan (collectively, the "Plan Assets").

5. The Debtor is informed by the Plan's administrator, Milliman, Inc. (the "Plan Administrator"), that as of the Petition Date, there were seventy-seven (77) individuals participating in the Plan.

6. As of the Petition date, the aggregate value of the Plan Assets held under the Trust Agreement was approximately $1,900,000. As of this Motion, the Debtor is informed that the aggregate value of the Plan Assets is approximately $2,000,000.

## Jurisdiction and Venue

7. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this Chapter 11 case and this Motion in this district is appropriate pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief sought herein are Section 105 of the Bankruptcy Code and Bankruptcy Rule 9019(a).

## Procedural Overview

**(a)    First Plan Assets Motion**

8. On or about September 14, 2009, the Debtor filed with the Court its *Motion of Debtor for an Order Pursuant to Sections 105(a) and 363 of the Bankruptcy Code Authorizing, But Not Directing, the Debtor to Exercise its Ownership Rights Over Deferred Compensation Plan Assets* (the "First Plan Assets Motion") [Doc. No. 83].

9. The First Plan Assets Motion was set for hearing on October 6, 2009. No objections were made to the First Plan Assets Motion or the relief requested therein.

10. At the time of the filing of the First Plan Assets Motion, counsel for the Debtor was not aware of the existence of the Trust Agreement. Counsel for the Debtor first became aware of the Trust Agreement and its contents shortly prior to the October 6, 2009 hearing on the First Plan Assets Motion. Based upon Debtor's counsel's review of the Trust Agreement, counsel became concerned that there might be non-

qualified deferred compensation plans, other than the Plan, whose assets were contributed under the Trust Agreement or that there might be Adopting Employers (as defined in the Trust Agreement) that became obligated under the Plan, in either of which events an argument might be made that some or all of the Plan Assets constitute assets of one or more entities other than the Debtor.

11.     Counsel for the Debtor advised the Court of the existence of the Trust Agreement and counsel's concern that, despite the fact that no objection had been made to the First Plan Assets Motion, the granting of the relief requested therein might be inappropriate pending further investigation.  As a result, the Court, at the Debtor's request, entered a limited order [Doc. No. 191] that preserved the status quo with respect to all Plan Assets pending further order of the Court, but providing that no withdrawal of Plan Assets from the trust was authorized until the entry of further order of the Court.

12.     After additional investigation, the Debtor determined that there were no other non-qualified deferred compensation plans whose assets have been contributed to the Trustee under the Trust Agreement and that there were no Adopting Employers who incurred liability under the Plan.

**(b)     Second Plan Assets Motion**

13.     On November 5, 2009, the Debtor filed with the Court its *Second Motion of Debtor for Order Authorizing, But Not Directing, the Debtor to Exercise Ownership Rights Over Deferred Compensation Plan Assets* (the "Second Motion") [Doc. No. 255] in which the Debtor requested the Court to enter an order determining that, pursuant to Section 363(b)(1) of the Bankruptcy Code, the Debtor was authorized to exercise ownership rights over the Plan Assets.

14.     On November 18, 2009, the Court entered an Order [Doc. No. 303] and a Notice of Continued Hearing and Objection Deadline [Doc. No. 302] directing the Debtor to serve the Second Motion upon various parties in interest, including, but not limited to, Respondents and all other participants in the Plan, and notifying all interested parties that objections to the relief requested in the Second Motion were required to be filed no later than December 8, 2009 (the "Objection Bar Date").

15.     The only parties in interest who filed objections to the relief requested in the Second Motion prior to the Objection Bar Date were Respondents.[2]

**(c)     Summary of Objection**

16.     In their Objection, Respondents asserted, among other things, that substantially all of the participants in the Plan (including most of Respondents) were employees of Colonial Bank; the compensation that was deferred by such Plan participants pursuant to the Plan was, for the most part, compensation payable to them by Colonial Bank; Respondents were 100% "vested" in all compensation deferred by them under the Plan and was due and payable to them at the time of their termination from employment with Colonial Bank (i.e., the date of the receivership, August 14, 2009); the Plan is not a true "top hat" plan because it was not limited to employees who were "highly compensated" employees of the Debtor and/or Colonial Bank; the Plan Assets consisting of deferrals of compensation made by employees of Colonial Bank do not constitute assets of the Debtor; and none of the Plan Assets are subject to the claims of creditors of the Debtor's Chapter 11 estate but rather are assets of the Plan participants.

**(d)     Discovery by Parties; Stipulation**

17.     Following the filing and service of the Objection, the parties engaged in various discovery, including (i) the Debtor's request for admissions, interrogatories, requests for production of documents and depositions of Respondents Lisa Free, Michelle Condon and Patti Hill, and (ii) Respondents' request for admissions, requests for production of documents and deposition of Simuel Sippial, Jr., the chairman of the Debtor's board of directors.

---

[2]  The Respondents initially consisted of all of the Respondents referenced in the above-captioned matter.  Respondents' counsel requested in March of 2010 that the Debtor allow two additional Plan participants, John Burke and Justin McCarthy, to join in the Objection.  Although these two additional Plan participants did not timely file an objection to the Second Motion, but attempted to join in the objection of the Respondents who did file a timely objection, the Debtor did not oppose their joinder solely on the basis of the untimeliness of their objection.  The Debtor did object to their joinder absent full and timely responses to discovery that the Debtor served upon all of the other Respondents, which the Debtor never received.  The Debtor believes that Respondents' counsel has never added these additional Plan participants to any pleading filed in this contested matter, leaving the number of named Respondents at twenty-three (23). Respondents' counsel has represented, however, that all twenty-five (25) of their clients have agreed to the settlement described herein.

18.     On or about April 14, 2010, the parties entered into a stipulation for the purpose of narrowing certain disputed issues, a copy of which was annexed as Exhibit A to the Debtor's *Brief in Support of Second Motion of Debtor for Order Authorizing, But Not Directing, the Debtor to Exercise Ownership Rights Over Deferred Compensation Plan Assets* [Doc. No. 663].

**(e)     Hearing; Post-Hearing Submissions**

19.     On April 15, 2010, the Court held an evidentiary hearing on the Second Motion (the "Hearing").

20.     Following the Hearing, the parties submitted designations of deposition testimony that they requested the Court to review and post-Hearing briefs.

**(f)     Court's Order and Memorandum Opinion**

21.     On June 25, 2010, the Court entered an Order granting the relief requested in the Second Motion (the "Order") [Doc. No. 777] and issued a Memorandum Opinion setting forth the reasons therefor [Doc. No 776].

**(g)     Respondents' Motions to Reconsider; Appeal and Requests for Stay Pending Appeal**

22.     On July 6, 2010, Respondents filed a motion requesting the Court to reconsider its Order granting the relief requested in the Second Motion and sought a stay of proceedings to enforce the Order pending appeal (the "Motion to Reconsider") [Doc. No. 800].  Respondents devoted the bulk of the Motion to Reconsider on their analysis of Section 541(b)(7) of the Bankruptcy Code, arguing that the Plan Assets were excluded from, and therefore did not constitute property of, the Debtor's bankruptcy estate.

23.     After a hearing before the Court on July 19, 2010, the Court denied the Motion to Reconsider, rejecting Respondents' analysis (the "Reconsideration Order") [Doc. No. 821].

24.     On August 2, 2010, Respondents filed a notice of appeal with this Court (the "Appeal") [Doc. No. 825] of the Reconsideration Order and renewed their request for a stay of proceedings pending appeal

[Doc. No. 828]. After a hearing before this Court on August 9, 2010, the Court stayed the enforceability of the Order, with certain provisos [Doc. No. 834].[3]

## Basis for Settlement and Relief Requested

25.     Subject to Court approval, the Debtor and Respondents have now determined that it is in their mutual best interests to reach a settlement of this contested matter. Should the Court approve the Settlement Agreement, fifty-two (52) Plan participants (those participants who are not Respondents) will have an opportunity to share in the proceeds of this settlement on the same terms as Respondents.[4] Pursuant to Section 105 of the Bankruptcy Code and Bankruptcy Rule 9019(a), the Debtor respectfully requests that this Court approve the terms of the Settlement Agreement.

26.     The Settlement Agreement sets forth and controls the terms of the settlement. All interested parties should review carefully the precise terms of the Settlement Agreement for a full and accurate understanding of the settlement. **In the event of any inconsistency between the Settlement Agreement and the summary contained below, the terms of the Settlement Agreement shall govern and control**. However, for the convenience of the Court and parties in interest, the Debtor has attempted to summarize the main components of the proposed settlement:

---

[3] The provisos states as follows:

　　1.     The debtor is authorized, but is not required to exercise ownership rights over the deferred compensation plan assets. To the extent the debtor liquidates the funds in the [Trustee's] account, the debtor shall place the funds in a debtor-in-possession account segregated from other funds.

　　2.     Effective [August 9, 2010], the employees who deferred the funds into the plan shall not conduct any further trading in their individual accounts.

　　3.     The debtor is not responsible to the respondents, in the event of a reversal on appeal, for any decline in the balance of the funds due to market fluctuation.

[4] Were it not for the Objection filed by Respondents' counsel, Plan participants would not have an opportunity to receive any distribution of monies under the settlement described herein. While the Debtor has vigorously (and, to date, successfully) opposed Respondents' position in this matter and sought and received from this Court an Order ruling that the Plan Assets are property of the Debtor's Chapter 11 estate, it is equitable that all Plan participants be equally responsible for the payment of Respondents' counsels' legal fees and expenses on a pro rata basis from the proceeds of the settlement.

(a)    The Debtor will release from the Plan Assets the sum of **$175,000** (the "<u>Settlement Amount</u>") after the entry of a final order by the Bankruptcy Court approving the Settlement Agreement (the "<u>Settlement Approval Order</u>"), for distribution as follows. The Debtor will be entitled to retain the balance of the Plan Assets (except for amounts that may be held in reserve as set forth in the Settlement Agreement) as assets of the Chapter 11 estate to be used by the Debtor in accordance with the Bankruptcy Code and any applicable order of this Court:

(i)    Not later than ten (10) days after entry of the Settlement Approval Order, the Debtor will remit to Respondents' counsel the sum of **$59,768.38**, which amount represents the legal fees and expenses due and owing to Respondents' counsel from Respondents and payable from the Settlement Amount ("<u>Respondents' Legal Fees and Expenses</u>"). The net settlement amount available for distribution to the Settling Plan Participants, i.e. the difference between the Settlement Amount and Respondents' Legal Fees and Expenses, is therefore **$115,231.62** (the "<u>Net Settlement Amount</u>");

(ii)    Promptly after the Debtor makes the payment of Respondents' Legal Fees and Expenses, the Debtor will make a distribution to each Settling Plan Participant in an amount equal to such Settling Plan Participant's Pro Rata Share (defined below) of the Net Settlement Amount. Respondents' counsel will be responsible for remitting to Respondents each individual Respondent's Pro Rata Share. The Debtor will send the Pro Rata Share for all other participants in the Plan to each such participant's last known mailing address.

(1)    The Debtor will be authorized to rely upon all calculations provided by the Plan Administrator and/or the Trustee and will have no liability to any Plan participant or any other person for any miscalculations made by the Plan Administrator and/or the Trustee with respect to the Pro Rata Share of any Plan participant or with respect to any other calculation made or information provided by either the Plan Administrator and/or the Trustee and relied upon by the Debtor. At the hearing on this Motion, the Debtor will provide to the Bankruptcy Court a statement of the Pro Rata Share of each Plan Participant as of the Share Determination Date (defined in footnote 5 below), which shall be based upon calculations of the Pro Rata Share for each Plan participant made by the Plan Administrator and/or the Trustee and shall be binding and conclusive upon each Plan participant absent manifest error as shown at the hearing on this Motion by clear and convincing evidence produced by any Plan participant objecting to the calculation of such Plan participant's Pro Rata Share. At least two (2) business days prior to the commencement of the hearing on this Motion, the Debtor will file with the Bankruptcy Court and serve upon Respondents' Co-Counsel a statement of the Pro Rata Share

that the Debtor proposes to submit to the Bankruptcy Court at the hearing on this Motion.[5]

    (2)    For more details on how the Net Settlement Amount will be distributed, see Section 3 of the Settlement Agreement.

    (iii)    If any distribution made pursuant to the Settlement Agreement is returned due to an incorrect mailing address, the Debtor and Respondents' counsel will diligently and in good faith endeavor to find the correct mailing address for such Settling Plan Participant. If notwithstanding a diligent and good faith effort to locate a current mailing address for such Settling Plan Participant the Debtor and Respondents' counsel are unable to do so, then the amount of such distribution will be held by (and if the distribution is in the possession or control of Respondents' counsel, the distribution will be promptly remitted to) the Debtor for a period of 150 days following the Debtor's receipt of such distribution. If at the end of such 150-day period the distribution is not claimed by the appropriate Settling Plan Participant, then the amount of such distribution will revert to the Debtor and become property of the Debtor's Chapter 11 estate.

    (b)    The term "Pro Rata Share" means, with respect to each participant in the Plan, such participant's pro rata share, which share for each such participant will be equal to a percentage derived by dividing the aggregate of all Plan Assets into the portion of the Plan Assets that are attributable to contributions to the Plan made by such participant and earnings and/or losses thereon according to the records of the Plan Administrator.[6]

    (c)    Those participants in the Plan (other than Respondents, all of which have agreed to and, subject to Court approval, are bound by the Settlement Agreement) who do **not** wish to be Settling Plan Participants may so elect as follows:

---

[5] As set forth in the *Notice of Filing of Settlement Motion and Hearing Thereon* to be filed concurrently with this Motion, **any Plan participant who desires to obtain the calculation of such Plan participant's Pro Rata Share of the Net Settlement Amount should contact either Debtor's counsel or Respondents' counsel for such information**.

Debtor's counsel may be reached at: Parker, Hudson, Rainer & Dobbs LLP, Attn: C. Edward Dobbs, 1500 Marquis Two Tower, 285 Peachtree Center Avenue NE, Atlanta, GA 30303; (404) 523-5300.

Respondents' counsel may be reached at either: (i) McPhillips Shinbaum, LLP, Attn: Kenneth Shinbaum, 516 South Perry Street, Montgomery, AL 36104; (334) 262-7216; or (ii) Shinbaum, McLeod & Campbell, P.C., Attn: Richard Shinbaum, 566 South Perry Street, Montgomery, AL 36104; (334) 269-4440.

[6] Each Settling Plan Participant's Pro Rata Share will be calculated as of the "Share Determination Date," which means the date that is the sooner to occur of (i) the date on which the Debtor causes all of the Plan Assets held in the Trust to be liquidated (and if such liquidation is consummated through multiple sales over a period exceeding a day, such date shall be the last day on which a liquidation sale occurs) or (ii) the fifth (5th) business day prior to the commencement of the hearing on this Motion.

(i)     Such participant may, in writing, advise either the Debtor or counsel to Respondents that such participant will not accept a distribution from the Net Settlement Amount;

(ii)    Such participant may return to the Debtor or counsel to Respondents the distribution mailed to such participant; or

(iii)   Such participant fails to deposit the distribution mailed to such participant within 150 days after the Debtor mails such distribution to such participant.

(d)     **Any Plan participant who receives and accepts a distribution pursuant to the Settlement Agreement, irrespective of such participant's contention that the amount of such distribution is incorrectly calculated, will be deemed to be a Settling Plan Participant and will be bound by all of the provisions of the Settlement Agreement and the Settlement Approval Order**.  Unless prior to a distribution pursuant to the Settlement Agreement the Debtor receives notice from a Plan participant that such Plan participant will not accept a distribution, the Debtor will be authorized to assume such Plan participant is a Settling Plan Participant.

(e)     Each Settling Plan Participant who has timely filed a proof of claim in this Chapter 11 case for such Settling Plan Participant's Pro Rata Share of the Plan Assets **will be deemed to have amended such proof of claim**, effective upon such Settling Plan Participant's receipt of a distribution, by (i) reducing the amount thereof in an amount equal to the Settlement Amount multiplied by a percentage equal to such Settling Plan Participant's Pro Rata Share and (ii) confirming that such proof of claim for such Settling Plan Participant's Pro Share of the Plan Assets is filed as a general unsecured claim.  The foregoing deemed amendment will not affect any portion of a timely filed proof of claim with respect to a claim that does not arise under or relate to the Plan, the Trust Agreement, the Plan Assets or any other issues related to the Plan.

(f)     The Settlement Approval Order will also authorize the Debtor to pay out of the Plan Assets (exclusive of the Settlement Amount) an amount necessary to pay all fees and expenses owed to the Plan Administrator[7] and, if applicable, the Trustee.

(g)     Promptly after entry of the Settlement Approval Order, Respondents' counsel will, depending upon whether all Respondents remain parties to the Settlement Agreement, file a notice of withdrawal of all settling Respondents from the Appeal and, if all of the Respondents become Settling Respondents within the meaning of the Settlement Agreement, will promptly file a dismissal with prejudice of the Appeal together with all other pleadings on behalf of such Settling Respondents filed in connection therewith.

---

[7]  The Plan Administrator recently informed the Debtor that the Plan Administrator is owed $29,609.97 in outstanding fees and expenses for administering the Plan, of which $4,714.14 represents pre-petition fees and expenses.  The Debtor has not yet had an opportunity to review these fees and expenses, but the Debtor reserves the right to pay the Plan Administrator all post-petition fees and expenses asserted to be outstanding.

(h)     The Debtor and the Settling Plan Participants each **releases, acquits and forever discharges** the other from any and all claims, demands, liabilities, debts, reckonings, causes of action and suits of any kind or nature, whether at law or in equity, disputed or undisputed, known or unknown, absolute or contingent or due or to become due, that each has on the date of the Settlement or ever had prior to such date against the other and that arises out of or relates to the Plan, the Plan Assets, the Trust or the Trust Agreement, including all Plan Related Issues (as these capitalized terms are defined in the Settlement Agreement).

## **Basis for Relief Requested**

27.     Under Bankruptcy Rule 9019, the Court has the authority to approve a compromise of a controversy or dispute. *See* Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968); Continental Airlines, Inc. v. Air Line Pilots' Ass'n Int'l. (In re Continental Airlines, Inc.), 907 F.2d 1500, 1508 (5th Cir. 1990). Moreover, compromises are favored in bankruptcy. Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3rd Cir. 1996). Whether to approve a proposed settlement is a matter within the sound discretion of the bankruptcy court. In re Munford, Inc., 97 F.3d 449, 455 (11th Cir. 1996).

28.     The Courts of Appeals generally agree that, in deciding whether to approve a proposed settlement, a bankruptcy court should evaluate the following:

(a)     the probability of success in litigation, with due consideration for the uncertainty of the facts and the law;

(b)     the difficulties, if any, to be encountered in collecting on a judgment;

(c)     the complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay; and

(d)     the paramount interest of the creditors and a proper deference to their reasonable views.

*See* In re Justice Oaks II, Ltd., 898 F.2d 1544, 1549 (11th Cir. 1990) (internal citations omitted); Connecticut Gen. Life Ins. Co. v. United Cos. Fin. Corp.(In re Foster Mortgage Corp.), 68 F.3d 914, 917 (5th Cir. 1995); Jeffrey v. Desmond, 70 F.3d 183, 185 (1st Cir. 1995). These criteria essentially require the Court to "assess and balance the value of the claim that is being compromised against the value to the estate of the compromise proposal." Myers, 91 F.3d at 393. In other words, bankruptcy courts are charged with

determining whether the proposed settlement is fair and equitable and in the best interests of the bankruptcy estate.  Depoister v. Mary M. Holloway Found., 36 F.3d 582, 586 (7th Cir. 1994).

29.     In evaluating a proposed settlement of a matter that has not proceeded to judgment, the bankruptcy court is not required to hold a full evidentiary hearing or even to conduct a "mini-trial."  In re Cajun Elec. Power Coop., 119 F.3d 349, 356 (5th Cir. 1997) (internal citations omitted).  Here, the Court has held a full evidentiary hearing and thereafter issued the Order and Memorandum Opinion finding that the Plan Assets are property of the Debtor's Chapter 11 estate.

30.     The Debtor nevertheless supports the proposed settlement with the Settling Plan Participants because the Debtor believes it is in the best interest of the Debtor, its estate and all parties in interest for the settlement to be approved.  The Settlement Agreement is a product of arms-length negotiations between the parties; resolves for a relatively nominal sum a $2 million dispute in this Chapter 11 case; will obviate the need for the expenditure of additional time and estate assets in the pending appeal before the district court and a likely appeal to follow from any disposition made by the district court; and is justified by taking into account the time value of money and the slight risk of potential reversal on appeal on one or more issues.

31.     Bankruptcy courts need not even determine that the settlement constitutes the "best result obtainable."  Tri-State Fin., LLC v. Lovald, 525 F.3d 649, 654 (8th Cir. 2008) (internal citations omitted).  Rather, in taking into account the aforementioned factors, bankruptcy courts "need only determine that the settlement does not fall below the lowest point in the range of reasonableness."  Id. (internal punctuation omitted).  The Debtor believes that the proposed settlement is reasonable, fair and equitable and satisfies the standards for approval of a settlement.

32.     On information and belief, the proposed settlement is supported by the Official Committee of Unsecured Creditors.

**Notice**

33.     The Debtor proposes to serve notice of this Motion upon those persons on the Master Service List, counsel to Respondents and all Plan participants (at each such participant's last known mailing address as set forth in Exhibit A to the Settlement Agreement).  In light of the nature of the relief requested, the Debtor submits that no other or further notice need be provided.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an order substantially in the form annexed hereto as Exhibit B, and grant such other and further relief as this Court deems just and proper.

Dated:  September 17, 2010
        Montgomery, Alabama

C. Edward Dobbs
E-mail: ced@phrd.com

Rufus T. Dorsey, IV
E-mail: rtd@phrd.com

PARKER, HUDSON, RAINER & DOBBS LLP
1500 Marquis Two Tower
285 Peachtree Center Avenue, N.E.
Atlanta, Georgia  30303
Telephone No.:  (404) 523-5300
Facsimile:  (404) 522-8409

By:  /s/ *Rufus T. Dorsey, IV*
        Rufus T. Dorsey, IV

Attorneys for Debtor and Debtor in Possession

**Exhibit A**

**Settlement Agreement**

1622650_4

# SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT is made and entered into this 16th day of September, 2010, between **The Colonial BancGroup, Inc.**, a debtor and debtor-in-possession under Chapter 11 of the Bankruptcy Code (the "Debtor"), and the undersigned counsel ("Respondents' Co-Counsel") on behalf of and as attorneys and agents for the Settling Respondents (as defined below).

## Recitals:

On August 25, 2009 (the "Petition Date"), the Debtor filed with the United States Bankruptcy Court for the Middle District of Alabama (the "Bankruptcy Court") a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, commencing case number 09-32303 (the "Chapter 11 Case").

On September 14, 2009, the Debtor filed a motion (the "First Motion") in which it sought authority to deal with assets held pursuant to a deferred compensation plan, entitled "The Colonial BancGroup, Inc. Non-Qualified Deferred Compensation Plan," dated November 2, 2007 and effective January 1, 2006 (the "Plan"), that was established and sponsored by the Debtor and participated in by various officers and other employees of the Debtor and certain of its affiliates, including, without limitation, Colonial Bank. There are currently 77 participants in the Plan (collectively, the "Plan Participants").

On November 5, 2009, the Debtor filed a second motion (the "Second Motion"; together with the First Motion, the "Motions") pursuant to which it sought the same relief as that sought in the First Motion, but noted the recently discovered fact that the assets of the Plan had been contributed to a trust (the "Trust") established by the Debtor pursuant to a Trust Agreement dated January 4, 2006 (as at any time amended, the "Trust Agreement"), under which The Charles Schwab Trust Company ("Schwab") serves as trustee.

On December 7, 2009, certain of the Plan Participants filed an objection (the "Objection") to the Second Motion and sought a determination by the Court that the monies contributed to the Plan by such Plan Participants and held under the Trust Agreement did not constitute assets of the Debtor's estate but rather constituted assets of the Plan Participants. Thereafter, additional Plan Participants (bringing to 25 the total objecting Plan Participants) purported to join in the Objection (all of such objecting Plan Participants being referred to as the "Respondents," but without the Debtor thereby acknowledging that such additional Plan Participants are properly joined as Respondents). No Plan Participants, other than the Respondents, objected to the relief requested in the Motions and are therefore barred from asserting entitlement to any of the Plan Assets (as defined below).

On April 15, 2010, an evidentiary hearing was held on the Second Motion and the Objection. On June 25, 2010, the Bankruptcy Court entered an order (the "Determination Order") and issued a memorandum opinion in which, among other things, it determined that all of the assets of the Plan constitute property of the Debtor's estate.

On July 6, 2010, Respondents filed a motion for reconsideration (the "Reconsideration Motion"), in which they requested the Bankruptcy Court to reconsider and modify the Determination

Order and determine, as they had previously requested, that the assets of the Plan did not constitute assets of the Debtor's estate, but rather constituted assets of such Plan Participants. On July 21, 2010, the Bankruptcy Court entered an order (the "Reconsideration Order") in which the Bankruptcy Court denied the Reconsideration Motion. On August 9, 2010, at Respondents' request, the Bankruptcy Court entered an order staying the effect of the Determination Order and the Reconsideration Order, but allowing the Debtor to liquidate all or any part of the assets held under the Trust Agreement and to deposit the proceeds from any such liquidation in a segregated account (the "Stay Order"; together with the Determination Order and the Reconsideration Order, the "Orders").

On August 2, 2010, Respondents filed with the United States District Court for the Middle District of Alabama their notice of appeal from the Reconsideration Order (the "Appeal").

The Debtor and Settling Respondents (as defined below) have agreed to settle the matters contained in the Motions, the Objection, the Orders and the Appeal on the terms and conditions hereinafter set forth, subject to approval of the Bankruptcy Court after notice and a hearing.

## Statement of Agreement:

NOW, THEREFORE, for and in consideration of $10.00 in hand paid each to the other and for other good and valuable consideration, receipt whereof is severally acknowledged, the parties hereto, intending to be legally bound hereby, agree as follows:

1. **Definitions; Rules of Construction**.

(a) In addition to terms defined in the Recitals, as used herein, the following terms shall have the following meanings ascribed to them (terms defined in the singular to have the same meaning when used in the plural and *vice versa*):

Accepting Plan Participant shall mean a Plan Participant who is neither a Respondent nor a Non-Accepting Plan Participant.

Accepting Plan Participant Reserve shall mean, on any date, a reserve amount equal to the sum of each Accepting Plan Participant's Pro Rata Share of the Net Settlement Amount on such date.

Approval Order shall mean an order of the Bankruptcy Court that grants the Settlement Motion and approves this Agreement and contains provisions that are required to be included in it pursuant to this Agreement.

Business Day shall mean a day of the week other than a Saturday, Sunday or a day on which banks in Alabama or Georgia are authorized or required to be closed.

Distribution shall mean a distribution from Plan Assets made by the Debtor's drawing of a check on an account of the Debtor and made payable to the applicable payee in the amount to be disbursed to such payee pursuant to the terms of Sections 2, 3, 4 and 5 of this Agreement.

**Effective Date** shall mean the date on which each of the conditions precedent set forth in Section 10 hereof has been satisfied.

**ERISA** shall mean the Employee Retirement Income Security Act of 1974, as at any time amended, and regulations promulgated pursuant thereto.

**Net Settlement Amount** shall mean an amount equal to $115,231.62, which is equal to the Settlement Amount minus the amount of Respondents' Legal Fees and Expenses.

**Non-Accepting Plan Participant** shall have the meaning given to it in Section 4.

**Non-Settling Respondent Reserve** shall mean, on any date, a reserve amount equal to the sum of each Non-Settling Respondent's Pro Rata Share of the Plan Assets on such date. The amount of such reserve shall be funded first by an amount equal to such Non-Settling Respondent's Pro Rata Share of the Net Settlement Amount and the balance from the other Plan Assets.

**Non-Settling Respondent** shall mean a Respondent, if any, who prior to execution and delivery of this Agreement on such Respondents' behalf by Respondents' Co-Counsel, refuses to be a party to and bound by this Agreement. As of the date of this Agreement, the parties are not aware of the existence of any Respondent who has refused to be a party hereto and bound hereby.

**Person** shall mean an individual, business entity (including any corporation, limited liability company, partnership or business trust) or governmental entity (including any state, federal or municipal government or agency or political subdivision thereof).

**Plan Administrator** shall mean Milliman, Inc., the party responsible for administering the Plan and the Plan Assets.

**Plan Assets** shall mean, as of any date, all (i) cash, securities and other assets held under the Trust Agreement on such date and (ii) cash held by the Debtor on such date in a segregated account pursuant to the Stay Order and derived from a sale or other liquidation of assets held under the Trust Agreement.

**Plan Related Issues** shall mean all issues relating to (i) the ownership of the Plan Assets; (ii) the status of the Plan as a "top hat plan" within the meaning of applicable law, including ERISA and decisional law thereunder; (iii) the validity, legality and enforceability of the Plan or the Trust Agreement in accordance with their respective terms; (iv) the entitlement of any Plan Participant to any distribution from or under the Plan, the Trust or the Trust Agreement; or (v) any other legal issue or other matter raised or dealt with in the Motions, the Objection, the Orders, or the Appeal or any other document filed in connection with the foregoing or any argument made in the Bankruptcy Court by Respondents' Co-Counsel in connection with the foregoing.

**Pro Rata Share** shall mean, with respect to each Plan Participant, such Plan Participant's pro rata share, which share for each such Plan Participant shall be equal to a percentage derived by dividing the aggregate of all Plan Assets as of the Share

Determination Date (according to the records of the Plan Administrator and/or Schwab) into the portion of the Plan Assets as of the Share Determination Date that are attributable to contributions to the Plan made by such Plan Participant and earnings and/or losses thereon according to the records of the Plan Administrator as of the Share Determination Date.

Respondents' Co-Counsel shall mean Shinbaum, McLeod & Campbell, P.C. and McPhillips Shinbaum, LLP.

Respondents' Legal Fees and Expenses shall mean the legal fees and expenses owing by Respondents to their legal counsel, which total $59,768.38 (of which $2,018.38 represents expenses and the balance represents legal fees).

Settlement Amount shall mean an amount equal to $175,000.

Settlement Hearing shall mean the hearing before the Bankruptcy Court on the Settlement Motion.

Settlement Motion shall mean a motion which is filed by the Debtor pursuant to Bankruptcy Rule 9019 and which seeks the Bankruptcy Court's approval of the settlement set forth in this Agreement.

Settling Plan Participants shall mean Settling Respondents and Accepting Plan Participants.

Settling Respondents shall mean those Respondents who have agreed to the terms of this Agreement.

Share Determination Date shall mean the date that is the sooner to occur of (i) the date on which the Debtor, pursuant to the authority conferred upon it in the Stay Order, has caused all of the Plan Assets held in the Trust to be liquidated (and if such liquidation is consummated through multiple sales over a period exceeding a day, such date shall be the last day on which a liquidation sale occurs) or (ii) the fifth (5th) Business Day prior to the commencement of the Settlement Hearing.

(b)     As used herein, the word "including" means "including, without limitation"; all references to any Person shall mean and include such Person's heirs, administrators, executors, successors and assigns; and the words "hereof," "herein," and "hereunder" shall have reference to this Agreement as a whole and not to any particular subdivision, paragraph or section of this Agreement.

**2.      Set Aside of Settlement Amount**.  On or within ten (10) Business Days after the Effective Date, the Debtor shall set aside from the Plan Assets, for distribution to Respondents' Co-Counsel and Settling Plan Participants in accordance with Section 3 hereof, a cash amount equal to the Settlement Amount.  The Debtor shall be entitled to retain the balance of the Plan Assets, except for amounts held as hereinafter set forth in the Non-Settling Respondent Reserve derived from Plan Assets other than the Net Settlement Amount, as assets of the Chapter 11 estate to be used by the Debtor in accordance with the Bankruptcy Code and any applicable orders of the Bankruptcy Court.

**3.** **Distribution of Settlement Amount**. The Settlement Amount shall be distributed, in full settlement and satisfaction of all Plan Related Issues, as follows:

(a) On or within ten (10) Business Days after the Effective Date, the Debtor shall make a Distribution to either of Respondents' Co-Counsel in an amount equal to Respondents' Legal Fees and Expenses. Respondents' Co-Counsel shall be solely responsible for sharing such Distribution with one another and with any other legal counsel entitled thereto. By their signatures hereto, Respondents' Co-Counsel represent and warrant that the sum of $59,768.38 represents an amount lawfully due and owing to Respondents' Co-Counsel from Respondents and payable from the Settlement Amount, and to all other Persons claiming by, through or under Respondents' Co-Counsel, for legal fees, referral fees and other sums incident to the representation of Respondents in connection with the Motions, the Objection and/or the Appeal. The Debtor shall have no responsibility to assure payment of any of Respondents' Legal Fees and Expenses as between Respondents' Co-Counsel or any other Person entitled thereto, after the Debtor's Distribution of an amount equal to Respondents' Legal Fees and Expenses as hereinabove provided.

(b) Promptly after the Debtor makes the Distribution to Respondents' Co-Counsel of Respondents' Legal Fees and Expenses as hereinabove provided, the Debtor shall make a Distribution to each Settling Plan Participant in an amount equal to such Settling Plan Participant's Pro Rata Share of the Net Settlement Amount. Distributions to Settling Respondents shall be remitted to one of Respondents' Co-Counsel, who shall be responsible for redistributing such Distribution, in the form received, to each Settling Respondent entitled thereto and the Debtor shall have no responsibility therefor. Distributions to Settling Plan Participants who are not Settling Respondents shall be sent by the Debtor, by regular mail, to such Settling Plan Participant at the last address known by the Debtor to be such Plan Participant's proper mailing address. Exhibit A contains a list of all Plan Participants according to the books and records of the Plan Administrator and/or Schwab and the last address known by the Debtor (based upon information provided to it by the Plan Administrator and/or Schwab) to be a proper mailing address for each Plan Participant.

(c) Each Settling Plan Participant who is not a Respondent shall be deemed nevertheless to be a party to, and bound by all of the provisions of, this Agreement (whether or not a signatory hereto) and the Approval Order by virtue of such Settling Plan Participant's acceptance of the Distribution made to it hereunder.

(d) The Debtor shall be authorized and required to withhold from the Net Settlement Amount a portion thereof equal to the Accepting Plan Participant Reserve, the disposition of which shall be as provided in Section 4.

(e) The Debtor shall be authorized to rely upon all calculations provided by the Plan Administrator and/or Schwab and shall have no liability to any Plan Participant or any other Person for any miscalculations made by the Plan Administrator and/or Schwab with respect to the Pro Rata Share of any Plan Participant or with respect to any other calculation made or information provided by either the Plan Administrator and/or Schwab and relied upon by the Debtor. At the Settlement Hearing, the Debtor shall provide to the Bankruptcy Court a statement of the Pro Rata Share of each Plan Participant as of the Share Determination Date, which shall be based upon calculations of the Pro Rata Share for each Plan Participant made by the Plan Administrator and/or Schwab and shall be binding and conclusive upon each Plan Participant absent manifest error as

shown at the Settlement Hearing by clear and convincing evidence produced by any Plan Participant objecting to the calculation of such Plan Participant's Pro Rata Share. At least two (2) Business Days prior to the commencement of the Settlement Hearing, the Debtor shall file with the Bankruptcy Court and serve upon Respondents' Co-Counsel a statement of the Pro Rata Share that the Debtor proposes to submit to the Bankruptcy Court at the Settlement Hearing.

4. **Treatment of Non-Accepting Plan Participants**. A Plan Participant shall be deemed to be a "Non-Accepting Plan Participant" if such Plan Participant is not a Respondent and (i) prior to the date on which a Distribution is proposed to be made by the Debtor to such Plan Participant, such Plan Participant, in a writing addressed to the Debtor or Respondents' Co-Counsel, advises that such Plan Participant will not accept the Distribution; (ii) such Plan Participant returns to the Debtor or Respondents' Co-Counsel any Distribution made to such Plan Participant (and, in the event that Respondents' Co-Counsel receives a return of any such Distribution, Respondents' Co-Counsel shall promptly remit, in the event received, such Distribution to the Debtor); or (iii) such Plan Participant fails to deposit the Distribution for collection within 150 days after the date that such Distribution is mailed to such Plan Participant (in which event, the Debtor may, if it so elects at any time thereafter in its discretion, stop payment on such Distribution and claim the amount of the Distribution as funds belonging to the Debtor's Chapter 11 estate). Any Plan Participant (including any Non-Accepting Plan Participant) who receives and accepts a Distribution, irrespective of such Plan Participant's contention that the amount of such Distribution is incorrectly calculated, shall be deemed to be a Settling Plan Participant and shall be bound by all of the provisions of this Agreement and the Approval Order. Unless prior to a Distribution the Debtor receives notice from a Plan Participant that such Plan Participant will not accept a Distribution and elects thereby to be a Non-Accepting Plan Participant, the Debtor shall be authorized to assume such Plan Participant is an Accepting Plan Participant; and the Debtor shall not be obligated to make any Distribution to any Plan Participant who is known by the Debtor at the time a proposed Distribution is to be made to such Plan Participant to be a Non-Accepting Plan Participant. After determining that a Plan Participant is a Non-Accepting Plan Participant, the Debtor shall be authorized to release the portion of the Accepting Plan Participant Reserve representing the Pro Rata Share of such Non-Accepting Plan Participant and utilize such funds as property of the Debtor's Chapter 11 estate (and the Approval Order will so provide).

5. **Treatment of Non-Settling Respondents**. In addition to the set aside of the Settlement Amount as provided in Section 2, the Debtor shall, on or within ten (10) days after the Effective Date, set aside from the Plan Assets an amount equal to the Non-Settling Respondent Reserve, to the extent that there is any Non-Settling Respondent. Amounts in the Non-Settling Respondent Reserve shall be held by the Debtor in an interest bearing or non-interest bearing bank account pending disposition thereof pursuant to further orders of the Bankruptcy Court or resolution of the Appeal. The Debtor may, but shall be not be obligated to, enter into a settlement agreement with any Non-Settling Respondent on such terms and conditions as may be approved by the Court, regardless of whether or not such terms and conditions are less or more favorable to the Non-Settling Respondent than the terms and conditions of the settlement contained herein for all other Settling Plan Participants. The Debtor shall be authorized to release balances in the Non-Settling Respondent Reserve to a Non-Settling Respondent after the Debtor has entered into a settlement agreement with such Non-Settling Respondent that is approved by final order of the Bankruptcy Court or as authorized and directed pursuant to final resolution of the Appeal; and any balances in the Non-

Settling Respondent Reserve after any such Distributions therefrom to Non-Settling Respondents shall become property of the Debtor's estate.

6. **Unclaimed Distributions**. If any Distribution to a Settling Plan Participant, whether or not a Respondent, is returned due to an incorrect mailing address for such Settling Plan Participant, the Debtor and Respondents' Co-Counsel shall diligently and in good faith endeavor to find the correct mailing address for such Settling Plan Participant. If notwithstanding a diligent and good faith effort to locate a current mailing address for such Settling Plan Participant the Debtor and Respondents' Co-Counsel are unable to do so, then the amount of the Distribution shall be held by (and if the Distribution is in the possession or control of Respondents' Co-Counsel, the Distribution shall be promptly remitted to) the Debtor for a period of 150 days following the Debtor's receipt of such Distribution. If at the end of such 150-day period the Distribution is not claimed by the appropriate Settling Plan Participant, then the amount of such Distribution shall revert to the Debtor and shall become property of the Debtor's Chapter 11 estate and such Plan Participant shall no longer be deemed a Settling Plan Participant.

7. **Amendments to Proofs of Claim**. The Approval Order shall provide that each Settling Plan Participant who did not file a proof of claim in the Chapter 11 Case on or before the deadline for doing so shall be barred from filing any proof of claim unless otherwise authorized by the Bankruptcy Court. Each Settling Plan Participant who has timely filed a proof of claim in this Chapter 11 Case for such Settling Plan Participant's Pro Rata Share of the Plan Assets shall be deemed to have amended such proof of claim, effective upon such Settling Plan Participant's receipt of a Distribution, by (i) reducing the amount thereof in an amount equal to the Settlement Amount multiplied by a percentage equal to such Settling Plan Participant's Pro Rata Share and (ii) confirming that such proof of claim for such Settling Plan Participant's Pro Rata Share of the Plan Assets is filed as a general unsecured claim. The foregoing deemed amendment shall not affect any portion of a timely filed proof of claim with respect to a claim that does not arise under or relate to the Plan, the Trust, the Plan Assets or any other Plan Related Issues. Nothing herein shall be construed as a consent or acquiescence for any Non-Settling Plan Participant to file a proof of claim if such Non-Settling Plan Participant had not filed a proof of claim on or before the deadline for doing so in the Chapter 11 Case, a waiver of any requirement for any such Non-Settling Plan Participant to amend a proof of claim in any respect required by applicable law, or a waiver of any right that the Debtor (or any other interested party having standing to do so) to object to any proof of claim for any reason, whether or not such proof of claim is amended in accordance with the provisions hereof or was filed by a Settling Plan Participant or a Non-Settling Plan Participant. The Debtor reserves all of its rights with respect to the filing and the prosecution of any objection to any proof of claim filed by any Plan Participant, whether or not a Settling Plan Participant.

8. **Cooperation in Obtaining Approval Order**. Promptly after execution of this Agreement by the parties, the Debtor shall file the Settlement Motion, seeking a hearing thereon at the earliest practical date and entry of the Approval Order. The Settlement Motion shall seek approval of the settlement contained herein, including authorization to pay Respondents' Legal Fees and Expenses (to be deducted from the Settlement Amount and thereby shared by all Settling Plan Participants as a result of the efforts of Respondents' Co-Counsel which have benefited all Settling Plan Participants). The Approval Order shall be in form, scope and substance reasonably satisfactory to the parties, but in all events shall contain such provisions as are required by this Agreement or applicable law, shall waive the application of any Bankruptcy Rule that would

otherwise stay the effect of the Approval Order, will embody the provisions of Section 7 for the deemed amendment of proofs of claim by Settling Plan Participants, and will make the provisions of this Agreement applicable to any Settling Plan Participant who is not a Settling Respondent. The Approval Order will also authorize the Debtor to pay out of the Plan Assets (exclusive of the Settlement Amount) an amount necessary to pay all fees and expenses owed to the Plan Administrator and, if applicable, Schwab as trustee under the Trust Agreement. Notice of the Settlement Motion, with this Agreement annexed thereto, will be provided by Respondents' Co-Counsel to all Respondents and by the Debtor to all Plan Participants who are not Respondents (at the address for each such Plan Participant shown on <u>Exhibit A</u>), in each case promptly after the filing of the Settlement Motion.

9.      **Disposition of Appeal**.  Promptly (and, in any event, no more than ten (10) Business Days) after entry of the Approval Order, Respondents' Co-Counsel, on behalf of all Settling Respondents, shall file a notice of withdrawal of all Settling Respondents from the Appeal and, if all of the Respondents become Settling Respondents, shall promptly file a dismissal with prejudice of the Appeal together with all other pleadings on behalf of such Settling Respondents filed in connection therewith.

10.     **Conditions Precedent**.  The following are conditions precedent to the effectiveness of the obligations of the parties contained in Sections 2, 3 and 13 hereof:

(a)      The Debtor and Respondents' Co-Counsel, for and on behalf of and as agent for each of the Settling Respondents, shall have executed and delivered an original counterpart of this Agreement;

(b)      The Settlement Motion shall have been filed not later than ten (10) days after the date of execution of this Agreement by all parties hereto (unless such time period is extended by written consent of the parties hereto);

(c)      The Approval Order shall have been entered by the Bankruptcy Court not later than thirty-five (35) days following the date on which the Settlement Motion is filed (unless such time period is extended by mutual written consent of the parties) and at the time that Distributions are to be made no order shall have been entered that reverses, alters or amends, or stays the effect of the Approval Order; and

(d)      Settling Respondents shall have complied with the provisions of Section 9 hereof.

11.     **Parties to Bear Their Own Costs and Expenses**.  The Debtor and the Settling Respondents shall be obligated to bear their own costs and expenses in connection with the Motions, the Objection and the Appeal, including legal fees; and, except for payment of Respondents' Legal Fees and Expenses from the Settlement Amount, no Settling Plan Participant shall be authorized to surcharge, be paid from or otherwise seek recovery out of any Plan Assets (or any other assets of the Chapter 11 estate) to pay any such costs and expenses.

Case 09-32303    Doc 898    Filed 09/17/10    Entered 09/17/10 12:27:39    Desc Main
                        Document        Page 22 of 37

12. **Representations and Warranties**.

(a)     The Debtor hereby represents to each Settling Respondent that, subject to entry of the Approval Order, the Debtor is duly authorized to execute and deliver, and perform all of its obligations under, this Agreement; this Agreement, when duly executed and delivered by it and after entry of the Approval Order, shall constitute a legal, valid and binding agreement of the Debtor that is enforceable against it in accordance with its terms, subject to customary exceptions for the enforcement of equitable remedies such as the remedy of specific performance; and the Debtor has not transferred or assigned to any Person any claim that it ever had against any Settling Respondent and that is released pursuant to the provisions of Section 13 hereof.

(b)     Each Settling Plan Participant (whether or not a signatory to this Agreement) represents and warrants to the Debtor that, in the case of Settling Plan Participants that are Respondents, this Agreement has been duly executed and delivered for such Settling Plan Participant and on such Settling Plan Participant's behalf by Respondents' Co-Counsel as such Settling Plan Participant's agent and attorney-in-fact; subject to entry of the Approval Order, this Agreement is a legal, valid and binding obligation of such Settling Plan Participant that is enforceable against such Settling Plan Participant in accordance with its terms subject to customary exceptions for the enforcement of equitable remedies such as the remedy of specific performance; and such Settling Plan Participant has not transferred or assigned to any Person any claim that such Settling Plan Participant ever had against the Debtor and that is released pursuant to the provisions of Section 13.

(c)     Respondents' Co-Counsel represents and warrants to the Debtor that they are authorized and empowered by each Respondent to execute and deliver this Agreement for and on behalf of such Respondent and thereby bind such Respondent to the terms of this Agreement; each Respondent received a draft copy of this Agreement in substantially the form of this Agreement and approved of its execution by Respondents' Co-Counsel on behalf of such Respondent; and each Respondent advised Respondents' Co-Counsel that such Respondent has elected to be a Settling Respondent.

13. **Mutual Releases**.

(a)     The Debtor, for itself and its successors and assigns, hereby **RELEASES, ACQUITS AND FOREVER DISCHARGES** each Settling Plan Participant and such Settling Plan Participant's heirs, executors, attorneys, administrators and assigns (collectively with the Settling Plan Participants, the "Plan Participant Releasees" and individually a "Plan Participant Releasee") from and against any and all claims, demands, liabilities, debts, reckonings, causes of actions and suits of any kind or nature, whether at law or in equity, disputed or undisputed, known or unknown, absolute or contingent or due or to become, that the Debtor has on the date hereof or ever had prior to the date hereof against any Plan Participant Releasee and that arises out of or relates to the Plan, the Plan Assets, the Trust or the Trust Agreement, including all Plan Related Issues; provided, however, that the foregoing release shall not operate to release any Plan Participant Releasee from any obligation that such Plan Participant Releasee has under this Agreement.

(b)     Each Settling Plan Participant, for itself and its heirs, executors, administrators and assigns, hereby **RELEASES, ACQUITS AND FOREVER DISCHARGES** each Debtor and such Debtor's officers, directors, agents, attorneys, successors and assigns (collectively with the

Debtor, the "<u>Debtor Releasees</u>" and individually a "<u>Debtor Releasee</u>"), from and against any and all claims, demands, liabilities, debts, reckonings, causes of actions and suits of any kind or nature, whether at law or in equity, disputed or undisputed, known or unknown, absolute or contingent or due or to become due, that such Settling Plan Participant has on the date hereof or ever had prior to the date hereof against any Debtor Releasee and that arises out of or relates to the Plan, the Plan Assets, the Trust or the Trust Agreement, including all Plan Related Issues; <u>provided</u>, <u>however</u>, that the foregoing release shall not operate to release any Debtor Releasee from any obligation that such Debtor Releasee has under this Agreement.

14. <u>Governing Law</u>. This Agreement shall be governed in all respects by, and construed and enforced in accordance with, the internal laws of the State of Alabama.

15. <u>Miscellaneous</u>. This Agreement may be executed in multiple counterparts and by different parties in separate counterparts, each of when executed and delivered shall be deemed to be an original but all of which taken together shall constitute one and the same instrument; may be amended only by written agreement of the parties; expresses the entire understanding of the parties hereto with respect to the subject matter hereof and supersedes all prior agreements or understandings, written or oral; and may not be amended other than by written agreement of the parties.

SIGNED, SEALED AND DELIVERED, on the day and year first written above.

**THE COLONIAL BANCGROUP, INC.**

By:_____
Name:_____
Title:_____

**SHINBAUM, MCLEOD & CAMPBELL, P.C.**

By:_____
Name: *Richard Shinbaum*
Title: *Partner*

**MCPHILLIPS SHINBAUM, LLP**

By:_____
Name: *Kenneth Shinbaum*
Title: *Partner*

Case 09-32303    Doc 898    Filed 09/17/10    Entered 09/17/10 12:27:39    Desc Main
                    Document        Page 24 of 37

Debtor, the "Debtor Releasees" and individually a "Debtor Releasee"), from and against any and all claims, demands, liabilities, debts, reckonings, causes of actions and suits of any kind or nature, whether at law or in equity, disputed or undisputed, known or unknown, absolute or contingent or due or to become due, that such Settling Plan Participant has on the date hereof or ever had prior to the date hereof against any Debtor Releasee and that arises out of or relates to the Plan, the Plan Assets, the Trust or the Trust Agreement, including all Plan Related Issues; provided, however, that the foregoing release shall not operate to release any Debtor Releasee from any obligation that such Debtor Releasee has under this Agreement.

    **14.**    **Governing Law**. This Agreement shall be governed in all respects by, and construed and enforced in accordance with, the internal laws of the State of Alabama.

    **15.**    **Miscellaneous**. This Agreement may be executed in multiple counterparts and by different parties in separate counterparts, each of when executed and delivered shall be deemed to be an original but all of which taken together shall constitute one and the same instrument; may be amended only by written agreement of the parties; expresses the entire understanding of the parties hereto with respect to the subject matter hereof and supersedes all prior agreements or understandings, written or oral; and may not be amended other than by written agreement of the parties.

    SIGNED, SEALED AND DELIVERED, on the day and year first written above.

THE COLONIAL BANCGROUP, INC.

By: _____

Name: __KEVIN O'HALLORAN__

Title: __CRO__

**SHINBAUM, MCLEOD & CAMPBELL, P.C.**

By: _____

Name: _____

Title: _____

**MCPHILLIPS SHINBAUM, LLP**

By: _____

Name: _____

Title: _____

| Plan Participant | Address (Last Known) |
|---|---|
| Allred, Glenda | 3200 Jasmine Road<br>Montgomery, AL 36117 |
| Aroix, Aleida | 5700 Collins Avenue<br>Unit 16L<br>Miami Beach, FL 33140 |
| Bassett, Robert | 5940 Paradise Circle<br>Naples, FL 34110 |
| Bennett, Debra | 261 Minorca Beach Way<br>502<br>New Smyrna Beach, FL 32169 |
| Betty, Michael | 11289 Sea Grass Circle<br>Boca Raton, FL 33498 |
| Blackwell, Larry | 800 Meriwether Road<br>Pike Road, AL 36064 |
| Burge, Raymond | 7167 Wyngrove Drive<br>Montgomery, AL 36117 |
| Burke, John | 1425 Winston Road<br>Maitland, FL 32751 |
| Carr, Douglas | 4532 Dawn Peak Drive<br>Las Vegas, NV 89129 |
| Carrera, Ernest | 4812 N. Shirley Drive<br>Tampa, FL 33603 |
| Childree, Susan | P. O. Box 70651<br>Montgomery, AL 36107 |
| Chong, Patricia | 22548 Blue Fin Trail<br>Boca Raton, FL 33428 |

| | |
|---|---|
| Clark, David | 1295 Woodlane Lake Drive<br>Snellville, GA 30278 |
| Condon, Michelle | 1275 Westmoreland Avenue<br>Montgomery, AL 36106 |
| Copeland, Ethan | 4387 Boulder Lake Circle<br>Birmingham, AL 35242 |
| Crabtree, Richard | 132 Avalon Lane<br>Anniston, AL 36207 |
| Crouch, Sandra | 508 Palm Drive<br>Largo, FL 33770 |
| Crowell, James | 6553 Longwood Trace Lane S.<br>Lakeland, FL 33811 |
| Davis, Howard | 481 E. Webster Avenue<br>Winter Park, FL 32789 |
| Delisle, Kenneth | 20031 NW 5th Street<br>Pembroke Pines, FL 33029 |
| Esper, Michael | 12560 Coconut Creek Court<br>Fort Myers, FL 33908 |
| Free, Lisa | 6268 Henley Way<br>Montgomery, AL 36117 |
| Freeman, Quieman | 533 Clay Street<br>Montgomery, AL 36104 |
| Gibertini, Scott | 3421 Cypress Landing Drive<br>Valrico, FL 33594 |
| Gonzalez, Ernesto | 1231 SE 10th Street<br>Deerfield Beach, FL 33441 |
| Green, Linda | 1527 Locust Circle SC<br>Huntsville, AL 35801 |
| Guffey, Cary | 2036 Eagle Park Lane<br>Birmingham, AL 35242 |

1624157_8

| | |
|---|---|
| Hargrove, Walter | 3333 Ridgefield Drive<br>Montgomery, AL 36106 |
| Hawk, Larry | 2349 McMurry Drive<br>Powder Springs, GA 30127 |
| Hester, Gerald | 685 Highland Drive<br>Madison, AL 35758 |
| Hicks, Thomas | 8101 Wyndridge Drive<br>Montgomery, AL 36117 |
| Hicks, Charles | 293 SW Otter Run Place<br>Stuart, FL 34997 |
| Hill, Curtis | 105 Timber Ridge<br>Alabaster, AL 35007 |
| Hill, Patti | 832 Cahaba River Parc<br>Birmingham, AL 35243 |
| Holland, C. | 3016 Purdue<br>Dallas, TX 75225 |
| Hudson, Sally | 3607 Julian Town Road<br>Letohatchee, AL 36047 |
| Jensch, John | 6120 Indian Meadow<br>Orlando, FL 32819 |
| Julian, John | 1450 Overbrook Road<br>Millbrook, AL 36054 |
| Junkins, Leah | P. O. Box 676<br>Gulf Shores, AL 36547 |
| Karansky, John | 8221 SW 164 Street<br>Palmetto Bay, FL 33157 |
| Kimmel-Geiger, Kerry | 1363 Vestavia Circle<br>Melbourne, FL 32940 |
| King, Patricia | 1521 Foggy Ridge Parkway<br>Lutz, FL 33559 |

| | |
|---|---|
| Kirkland, Mace | 211 Habersham Drive<br>Dothan, AL 36301 |
| Kissick, Catherine | 3214 Osceola Avenue<br>Orlando, FL 32806 |
| Loftin, Robert | 1501 Grasslands Boulevard<br>Unit 3<br>Lakeland, FL 33803 |
| Macki, Lina | 19601 NW 88 Avenue<br>Miami, FL 33018 |
| Manning, Jack | 157 George Chapman Drive<br>Meridianville, AL 35759 |
| Martino, Lee | 1087 Marco Drive NE<br>Saint Petersburg, FL 33702 |
| McCarthy, Justin | 1103 Adams Street<br>Hollywood, FL 33019 |
| McConwell, Kenneth | 1057 Deena Way<br>Fallon, NV 89406 |
| Mellini, Paul | 1005 Eden Isle Drive NE<br>Saint Petersburg, FL 33704 |
| Millender, Martin | 1574 Whispering Oaks Circle<br>Naples, FL 34110 |
| Mills, Judy | 237 Rich Field Road<br>Deatsville, AL 36022 |
| Moore, Sarah | 124 Evergreen Drive<br>Deatsville, AL 36022 |
| Otero, Marta | 2676 SE 14 Street<br>Pompano Beach, FL 33062 |
| Painter, William | 11327 Shiloh Way<br>Boca Raton, FL 33428 |

| | |
|---|---|
| Parrish, Harlan | 9531 Cedar Creek Drive<br>Bonita Springs, FL 34135 |
| Peck, Ronald | 586 NE Vanda Terrado<br>Jensen Beach, FL 34957 |
| Perez, Melvin | 9004 SW 206 Street<br>Miami, FL 33189 |
| Pittman, Caroline | 228 General Canby Loop<br>Spanish Fort, AL 36527 |
| Potter, David | 2351 S. Douglas Road<br>Unit 1001<br>Miami, FL 33145 |
| Royals, Joseph | 2305 Edgewater Drive<br>#1702<br>Orlando, FL 32804 |
| Ryan, Tania | 12013 NW 50th Drive<br>Coral Springs, FL 33076 |
| Sandler, Eris | 3250 W. Stonebrook Circle<br>Davie, FL 33330 |
| Schorr, Craig | P. O. Box 3036<br>330 Barrett Street<br>Stateline, NV 89449 |
| Sellers, Richard | 304 Forest Valley Court<br>Atlanta, GA 30342 |
| Sleaford, Michael | 2218 Dogwood Circle<br>Mount Dora, FL 32757 |
| Sokol, Harry | 3776 Crestbrook Road<br>Birmingham, AL 35223 |
| Spears, Glen | 718 South Lake Adair<br>Boulevard<br>Orlando, FL 32804 |
| Stapf, Juliette | 1153 2nd Avenue South<br>Tierra Verde, FL 33715 |

| | |
|---|---|
| Stenson, Janet | 4780 E. Key Drive<br>Titusville, FL 32780 |
| Stephenson, James | 4013 Marquette<br>Dallas, TX 75225 |
| Tharpe, James | 4325 Horseshoe Bend<br>Merritt Island, FL 32953 |
| Varkas, Shayna | 155 Ocean Lane Drive<br>#311<br>Key Biscayne, FL 33149 |
| Vitto, Pamela | 332 Kiwanis Circle<br>Chuluota, FL 32766 |
| Wilkinson, Frances | 8393 SW Masthead Drive<br>Stuart, FL 34997 |
| Williams, John | 102 Bald Knob Road<br>Wetumpka, AL 36092 |

Case 09-32303   Doc 898   Filed 09/17/10   Entered 09/17/10 12:27:39   Desc Main
Document      Page 31 of 37

**Exhibit B**


**Proposed Order**

## UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

```
------------------------------------------------------------x
                                             :
In re                                        :        Chapter 11
                                             :
THE COLONIAL BANCGROUP, INC.,                :        Case No.  09-32303 (DHW)
                                             :
        Debtor.                              :
                                             :
------------------------------------------------------------x
                                             :
                                             :
THE COLONIAL BANCGROUP, INC.,                :
                                             :
        Movant,                              :
                                             :
v.                                           :        CONTESTED MATTER
                                             :
PATRICIA CHONG, MICHELLE                     :
CONDON, HOWARD DAVIS, KENNETH                :
DELISLE, LISA FREE, ERNESTO                  :
GONZALEZ, WALTER HARGROVE,                   :
PATTI  HILL, CHARLES MALCOLM                 :
HOLLAND, III, LEAH JUNKINS, KERRY            :
KIMMEL-GEIGER, CATHERINE                     :
KISSICK, LINA MACKI, LEE MARTINO,            :
KENNETH MCCONWELL, JUDY MILLS,               :
WILLIAM PAINTER, HARLAN PARRISH,             :
RONALD PECK, JOSEPH ROYALS,                  :
JULIETTE STAPF, JAMES THARPE,                :
AND PAMELA VITTO,                            :
                                             :
        Respondents.                         :
                                             :
------------------------------------------------------------x
```

## ORDER GRANTING DEBTOR'S MOTION TO APPROVE
## SETTLEMENT AGREEMENT BETWEEN DEBTOR AND CERTAIN
## PARTICIPANTS IN DEBTOR'S NON-QUALIFIED DEFERRED COMPENSATION PLAN

This matter is before the Court upon the motion (the "Motion") of The Colonial BancGroup, Inc. (the

"Debtor") for entry of an order, pursuant to Section 105 of title 11 of the United States Code, 11 U.S.C. §§

101, *et seq.* (the "Bankruptcy Code"), Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") and Rule 9007-1 of the Local Rules of this Court, approving the settlement agreement attached to the Motion as Exhibit A (the "Settlement Agreement") between the Debtor and the Settling Plan Participants,[1] and, pursuant to the terms thereof, to resolve the above-captioned contested matter.

NOW, THEREFORE, based upon the Motion and all of the proceedings before this Court, and after due deliberation and sufficient cause appearing therefor, *[and no objection to the Motion having been raised,]* it is hereby:

ORDERED that the Motion is granted *[, all objections to the Motion having been withdrawn, settled or overruled]*; and it is further

ORDERED that the Settlement Agreement annexed to the Motion as Exhibit A is approved; the Debtor and Respondents, as parties thereto, are authorized and directed to perform all of their obligations thereunder, including, without limitation, the Debtor's set aside of the Settlement Amount and distribution thereof by the Debtor and Respondents' Co-Counsel in accordance with the terms of the Settlement Agreement; and the balance of the Plan Assets (after set aside of the Settlement Amount and any amount for the Non-Settling Respondent Reserve) may be used by the Debtor as an asset of the Chapter 11 estate; and it is further

ORDERED that the Debtor is authorized to rely upon all calculations provided by the Plan Administrator and/or Schwab and shall have no liability to any Plan Participant or any other Person with respect to the calculation of the Pro Rata Share of any Plan Participant or with respect to any other calculation made or information provided by either the Plan Administrator and/or Schwab and relied upon by the Debtor; and the calculation of each Plan Participant's Pro Rata Share as submitted to the Court at the Settlement Hearing is approved and is binding and conclusive upon each Plan Participant; and it is further

---

[1] Capitalized terms used, but not otherwise defined, herein shall have the meaning ascribed to them in the Settlement Agreement.

ORDERED that each Plan Participant who is not a Respondent is deemed to be a signatory to and bound by all of the terms of the Settlement Agreement (including the releases in Section 13 of the Settlement Agreement) if and to the extent that such Plan Participant accepts any Distribution from the Net Settlement Amount (whether or not such Plan Participant objects to the amount of such Distribution or the calculation of such Plan Participant's Pro Rata Share); and it is further

ORDERED that each Settling Plan Participant who has timely filed a proof of claim in this Chapter 11 case for such Settling Plan Participant's Pro Rata Share of the Plan Assets shall be deemed to have amended such proof of claim, effective upon such Settling Plan Participant's receipt of a Distribution, by (i) reducing the amount thereof in an amount equal to the Settlement Amount multiplied by a percentage equal to such Settling Plan Participant's Pro Rata Share and (ii) confirming that such proof of claim for such Settling Plan Participant's Pro Share of the Plan Assets is filed as a general unsecured claim; provided, however that the foregoing deemed amendment shall not affect any portion of a timely filed proof of claim with respect to a claim that does not arise under or relate to the Plan, the Trust, the Plan Assets or any other Plan Related Issues; and it is further

ORDERED that promptly (and, in any event, no more than ten (10) Business Days) after entry of this Order, Respondents' Co-Counsel, on behalf of all Settling Respondents, shall file a notice of withdrawal of all Settling Respondents from the Appeal and, if all of the Respondents are Settling Respondents, shall promptly file a dismissal with prejudice of the Appeal together with all other pleadings on behalf of such Settling Respondents filed in connection therewith; and it is further

ORDERED that the Debtor is authorized, but not required, to pay out of the Plan Assets (exclusive of the Settlement Amount) an amount necessary to pay all fees and expenses owed to the Plan Administrator and, if applicable, Schwab; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice thereof; and it is further

**ORDERED** that this Order shall be immediately effective and the stay otherwise provided for in Rule 6004(h) of the Federal Rules of Bankruptcy Procedure, to the extent applicable, is hereby waived; and it is further

**ORDERED** that the Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

Dated: _____ __, 2010
       Montgomery, Alabama

_____
United States Bankruptcy Judge

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was electronically served on September 17, 2010, by transmission of Notices of Electronic Filing generated by CM/ECF to persons registered as of issuance of filing and served on the same day by electronic mail on those counsel or parties listed on the Master Service List attached hereto and Respondents' counsel.  The undersigned further certifies that a true and correct copy of the foregoing document was also served by U.S. mail on all Plan participants (at each such participant's last known mailing address as set forth in Exhibit A to the Settlement Agreement).

This 17th day of September, 2010.

C. Edward Dobbs
E-mail: ced@phrd.com

Rufus T. Dorsey, IV
E-mail: rtd@phrd.com

PARKER, HUDSON, RAINER & DOBBS LLP
1500 Marquis Two Tower
285 Peachtree Center Avenue, N.E.
Atlanta, Georgia  30303
Telephone No.:  (404) 523-5300
Facsimile:  (404) 522-8409


By:  /s/ *Rufus T. Dorsey, IV*
       Rufus T. Dorsey, IV

Attorneys for Debtor and Debtor in Possession