# EXHIBIT A

B 10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT — Middle District of Alabama | | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor:<br>The Colonial BancGroup, Inc. | Case Number:<br>09-32303 |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>Federal Deposit Insurance Corporation, as receiver for Colonial Bank, Montgomery, Alabama | ☐ Check this box to indicate that this claim amends a previously filed claim. |
|---|---|
| Name and address where notices should be sent:<br>DLA Piper LLP (US)<br>1251 Avenue of the Americas, New York, New York 10020<br>Attention: Thomas R. Califano, John J. Clarke, Jr. and Jeremy Johnson | **Court Claim Number:**_____<br>*(If known)* |
| Telephone number:<br>(212) 335-4500 | Filed on:_____ |
| Name and address where payment should be sent (if different from above):<br>Federal Deposit Insurance Corporation, as receiver for Colonial Bank ("FDIC-Receiver")<br>1601 Bryan Street, Dallas, Texas 75201, Attention: Arthur Cook, Receiver in Charge | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |
| Telephone number: | ☐ Check this box if you are the debtor or trustee in this case. |

| 1. Amount of Claim as of Date Case Filed: $ SEE ATTACHMENT | 5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount. |
|---|---|

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim: SEE ATTACHMENT**
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor: N/A**

   **3a. Debtor may have scheduled account as:** _____
   (See instruction #3a on reverse side.)

**4. Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff: ☐ Real Estate ☐ Motor Vehicle ☑ Other
Describe: SEE ATTACHMENT FOR ALL

Value of Property:$_____ Annual Interest Rate_____%

Amount of arrearage and other charges as of time case filed included in secured claim,

if any: $_____ Basis for perfection: _____

Amount of Secured Claim: $_____ Amount Unsecured: $_____

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**Specify the priority of the claim.**

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☑ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(9 ).

**Amount entitled to priority:**

$ 1,003,972,000
    or higher
*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| Date:<br>11-24-09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>Gary M. Holloway, Federal Deposit Insurance Corporation, Post-Closing Asset Manager, FDIC-Receiver | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

Addendum to Proof of Claim
The Federal Deposit Insurance Corporation, as
Receiver for Colonial Bank, Montgomery, Alabama

A.    Introduction

1.      This proof of claim is submitted by the Federal Deposit Insurance Corporation, as receiver (the "FDIC-Receiver") for Colonial Bank, Montgomery, Alabama ("Colonial Bank"). On August 14, 2009, Colonial Bank was closed by the Alabama State Banking Department, and the FDIC-Receiver was appointed as its receiver. Thereafter, the FDIC-Receiver entered into a Purchase and Assumption Agreement dated as of August 14, 2009 with Branch Banking & Trust Company ("BB&T") pursuant to which BB&T purchased certain assets of Colonial Bank and assumed substantial liabilities ( the "P&A Agreement"). A copy of the P&A Agreement is publicly available on the FDIC's website, www.fdic.gov.

2.      Prior to the closure of Colonial Bank, the debtor The Colonial BancGroup, Inc. (the "Debtor" or "Colonial BancGroup") was the holding company of Colonial Bank. The Debtor commenced this chapter 11 case on August 25, 2009 (the "Petition Date").

3.      In its capacity as receiver, the Federal Deposit Insurance Corporation (the "FDIC") acts, *inter alia*, to protect insured depositors and creditors of failed depository institutions. Pursuant to 12 U.S.C. § 1821(d)(2), the FDIC-Receiver succeeded by operation of law to the rights, titles, powers, and privileges, including legal claims, of Colonial Bank, and of any stockholder, member, accountholder, depositor, officer or director of Colonial Bank. The FDIC-Receiver is entitled to a superpriority with respect to any portion of its claims relating to the avoidance and recovery of fraudulent transfers under 12 U.S.C. § 1821(d)(17). In addition, some claims are entitled to administrative priority under 11 U.S.C. § 507, including priority under 11 U.S.C. § 507(a)(9), and all or part of the FDIC-Receiver's claims are secured under 11 U.S.C. §§ 506 and 553.

4.     Certain of the claims asserted herein may have been sold to BB&T under the P&A Agreement and, to that extent, are asserted by the FDIC-Receiver in accordance with the P&A Agreement.  Nothing in this proof of claim (i) alters in any respect the terms of the P&A Agreement or the schedules or exhibits thereto or (ii) should be construed as reflecting the FDIC-Receiver's interpretation of the P&A Agreement, including without limitation the assets or rights related to claims that may have been sold, or that BB&T may claim to have been sold, pursuant to the P&A Agreement.

5.     This proof of claim is being filed in order to avoid any contention that the FDIC-Receiver somehow has waived any rights it may have that may conflict with claims to ownership that may be asserted by the Debtor.  Under 12 U.S.C. § 1821(d)(13)(D), "no court shall have jurisdiction over" --

> (i)     any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver, including assets which the [FDIC] may acquire from itself as such receiver; or
>
> (ii)     any claim relating to any act or omission of such institution or the [FDIC] as receiver.

12 U.S.C. § 1821(d)(13)(D).  To the extent any matter set forth by the FDIC-Receiver in this proof of claim falls within the scope of the foregoing, the United States Bankruptcy Court for the Middle District of Alabama does not have jurisdiction.  Instead, subject matter jurisdiction is limited to the United States District Courts for the Middle District of Alabama or for the District of Columbia in the manner provided for in 12 U.S.C. § 1821(d)(6)(A).  Further, under 12 U.S.C. § 1821(j), "no court may take any action . . . to restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or receiver."  This limitation includes the bankruptcy courts.

6.     A defense of lack of subject matter jurisdiction cannot be waived, and the FDIC-Receiver expressly reserves that defense as to any proceeding with respect to such matters that the Debtor may seek to initiate against it, all of which must be adjudicated in specified district courts and solely to the extent permitted under the provisions of 12 U.S.C. § 1821.  The filing of this proof of claim does not in any way alter this defense to jurisdiction.

B.     <u>Tax-Related Claims</u>

7.     The FDIC-Receiver asserts claims arising from consolidated tax returns filed by Colonial BancGroup on behalf of, among others, Colonial Bank and for tax related intercompany balances held by the Debtor.  In filing tax returns and receiving tax refunds and other tax payments, the Debtor acts as agent and fiduciary for Colonial Bank.

8.     All federal and state tax related refunds that have been paid to Colonial BancGroup already or that may be paid in the future based on consolidated tax returns, are due and owing in full or substantial part to Colonial Bank, and not the Debtor.  A tax refund resulting from offsetting losses of one member of a consolidated filing group against the income of that same member in a prior or subsequent year inures to the benefit of that member, in this instance, Colonial Bank.

9.     Any such amounts received by the Debtor are or will be held in trust for Colonial Bank and are not property of the Debtor's estate as a matter of law.  To the extent the Debtor has received any such tax refunds, or might receive any such refunds in the future, the funds should be turned over immediately to the FDIC-Receiver.  The FDIC-Receiver reserves all rights relating to its claim for turnover of such assets.

10.     No enforceable agreement to the contrary exists.  The Debtor's attempt to rely upon an unsigned and undated document is meritless.  Even if a written agreement to the

3

contrary were to exist, that agreement would be void ab initio because it would constitute an

unsafe and unsound banking practice under applicable law. Should any such agreement be

determined to exist hereafter, the FDIC-Receiver reserves its right to repudiate such an

agreement pursuant to 12 U.S.C. § 1821(e) for any reason that it deems appropriate in its sole

discretion.

11.     Further, pursuant to the Internal Revenue Code, regulations promulgated

thereunder, and state tax laws, as applicable, Colonial Bank and the FDIC-Receiver have an

independent right to pursue, contest, compromise, or settle any tax related adjustment or

deficiency relating to Colonial Bank, and the FDIC-Receiver expressly reserves its right to do so.

12.     The Debtor has asserted a receivership claim against the FDIC-Receiver for

recovery of, or otherwise asserting ownership of the foregoing tax refunds and other tax-related

assets, thereby seeking "a determination of rights with respect to the assets of" Colonial Bank

that is subject to the exclusive receivership claims process under 12 U.S.C. § 1821(d). The

FDIC-Receiver specifically reserves the right to litigate, prosecute, dispute, contest, compromise

or settle any dispute, including any purported right of set off or offset claimed by the Debtor, that

relates to tax refunds or other tax-related assets in the proper venue under title 12 of the United

States Code. Such claims and defenses are not subject to the jurisdiction of the Bankruptcy

Court but are, rather, subject to the exclusive jurisdiction provided for under title 12.

C.     Capital Maintenance Obligations

13.     On January 21, 2009, the board of directors of Colonial BancGroup entered into a

Memorandum of Understanding with the Federal Reserve Bank of Atlanta and the Alabama

State Banking Department under which the holding company's board agreed, on behalf of

Colonial BancGroup, to a number of measures related to the financial soundness of its subsidiary

Colonial Bank.  *See* Rich Decl., Exh. C.[1]  First among these was the holding company's

commitment to "utilize its financial and managerial resources to assist its subsidiary bank in

addressing weaknesses identified by its primary banking supervisors and achieving/maintaining

compliance with [Colonial Bank's] December 15, 2008 Memorandum of Understanding with"

the FDIC and the Alabama State Banking Department.  *See id.* ¶ 1.  The board of directors of

Colonial Bank, in turn, had agreed in the bank's own Memorandum of Understanding with bank

regulators that by no later than February 28, 2009, Colonial Bank would bring its Tier I Leverage

Capital Ratio to a level of not less than 8 percent and its Total Risk-Based Capital Ratio to a

level of not less than 12 percent.  *See* Rich Decl., Exh. B, ¶ 14.

14.     Both Colonial Bank and Colonial BancGroup failed to meet their obligations

under their respective regulatory agreements.  As a result, on June 15, 2009, Colonial Bank

consented to the entry of a cease and desist order by the FDIC and the Alabama Superintendent

of Banks under which Colonial Bank again agreed to raise its Tier 1 Leverage Capital Ratio to

not less than 8 percent and its Total Risk-Based Capital Ratio to not less than 12 percent.  *See*

Rich Decl., Exh. D, at 6-7.  On the same date, Colonial BancGroup consented to a similar cease

and desist order by the Board of Governors of the Federal Reserve System and the Alabama

State Banking Department in which Colonial BancGroup agreed, among other things, to "take

appropriate steps to ensure that the [Colonial Bank] complies with the Cease and Desist Order,

and any other supervisory action taken by [Colonial Bank's] federal or state regulators."  Rich

Decl., Exh. E, ¶ 1.

---

[1] Citations to "Rich Decl." refer to the Declaration of Timothy D. Rich dated October 5, 2009, which along with its exhibits is incorporated herein by reference, and copies thereof are also attached.

15.     As of June 30, 2009, the date of Colonial Bank's last quarterly Call Report, its Tier I Leverage Capital Ratio was 4.18%, far below the 8% required under its Memorandum of Understanding.  This was a substantial decline from its inadequate capital at the end of the previous quarter, March 31, 2009, when its Tier I Leverage Capital Ratio was 5.54%.  *See* Rich Decl., Exh. F at 2.

16.     Translated into dollars, the shortfall from the capital level that Colonial Bank had agreed in its Memorandum of Understanding to achieve by no later than February 28, 2009 was $669,676,120 as of March 31, 2009 and $1,003,972,000 as of June 30, 2009.[2]  Undoubtedly, the amount of the capital shortfall was substantially higher as of the date of Colonial Bank's closing.

17.     Colonial BancGroup made its own commitment to use its financial resources to ensure that Colonial Bank met these capital obligations.  Accordingly, the Debtor has an uncured deficit under its capital maintenance commitment of at least $1,003,972,000, and likely substantially more.  Pursuant to Bankruptcy Code section 365(o), the Debtor was deemed to have assumed its capital maintenance commitment as a condition to entering chapter 11 and is required to immediately cure this deficit.  Further, the FDIC-Receiver's claim for these amounts is entitled to administrative priority under Bankruptcy Code section 507(a)(9).

D.      Alleged Deposit Accounts

18.     The Debtor identified seven accounts that it asserts are demand deposit accounts in its name held by BB&T with account numbers ending in 1127, 5437, 5460, 5452, 5445 and 3218 (the "Accounts").  According to the Debtor's cash collateral motion, the aggregate balances in the Accounts is $38,408,337.34.  These balances are subject to the FDIC-Receiver's rights

---

[2] The shortfall is readily calculable from statistics provided in Colonial Bank's Uniform Bank Performance Report, which is a publicly available financial report of statistics and data included in Colonial Bank's quarterly Call Reports.  *See* Rich Decl., Exh. F.

under section 9.5 of the P&A Agreement. Immediately upon its appointment and prior to the Petition Date, the FDIC-Receiver exercised those rights. The Accounts are subject to pending motions by the FDIC-Receiver in the Debtor's bankruptcy case, which the FDIC-Receiver incorporates by reference. The FDIC-Receiver reserves all of its rights with respect to the Accounts, including its rights of setoff.

E.    REIT Preferred

19.    On May 22, 2007, CBG Florida REIT, an indirect subsidiary of Colonial Bank, sold 300,000 shares of fixed-to-floating rate perpetual non-cumulative preferred stock with a liquidation preference of $1,000.00 per share. Shares of the REIT preferred stock were subject to conditional exchange into shares of preferred stock issued by Colonial BancGroup under certain circumstances.

20.    On August 10, 2009, the FDIC notified Colonial Bank that an exchange event had occurred and the conditional exchange of the REIT preferred stock into preferred stock of Colonial BancGroup occurred automatically at 8 a.m. New York time on August 11, 2009. Colonial BancGroup was obligated upon the occurrence of that exchange to contribute all of the REIT preferred stock to Colonial Bank. To the extent the Debtor has failed to take all steps necessary to effectuate such a transfer, or has prevented third parties from taking any such steps, the Debtor is in violation of a capital maintenance commitment that is subject to section 365(o) and 507(a)(9) of the Bankruptcy Code.

21.    The Debtor has asserted a claim against the FDIC-Receiver for recovery of, or otherwise asserting ownership of the REIT preferred stock, thereby seeking "a determination of rights with respect to the assets of" Colonial Bank that is subject to the exclusive receivership claims process under 12 U.S.C. § 1821(d). The FDIC-Receiver specifically reserves the right to

litigate, prosecute, dispute, contest, compromise or settle any dispute, including any purported

right of set off or offset claimed by the Debtor, that relates to the REIT preferred stock in the

proper venue under title 12 of the United States Code.  Such claims and defenses are not subject

to the jurisdiction of the Bankruptcy Court but are, rather, subject to the exclusive jurisdiction

provided for under title 12.

F.     Fraudulent Transfers/Unlawful Dividends

22.     Although its investigation only recently has commenced, the FDIC-Receiver may

avoid and recover fraudulent transfers within five years before the receivership, see 12 U.S.C. §

1821(d)(17), and in some instances longer periods under state law.

23.     The FDIC-Receiver reserves all rights to recover property transferred, or the value

of such property, from the initial transferee, the institution-affiliated party, or the person for

whose benefit the transfer was made, or from any immediate or mediate transferee of any such

initial transferee.  The FDIC-Receiver's rights under section 1821(d)(17) are superior to any

rights of the Debtor or any other party (other than any party which is a federal agency) under

title 11.  See 12 U.S.C. § 1821(d)(17).

24.     Similarly, to the extent the FDIC-Receiver's claims relate to unlawful dividends

paid, or other unlawful distributions made by Colonial Bank, the FDIC-Receiver reserves the

right to recover such amounts as provided for under applicable state laws.

G.     Insurance Proceeds

25.     Prior to the receivership, Colonial BancGroup and/or Colonial Bank purchased

insurance for which Colonial Bank was, at least in part, a named insured or an intended

beneficiary.  Such insurance includes, without limitation, the Federal Insurance Company

Financial Institution Bond Form A and Form B (81158390 DFI, 81910594 DFI), the Federal

Insurance Company Financial Institution Electronic and Computer Crime Policy (81260198 DFI), the Federal Insurance Company Financial Institution Portfolio Policy (7144-2614), the National Union Fire Insurance Company of Pittsburgh, Pa. Excess Insurance Policy (01-384-68-10), the Allied World Assurance Company, Ltd. All Products Excess Follow Form Policy (C010937/001), the Federal Insurance Company Employee Benefits Liability Policy (if different than the preceding), the Westchester Surplus Lines (ACE) Umbrella Liability Policy (G21984875004), and the Ohio Casualty Insurance Company Excess Liability Policy (ECO (10) 52 50 38 01).

26. To the extent that a covered loss within the meaning of the relevant insurance policies has been suffered by Colonial Bank, the FDIC-Receiver is entitled to all proceeds paid under applicable insurance coverage for such loss. Without limiting the foregoing, the FDIC-Receiver claims any proceeds under the applicable insurance policies for insured wrongful acts that caused harm in any respect to Colonial Bank.

27. To the extent that proofs of loss have been or may be filed with respect to such matters with the relevant insurer, the FDIC-Receiver hereby claims any payments in respect of such loss, which are not property of the Debtor's estate and, to the extent paid to the Debtor, are held in trust for the FDIC-Receiver as the rightful recipient thereof.

28. The FDIC-Receiver reserves the right to tender to the insurers any insured matter that has been or may be asserted against the receivership notwithstanding any claim that proceeds under such insurance policies are, in whole or in part, property of the Debtor's estate.

29. The FDIC-Receiver also has succeeded to rights, claims and causes of action by Colonial Bank against directors, officers, and professionals and others who provided services to Colonial Bank. The FDIC-Receiver reserves all of its rights and remedies in and to any

insurance policies potentially covering the FDIC-Receiver's claims against such persons and entities including policies pursuant to which the Debtor or Colonial Bank are insureds or additional insureds.

H.    Other Matters Subject to the P&A Agreement

30.    The FDIC-Receiver asserts a protective unliquidated claim for matters as to which (i) BB&T may assert a claim against the Debtor as the successor in interest to Colonial Bank and the FDIC-Receiver under the P&A Agreement and (ii) the Debtor may object to such a claim due to BB&T's lack of standing.

I.    Other Claims

31.    Colonial BancGroup is obligated to Colonial Bank as Affiliate Liabilities for unreimbursed fees and expenses of approximately $340,000 arising from defaults by two Colonial BancGroup joint ventures and for deficiency claims of as much as $3,068,053 with respect to those joint ventures.

32.    The FDIC-Receiver has or may have claims based upon breaches of fiduciary duties owed by the directors and officers of Colonial BancGroup to Colonial Bank and the liability of the Debtor in connection therewith.  Such directors and officers may have failed to meet their lawful obligations and act in the best interests of Colonial Bank including, but not limited to, directing and/or authorizing the various upstream dividend and other avoidable transfers, failing to adequately maintain Colonial Bank's capital or liquidity, failing to establish or maintain adequate internal controls, failing to engage in suitable risk management, implementing substandard practices for loan underwriting and asset purchases and sales for Colonial Bank and otherwise taking or omitting to take actions that would serve Colonial Bank's interests.  Without limiting the foregoing, the FDIC-Receiver notes that there are ongoing

criminal investigations concerning the conduct of Colonial BancGroup, Taylor Bean & Whitaker Mortgage Corporation and other persons and that, prior to the Petition Date, Colonial BancGroup disclosed that it was a target of a federal criminal investigation.

33.    Further, to the extent that officers or directors (or any other persons as to whom the Debtor owes a duty of indemnification or advancement) assert claims against the FDIC-Receiver for indemnification or advancement, the FDIC-Receiver asserts a claim for reimbursement of such amounts against the Debtor.

34.    The FDIC-Receiver also asserts an unliquidated claim for indemnity or contribution to the extent that Colonial Bank is entitled to assert such claims against the Debtor with respect to any pending or future litigation in which Colonial Bank or the FDIC-Receiver is or may be a named defendant.

35.    To the extent any governmental authority obtains or enters an order directing restitution for the criminal or otherwise wrongful acts of the officers or directors of Colonial Bank, such orders are for the benefit of the FDIC-Receiver as successor to Colonial Bank.  If the Debtor receives any payment in respect of such an order, it shall hold such amounts in trust for Colonial Bank, and the FDIC-Receiver demands that such funds be turned over to the receivership estate.

J.    Reservation of Rights

36.    As set forth above, the FDIC-Receiver is entitled to the statutory protections provided under its governing statute, including without limitation 12 U.S.C. § 1821(d)(13)(D) and the exclusive receivership claims process set forth in 12 U.S.C. § 1821(d).  This proof of claim is filed solely to protect the FDIC-Receiver against a claim of waiver in the Debtor's bankruptcy cases and does not alter or waive the foregoing statutory provisions in any respect.

37.     Neither this proof of claim nor any subsequent appearance, pleading, claim, document, suit, motion nor any other writing or conduct, shall constitute a waiver by the FDIC-Receiver of any:  (a) right of the FDIC-Receiver to assert a defense of sovereign immunity; (b) right to have any and all final orders entered only after appropriate administrative procedures and/or de novo review by a United States district court; (c) right to elect a trial by jury in any matters so triable; (d) right to have the reference of this matter withdrawn by the United States district court in any matter or proceeding subject to mandatory or discretionary withdrawal; or (e) other rights, claims, actions, defenses, setoffs, recoupments or other matters to which the FDIC-Receiver is entitled under any agreements, at law or in equity or under the United States Constitution.  All of the above rights are expressly reserved and preserved without exception and with no purpose of conceding jurisdiction in any way by this filing or by any other participation in this matter.  The FDIC-Receiver expressly reserves all rights to assert the preemption of the Bankruptcy Court's jurisdiction and the exclusive jurisdiction provided under title 12.

38.     The identification or enumeration of the FDIC-Receiver's rights and remedies set forth in this proof of claim is not intended to be exhaustive.  In addition, the FDIC-Receiver's investigation and review of the books and records of Colonial Bank is ongoing, and the FDIC-Receiver and its professional advisers have not yet had a sufficient opportunity to evaluate and determine all claims that the FDIC-Receiver may have against the Debtor.  The FDIC-Receiver reserves the right to further amend, revise or supplement this proof of claim in any respect, and to file such additional claims and requests for payment.  Without limiting the foregoing, the FDIC-Receiver reserves the right to assert specific claims or counterclaims for as-yet unliquidated, unmatured or contingent claims currently known or unknown, including without limitation, claims for indemnification, contribution, subrogation or reimbursement from the

Debtor for any claims of third parties that may be asserted against the FDIC-Receiver or payments made by or on behalf of the FDIC-Receiver for which the Debtor is responsible.

39.     The FDIC-Receiver further reserves the right to amend or supplement this proof of claim, including, without limitation, to: cure a defect in the original claim, correct the claim amount or priority status, include additional supporting documents, describe the claim in greater detail, or add additional claims presently unknown to the FDIC-Receiver that, if known, could have affected this claim or resulted in the assertion of additional damages. In addition, nothing herein shall be deemed to waive or otherwise affect the rights of any other person, including without limitation, BB&T, to make claims similar to or parallel with this claim.

40.     The FDIC-Receiver reserves all rights to setoff against the Debtor any interests that are subject to setoff under section 553 of the Bankruptcy Code. Accordingly, the FDIC-Receiver asserts and reserves all of its rights, if any, to setoff any sums due to the Debtor against sums due the FDIC-Receiver from the Debtor or their non-debtor subsidiaries.

41.     Nothing in this proof of claim describing or in any way relating to property in which the Debtor now or hereafter may assert an interest shall be construed or deemed in any way as evidence that such assets are property of the estate or an admission that the Debtor has any rights in such property. This claim is submitted to assert and preserve the rights of the FDIC-Receiver in the Debtor's pending bankruptcy cases, and neither the submission of this proof of claim nor any provision in it shall be construed or deemed as evidence that FDIC-Receiver has waived or intends to waive any rights or claims afforded it under applicable law. Without limiting the foregoing, the FDIC-Receiver reserves any rights at law or equity that it has or may have against any other entity, person or persons, including without limitation the insiders,

directors or officers of the Debtor, of Colonial Bank or of their affiliated entities, or any of their insurers or indemnitors.

42.     This proof of claim is not intended to be, and shall not be construed as: (a) an election of remedies; (b) waiver of any right to the determination or any issue or matter by a jury; (c) a waiver of any defaults; or (d) a waiver or limitation of any rights at law or equity, remedies, claims or interests of the FDIC-Receiver.

K.     <u>Notices</u>

43.     All notices and requests for documents to the FDIC-Receiver relating to this proof of claim shall be served upon:

Jeffrey E. Schmitt
Counsel - Legal Division
Federal Deposit Insurance Company
Room VS-D-7608
3501 Fairfax Drive
Arlington, VA 22226-3500
jschmitt@fdic.gov

Thomas R. Califano
John J. Clarke, Jr.
Jeremy Johnson
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York  10020
Telephone: (212) 335-4500
thomas.califano@dlapiper.com
john.clarke@dlapiper.com
jeremy.johnson@dlapiper.com

44.     The claims herein include (1) claims to funds that may be held by third parties, (2) claims to funds that are held by the Debtor or subject to express or equitable trust, (3) general unsecured claims, and (4) administrative and priority claims. Based on the state of the records currently available to the FDIC-Receiver, on the fact that many records were not available to the FDIC-Receiver at the time of preparation and filing of this proof of claim, and on information derived from various records reviewed, it is possible that certain assets which the Debtor assert to own in their schedules or otherwise, may in fact be owned by the FDIC-Receiver, and may not be property of the Debtor's estate. The FDIC-Receiver is investigating the circumstances as thoroughly and expeditiously as possible. The FDIC-Receiver hereby asserts its claim to such assets and will submit more specific claims as soon as information is made available in order to evaluate, ascertain and determine specific ownership interests.

# EXHIBIT B

| UNITED STATES BANKRUPTCY COURT Middle District of Alabama | PROOF OF CLAIM |
|---|---|

| Name of Debtor: In re The Colonial BancGroup, Inc. | Case Number: 09-32303 |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
**Federal Deposit Insurance Corporation, as receiver for Colonial Bank, Montgomery, Alabama**

☑ Check this box to indicate that this claim amends a previously filed claim.

Name and address where notices should be sent:
DLA Piper LLP (US), 1251 Avenue of the Americas, New York, New York 10020
Attention: Thomas R. Califano, John J. Clarke, Jr., Jeremy Johnson

Telephone number:
(212) 335-4500

Court Claim Number: **139**
(*If known*)

Filed on: **11/30/2009**

Name and address where payment should be sent (if different from above):
Federal Deposit Insurance Corporation, as receiver for Colonial Bank
1601 Bryan Street, Dallas, Texas 75201, Attention: Robert Schoppe, Receiver in Charge

Telephone number:
(972) 761-8556

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:** $_____

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** __SEE ATTACHMENT__
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** __N/A__

    **3a. Debtor may have scheduled account as:** _____
    (See instruction #3a on reverse side.)

**4. Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate    ☐ Motor Vehicle    ☐ Other
Describe:

**Value of Property:** $_____ **Annual Interest Rate** _____%

**Amount of arrearage and other charges as of time case filed included in secured claim,**

**if any:** $_____ **Basis for perfection:** _____

**Amount of Secured Claim:** $_____ **Amount Unsecured:** $_____

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☑ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__9__).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**FOR COURT USE ONLY**

| Date: 02/19/2010 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. |
|---|---|
| Arthur Cook, Receiver in Charge | |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

### Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the bankruptcy debtor's name, and the bankruptcy case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is located at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, and credit card. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if the trustee or another party in interest files an objection to your claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). If the claim is based on the delivery of health care goods or services, see instruction 2. Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

---

#### DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity owed a debt by the debtor that arose on or before the date of the bankruptcy filing. See 11 U.S.C. §101 (10)

**Claim**
A claim is the creditor's right to receive payment on a debt owed by the debtor that arose on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car.

A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax-identification, or financial-account number, and all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

#### INFORMATION

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

Addendum to Proof of Claim Amendment
The Federal Deposit Insurance Corporation, as
Receiver for Colonial Bank, Montgomery, Alabama

A.   Amendment to Proof of Claim

1.   The Federal Deposit Insurance Corporation, as receiver (the "FDIC-Receiver")

for Colonial Bank, Montgomery, Alabama ("Colonial Bank") submits this first amendment to its

proof of claim (Claim No. 139) in the chapter 11 case of debtor The Colonial BancGroup, Inc.

(the "Debtor").  This amendment supplements the FDIC-Receiver's proof of claim, which is

incorporated by reference herein in its entirety, and does not supersede that proof of claim in any

respect.

2.   On August 14, 2009, Colonial Bank was closed by the Alabama State Banking

Department, and the FDIC-Receiver was appointed as its receiver.  Pursuant to 12 U.S.C.

§ 1821(d)(2), the FDIC-Receiver succeeded by operation of law to the rights, titles, powers, and

privileges, including legal claims, of Colonial Bank, and of any stockholder, member,

accountholder, depositor, officer or director of Colonial Bank.

3.   This amendment to the FDIC-Receiver's proof of claim is being filed in order to

avoid any contention that the FDIC-Receiver somehow has waived any rights it may have that

may conflict with claims to ownership that may be asserted by the Debtor.  Under 12 U.S.C.

§ 1821(d)(13)(D), "no court shall have jurisdiction over" --

> (i)   any claim or action for payment from, or any action
> seeking a determination of rights with respect to, the assets of any
> depository institution for which the [FDIC] has been appointed receiver,
> including assets which the [FDIC] may acquire from itself as such
> receiver; or

(ii)     any claim relating to any act or omission of such institution or the [FDIC] as receiver.

12 U.S.C. § 1821(d)(13)(D).  To the extent any matter set forth herein falls within the scope of the foregoing, the United States Bankruptcy Court for the Middle District of Alabama (the "Bankruptcy Court") does not have jurisdiction.  Instead, subject matter jurisdiction is limited to the United States District Courts for the Middle District of Alabama or for the District of Columbia in the manner provided for in 12 U.S.C. § 1821(d)(6)(A).  Further, under 12 U.S.C. § 1821(j), "no court may take any action . . . to restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or receiver."  This limitation includes the bankruptcy courts.

4.     A defense of lack of subject matter jurisdiction cannot be waived, and the FDIC-Receiver expressly reserves that defense as to any proceeding with respect to such matters that the Debtor may seek to initiate against it, all of which must be adjudicated in specified district courts and solely to the extent permitted under the provisions of 12 U.S.C. § 1821.  The filing of this proof of claim does not in any way alter this defense to jurisdiction.

5.     In a motion filed on February 3, 2010, the Debtor sought authority from the Bankruptcy Court for proceedings to resume in a stayed pre-petition condemnation action with respect to certain improved real property in Orlando, Florida, at 715 N. Garland Avenue, Orlando, Florida  38201 (the "Garland Property").  The FDIC-Receiver's investigation is ongoing into the property interests that are held by Colonial Bank in the Garland Property, which would be the property of the FDIC-Receiver and not of the Debtor.  While it believes it was included in its proof of claim, the FDIC-Receiver hereby amends its proof of claim to make clear that it asserts a claim to any proceeds obtained with respect to the Garland Property, whether in the condemnation action or through sale, lease, encumbrance or other form of transaction, to the

extent that Colonial Bank is the equitable or legal owner of that property, including any improvements thereon or furniture, fixtures or equipment contained therein.  The FDIC-Receiver further asserts a claim to any recovery obtained by the Debtor in the condemnation proceeding to the extent such recovery is attributable to the FDIC-Receiver's interests with respect to the Garland Property.

6.     The FDIC-Receiver further amends its proof of claim to make clear that it asserts a claim, in accordance with 11 U.S.C. § 541(d) or otherwise, for any asset nominally held in the name of the Debtor or any of its non-debtor affiliates to the extent that Colonial Bank, or any of Colonial Bank's subsidiaries, is the true owner of such asset.

B.     <u>Reservation of Rights</u>

7.     As set forth above, the FDIC-Receiver is entitled to the statutory protections provided under its governing statute, including without limitation 12 U.S.C. § 1821(d)(13)(D) and the exclusive receivership claims process set forth in 12 U.S.C. § 1821(d).  This amendment to the FDIC-Receiver's proof of claim is filed solely to protect the FDIC-Receiver against a claim of waiver in the Debtor's bankruptcy case and does not alter or waive the foregoing statutory provisions in any respect.

8.     Neither this amendment nor any subsequent appearance, pleading, claim, document, suit, motion nor any other writing or conduct, shall constitute a waiver by the FDIC-Receiver of any:  (a) right of the FDIC-Receiver to assert a defense of sovereign immunity; (b) right to have any and all final orders entered only after appropriate administrative procedures and/or de novo review by a United States district court; (c) right to elect a trial by jury in any matters so triable; (d) right to have the reference of this matter withdrawn by the United States district court in any matter or proceeding subject to mandatory or discretionary withdrawal; or

(e) other rights, claims, actions, defenses, setoffs, recoupments or other matters to which the FDIC-Receiver is entitled under any agreements, at law or in equity or under the United States Constitution. All of the above rights are expressly reserved and preserved without exception and with no purpose of conceding jurisdiction in any way by this filing or by any other participation in this matter. The FDIC-Receiver expressly reserves all rights to assert the preemption of the Bankruptcy Court's jurisdiction and the exclusive jurisdiction provided under title 12.

9.       The identification or enumeration of the FDIC-Receiver's rights and remedies set forth in its proof of claim and this amendment is not intended to be exhaustive. In addition, the FDIC-Receiver's investigation and review of the books and records of Colonial Bank is ongoing, and the FDIC-Receiver and its professional advisers have not yet had a sufficient opportunity to evaluate and determine all claims that the FDIC-Receiver may have against the Debtor. The FDIC-Receiver reserves the right to further amend, revise or supplement this proof of claim in any respect, and to file such additional claims and requests for payment. Without limiting the foregoing, the FDIC-Receiver reserves the right to assert specific claims or counterclaims for as-yet unliquidated, unmatured or contingent claims currently known or unknown, including without limitation, claims for indemnification, contribution, subrogation or reimbursement from the Debtor for any claims of third parties that may be asserted against the FDIC-Receiver or payments made by or on behalf of the FDIC-Receiver for which the Debtor is responsible.

10.      The FDIC-Receiver further reserves the right to further amend or supplement its proof of claim, including, without limitation, to:  cure a defect in the original claim, correct the claim amount or priority status, include additional supporting documents, describe the claim in greater detail, or add additional claims presently unknown to the FDIC-Receiver that, if known, could have affected this claim or resulted in the assertion of additional damages. In addition,

4

nothing herein shall be deemed to waive or otherwise affect the rights of any other person, including without limitation, BB&T, to make claims similar to or parallel with this claim.

11.    The FDIC-Receiver reserves all rights to setoff against the Debtor any interests that are subject to setoff under section 553 of the Bankruptcy Code.  Accordingly, the FDIC-Receiver asserts and reserves all of its rights, if any, to setoff any sums due to the Debtor against sums due the FDIC-Receiver from the Debtor or its non-debtor subsidiaries.

12.    Nothing in this amendment or the proof of claim describing or in any way relating to property in which the Debtor now or hereafter may assert an interest shall be construed or deemed in any way as evidence that such assets are property of the estate or an admission that the Debtor has any rights in such property.  The proof of claim, as amended, is submitted to assert and preserve the rights of the FDIC-Receiver in the Debtor's pending bankruptcy case, and neither the submission of the proof of claim nor any provision in it shall be construed or deemed as evidence that FDIC-Receiver has waived or intends to waive any rights or claims afforded it under applicable law.  Without limiting the foregoing, the FDIC-Receiver reserves any rights at law or equity that it has or may have against any other entity, person or persons, including without limitation the insiders, directors or officers of the Debtor, of Colonial Bank or of their affiliated entities, or any of their insurers or indemnitors.

13.    This amended proof of claim is not intended to be, and shall not be construed as: (a) an election of remedies; (b) waiver of any right to the determination or any issue or matter by a jury; (c) a waiver of any defaults; or (d) a waiver or limitation of any rights at law or equity, remedies, claims or interests of the FDIC-Receiver.

C.    Notices

14.    All notices and requests for documents to the FDIC-Receiver relating to the

FDIC-Receiver's amended proof of claim shall be served upon:

Jeffrey E. Schmitt                          Thomas R. Califano
Counsel - Legal Division                    John J. Clarke, Jr.
Federal Deposit Insurance Company           Jeremy Johnson
Room VS-D-7608                              DLA Piper LLP (US)
3501 Fairfax Drive                          1251 Avenue of the Americas
Arlington, VA 22226-3500                     New York, New York  10020
jschmitt@fdic.gov                           Telephone: (212) 335-4500
                                            thomas.califano@dlapiper.com
                                            john.clarke@dlapiper.com
                                            jeremy.johnson@dlapiper.com

15.    Based on the state of the records currently available to the FDIC-Receiver, on the

fact that many records were not available to the FDIC-Receiver at the time of preparation and

filing of this proof of claim, and on information derived from various records reviewed, it is

possible that certain assets which the Debtor assert to own in their schedules or otherwise, may

in fact be owned by the FDIC-Receiver, and may not be property of the Debtor's estate.  The

FDIC-Receiver is investigating the circumstances as thoroughly and expeditiously as possible.

The FDIC-Receiver hereby asserts its claim to such assets and will submit more specific claims

as soon as information is made available in order to evaluate, ascertain and determine specific

ownership interests.

# EXHIBIT C

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

```
-----------------------------------------------------------x
                                          :
                                          :
THE COLONIAL BANCGROUP, INC.,             :
                                          :
         Plaintiff,                       :
                                          :
v.                                        :          Case No.  2:10-cv-00198
                                          :
FEDERAL DEPOSIT INSURANCE                 :
CORPORATION, AS RECEIVER FOR              :          JURY TRIAL DEMANDED
COLONIAL BANK,                            :
                                          :
                                          :
         Defendant.                       :
                                          :
-----------------------------------------------------------x
```

### AMENDED COMPLAINT

THE COLONIAL BANCGROUP, INC. ("BancGroup") files this Amended Complaint against the Federal Deposit Insurance Corporation, in its capacity as receiver for Colonial Bank, Montgomery, Alabama (the "FDIC-Receiver"):

### PARTIES

1.     BancGroup is a corporation formed under the laws of the State of Delaware and, prior to the Petition Date (as defined below), was headquartered and conducted business at 100 Colonial Bank Boulevard, Montgomery, Alabama 36117.

2.     BancGroup owned Colonial Bank and certain non-banking subsidiaries.

3.     The Federal Deposit Insurance Corporation ("FDIC-Corporate") is the agency charged by law with, among other duties, administering the Federal Deposit Insurance Act and the federal bank deposit insurance system.  The FDIC-Receiver serves in the capacity of receiver for Colonial Bank and is being sued in such capacity herein.  The FDIC-Receiver may be served with this Amended Complaint by service upon counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF.

## JURISDICTION, VENUE AND GENERAL RESERVATION OF RIGHTS

4.       This action arises under the Constitution and the laws of the United States, including, without limitation, the Federal Deposit Insurance Act ("FDI Act"), 12 U.S.C. § 1811 *et seq.*, as amended.  This Court has jurisdiction over the subject matter of this action pursuant to 12 U.S.C. §§ 1819(b)(2)(A) and 1821(d)(6), and 28 U.S.C. § 1331.

5.       Venue is proper in this Court under 12 U.S.C. § 1821(d)(6) and 28 U.S.C. § 1391(e).

6.       The filing of this Amended Complaint and the Proof of Claim (as defined below) relating thereto is not intended to be and shall not operate as a waiver or release of any rights or claims whatsoever that BancGroup may have, whether against Colonial Bank, the FDIC-Receiver, FDIC-Corporate or any other person or entity and whether such claim can be asserted herein, in BancGroup's bankruptcy case or in any other forum; and the filing of this Amended Complaint and the Proof of Claim is not a waiver of BancGroup's right, to the fullest extent authorized by law, to seek recovery of any claim described herein (or any other claim it may have against Colonial Bank or the FDIC-Receiver) in the bankruptcy case of BancGroup or in any other forum.  Without limiting the generality of the foregoing, BancGroup expressly reserves all rights that it may have to surcharge (under Section 506(c) of the Bankruptcy Code or otherwise) any property of BancGroup's estate in which Colonial Bank or the FDIC-Receiver asserts any security interest or other lien. The purpose of this Amended Complaint is to establish the amount of the Claim of BancGroup in the receivership of Colonial Bank, and BancGroup will seek (and reserves the right to seek) judicial determination of its ownership or other interests in any assets that are or are may be assets of BancGroup's Chapter 11 estate.

7.       The filing of this Compliant and the Proof of Claim is not an election of remedies. BancGroup expressly reserves all of its claims, rights, powers and remedies against (i) Colonial Bank and any other person or entity, including, without limitation, any tenant, sublessee, guarantor or other co-liable persons and (ii) any property in which BancGroup has asserted a security interest, lien or other interest. BancGroup expressly reserves all rights, defenses, objections and remedies with respect to any claim by

Colonial Bank and/or the FDIC-Receiver against BancGroup, including, without limitation, the right of setoff or recoupment.

## **BACKGROUND**

8.       On August 14, 2009 (the "Receivership Date"), Colonial Bank was closed by the Alabama State Banking Department, and the FDIC-Receiver was appointed as receiver for Colonial Bank (the "Receivership").  On the Receivership Date, the FDIC-Receiver asserted dominion and control over not only the books and records of Colonial Bank but also over the books and records of BancGroup and certain of its direct and indirect subsidiaries.

9.       The FDIC-Receiver has continued to withhold and/or cause to be withheld books and records of BancGroup, including documents related to the claims asserted herein, since that time, and has impeded the efforts of BancGroup to access those records for purposes of quantifying and further investigating these claims.

10.       The FDIC-Receiver sold and assigned substantially all of the assets of Colonial Bank to Branch Banking and Trust Company ("BB&T") pursuant to a Purchase and Assumption Agreement dated as of August 14, 2009 among the FDIC-Receiver, FDIC-Corporate and BB&T (the "P&A Agreement").

11.       As a part of the transaction under the P&A Agreement, the FDIC-Receiver took possession of substantially all of the books and records, tangible and electronic, of BancGroup and its subsidiaries (collectively, the "Books and Records") and also transferred to BB&T possession of certain of those Books and Records.  Thereafter, the FDIC-Receiver undertook to obstruct and influence access to and the disposition of such Books and Records through the exercise of certain alleged contractual rights under the P&A Agreement.  These efforts have impeded the efforts of BancGroup to quantify and further investigate its claims.

12.       On August 25, 2009 (the "Petition Date"), BancGroup filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Middle District of Alabama, Northern Division (the "Bankruptcy Court").

BancGroup continues to manage its business affairs as debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

## THE PROOF OF CLAIM

13.     Pursuant to Section 1821(d) of title 12 of the United States Code, the FDIC-Receiver set November 19, 2009, as the last day to file claims in the Receivership that are claims against Colonial Bank and/or the FDIC-Receiver.

14.     On November 19, 2009, BancGroup timely filed a proof of claim in the Receivership (the "Proof of Claim"), describing in detail numerous claims (each a "Claim") against the Receivership estate  to the extent known to BancGroup as of the filing date based on the limited records in its possession.

15.     The Proof of Claim was filed on or about the last day permitted for the filing of claims. Claims filed in the Receivership after November 19, 2009, would have been barred.  Thus, BancGroup had no ability to allow claims to develop further, nor to engage in additional investigation, prior to filing the Proof of Claim.

16.     As a result of the FDIC-Receiver's transfer of the Books and Records to BB&T and restrictions imposed by the FDIC-Receiver on BancGroup's access to the Books and Records, the Proof of Claim was prepared using the limited information available to BancGroup, which, in certain instances, consisted only of summary or incomplete information set forth in the few books and records remaining in BancGroup's possession.

17.     In filing the Proof of Claim, BancGroup reserved all its rights to amend and/or supplement the Proof of Claim at any time and in any respect and to assert any and all other claims of whatever kind or nature that it has, or may have, against the FDIC-Receiver.  BancGroup likewise reserve all rights to amend and/or supplement this Amended Complaint under the Federal Rules of Civil Procedure.

18.     The Proof of Claim included both a liquidated claim and numerous contingent and/or unliquidated claims as more fully described below.

- 4 -

19.     On January 6, 2010, the FDIC-Receiver denied the Proof of Claim (the "<u>Denial</u>").  A copy of the Denial is attached hereto as **<u>Exhibit A</u>**.

20.     The Denial only addressed one of the numerous Claims included in the Proof of Claim, but disallowed all of the Claims.

21.     The Denial was based on the purported lack of "sufficient supporting documentation."  This alleged lack of supporting documentation was due solely to the FDIC-Receiver's seizure of BancGroup books and records and its refusal to allow BancGroup access to those records.

22.     The FDIC-Receiver's denial of the Proof of Claim triggered a 60-day period for the filing of a judicial challenge to the Denial.  As a result, BancGroup can no longer delay the filing of this action.

23.     The Proof of Claim included the following discrete claims:

### (<u>Intercompany Receivables</u>)

24.     Prior to the Receivership Date, BancGroup incurred expenses on behalf of Colonial Bank, which expenses resulted in intercompany accounts owed by Colonial Bank to BancGroup and are reflected as such in the books and records of BancGroup and Colonial Bank (the "<u>Intercompany Receivable Claims</u>").

25.     The Intercompany Receivable Claims arose out of transactions in the ordinary course of business between the parties.

26.     As a result of these transactions, Colonial Bank was indebted to BancGroup as of the Receivership Date in an amount not less than $514,420.78.

### (<u>Taxes</u>)

27.     BancGroup and Colonial Bank, and certain other direct and indirect subsidiaries of BancGroup and Colonial Bank, established and agreed to the terms of a certain intercorporate tax allocation arrangement (the "<u>Tax Sharing Agreement</u>").

28.     Pursuant to the Tax Sharing Agreement, all federal income taxes were paid directly by BancGroup on behalf of the consolidated tax group, which includes Colonial Bank.

- 5 -

29.     Historically, in accordance with the Tax Sharing Agreement, each subsidiary of BancGroup that was a party to the Tax Sharing Agreement made federal-tax related payments to BancGroup in respect of the hypothetical, separate federal income tax liabilities of such member and its subsidiaries.

30.     Prior to the Receivership Date, and pursuant to the Tax Sharing Agreement, BancGroup in the ordinary course of business paid federal taxes owing by the consolidated tax group, including amounts owing by Colonial Bank and/or its subsidiaries.

31.     As of the Receivership Date, on information and belief, Colonial Bank and its subsidiaries have not paid BancGroup all federal-tax related amounts under and as required by the Tax Sharing Agreement.

32.     BancGroup asserts an unliquidated claim against Colonial Bank on account of (i) federal interest, penalties and taxes paid on behalf of Colonial Bank and/or its subsidiaries, (ii) benefits due to BancGroup for tax losses and credits generated by BancGroup and (iii) any and all unpaid interest, penalties and taxes attributable to Colonial Bank and its subsidiaries for which BancGroup is liable, including, without limitation, any interest, penalties and taxes with respect to the 2009 tax year.

33.     On information and belief, BancGroup also has claims against Colonial Bank and Colonial Bank's subsidiaries on account of state, local and foreign interest, penalties and taxes paid on behalf of Colonial Bank and its subsidiaries and/or advances by BancGroup to Colonial Bank or its subsidiaries in anticipation of tax refunds prior to receipt of such refunds.

34.     On account of the BancGroup's payment of federal, state and local taxes for the consolidated tax group, BancGroup is entitled to tax refunds in amounts to be determined after obtaining access and opportunity for review of records relating to BancGroup, Colonial Bank and its subsidiaries (the "Tax Refunds").

35.     All Tax Refunds are payable to BancGroup, regardless of whether such refunds are on account of taxes paid or losses incurred by Colonial Bank or its subsidiaries or any of BancGroup's other subsidiaries.

36.     On information and belief, the FDIC-Receiver intends to assert a claim to some or all of the Tax Refunds directly or indirectly from federal, state and other taxing authorities.  Such a claim is contrary to the rights of BancGroup under the Bankruptcy Code and the terms of the Tax Sharing Agreement. BancGroup therefore asserts a claim against the FDIC-Receiver and Colonial Bank (including its subsidiaries) on account of any such refunded amounts.

37.     BancGroup also has claims against Colonial Bank and its subsidiaries in respect of all or a portion of any Tax Refunds received by Colonial Bank and its subsidiaries and asserts a claim against Colonial Bank and its subsidiaries for any and all such claims.

38.     BancGroup is currently undergoing several federal, state and local tax audits, assessments, claims, and appeals thereof.  To the extent any taxes, interest and/or penalties are determined to be owed the taxing authorities, BancGroup expressly reserves all rights to supplement and/or amend this Amended Complaint and the Proof of Claim to include any amounts attributable to Colonial Bank or its subsidiaries.  To the extent that any taxing authority assesses additional taxes and/or interest and penalties against BancGroup, BancGroup expressly reserves all rights to supplement and/or amend this Amended Complaint and the Proof of Claim to include any amounts attributable to Colonial Bank or its subsidiaries.

### (Claims Arising Out of Capital Contributions and Certain Other Transfers)

39.     Some or all of the transfers by BancGroup of its property to Colonial Bank as described in the paragraphs that follow are voidable as preferences or fraudulent conveyances under Sections 544, 547 or 548 of the Bankruptcy Code because BancGroup was insolvent or without adequate capital (or unable to pay its debts in the ordinary course as they matured) at the time, or as a result, of each such transfer; Colonial Bank was insolvent at the time of its receipt of such transfer; and such transfer was made by BancGroup either in payment of an antecedent debt and outside of the ordinary course of business of both BancGroup and Colonial Bank or without BancGroup's having received reasonably equivalent value or fair consideration in exchange for such transfer.

40.     On information and belief, BancGroup historically made capital contributions and related transfers of property to Colonial Bank (the "Capital Contributions"), including, without limitation, Capital Contributions made between August 24, 2007, and August 24, 2009, in the amounts and on the dates specified in **Exhibit B**. Of that amount, at least $50,880,867 in cash Capital Contributions and $70,664,037 in transfers of loan receivables, were made in 2009 by BancGroup to Colonial Bank.  Moreover, FDIC-Corporate, the Federal Reserve Bank of Atlanta or other governmental regulatory agencies may have pressured and induced BancGroup to make one or more of the Capital Contributions at a time when such agencies knew or should have known that appointment of the FDIC-Receiver was likely or imminent.

41.     On information and belief, in or around the month of June, 2009, the Debtor received a refund of federal taxes in the approximate amount of $166,000,000 and transferred that approximate amount to Colonial Bank in connection with the Debtor's receipt of such tax refund.

42.     On or about December 23, 2008, BancGroup made a loan, advance or capital contribution to CBG Real Estate, LLC ("CBG"), an Alabama limited liability company, the sole member of which is BancGroup, for the purpose of enabling CBG to acquire various loans from Colonial Bank having an approximate unpaid balance of $120,605,200 (the "Acquired Loans").  On or about March 31, 2009, CBG declared a dividend to BancGroup consisting of a 65% participation interest in some or all of the Acquired Loans pursuant to a Participation Certificate dated as of March 31, 2009, and, concurrently therewith, BancGroup contributed the participation interest to the capital of Colonial Bank.  On information and belief, most, if not all, of the Acquired Loans were subprime and/or non-performing and have to date proven to be substantially uncollectible from the obligors thereof, absent foreclosure on any security for such Acquired Loans, and the value of such Acquired Loans is significantly less than the amount paid to Colonial Bank therefor by CBG with funds derived, on information and belief, from BancGroup.

43.     BancGroup asserts voidable transfer claims pursuant to Sections 544, 547 and 548 of the Bankruptcy Code in an amount not less than $899,867,786.00

- 8 -

**(CBG Florida REIT Exchange)**

44.     CBG Florida REIT Corp. ("Florida REIT"), a Florida corporation and an indirect subsidiary of BancGroup and BancGroup's principal subsidiary, Colonial Bank, is a qualified real estate investment trust under the Internal Revenue Code of 1986.

45.     At all times relevant hereto, Florida REIT's assets consisted primarily of participation interests in mortgage loans that were secured by commercial property in the State of Florida and that were originated by Colonial Bank.

46.     On or about May 15, 2007, Florida REIT issued its Fixed-to-Floating Rate Perpetual Non-Cumulative Preferred Stock, Class A, Series A (the "Florida REIT Preferred"), which were exchangeable upon an "Exchange Event" into Series A Preferred Stock of BancGroup.

47.     On or about August 10, 2009, Colonial Bank received notice from FDIC-Corporate directing that Florida REIT exchange all Florida REIT Preferred for an equal amount of Fixed-to-Floating Rate Perpetual Non-Cumulative Preferred Stock, Series A in BancGroup (the "BancGroup Preferred Stock") due to the occurrence of an "Exchange Event" under the Exchange Agreement, entered into as of May 21, 2007, among Florida REIT, Colonial Bank and BancGroup (the "Preferred Exchange").

48.     On information and belief, the Preferred Exchange occurred and was effective at 8:00 a.m. Eastern Standard Time on August 11, 2009.  As of August 11, 2009, there was $300,000,000 in liquidation amount of Florida REIT Preferred outstanding.

49.     On information and belief, BancGroup received (or was entitled to receive) a transfer of, or otherwise obtained (or was entitled to obtain) a legal and/or beneficial interest in or right to, the Florida REIT Preferred and asserts rights to and legal or beneficial interests in the Florida REIT Preferred.

50.     If, however, BancGroup thereafter transferred or was otherwise divested of its legal and/or beneficial interests in the Florida REIT Preferred in connection with the Preferred Exchange or otherwise, the net result of this Preferred Exchange was an increase in the obligations of BancGroup by the amount of $300,000,000, for the purpose and with the effect of benefiting Colonial Bank and/or its transferees,

- 9 -

successors or assigns without providing BancGroup any consideration or value and with a resulting loss or forfeiture of BancGroup's interest in the Florida REIT Preferred.

51.     If legal and beneficial interests of BancGroup in the Florida REIT Preferred were transferred by or otherwise divested from BancGroup in favor of Colonial Bank and/or its transferees, successors or assigns, BancGroup, which would have been insolvent and undercapitalized at the time of such transfer, asserts a claim pursuant to Sections 544, 547, 548 and 550 of the Bankruptcy Code to avoid such transfer or divestiture, and to recover the Florida REIT Preferred or the value thereof together with any damages BancGroup may have suffered as a result of being deprived of the use of the property and proceeds thereof. In addition, BancGroup reserves all other claims or causes of action, under any theory, with respect to the Preferred Exchange.

### (Preference Claims)

52.     On or before the Receivership Date, on numerous occasions, BancGroup transferred property to, or caused its property (or an interest in its property) to be transferred to, Colonial Bank or to certain third parties for the benefit of Colonial Bank (collectively, the "Transfers") on account of antecedent obligations of BancGroup to Colonial Bank.

53.     The approximate amount of the Transfers occurring during the one-year period before the Petition Date has not yet been determined because of BancGroup's lack of access to the Books and Records.

54.     At the time of the Transfers, Colonial Bank was (i) an "insider" of BancGroup as that term is defined in the Bankruptcy Code or under applicable non-bankruptcy law and (ii) a "creditor" of BancGroup, as that term is defined in the Bankruptcy Code or under applicable non-bankruptcy law.

55.     Because BancGroup was insolvent and undercapitalized at the time some of the Transfers were made to Colonial Bank (or after giving effect to such Transfers), the Transfers are voidable pursuant to, among other applicable laws, (i) Sections 544 (applying applicable non-bankruptcy law) and 547 of the Bankruptcy Code and (ii) applicable non-bankruptcy law.  Consequently, BancGroup is entitled to recover

from Colonial Bank the property or the value of the property transferred on account of such antecedent obligations.

56.     Specifically, BancGroup is entitled to avoid and recover each Transfer from Colonial Bank as a voidable preference or other avoidable transfer to the extent that such Transfer (i) was to or for the benefit of a creditor, (ii) was to or on account of an antecedent debt of BancGroup, (iii) was made while BancGroup was insolvent, (iv) was made within one year or less from the date that BancGroup's bankruptcy case was commenced, and (v) would permit Colonial Bank to receive more than it would receive in a case under Chapter 7 of the Bankruptcy Code if such Transfer had not been made.

## (<u>Vendor Contract Claims</u>)

57.     BancGroup is a party to numerous agreements with vendors (the "<u>Vendors</u>") who lease property, perform services, deliver goods, or license software.  Those agreements (the "<u>Vendor Contracts</u>") primarily benefitted the banking operations formerly conducted by Colonial Bank.

58.     Prior to the Receivership, Colonial Bank, as the primary beneficiary, typically paid Vendors for goods and services received pursuant to the Vendor Contracts.

59.     There continue to be unpaid obligations outstanding in connection with certain of the Vendor Contracts.  For all such outstanding obligations, BancGroup asserts claims against Colonial Bank (i) for goods or services provided to Colonial Bank pursuant to any Vendor Contracts to the extent that Colonial Bank has failed or refused to reimburse BancGroup for amounts paid by BancGroup pursuant to such Vendor Contracts and (ii) for any unpaid liabilities outstanding under such Vendor Contracts.

## (<u>Improper Asset Possession and Sales</u>)

60.     On the Receivership Date, the FDIC-Receiver took possession and control of the premises of Colonial Bank and, in connection therewith, took possession of or asserted dominion and control over certain property (including, but not limited to, furniture, fixtures, equipment, intellectual property, Books and Records, and other tangible and intangible assets) owned by BancGroup (the "<u>BancGroup Property</u>").

- 11 -

61.     To date, the FDIC-Receiver has neither accounted for nor compensated BancGroup for its possession, dominion and control of the BancGroup Property.

62.     On information and belief, the FDIC-Receiver converted certain items of BancGroup Property by purporting to transfer an ownership interest therein to BB&T.

63.     BancGroup thus asserts a claim against Colonial Bank for payment, in full, for such transferred property in an amount to be determined but equal to the fair market value of the transferred property.

### (**Deposit Claims**)

64.     As of the Receivership Date, BancGroup had cash deposits at Colonial Bank in the amount of $36,995,513.27, which were divided among six accounts (collectively, the "Deposit Accounts") in the approximate amounts stated on **Exhibit C**.

65.     On the Receivership Date, the FDIC-Receiver sold substantially all of the assets of Colonial Bank to BB&T pursuant to the P&A Agreement.

66.     The assets sold and transferred to BB&T included the Deposit Accounts.

67.     As of the date of the Proof of Claim continuing until the filing of this Amended Complaint, all of the Deposit Accounts remain with BB&T and, both prior to and after the Petition Date, the FDIC-Receiver has prevented BB&T from allowing BancGroup access to balances in the Deposit Accounts.

68.     After the Receivership Date but prior to the Petition Date, BancGroup received a wire transfer of $1,425,000 from SunTrust Bank in Atlanta, Georgia, which was deposited into a Deposit Account utilized by BancGroup as its operating account.  Additional debits and credits also occurred in the operating account during this period.  No activity occurred in the remainder of the Deposit Accounts between the Receivership Date and the Petition Date.

69.     As of the Petition Date and after the sale to BB&T, BancGroup had cash deposits at BB&T in the amount of $38,409,237.74, which were divided among the six Deposit Accounts in the approximate amounts stated on **Exhibit D**.

- 12 -

70.     In connection with the Receivership and the subsequent sale of substantially all of Colonial Bank's assets to BB&T, BancGroup was impermissibly denied access to and use of the Deposit Accounts by the FDIC-Receiver (other than the limited use granted under Bankruptcy Court Order), was unable to invest the funds in the Deposit Accounts, move the funds to another depository institution, transfer the funds to interest-bearing accounts or use the funds in the Deposit Accounts to pay lawful claims of BancGroup, all in violation of the automatic stay under Section 362 of the Bankruptcy Code.

71.     BancGroup asserts a claim for damages (including interest) for the lost use of the funds in the Deposit Accounts from August 14, 2009, until such time as BancGroup is able to transfer funds to interest bearing accounts at other institutions, and such other damages as are recoverable in connection with the violation of the automatic stay under Section 362 of the Bankruptcy Code, but excluding damages for any time periods during which BancGroup has agreed in a cash collateral consent order in BancGroup's bankruptcy case not to assert a stay violation against the FDIC-Receiver.

72.     In the Chapter 11 case of BancGroup, the FDIC-Receiver and BB&T apparently purport to reserve certain alleged (and disputed) rights with respect to the Deposit Accounts, including rights under the P&A Agreement.  To the extent that BancGroup's rights to the Deposit Accounts have been in any way compromised or modified, BancGroup asserts a claim for any lost value or other consequential damages.

73.     BancGroup asserts a protective claim for the outstanding balance in each of the Deposit Accounts in the event the FDIC-Receiver purports to exercise any rights it may assert under the P&A Agreement or otherwise with respect to the Deposit Accounts.

74.     BancGroup also asserts that the FDIC-Receiver does not have any right of setoff with respect to the Deposit Accounts on account of any alleged claims it may assert against BancGroup.  This claim of BancGroup is entitled to priority pursuant to 12 U.S.C. § 1821(d)(11)(a)(ii).

- 13 -

**(Administrative Claims)**

75.     On information and belief, in certain instances, BancGroup paid or became liable for certain costs and expenses that inured to the sole or primary benefit of Colonial Bank subsequent to the Receivership Date.

76.     These amounts include, without limitation, any liability incurred by BancGroup as a result of BB&T's decision to exclude certain contracts from the P&A Agreement and expenses incurred by BancGroup that may have benefitted Colonial Bank.  In addition, BancGroup has foregone return premiums on insurance policies that it agreed not to cancel at the request of the FDIC-Receiver, as the FDIC-Receiver believed that amounts payable under the policies in respect of which such return premiums would have been paid were property of the Receivership.  BancGroup agreed to defer cancellation of the policies and receipt of the return premium with full reservation of rights against the FDIC-Receiver.

**(Employee Related Costs)**

77.     Prior to the Receivership, BancGroup was the sponsor of certain employee benefit plans, including The Colonial BancGroup 401(k) Plan and The Colonial Retirement Plan (collectively, the "Benefit Plans").

78.     While these Benefit Plans covered all or substantially all of BancGroup's employees, the participants and beneficiaries of the Benefit Plans consisted overwhelmingly of former officers and employees of Colonial Bank.

79.     BancGroup asserts a claim against Colonial Bank for all costs and expenses incurred by BancGroup in administering the Benefit Plans during the pendency of BancGroup's bankruptcy case, including the unwinding/termination of those Benefit Plans, and for any claims asserted against BancGroup that otherwise arise out of or relate to either of the Benefit Plans, including any claim asserted by the Pension Benefit Guaranty Corporation (the "PBGC") for any underfunding of the Benefit Plans.  The PBGC has filed proofs of claim in the Chapter 11 case of BancGroup aggregating in excess of $30,000,000.

- 14 -

80.     Prior to the Receivership, BancGroup sponsored a deferred compensation plan, entitled The Colonial BancGroup, Inc. Non-Qualified Deferred Compensation Plan (the "<u>Deferred Compensation Plan</u>").

81.     To the extent that BancGroup is or becomes liable for amounts due under the Deferred Compensation Plan, but does not receive the funds held in the Deferred Compensation Plan (or in the trust established in connection therewith), BancGroup asserts a claim against Colonial Bank for amounts due on account of the claims of former Colonial Bank officers and employees under the Deferred Compensation Plan.

### (<u>Insurance Claims</u>)

82.     BancGroup has an ownership interest in a variety of insurance policies.

83.     Certain of BancGroup's insurance policies name BancGroup and its subsidiaries, including Colonial Bank and its subsidiaries, as insured persons.

84.      BancGroup asserts claims against Colonial Bank for Colonial Bank's fair share of premiums paid by BancGroup with respect to such insurance.

85.     BancGroup further asserts the right to recover any proceeds of the insurance policies received by Colonial Bank or the FDIC-Receiver, including, without limitation, the proceeds of any director and officer liability policies and any fidelity and crime policy.

### (<u>Indemnification Claims</u>)

86.     BancGroup's bylaws provide for the indemnification of all BancGroup directors and officers.

87.     Prior to the Petition Date, at least five employees of Colonial Bank served as officers of BancGroup.

88.     If and to the extent that such officers (or any directors, officers, or employees of Colonial Bank) assert indemnification or contribution claims against it, BancGroup asserts against Colonial Bank claims for reimbursement of and indemnity against all such claims.

- 15 -

**(Other Contingent, Unliquidated Claims)**

89.     BancGroup asserts claims against Colonial Bank for reimbursement, contribution, indemnity, exoneration and subrogation with respect to all claims at any time asserted against BancGroup as co-obligor with, pledgor for the benefit of or joint/and several obligor with Colonial Bank, including, but not limited to, (a) any claims asserted against BancGroup that arise out of or are related to the mortgage warehouse lending business of Colonial Bank or any of its affiliates; or (b) on account of any guaranty, security agreement, indemnity, payment enhancement or assurance or other agreement entered into by BancGroup for the benefit of Colonial Bank or as security or payment assurance for any obligation of Colonial Bank or any of its subsidiaries.

**(Fees and Expenses Incurred in Bankruptcy Case)**

90.     BancGroup has incurred, and continues to incur, substantial legal fees and other expenses as a result of the FDIC-Receiver's repeated and ongoing violations of the automatic stay under Section 362 of the Bankruptcy Code, including, the FDIC-Receiver's unauthorized actions in denying BancGroup access to the Deposit Accounts and the Books and Records.

91.     Excluding damages for any time periods during which BancGroup has agreed in a cash collateral consent order in BancGroup's bankruptcy case not to assert a stay violation against the FDIC-Receiver, BancGroup asserts a claim for recovery of damages available under Section 362 of the Bankruptcy Code all as to be determined by the Bankruptcy Court as a "core" claim in the Bankruptcy Case.  This claim is entitled to priority pursuant to 12 U.S.C. § 1821(d)(11)(a)(i).

**(Orlando Real Estate)**

92.     In its proof of claim in the Chapter 11 case of BancGroup, the FDIC-Receiver asserts that it has or may have an ownership interest in or other claim to property that is located at 715 North Garland Avenue, Orlando, Florida 38201 (the "Garland Road Property").  The basis for the FDIC-Receiver's assertion of an interest or a desire to conduct further investigation to ascertain whether or not an interest exists in the Garland Road Property is unclear.

- 16 -

93.     The Garland Road Property is titled in BancGroup according to the real estate records in Orange County, Florida.  BancGroup acquired ownership of the property as the result of a merger on or about September 18, 1998, of C&G Properties of Orlando, Inc., a Florida corporation, which at the time of the merger was the owner of the Garland Road Property.

94.     Colonial Bank held a mortgage with respect to the Garland Road Property to secure an indebtedness allegedly owed by BancGroup to Colonial Bank, which mortgage and the underlying indebtedness secured thereby were satisfied from the proceeds of a condemnation award in the amount of $2,592,900 pursuant to a Stipulated Order of Taking entered on or about October 16, 2007, by the Circuit Court of the Ninth Judicial Circuit, in and for Orange County, Florida, in a condemnation proceeding instituted by the State of Florida Department of Transportation against BancGroup as owner of the subject property.

95.     By stipulation of the parties, the legal and beneficial ownership interests in the Garland Road Property and any rents, profits or proceeds thereof are to be adjudicated by the Bankruptcy Court.  To the extent that it is determined by the Bankruptcy Court that the Garland Road Property is an asset of the Receivership, amounts paid by BancGroup in satisfaction of Colonial Bank's mortgage, taxes paid by BancGroup in respect of the Garland Road Property and all other fees and expenses incurred by BancGroup in the Chapter 11 case in connection with its maintenance of the Garland Road Property or the condemnation proceedings now pending with respect to such property would be reimbursable to BancGroup by the FDIC-Receiver (if not otherwise reimbursed to BancGroup from the proceeds, rents or profits of such property) and would constitute a claim in the Receivership.

### (Interest)

96.     BancGroup asserts a claim against Colonial Bank for interest, at the highest rate of interest available under applicable law, on account of sums owed to BancGroup pursuant to its Liquidated Claim from the Receivership Date until receipt of payment and any and all contingent and/or unliquidated claims from the date that such claims cease to be contingent and are liquidated until receipt of payment.

**(Equity Interests)**

97.     BancGroup owns 100% of the outstanding stock of Colonial Bank.  Without waiving any other claim set forth herein, BancGroup makes a claim against Colonial Bank, pursuant to 12 U.S.C. § 1821(d)(11)(A), for the right to have distributed to it all funds or other property remaining (if any) after all depositors, creditors, other claimants and administrative expenses of the Receivership are paid, and the required accounting report has been filed.

## THE FDIC-RECEIVER'S DENIAL OF BANCGROUP'S PROOF OF CLAIM

98.     As alleged more fully above, BancGroup timely filed the Proof of Claim with the FDIC-Receiver in the Receivership on or about November 19, 2009.

99.     In the Denial, the FDIC-Receiver provided BancGroup notice that BancGroup's Claims had been disallowed.

100.    The Denial stated:

> The claims of Colonial BancGroup, Inc. for $514,420.78 were submitted without sufficient supporting documentation and have not been proven to the satisfaction of the Receiver.

101.    The FDIC-Receiver's reference to lack of sufficient documentation ignores the fact that the FDIC-Receiver took possession and control of substantially all of the electronic and hard copy records of BancGroup as of the Receivership Date and has consistently denied BancGroup from even obtaining access to such records.

102.    The notice provides no additional detail or explanation regarding the FDIC-Receiver's decision.

103.    On information and belief, it is the FDIC-Receiver's practice to request additional information from claimants if the FDIC-Receiver requires further information to determine whether a claim and/or the amount of such claim is valid.  *See, e.g.*, <u>ALLTEL Info. Servs., Inc. v. FDIC</u>, 970 F. Supp 775, 776 (C.D. Cal. 1997) ("In response to a request by an FDIC claims representative, ALLTEL provided the FDIC a letter… which provided calculations in support of both Proofs of Claims.")

104.    The FDIC-Receiver did not request any further information from BancGroup or its counsel regarding the Proof of Claim.

105.    On information and belief, the FDIC-Receiver typically issues receivership certificates when it allows a claim, but has not yet determined the amount (if any) that the claimant will receive when the proceeds of the receivership estate are distributed.

106.    The FDIC-Receiver did not provide BancGroup with any receivership certificates, but rather disallowed the Claims outright.

107.    Section 1821(d)(2)(H) of the FDI Act states that the FDIC-Receiver "shall pay all valid obligations of the insured depository institution in accordance with the prescriptions and limitations of this chapter." 12 U.S.C. § 1821(d)(2)(H).

108.    The FDIC-Receiver's refusal to consider BancGroup's Claims and its cryptic disallowance of those Claims violated the FDIC-Receiver's statutory duty to pay all valid claims in accordance with the FDI Act.

109.    Section 11(d)(5)(B) of the FDI Act further obligates the FDIC-Receiver to "allow any claim received on or before the date specified in the notice published under paragraph (3)(B)(i) by the receiver from any claimant which is proved to the satisfaction of the receiver." 12 U.S.C. § 1821(d)(5)(B).

110.    The FDIC-Receiver provided no grounds regarding why BancGroup's Claims were not proven to its satisfaction. The FDIC-Receiver's failure to do so is a violation of its statutory duties. The Denial has placed BancGroup into a position of substantial uncertainty as to its rights.

111.    The FDI Act provides that, when the FDIC-Receiver has disallowed a claim, the claimant may "request administrative review of the claim" or "file suit on such claim (or continue an action commenced before the appointment of the receiver) in the district or territorial court of the United States for the district within with the depository institution's principal place of business is located or the United States District Court for the District of Columbia (and such court shall have jurisdiction to hear such claim)." 12 U.S.C. § 1821(d)(6)(A).

112.     The FDI Act further provides that, "[i]f any claimant requests review under this subparagraph in lieu of filing or continuing any action under paragraph (6) and the Corporation agrees to such request, the Corporation shall consider the claim after opportunity for a hearing on the record."  12 U.S.C. § 1821(d)(7)(A).  "The Corporation shall also establish such alternative dispute resolution process as may be appropriate for the resolution of claims…"  12 U.S.C. § 1821(d)(7)(B)(i).

113.     Notwithstanding these statutory directives, the FDIC-Receiver's notice sets forth no administrative review process in which BancGroup could seek a hearing regarding its Claims.  Nor does it appear that the FDIC-Receiver has established any alternative dispute resolution mechanism to resolve proof of claim disputes.  Rather, the FDIC-Receiver's notice directs BancGroup to file a lawsuit if BancGroup disagrees with the disallowance of its Claims.  Accordingly, BancGroup filed this action.

## CLAIMS FOR RELIEF

### Count I

### (Determination of BancGroup's Proof of Claim)

114.     BancGroup incorporates the allegations and averments contained in paragraphs1 through 113 as if set forth fully herein.

115.     Under 12 U.S.C. § 1821(d)(6)(A), the Court has *de novo* jurisdiction to consider the Claims set forth in the Proof of Claim.  *See*, *e.g.*, Freeman v. FDIC, 56 F.3d 1394, 1400 (D.C. Cir. 1995) ("[U]nder section 1821(d)(6) [claimant] had recourse to de novo judicial review of the FDIC's denial of [their] claim."); Benjamin Franklin Shareholders Litig. Fund v. FDIC, 501 F. Supp. 2d 103, 106 (D.D.C. 2007) ("[T]his Court reviews de novo claims filed with, and processed by the FDIC under its administrative claims process.") (*citing* Freeman v. FDIC, 56 F.3d 1394, 1400 (D.C. Cir. 1995)).

116.     Each Claim is a valid and proven claim against the Receivership and the FDIC-Receiver is obligated to pay such Claims (subject to, and accordance with, 12 U.S.C. § 1821(d)(11)).

- 20 -

## Count II

### (Conversion of BancGroup's Property)

117.     BancGroup incorporates the allegations and averments contained in paragraphs 1 through 116 as if set forth fully herein.

118.     The FDIC-Receiver's refusal to compensate BancGroup for property taken into the Receivership that (a) belonged to BancGroup rather than Colonial Bank, (b) was improperly transferred to Colonial Bank and/or (c) is property that otherwise should be returned to BancGroup under applicable law, constitutes conversion of BancGroup's property.

## PRAYER FOR RELIEF

WHEREFORE, BancGroup respectfully requests the Court to grant the following relief:

1.     Enter an order declaring BancGroup's Claims to be valid and proven against the Receivership;

2.     Enter an order directing the FDIC-Receiver to pay the Claims from the assets of the Receivership in accordance with 12 U.S.C. § 1821(d)(11);

3.     Enter an order directing the FDIC-Receiver to provide BancGroup with an accounting of the disposition of the assets of the Receivership if any Claim is not satisfied in full;

4.     Enter an order directing the FDIC-Receiver to provide BancGroup with an accounting of all property transferred from BancGroup in connection with the Receivership;

5.     Enter a judgment against the FDIC-Receiver for damages, in an amount to be determined, equal to the value of BancGroup's property converted by the FDIC;

6.     Award BancGroup costs and attorneys fees as may be permitted by law; and

7.     Award BancGroup such other relief as may be just.

### DEMAND FOR JURY TRIAL

BancGroup, by and through its attorneys, hereby demands a trial by jury on all claims asserted in the

Amended Complaint that are triable by a jury.


Dated:  May 28, 2010                    /s/ Rufus T. Dorsey, IV
                                        One of the Attorneys for Plaintiff,
                                        The Colonial BancGroup, Inc.

                                        Dorman Walker, Esq.
                                        W. Clark Watson, Esq.
                                        BALCH & BINGHAM LLP
                                        Post Office Box 78
                                        Montgomery, Alabama 36101
                                        (334) 834-6500
                                        (334) 269-3115
                                        dwalker@balch.com
                                        cwatson@balch.com

                                        C. Edward Dobbs, Esq.
                                        Rufus T. Dorsey, IV, Esq.
                                        PARKER, HUDSON, RAINER & DOBBS LLP
                                        1500 Marquis Two Tower
                                        285 Peachtree Center Avenue NE
                                        Atlanta, Georgia 30303
                                        (404) 523-5300
                                        (404) 522-8409
                                        edobbs@phrd.com
                                        rdorsey@phrd.com

- 22 -

**EXHIBIT INDEX**

Exhibit A:      Denial Letter

Exhibit B:      Claims Arising Out of Capital Contributions and Certain Other Transfers

Exhibit C:      Deposit Accounts as of August 14, 2009

Exhibit D:      Deposit Accounts as of August 25, 2009

**Exhibit A**

**Denial Letter**

**Federal Deposit Insurance Corporation**
1601 Bryan Street, Dallas, TX 75201

Division of Resolutions and Receiverships

**CERTIFIED MAIL 7009 2820 0003 7873 2657**
**RETURN RECEIPT REQUESTED**

January 6, 2010

The Colonial BancGroup, Inc
100 Colonial Bank Boulevard
Montgomery, AL 36117

SUBJECT:     10103–COLONIAL BANK
                    MONTGOMERY, AL – In Receivership
                    <u>**NOTICE OF DISALLOWANCE OF CLAIM**</u>

Dear Claimant:

The Receiver of  COLONIAL BANK has reviewed your claim against the receivership.  After a thorough review of your filed claim along with your supporting documentation, the Receiver has determined to disallow your claim for the following reason(s) :

> The claims of Colonial BancGroup, Inc. for $514,420.78 were submitted without sufficient supporting documentation and have not been proven to the satisfaction of the Receiver.

Pursuant to 12 U.S.C. Section 1821 (d) (6), if you do not agree with this disallowance, you have the right to file a lawsuit on your claim (or continue any lawsuit commenced before the appointment of the Receiver), in the United States District (or Territorial) Court for the District within which the failed institution's principal place of business was located or the United States District Court for the District of Columbia within 60 days from the date of this notice.

**IF YOU DO NOT FILE A LAWSUIT** (or continue any lawsuit commenced before the appointment of the Receiver) **BEFORE THE END OF THE 60-DAY PERIOD, THE DISALLOWANCE WILL BE FINAL, YOUR CLAIM WILL BE FOREVER BARRED AND YOU WILL HAVE NO FURTHER RIGHTS OR REMEDIES WITH RESPECT TO YOUR CLAIM.  12 U.S.C. Section 1821(d)(6)(B).**

However, if a portion of your claim is for an insured deposit, your claim is not against the Receiver but rather is against the FDIC in its "corporate" capacity as deposit insurer.  An insured depositor's rights are prescribed in 12 U.S.C. Section 1821(f) and differ from the rights described in the preceding paragraphs.

If you have any questions about this letter, please contact the undersigned at (972) 761-8671.

Sincerely,

Creditor Claims Agent
Claims Department

RLS7218

**Exhibit B**

**Claims Arising Out of Capital Contributions and Certain Other Transfers**

|  | 8/24/2007 - 12/31/2007 | 1/1/2008 - 12/31/2008 | 1/1/2009 - 8/24/2009 |
|---|---|---|---|
| Colonial Bank: |  |  |  |
| Cash | - | $375,000,000.00 | $50,880,867.00 |
| Citrus & Chemical Acquisition | $216,281,627.40 | - | - |
| Loans | - | - | 70,664,037.05 |
| Securities | - | - | 21,041,254.55 |
| Tax Refunds | - | - | 166,000,000 |
|  | $216,281,627.40 | $375,000,000.00 | $308,586,158.60 |

Total:   $899,867,786.00

**Exhibit C**

**Deposit Accounts as of August 14, 2009**

| DDA Account # | Balance |
|---|---|
| xxxxxx1127 | $12,968,213.77 |
| xxxxxx5437 | 4,000,000.00 |
| xxxxxx5460 | 5,091,170.82 |
| xxxxxx5452 | 5,045,815.06 |
| xxxxxx5445 | 2,282,904.24 |
| xxxxxx3218 | 7,607,409.38 |
| Balance | $36,995,513.27 |

**Exhibit D**

**Deposit Accounts as of August 25, 2009**

| **DDA Account #** | **Balance** |
|---|---|
| xxxxxx1127 | $14,381,938.24 |
| xxxxxx5437 | 4,000,000.00 |
| xxxxxx5460 | 5,091,170.82 |
| xxxxxx5452 | 5,045,815.06 |
| xxxxxx5445 | 2,282,904.24 |
| xxxxxx3218 | <u>7,607,409.38</u> |
| Balance | <u>$38,409,237.74</u> |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document was electronically served on May 28, 2010, by transmission of Notices of Electronic Filing generated by CM/ECF to persons registered as of issuance of filing.

*/s/ Rufus T. Dorsey, IV*
One of the Attorneys for Plaintiff,
The Colonial BancGroup, Inc.