UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| THE COLONIAL BANCGROUP, INC., | Case No. 09-32303(DHW) |
| Debtor. | |

**STATEMENT OF STIPULATED FACTS IN CONNECTION WITH MOTION OF THE FDIC-RECEIVER FOR AN ORDER MODIFYING THE AUTOMATIC STAY TO PRESERVE AND PERMIT EXERCISE OF SETOFF RIGHTS**

In accordance with the scheduling orders entered by the Court, movant the Federal Deposit Insurance Corporation, in its capacity as receiver for Colonial Bank, Montgomery, Alabama (the "FDIC-Receiver"), and the debtor and debtor-in-possession The Colonial BancGroup, Inc. ("BancGroup") respectfully submit this statement of stipulated facts (the "Stipulation") in connection with the FDIC-Receiver's motion pursuant to 11 U.S.C. § 362(d) and Local Bankruptcy Rule 4001-3 for an order modifying the automatic stay (the "Motion") [Doc. No. 922]. The inclusion of a fact in this Stipulation shall not be deemed an admission by either party that the fact is relevant or material to the matters presented by the Motion. Copies of exhibits referenced in this Stipulation are reproduced in the accompanying joint appendix of exhibits (the "Joint Appendix"), which will be filed under seal in connection with the filing of this Stipulation.

**STIPULATED FACTS**

A.  **The Parties**

1.  BancGroup, a Delaware corporation with its principal place of business in Montgomery, Alabama, was organized as a bank holding company and later became a financial

holding company. Until August 14, 2009, Colonial Bank was BancGroup's principal operating subsidiary. Colonial Bank also maintained its principal place of business in Montgomery, Alabama.

2. Pursuant to an order dated August 14, 2009, the Alabama State Banking Department closed Colonial Bank and appointed the FDIC-Receiver as its receiver.

3. Effective as of its appointment as receiver, the FDIC-Receiver, the Federal Deposit Insurance Corporation (the "FDIC"), and Branch Banking & Trust Company ("BB&T") entered into a Purchase and Assumption Agreement, Whole Bank, All Deposits, dated as of August 14, 2009 (the "P&A Agreement"). A true and correct copy of the P&A Agreement as of August 14, 2009 is included as Exhibit 1 in the Joint Appendix.

4. For purposes of the determination of this Motion, the parties to this Stipulation agree that the Court should consider the copy of the P&A Agreement at Exhibit 1 of the Joint Appendix as representing the terms of the P&A Agreement that should be considered by the Court.

5. On August 25, 2009 (the "Petition Date"), BancGroup filed a voluntary petition for relief in this Court pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). BancGroup continues as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

**B.      The Deposit Accounts That Are the Subject of the Motion**

6. BancGroup had seven deposit accounts at Colonial Bank prior to the closure of the bank that have been the subject of dispute in this chapter 11 case.

7. One demand deposit account, with an account number ending with the numbers 1127, was established prior to July 2009 and was referred to internally by BancGroup as its

operating account (the "1127 Account"). True and correct copies of redacted signature cards executed over the years with respect to the 1127 Account are reproduced as Exhibit 2. True and correct copies of account statements for that account for the period of July 1, 2009 through November 2009 are reproduced as Exhibit 3.

8. A second demand deposit account, with an account number ending with the numbers 3234 (the "Dormant Account"), has had no banking activity and a balance of $0.00 since at least July 1, 2009.

9. On or around July 10, 2009, BancGroup established five additional demand deposit accounts with Colonial Bank ending with the account numbers indicated below (the "Other Accounts") and deposited into each of those the amounts reflected in the following table:

| Account Nos. | Deposit Made on July 10, 2009 |
|---|---|
| XXXX5437 | 4,000,000.00 |
| XXXX5460 | 5,091,170.82 |
| XXXX5452 | 5,045,815.06 |
| XXXX5445 | 2,282,904.24 |
| XXXX3218 | 7,607,409.38 |

10. True and correct redacted copies of signature cards for each of the Other Accounts are reproduced as the following exhibits: 3218 (Exhibit 4); 5437 (Exhibit 5); 5445 (Exhibit 6); 5452 (Exhibit 7); and 5460 (Exhibit 8). True and correct copies of account statements for the period from July 2009 through November 2009 for each of the Other Accounts are reproduced as the following exhibits: 3218 (Exhibit 9); 5437 (Exhibit 10); 5445 (Exhibit 11); 5452 (Exhibit 12); and 5460 (Exhibit 13).[1]

11. The deposit balances for the Other Accounts have not changed since the original deposits into those accounts on July 10, 2009.

---

[1] The only account statements submitted in connection with the account with account number ending 5445 are from July and August 2009.

12. The 1127 Account, the Dormant Account and the Other Accounts are collectively referred to as the "Accounts."

13. From July 2009 through at least the closure of Colonial Bank, each of the Accounts was subject to the provisions of Colonial Bank's "Rules & Regulations for Depository Accounts," as depository accounts within the meaning of these provisions. A true and correct copy of the Rules & Regulations for Depository Accounts is reproduced as Exhibit 14.

14. At all pertinent times, the full balance credited to each of the Accounts has constituted an "insured deposit" within the meaning of applicable federal law.

15. As of the Petition Date, the aggregate balance in the Accounts was $38,408,337.34, and the individual account balances were as follows:

| Account No. | Aug. 25, 2009 Balance |
|---|---|
| XXXX3234 | $0.00 |
| XXXX1127 | 14,381,038.24 |
| XXXX5437 | 4,000,000.00 |
| XXXX5460 | 5,091,170.82 |
| XXXX5452 | 5,045,815.06 |
| XXXX5445 | 2,282,904.24 |
| XXXX3218 | 7,607,409.38 |
| **Total** | **$38,408,337.74** |

C. **The Administrative Hold**

16. Each of the Accounts has been the subject of an administrative hold at all times since at least August 17, 2009.

17. Lesylee Hodge, for the FDIC-Receiver, sent an email on the subject of a "preliminary account hold report" to Margaret Fletcher of BB&T on Monday, August 17, 2009, which was the first business day following the bank closing. A true and correct copy of the email with its attachment is reproduced as Exhibit 15.

18. Ms. Hodge sent a subsequent email to Ms. Fletcher dated October 6, 2009, on the subject of the account holds (the "October 6th Email"). True and correct copies of that email and its attachments are reproduced as Exhibit 16.

19. The FDIC-Receiver filed its original motion for relief from the automatic stay in this chapter 11 case the day before the October 6th Email, October 5, 2009. [Doc. No. 156].

20. The administrative hold that has been placed on the Accounts remains in effect as of the date of this Stipulation.

### D. BancGroup's Use of Cash Collateral From the Accounts

21. On September 18, 2009, BancGroup filed an emergency motion for entry of interim and final orders authorizing use of cash collateral from the Accounts and granting replacement liens (the "Cash Collateral Motion") [Doc. No. 87].

22. The FDIC-Receiver objected to the Cash Collateral Motion but agreed to interim and final cash collateral orders pursuant to which BancGroup was authorized to use $531,450 and $893,550 from the 1127 Account, respectively [Doc. Nos. 128, 199].

23. Subsequent to the entry of each of those orders, the FDIC-Receiver consented to the release of the amounts provided for under the orders and BB&T disbursed those amounts to BancGroup or its designated representatives.

24. In a subsequent stipulated order entered into in connection with the scheduling of proceedings relating to the FDIC-Receiver's prior motion for stay relief, the FDIC-Receiver consented to the release of an additional $500,000 from the 1127 Account.

25. With the FDIC-Receiver's consent, BB&T processed and wired to BancGroup the $500,000 in accordance with BancGroup's wire instructions.

26. As a result of debits and withdrawals after August 25, 2009, the balance in the 1127 Account as the date of this Stipulation is $12,458,207.89. The balances in the Other Accounts remain unchanged.

E. **The Accounts at BB&T**

27. It is BancGroup's position that (a) effective as of the closing of Colonial Bank on August 14, 2009, the Accounts constituted part of the "Assumed Deposits" assumed by BB&T under the P&A Agreement, were transferred to BB&T and became BB&T's deposits; and (b) effective as of the closing of Colonial Bank and continuing to the date of this Stipulation, BB&T has controlled the Accounts and remained responsible to BancGroup for the Accounts as a liability of BB&T.

28. It is the FDIC-Receiver's position that the Accounts are not "Assumed Deposits" because the definitions of "Deposits" and "Assumed Deposits" under the P&A Agreement expressly exclude any deposit balance that, in the discretion of the FDIC-Receiver, "may be needed to provide payment of any liability of any depositor to the Failed Bank or the Receiver." In the Motion, the FDIC-Receiver seeks authorization to confirm that the balances in the Accounts are not, and never have been, "Assumed Deposits" under the P&A Agreement.[2]

29. Records relating to the Accounts were transferred to BB&T in connection with the closing under the P&A Agreement and are in the possession of BB&T subject to the provisions of the P&A Agreement.

30. At all times after the Petition Date, BB&T prepared and sent out monthly account statements for the Accounts.

---

[2] The FDIC-Receiver does not seek to setoff against the portion of the Account balances that secure BancGroup's obligations to BB&T under the Security Agreement.

31. After the Petition Date, the Accounts were designated as "DIP" accounts by BB&T.

32. Since the closing of Colonial Bank, BB&T has included the balances for the Accounts in statistics included within its quarterly reports to the Securities and Exchange Commission and its shareholders and in its quarterly Call Reports filed with bank regulators.

33. Since the closing of Colonial Bank, BB&T has included the balances of the Accounts in calculating its deposit insurance premiums paid to the FDIC.

34. Since the closing of Colonial Bank, the Accounts have been on the BB&T deposit platform.

35. On November 30, 2009, BB&T filed a proof of claim against BancGroup in this bankruptcy case asserting a secured claim against BancGroup in the amount of $24,027,299.50, the balances at the time in the Other Accounts according to BB&T [Claim No. 163]. On July 27, 2010, BB&T filed an amendment to its proof of claim against BancGroup [Claim No. 163 - Amended]. The BB&T proof of claim, as amended, is referred to as the "<u>BB&T Proof of Claim</u>."

36. The BB&T Proof of Claim asserts that the secured portion of its claim is secured, in part, by deposits in the Other Accounts. The BB&T Proof of Claim does not assert a lien or interest in the 1127 Account.

37. BB&T alleges in the BB&T Proof of Claim that the $24,027,299.50 in the Other Accounts secures outstanding loans made by Colonial Bank and sold by the FDIC-Receiver to BB&T.

38. Counsel for BB&T stated in Court on May 26, 2010, as follows:

> I want to be clear on the record that it is our position that these are assumed liabilities of BB&T. We have treated them like that since day

7

> one. They are our deposit accounts. We have had control since August 14th of those accounts.
>
> Now, we acknowledge that the deposit accounts are subject to whatever contractual rights the FDIC has, just like all of the assets and liabilities that we have assumed, but, to-date, those rights have not been exercised.
>
> So it is our position, and I don't think there is any dispute that BB&T is in control of these deposit accounts.

Hearing Transcript, 163:25-164:9.

39. In a written response to the FDIC-Receiver's motions that BB&T filed several weeks later, BB&T stated:

> BB&T, having now reviewed the relevant portions of the record in this contested matter and the parties' submissions that were not previously available to BB&T, does not believe that the Amended Motion impacts BB&T's interest in the Pledged Accounts for several reasons.

BB&T further stated in that filing that:

> BB&T acknowledges that the Pledged Accounts are subject to whatever rights the FDIC-Receiver may have under the P&A Agreement.

BB&T's Response to FDIC-Receiver's Motion for an Order Modifying the Automatic Stay and Reservation of Rights, dated June 25, 2010 [Doc. No. 780].

40. Since the closing of Colonial Bank, the FDIC-Receiver has not directed BB&T to return any of the deposit balances held in the Accounts pursuant to section 9.5 of the P&A Agreement and BB&T has not returned the balances of the Accounts to the FDIC-Receiver. The FDIC-Receiver's position is that it has not provided such an instruction since the Petition Date because it expected that BancGroup would assert that such a direction was a violation of the automatic stay. Accordingly, the FDIC-Receiver moved for stay relief on October 5, 2009 and has since filed this second motion for stay relief in which it seeks the Court's confirmation that it may provide such an instruction.

### F. Issues Concerning Certain Other Depositors

41. A true and correct copy of a proforma jacket prepared by the FDIC-Receiver in connection with the Colonial Bank receivership is reproduced as Exhibit 17 in the Joint Appendix. That pro forma jacket provides that certain accounts raising issues with the Office of Foreign Assets Control would not be assumed by BB&T.

42. Before the closing of Colonial Bank, Taylor, Bean & Whitaker Mortgage Corp. ("TBW") maintained numerous demand deposit accounts with Colonial Bank (the "TBW Accounts").

43. A true and correct copy of a letter agreement dated August 19, 2009 between BB&T and the FDIC-Receiver is reproduced as Exhibit 18 in the Joint Appendix. Under that letter agreement, the parties acknowledged that the TBW Accounts were not "Assumed Deposits" as that term is defined under the P&A Agreement.

44. Five days later, on August 24, 2009, TBW filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Florida.

45. Since the closing of Colonial Bank, BB&T and the FDIC-Receiver have not executed a similar letter agreement with respect to the Accounts. The FDIC-Receiver's position is that it has not asked BB&T to enter into such a letter agreement with respect to the Accounts since the Petition Date because it expected that BancGroup would assert that doing so was a violation of the automatic stay. Accordingly, the FDIC-Receiver moved for stay relief on October 5, 2009 and has since filed this second motion for stay relief in which it seeks the Court's confirmation that it may take whatever actions may be necessary to confirm that the Accounts are not "Deposits" under the P&A Agreement.

**G.     Claims Asserted Between BancGroup and the FDIC-Receiver**

46.     BancGroup filed a proof of claim with the Colonial Bank receivership on November 19, 2009.  In a letter dated January 6, 2010, the FDIC-Receiver notified BancGroup that its receivership claim had been disallowed.  Thereafter, BancGroup filed a complaint against the FDIC-Receiver in federal district court seeking a judicial determination of its disallowed receivership claims.  *Colonial BancGroup, Inc. v. F.D.I.C.*, No. 2:10-cv-0198 (MHT) (M.D. Ala.).  The FDIC-Receiver has filed an answer and an amended answer in response to BancGroup's amended complaint [Doc. Nos. 22, 37], and a scheduling order has been entered that provides for proceedings leading up to a scheduled trial date in July 2011 [Doc. No. 28].

47.     The FDIC-Receiver filed a proof of claim in this chapter 11 case on November 30, 2009 [Claim. No. 139].  On February 19, 2010, the FDIC-Receiver filed an amendment to that proof of claim [Claim No.139 - Amended].

48.     On March 4, 2010, BancGroup filed an objection to the FDIC-Receiver's proof of claim  [Doc. No. 598].  In an order entered on May 10, 2010, the district court withdrew the reference of proceedings with respect to that contested matter, which is pending under the caption *In re The Colonial BancGroup, Inc.*, No. 2:10-cv-0409 (MHT) (M.D. Ala.).  The FDIC-Receiver filed a response to BancGroup's objection on June 25, 2010 [Doc. No. 15], and a scheduling order has been entered that provides for proceedings leading up to a scheduled trial date in July 2011 [Doc. No. 36].

49.     BancGroup also has filed three adversary proceedings against the FDIC-Receiver that relate to issues raised in the FDIC-Receiver's proof of claim.  The reference has been withdrawn as to two of those adversary proceedings, which are pending in the district court, styled *Colonial BancGroup, Inc. v. F.D.I.C.*, 2:10-cv-0410 (MHT) (M.D. Ala.) and *Colonial*

*BancGroup, Inc. v. F.D.I.C.*, 2:10-cv-0411 (MHT) (M.D. Ala.). The third adversary proceeding is pending in this Court, styled *Colonial BancGroup, Inc. v. F.D.I.C.*, Adv. Proc. No. 10-3019 (DHW) (Bankr. M.D. Ala.) and concerns a dispute over certain real property located in Orlando, Florida.

| | |
|---|---|
| Dated: Montgomery, Alabama<br>October 29, 2010 | Respectfully submitted,<br><br> /s/ Michael A. Fritz, Sr.<br>Michael A. Fritz, Sr. |
| Of Counsel: | michael@fritzandhughes.com<br>Fritz & Hughes LLC |
| Kathryn R. Norcross<br>Senior Counsel | 7020 Fain Park Drive Suite 1<br>Montgomery, AL 36117<br>(334) 215-4422 |
| Jeffrey E. Schmitt<br>Counsel | John J. Clarke, Jr.<br>Thomas R. Califano |
| Federal Deposit Insurance Corporation<br>3501 Fairfax Drive<br>Arlington, Virginia 22226<br>(703) 562-2429 | Jeremy R. Johnson<br>DLA Piper LLP (US)<br>1251 Avenue of the Americas<br>New York, New York 10020-1104<br>(212) 335-4500 |
| | Attorneys for the<br> Federal Deposit Insurance Corporation,<br> as Receiver for Colonial Bank |
| |  /s/ Rufus T. Dorsey IV<br>C. Edward Dobbs<br>Rufus T. Dorsey IV<br>Parker, Hudson, Rainier & Dobbs LLP<br>1500 Marquis Two Tower<br>285 Peachtree Center Avenue, N.E.<br>Atlanta, Georgia 30303<br>(404) 420-5550 |
| | Attorneys for The Colonial BancGroup, Inc. |