## UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

```
-------------------------------------------------------------x
                                        :
In re                                   :          Chapter 11
                                        :
THE COLONIAL BANCGROUP, INC.,           :          Case No.  09-32303 (DHW)
                                        :
            Debtor.                     :
                                        :
-------------------------------------------------------------x
                                        :
THE COLONIAL BANCGROUP, INC.,           :
                                        :
            Movant                      :
                                        :
v.                                      :          Contested Matter
                                        :
GRETCHEN M. DANIELSON and               :
RICHARD A. MANNING, JR.,                :
                                        :
            Respondents.                :
-------------------------------------------------------------x
```

### OBJECTION OF DEBTOR TO PROOF OF CLAIM OF GRETCHEN M. DANIELSON AND RICHARD A. MANNING, JR. AND REQUEST FOR WAIVER OF LBR 3007-1

---

**PURSUANT TO LBR 3007-1, THE COURT WILL TAKE THIS OBJECTION UNDER ADVISEMENT AND RULE, WITHOUT FURTHER NOTICE OR HEARING, UNLESS THE CLAIMANTS FILE WITH THE COURT, WITH SERVICE UPON THE OBJECTING PARTY, A RESPONSE WITHIN 30 DAYS OF THE DATE OF SERVICE OF THIS OBJECTION.**

**VOTING RIGHTS: REGARDLESS OF WHETHER THE CLAIMANTS FILE A RESPONSE TO THIS OBJECTION, FOR PURPOSES OF VOTING ON THE PLAN (AS DEFINED BELOW), THE AMOUNT OF THE CLAIMANTS' CLAIM SHALL BE $1.00 IN CLASS E UNDER THE PLAN, *EXCEPT TO THE EXTENT THE COURT ORDERS OTHERWISE*. IF THE CLAIMANTS OBJECT TO THIS VOTING RIGHTS TREATMENT, THE CLAIMANTS, IN ACCORDANCE WITH THE ORDER ENTERED BY THE COURT ON FEBRUARY 23, 2011 [DOCKET NO. 1112], MUST FILE A MOTION PURSUANT TO BANKRUPTCY RULE 3018(a) BY NO LATER THAN 4:00 P.M. (CENTRAL TIME) ON THE SEVENTH DAY AFTER SERVICE OF THIS OBJECTION TO SEEK ALTERNATIVE TREATMENT OF ITS VOTING RIGHTS.**

**IF THE COURT ENTERS THE PROPOSED ORDER ATTACHED TO THIS OBJECTION, THE CLAIMANTS' CLAIM WILL BE DISALLOWED, AND ANY BALLOT FILED BY THE CLAIMANTS WILL NOT BE COUNTED.**

---

1841354_1

Pursuant to Section 502 of the Bankruptcy Code, Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules for the United States Bankruptcy Court for the Middle District of Alabama, The Colonial BancGroup, Inc., debtor and debtor in possession herein (the "Debtor"), files this objection (the "Objection") to the proof of claim filed by Gretchen M. Danielson ("Danielson") and Richard A. Manning, Jr. ("Manning"). The Debtor objects to Danielson's and Manning's claim on the grounds (i) that the claim apparently arises from an alleged payoff of a loan obtained by Danielson from Taylor, Bean & Whitaker Mortgage Corp. ("Taylor Bean"), and from the mortgage executed by Danielson in favor of Taylor Bean, and the Debtor has no liability for any action or failure to act by Taylor Bean and did not receive any of the funds allegedly wired by Danielson to Colonial Bank, and (ii) that the loan was made to, and the mortgage granted by, Danielson, and, therefore, Manning, the husband of Danielson, has no claim in connection with any alleged payoff of the loan made by Taylor Bean or the execution of the mortgage by Danielson. Regardless of whether Danielson and Manning respond to this Objection, unless the Court orders otherwise, with the filing and service of this Objection, the amount of the claim by Danielson and Manning (the "Danielson Claim") shall be $1.00 for purposes of voting on the Second Amended Chapter 11 Plan of Liquidation of The Colonial BancGroup, Inc. filed on February 21, 2011 [Docket No. 1104-1] (the "Plan").[1] The Debtor further requests that the Court waive the requirement under LBR 3007-1 that each objection to a proof of claim must be supported by a declaration or affidavit, because the facts underlying the Danielson Claim and this Objection are undisputed.

In support of this Objection, the Debtor shows the Court as follows:

---

[1] On February 23, 2011, the Court entered the Order Granting Amended Motion of Debtor to Approve Disclosure Statement, Approve Proposed Voting Procedures, Schedule Hearing to Consider Confirmation of Debtor's Plan of Liquidation and Approve Form of Notice of Confirmation Hearing (the "Disclosure Statement Order") [Docket No. 1112]. The Disclosure Statement Order specifies in Paragraph 24 that, if the Debtor files an objection to any claim before April 25, 2011, such claim shall be temporarily allowed for voting purposes at only $1.00, regardless of the amount specified in any proof of claim filed with the Court, unless the Debtor agrees or the Court orders otherwise. The Disclosure Statement Order further specifies that, if the party objects to this treatment of its claim for voting purposes, the party must file, by March 5, 2011 or the seventh (7th) day after service of the Debtor's objection to such party's claim, whichever is later, a motion pursuant to Bankruptcy Rule 3018(a) seeking an estimation of the amount of its claim.

Case 09-32303    Doc 1177    Filed 04/01/11    Entered 04/01/11 15:18:43    Desc Main
Document      Page 2 of 33

## Jurisdiction and Venue

1.    This Court has jurisdiction over this Objection pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.    The statutory predicates for the relief requested in this Motion are Section 502 of the Bankruptcy Code, Bankruptcy Rule 3007, and Local Rule 3007-1.

## Background

3.    On August 25, 2009 (the "Petition Date"), the Debtor filed with this Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor continues to manage its affairs as debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

4.    The Debtor is a corporation formed under the laws of the State of Delaware and, prior to the Petition Date, was headquartered and conducted business at 100 Colonial Bank Boulevard, Montgomery, Alabama 36117.

5.    Prior to the Petition Date, the Debtor owned Colonial Bank and also owned certain non-banking, non-debtor subsidiaries. As the Debtor's banking subsidiary, Colonial Bank was overseen by various federal and state authorities.

6.    On August 14, 2009, Colonial Bank was closed by the Alabama State Banking Department, and the Federal Deposit Insurance Corporation was appointed as receiver for Colonial Bank (the "FDIC-Receiver"). On August 14, 2009, the FDIC-Receiver sold all or substantially all of the former assets of Colonial Bank to Branch Banking and Trust Company.

## Relief Requested

7.    The Debtor seeks entry of an Order, substantially in the form of the Order attached hereto as Exhibit A (the "Objection Order"), disallowing the Danielson Claim.

8.    The Debtor further requests that the Court waive the requirement under LBR 3007-1 that each objection to a proof of claim must be supported by a declaration or affidavit, because the Debtor's objection to the Danielson Claim is based upon undisputed facts.

## Bar Date for Proofs of Claim

9.      By Order entered August 26, 2009 [Docket No. 5], the Court established November 30, 2009, as the bar date for all interested parties (other than governmental entities) to file proofs of claim against the Debtor (the "Bar Date").  In accordance with the Court's direction, the clerk of court sent notice of the Bar Date on August 28, 2009, to over 150 parties [Docket No. 32].  Notice of the Bar Date also was published once in *The Wall Street Journal*, the *Montgomery Advertiser* and the *Business Wire*.

## Proof of Claim by Danielson and Manning

10.     On September 11, 2009, Danielson and Manning filed the Danielson Claim, a proof of claim against the Debtor for a secured claim in the amount of $189,691.36, designated as Claim No. 17-1 on the claims register maintained by the Court.  A true and correct copy of the Danielson Claim is attached to this Objection as Exhibit B.

11.     In the Danielson Claim, Danielson and Manning assert a claim based on what appears to have been an alleged payoff of the loan Danielson obtained from Taylor Bean.

## Objections to Danielson Claim

12.     The Debtor objects to the Danielson Claim on the grounds that the claim is based upon the alleged payoff of a loan made to Danielson by Taylor Bean.  The documents attached to the Danielson Claim reflect that the funds for the alleged payoff were wired to Colonial Bank.  The Debtor is in no way liable for any amounts which Colonial Bank might have received in connection with the alleged payoff of a loan by Taylor Bean.  In filing its proof of claim against the Debtor, Danielson and Manning present no evidence that the Debtor is in any way liable to either of them.

13.     The Debtor further objects to the Danielson Claim on the ground that the documents attached to the proof of claim establish no basis for any claim by Manning.

## Waiver of LBR 3007-1

14.     LBR 3007-1 requires that each objection to a claim "be supported by a declaration or affidavit setting forth the factual basis for the objection."

15.     This Objection to the Danielson Claim is based upon undisputed facts -- the documents attached to the Danielson Claim which clearly state that the loan in question was made by Taylor Bean and the alleged payoff of the loan was received by Colonial Bank.

16.     Therefore, the Debtor requests that the Court waive the requirement under LBR 3007-1 for a declaration or affidavit, neither of which would serve any purpose under these circumstances.

### Reservation of Rights

17.     As stated above, the Debtor is objecting to the Danielson Claim on the grounds that the claim is based upon an alleged payoff of a Taylor Bean loan received by Colonial Bank, for which the Debtor has no liability.  The Debtor has not had sufficient time to complete its investigations of the numerous claims asserted against it, including, without limitation, the Danielson Claim.  In asserting this Objection, the Debtor does not intend to waive any other objections, defenses, claims, counterclaims, rights of setoff or recoupment, preference claims, fraudulent transfer claims, rights, remedies or other claims the Debtor may have against either Danielson or Manning or the Danielson Claim.  The Debtor expressly reserves all such objections, defenses, claims, counterclaims, rights of setoff or recoupment, preference claims, fraudulent transfer claims, rights, remedies or other claims and reserves the right to object in the future to the Danielson Claim on any additional grounds, including, without limitation, the alleged amount of such claim.  The Debtor further reserves the right to amend, modify and supplement this Objection as the Debtor may deem necessary or appropriate.

### Notice of Objection; No Prior Request

18.     The Debtor shall give notice of this Objection to those parties on the Master Service List, Danielson and Manning.

19.     No previous request for the relief requested herein has been made to this Court or any other court.

Case 09-32303   Doc 1177   Filed 04/01/11   Entered 04/01/11 15:18:43   Desc Main
Document   Page 5 of 33

**WHEREFORE**, the Debtor respectfully requests that this Court enter an Order substantially in the form annexed hereto as Exhibit A, waive the requirement of a declaration or affidavit under LBR 3007-1, and grant the Debtor such other and further relief as this Court deems just and proper.

Dated:  April 1, 2011
       Montgomery, Alabama

                                    C. Edward Dobbs
                                    E-mail: ced@phrd.com

                                    Rufus T. Dorsey, IV
                                    E-mail: rtd@phrd.com

                                    PARKER, HUDSON, RAINER & DOBBS LLP
                                    1500 Marquis Two Tower
                                    285 Peachtree Center Avenue, N.E.
                                    Atlanta, Georgia  30303
                                    Telephone No.:  (404) 523-5300
                                    Facsimile:  (404) 522-8409

                                    By: /s/ *Rufus T. Dorsey, IV*
                                        Rufus T. Dorsey, IV

                                    Attorneys for Debtor and Debtor in Possession

## Exhibit A

## Objection Order

**UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| ------------------------------------------------------------x | : | |
| In re | : | Chapter 11 |
| | : | |
| THE COLONIAL BANCGROUP, INC., | : | Case No. 09-32303 (DHW) |
| | : | |
| Debtor. | : | |
| | : | |
| ------------------------------------------------------------x | : | |
| | : | |
| THE COLONIAL BANCGROUP, INC., | : | |
| | : | |
| Movant | : | |
| | : | |
| v. | : | Contested Matter |
| | : | |
| GRETCHEN M. DANIELSON and | : | |
| RICHARD A. MANNING, JR., | : | |
| | : | |
| Respondents. | : | |
| ------------------------------------------------------------x | : | |

**ORDER GRANTING DEBTOR'S OBJECTION TO CLAIM**
**OF GRETCHEN M. DANIELSON AND RICHARD A.**
**MANNING, JR. AND WAIVER OF LBR 3007-1**

This matter is before the Court on the objection (the "Objection") of The Colonial BancGroup, Inc. (the "Debtor") for entry of an Order pursuant to Section 502 of the Bankruptcy Code and Bankruptcy Rule 3007 disallowing the claim of Gretchen M. Danielson ("Danielson") and Richard A. Manning, Jr. ("Manning") and waiving the requirement under LBR 3007-1 of submitting a declaration or affidavit in support of the Objection.[1]

NOW, THEREFORE, based upon the Objection and all of the proceedings before this Court; and after due deliberation and sufficient cause appearing therefore; and it appearing that due and proper notice of the Objection has been given and that the relief requested in the Objection is warranted and in the best interests of the Debtor's estate and other parties in interest, it is hereby:

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Objection.

1841354_1

**ORDERED** that the Objection is granted; and it is further

**ORDERED** that the Danielson Claim, designated as Claim No. 17-1 on the claims register maintained by the Court, is hereby disallowed for all purposes, pursuant to Section 502 of the Bankruptcy Code, including, without limitation, with respect to voting rights for the Plan and any distribution to be made under a plan of liquidation confirmed by the Court; and it is further

**ORDERED** that the requirement under LBR 3007-1 for the Debtor to submit a declaration or affidavit in support of the Objection is waived; and it is further

**ORDERED** that this Order shall be without prejudice to the rights of the Debtor to assert or pursue any other objections, defenses, claims, counterclaims, rights of setoff or recoupment, preference claims, fraudulent transfer claims, rights, remedies or other claims the Debtor may have against Danielson, Manning or the Danielson Claim; and it is further

**ORDERED** that the Court shall retain jurisdiction to hear and determine all matters arising from or relating to this Order.

Dated: _____, 2011

_____
United States Bankruptcy Judge

## Exhibit B

**Proof of Claim**

| UNITED STATES BANKRUPTCY COURT | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>Colonial BancGroup Inc. | Case Number:<br>09-32303 |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>Gretchen M. Danielson & Richard A Manning Jr. (Wife & Husband) | ❑ Check this box to indicate that this claim amends a previously filed claim. |
| Name and address where notices should be sent:<br>Richard Manning Jr. - Attorney at Law<br>PO Box 1908, Jackson, WY 83001<br><br>Telephone number:<br>(307) 413-4479 | Court Claim Number:_____<br>*(If known)*<br><br>Filed on:_____ |
| Name and address where payment should be sent (if different from above):<br><br><br>Telephone number: | ❑ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>❑ Check this box if you are the debtor or trustee in this case. |

| | | |
|---|---|---|
| **1. Amount of Claim as of Date Case Filed:** $_____ 189,691.36 | | **5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.** |
| If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4. | | Specify the priority of the claim. |
| If all or part of your claim is entitled to priority, complete item 5. | | ❑ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). |
| ❑Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | | ❑ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4). |
| **2. Basis for Claim:** __Mortgage payoff_____<br>(See instruction #2 on reverse side.) | | |
| **3. Last four digits of any number by which creditor identifies debtor:** _2645_ | | |
| **3a. Debtor may have scheduled account as:** _____<br>(See instruction #3a on reverse side.) | | ❑ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5). |
| **4. Secured Claim (See instruction #4 on reverse side.)**<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information. | | ❑ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7). |
| **Nature of property or right of setoff:** ❑ Real Estate ❑ Motor Vehicle ☑Other<br>**Describe:** Funds received in Wire Transfer as beneficiary Bank for Taylor Bean & Whitaker | | |
| **Value of Property:**$__189,691.36__ **Annual Interest Rate**_____% | | ❑ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8). |
| **Amount of arrearage and other charges as of time case filed included in secured claim,** | | |
| if any: $_____ **Basis for perfection:** __Mortgage_____ | | ❑ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(__). |
| **Amount of Secured Claim:** $___189,691.36__ **Amount Unsecured:** $_____ | | **Amount entitled to priority:**<br>$_____ |
| **6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | | |
| **7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)* | | *Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* |
| DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING. | | |
| If the documents are not available, please explain: | | |

| Date:<br>09/08/2009 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. | FOR COURT USE ONLY<br><br>RECEIVED |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

SEP 11 2009

U.S. BANKRUPTCY COURT<br>MONTGOMERY, ALABAMA

P.O. Box 1908
Jackson, WY 83001

307-413-4479
Fax 307-739-0502
E-MAIL: RMANNING@WYOLAW.ORG

September 8, 2009

United States Bankruptcy Court
Middle District of Alabama
One Church Street
Montgomery, Alabama 36104

RE: In re Colonial BancGroup Inc., Case No. 09-32303

Intake Clerk

Please forgive the informal nature of this letter. I spoke with Ramona [Walker] earlier today regarding this matter and she was kind enough to direct me to the forms page on your web-site. I am trying to file a Proof of Claim in the above referenced action. First, I am a licensed attorney, admitted to the federal courts, but only in the District Court here in Wyoming. Also, I am only licensed to practice in the State of Wyoming, so I am not filing this in an official capacity. I write this on my letter head solely to be completely forthright with the court in that I am an attorney. I do not practice Bankruptcy Law here in Wyoming and do not pretend to know the procedures or niceties of that distinct area of law. I am filing this matter Pro Se, and apologize in advance for any mistakes or difficulties my inexperience and lack of formal standing in your court may cause.

I have filled out Form B 10 and have included copies of the documents I believe are relevant to that form. There was no place on the form to identify the documents included, so I am writing this letter to assist in the identification and purpose of those documents. The first document that I have included is the Mortgage that is the basis of our claim. My wife, Gretchen Danielson, purchased the home and borrowed the funds to do so from Taylor Bean & Whitaker (TBW) Mortgage Corp. This document is a copy of the mortgage on file with the Clerk of Lincoln County Wyoming, and is number from 000766 sequentially to 000778. The next document is the Payoff Statement received from TBW by Gretchen, on July 28, 2009. It is two pages, and identifies Colonial Bank, 201 E. Pine Street, Orlando Florida 32801 as the Beneficiary Bank for the transfer of funds for payoff of the aforementioned mortgage. I have redacted Gretchen's Bank Account info as noted in the instructions for Form B 10. The third document is a redacted copy of the receipt [Advice of Charge] issued to Gretchen from our bank, The Bank of Jackson Hole, for the wire transfer to Colonial Bank. The final document included is a redacted copy of the print off from the Bank of Jackson Hole, requested of that bank this morning, showing that this transfer was in fact sent to the correct bank, showing the routing

# RICHARD A. MANNING, JR.
### ATTORNEY AT LAW

P.O. Box 1908
Jackson, WY 83001

307-413-4479
Fax 307-739-0502
E-mail: RMANNING@WYOLAW.ORG

number and various other account numbers. In all you should have 18 pages, including the Form B 10.

Enclosed also is a self addressed stamped envelope as I understand I must include such in order to receive an Acknowledgement of Filing of Claim. If I have failed to include a document or some critical piece of information, I would appreciate a note, phone call or quick e-mail letting me know what I need to complete this and satisfy the court.

Sincerely,

Richard Manning Jr.

cc: Gretchen Danielson Manning



C00766

After Recording Return To:

Taylor, Bean & Whitaker Mortgage Corp.
1417 North Magnolia Ave.
Ocala, FL 34475

RECEIVED 11/4/2005 at 4:22 PM
RECEIVING # 913465
BOOK: 603      PAGE: 766
JEANNE WAGNER
LINCOLN COUNTY CLERK, KEMMERER, WY

—————————— [Space Above This Line For Recording Data] ——————————

# MORTGAGE

MIN: 100029500009570801

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated **November 03, 2005**                    , together with all Riders to this document.

(B) **"Borrower"** is GRETCHEN DANIELSON

Borrower is the mortgagor under this Security Instrument.

(C) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) **"Lender"** is Taylor, Bean & Whitaker Mortgage Corp.
Lender is a **a Florida Corporation**                                              organized and existing under the laws of **FL**                                                                                   . Lender's address is
**1417 North Magnolia Ave, Ocala, FL  34475**

(E) **"Note"** means the promissory note signed by Borrower and dated **November 03, 2005**                    . The Note states that Borrower owes Lender **Two Hundred Thousand and no/100**
Dollars (U.S. **$200,000.00**            ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **November 01, 2035**                    .

(F) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

WYOMING—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                              Form 3051 1/01
ITEM T2769L1 (0011)—MERS                        *(Page 1 of 12 pages)*                  GREATLAND ■
To Order Call: 1-800-530-9893 □ Fax: 616-791-1131



C00767

0912465

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider ☐ Condominium Rider ☐ Second Home Rider

☐ Balloon Rider ☐ Planned Unit Development Rider ☐ Other(s) [specify]

☐ 1-4 Family Rider ☐ Biweekly Payment Rider

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

WYOMING—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM T2769L2 (0011)—MERS

*(Page 2 of 12 pages)*

Form 3051 1/01
GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

0923465

000768

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the **County** of **LINCOLN** :
[Type of Recording Jurisdiction]     [Name of Recording Jurisdiction]

**See Attached Exhibit A.**

which currently has the address of      **453 GREY'S RIVER LOOP**
[Street]

**ALPINE**          , Wyoming      **83128**      ("Property Address"):
[City]                [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.     **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or

WYOMING—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3051 1/01
ITEM T2769.3 (0011)—MERS                (Page 3 of 12 pages)                GREATLAND ■
To Order Call: 1-800-550-3003 □ Fax: 616-791-1131

0913465

C00769

partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

  **2.  Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

  If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

  Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

  **3.  Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

  Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

  The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest

WYOMING—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM T2768L4 (0011)—MERS

*(Page 4 of 12 pages)*

Form 3051 1/01

GREATLAND ■
To Order Call: 1-800-530-9393 □Fax: 616-791-1131

0813465                                                    C00770

or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.    **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.    **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds,

WYOMING—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                          Form 3051 1/01

ITEM T2769L5 (0011)—MERS                        *(Page 5 of 12 pages)*                          GREATLAND ■
                                                                                To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

0923465

whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.    **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.    **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.    **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.    **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from

WYOMING—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM 7272L6 (0011)—MERS

(Page 6 of 12 pages)

Form 3051 1/01
GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

0913465  C00772

pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has—if any—with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.

WYOMING—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3051 1/01

ITEM T2789L7 (0011)—MERS  *(Page 7 of 12 pages)*  GREATLAND ■<br>To Order Call: 1-800-530-9393 □Fax: 616-791-1131

0913466                                                    C00773

Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under

WYOMING—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM T2789L8 (0011)—MERS

(Page 8 of 12 pages)

Form 3051 1/01
GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

0515465                                                    C00774

this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

    **14.  Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

    If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

    **15.  Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

    **16.  Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

    As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

    **17.  Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

    **18.  Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

    If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

    **19.  Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before

WYOMING—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3051 1/01

ITEM T2769L9 (0011)—MERS                     *(Page 9 of 12 pages)*            GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

OS 13466

C00775

sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the

WYOMING—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

ITEM T2768L10 (0011)—MERS

*(Page 10 of 12 pages)*

Form 3051 1/01
GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131



0923465

presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22.  **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give notice of intent to foreclose to Borrower and to the person in possession of the Property, if different, in accordance with Applicable Law. Lender shall give notice of the sale to Borrower in the manner provided in Section 15. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23.  **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24.  **Waivers.** Borrower releases and waives all rights under and by virtue of the homestead exemption laws of Wyoming.

WYOMING—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM T2768L11 (0011)—MERS

*(Page 11 of 12 pages)*

Form 3051 1/01
GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

0913465　　　　　　　　　　　　　　　　　　　　　000777

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 12 of this Security Instrument and in any Rider executed by Borrower and recorded with it.

_Gretchen Danielson_ _____(Seal)　　　　_____(Seal)
GRETCHEN DANIELSON　　　　　　-Borrower　　　　　　　　　　　　　　　　　　　　　　-Borrower

_____(Seal)　　　　_____(Seal)
　　　　　　　　　　　　　　　　　　　　-Borrower　　　　　　　　　　　　　　　　　　　　　　-Borrower

_____(Seal)　　　　_____(Seal)
　　　　　　　　　　　　　　　　　　　　-Borrower　　　　　　　　　　　　　　　　　　　　　　-Borrower

Witness:　　　　　　　　　　　　　　　　　　　　Witness:

_____　　　　　　_____

State of Nevada　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　) ss
County of Clark　　　　　　　　　　　)

The foregoing instrument was acknowledged before me by　　　GRETCHEN DANIELSON

this _3rd_ day of _Nov. 2005_ .
Witness my hand and official seal.

_____
　　　　　　　　　　　　　　　Notary Public

My commission expires: 5-19-07

DONNAMARIE CAMPBELL
NOTARY PUBLIC
STATE OF NEVADA
DATE APPOINTMENT EXP. 05-19-2007
CERTIFICATE NO 99-51578-1

WYOMING—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT　　　　　　Form 3051 1/01
ITEM T2790L12 (0011)—MERS　　　　　　　　　　　　　　　　　　　　　　　　　GREATLAND ■
　　　　　　　　　　　　　　　　(Page 12 of 12 pages)　　　　　　To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

093465                                                      00778

### EXHIBIT A

Lot 1 of Greys River Village Second Addition to the Town of Alpine, Lincoln County, Wyoming as described on the official plat filed July 22, 1994 as Instrument No. 787017 of the records of the Lincoln County Clerk.

PAYOFF STATEMENT
FAX COVER SHEET

**To:** GRETCHEN            **Date:** 7/28/2009

**Company:**                 **Fax Number:** 3077334741

**From:**     Payoff Department      **Number of pages:** 2

**Payoff figures must be verified within 24 hours of payoff.** The total amount necessary to pay off the loan is subject to final verification from the Note holder. We reserve the right to adjust or refuse any funds that are not sufficient to pay the loan in full; including, but not limited to, dishonored payments and disbursements or adjustments made between the date of this payoff statement and the receipt of the payoff funds. **Payoff funds must be certified payment or sent via bank wire.** Mailed payoffs should be sent to: Taylor, Bean & Whitaker Mortgage Corp., 1417 N. Magnolia Ave., Ocala, FL 34475, Attention Payoff Department. Wiring instructions are listed below. Escrow/Tax & Insurance balances may not be utilized toward the payoff. For same day credit, payoff funds must be received by 3:00 p.m. EST, Monday through Friday. Please provide the seller's forwarding address.

\*\*\*\*\*\*\*\*\*\*\*\*\*PLEASE CALL 1-888-225-2164 TO VERIFY AMOUNTS\*\*\*\*\*\*\*\*\*\*\*\*

If this loan has an escrow account, escrow disbursements will continue to be made as scheduled, until loan is paid in full.

Issuance of this statement does not suspend the requirement to make the loan payments. Please be advised, late charges may be assessed to your account and/or your credit may be effected if your payment is not received on time.

It is the customer's responsibility to cancel any automatic payment arrangements, which TB&W may continue to withdraw unless cancellation is requested and received in this office at least 10 business days prior to the next withdrawal date. Do not stop payment on any payment already made. Overpayments will be refunded within 15 days of receipt of sufficient payoff funds.

The lien release will be mailed in accordance with applicable laws and loan documents. The lien will not be released if A) any funds previously received are rejected by the bank upon which they are drawn, or B) an insufficient amount is received to pay off the loan in full.

For verification or update of figures, please call our Customer Relations Department at **1-888-225-2164**.

### Payoff Wiring Instructions

Beneficiary Bank
(TBW Receiving Bank):

Colonial Bank
201 E. Pine Street
Orlando, Florida 32801
*Bank entry may State – Birmingham or Montgomery, Alabama*

Beneficiary Bank ABA Number
(TBW Receiving Bank):

062001319 – Fed Wire Only

Beneficiary – (Taylor, Bean & Whitaker)
Beneficiary Name (Account Title):
Account Type:

Account Number to Credit: 803-715-2645
TBW Custodial Clearing
Checking

Bank to Bank Information (Reference):

Borrower(s) Loan number, Full Name and
Purpose of wire

### IMPORTANT NOTICE

Colonial Bank will reject any incoming Fed Wire, Transfer or Military Allotment for incomplete or invalid information without our knowledge.

*\*\*Taylor, Bean & Whitaker reserves the right to reject any incoming funds for insufficient information or amount due and will not be held responsible for any accrued interest or charges.\*\**

Taylor, Bean & Whitaker Mortgage Corp.
1417 North Magnolia Ave
Ocala, FL 34475-9078
(888)225-2164

**July 28, 2009**

**Payoff Statement**

Loan Number:                    ●7060
Investor:                  01   802   017

**Property Address**
453 GREY'S RIVER LOOP
ALPINE WY 83128

GRETCHEN DANIELSON
PO BOX 6364
JACKSON WY 83002-6364

**Borrower**
Gretchen Danielson
PO Box 6364
JACKSON WY 83002-6364

## Account Information

| | |
|---|---|
| Loan Type: | Conventional |
| Interest Calculation Method: | Fannie Mae Loan |
| Estimated Payoff Date: | 08/07/09 |
| Due Date Next Payment: | 08/01/09 |
| Current Interest Rate: | 5.75000 |
| Daily Interest Rate: | .00015753 |
| Daily Interest Amount: | 29.71 |

## Amounts for Payoff

| | |
|---|---|
| Principal Balance: | 188,601.38 |
| + Interest Due: | 1,081.98 |
| - Unapplied Balance: | .00 |
| - Subsidy Balance: | .00 |
| + Delinquent Late Charges Due: | .00 |
| + Calculated Late Charges: | .00 |
| + Returned Check Charges Due: | .00 |
| + Total FCL/Bank Fees Due: | .00 |
| + MIP/PMI Payment Due: | .00 |
| + Miscellaneous Fees Due: | .00 |
| + Satisfaction Recording Fee | 8.00 |

## Balances

| | |
|---|---|
| T&I Balance: | 156.09 |
| Delinquent Late Charges: | .00 |
| Returned Check Balance: | .00 |
| Miscellaneous Fee Balance: | .00 |
| Unapplied Balance: | .00 |
| Subsidy Balance: | .00 |
| Calculated Late Charges From Due Date to Payoff Date: | .00 |

| | |
|---|---|
| **Total Amount Due** | **189,691.36** |

## Important Information

DISCLAIMER: Figures MUST be verified within 24 hours of payoff. The total amount necessary to pay off the loan is subject to final verification from the noteholder. We reserve the right to adjust or refuse any funds that are not sufficient to pay the loan in full. Funds MUST be certified and overnighted to 'Attention: Payoffs' at the above address. T&I Balance can not be used. Disbursements or dishonored payments may affect final payoff. Please provide seller's forwarding address.

**BANK OF JACKSON HOLE**
990 W. BROADWAY
JACKSON, WYOMING 83001

**ADVICE OF CHARGE**

DATE _2/6/09_

| WE DEBIT YOUR ACCOUNT | AMOUNT |
|---|---|
| wire TBW Custodial Clearing | 189691.36 |
| wire fee | 15.00 |

| APPROVED | ACCOUNT NO. | TOTAL AMOUNT |
|---|---|---|
| VN | 5740 | 199706.36 |

DO NOT FAIL TO MAKE THIS ENTRY IN YOUR RECORDS.

TO _____

CUSTOMER COPY

## Past Messages

▲ Past Message List   ◄ Previous   Next ►

| | | | |
|---|---|---|---|
| Status: | **Completed** | Message Type: | **Standard** |
| Create Time: | **08/06/2009 11:17:11** | Test/Prod: | **Prod** |
| IMAD: | **20090806 QMGFT015 001416 08061324** | | |
| OMAD: | **20090806 F2QCZ58C 000446 08061324** | | |

See Audit Log for this Message

Export

### Basic Information

| | |
|---|---|
| Sender ABA {3100}: | 102304099  BK OF JACKSON HOLE |
| Receiver ABA {3400}: | 062001319  COLONIAL BK |
| Amount {2000}: | 189,691.36 |
| Type Code {1510}: | 1000 - Transfer of Funds |
| Business Function {3600}: | CTR - Customer Transfer |

### Institution Information

Originator {5000}

| | |
|---|---|
| ID Code: | D - DDA Account Number |
| Identifier: | ●5740 |
| Name: | GRETCHEN MANNING |
| Address: | PO BOX 1908 |
| | JACKSON WY 83001 |

Beneficiary {4200}

| | |
|---|---|
| ID Code: | D - DDA Account Number |
| Identifier: | 8037152645 |
| Name: | TAYLOR BEAN & WHITAKER |

Originator to Beneficiary {6000}

| | |
|---|---|
| Text: | FFC TBW CUSTODIAL CLEARING |
| | ACCT TYPE: CHECKING |
| | REF: LOAN # ●7060 |
| | GRETCHEN DANIELSON; PAYOFF |

Export

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was mailed by first class U.S. mail, postage prepaid, addressed to the party listed below and electronically served by transmission of Notices of Electronic Filing generated by CM/ECF to persons registered as of issuance of filing and served on the same day by electronic mail on those counsel or parties listed on the Master Service List attached hereto:

> Richard A. Manning, Jr., Esq.
> Post Office Box 1908
> Jackson, Wyoming 83001

This 1st day of April, 2011.

> C. Edward Dobbs
> E-mail: ced@phrd.com
>
> Rufus T. Dorsey, IV
> E-mail: rtd@phrd.com
>
> PARKER, HUDSON, RAINER & DOBBS LLP
> 1500 Marquis Two Tower
> 285 Peachtree Center Avenue, N.E.
> Atlanta, Georgia 30303
> Telephone No.: (404) 523-5300
> Facsimile: (404) 522-8409
>
> By: /s/ *Rufus T. Dorsey, IV*
>     Rufus T. Dorsey, IV
>
> Attorneys for Debtor and Debtor in Possession

# MASTER SERVICE LIST

The Debtor
The Colonial BancGroup, Inc.
(Attn: Kevin O'Halloran, CRO)
One Commerce Street
Suite 400
Montgomery, AL 36104

Counsel to the Debtor
Parker, Hudson, Rainer & Dobbs LLP
(Attn: C. Edward Dobbs, Esq. and Rufus T. Dorsey, IV, Esq.)
1500 Marquis Two Tower
285 Peachtree Center Avenue, N.E.
Atlanta, GA 30303
edobbs@phrd.com
rdorsey@phrd.com

Special Counsel to the Debtor
Balch & Bingham LLP
(Attn: W. Clark Watson, Esq.)
1901 Sixth Avenue North
Suite 1500
Birmingham, AL 35203
cwatson@balch.com

Bankruptcy Administrator
Office of the United States Bankruptcy
Administrator/ALMD
Frank M. Johnson, Jr. Federal Building and
United States Courthouse
1 Church Street, Suite 103
Montgomery, AL 36104
ba@almb.uscourts.gov

State of Alabama Department of Revenue
Alabama Department of Revenue - Legal
(Attn: Mark Griffin Esq., Assistant Counsel &
David Avery, Esq., Assistant Counsel)
P. O. Box 320001
Montgomery, AL 36132-0001
mark.griffin@revenue.alabama.gov
david.avery.legal@revenue.alabama.gov

Counsel for the Federal Deposit Insurance
Corporation, as receiver for Colonial Bank
DLA Piper LLP (US)
(Attn: Thomas R. Califano, Esq.
and Jeremy R. Johnson, Esq.)
1251 Avenue of the Americas
New York, NY 10020-1104
thomas.califano@dlapiper.com
john.clarke@dlapiper.com
jeremy.johnson@dlapiper.com

Committee Counsel
Schulte Roth & Zabel LLP
(Attn: Brian D. Pfeiffer, Esq.)
919 Third Avenue
New York, New York 10022
brian.pfeiffer@srz.com
alexis.chapin@srz.com

Fritz & Hughes, LLC
(Attn: Michael A. Fritz, Sr., Esq.)
7020 Fain Park Drive, Suite 1
Montgomery, AL 36117
P: (334) 215-4422
F: (334) 215-4424
michael@fritzandhughes.com

Burr & Forman
(Attn: Robert B. Rubin, Esq., Derek F. Meek,
Esq. and Marc P. Solomon, Esq.)
420 North 20th Street, Suite 3400
Birmingham, AL 35203
brubin@burr.com
dmeek@burr.com
msolomon@burr.com

Local Counsel for the Bank of New York Mellon
Trust Company, N.A.
Eric J. Breithaupt, Esq.
505 20th Street North, Suite 1800
Birmingham, AL 35203
ejb@csattorneys.com

1

| | |
|---|---|
| 1 | <u>United States Department of Justice, Tax Division</u> |
| 2 | Paul. A. Allulis |
| 3 | Trial Attorney, Tax Division |
| 4 | U.S. Department of Justice |
| | P. O. Box 14198 |
| 5 | Ben Franklin Station |
| 6 | Washington, D.C. 20044 |
| 7 | T: (202) 514-5880 |
| 8 | F: (202) 514-9868 |
| 9 | paul.a.allulis@usdoj.gov |

<u>United States Department of Justice, Tax Division</u>
Paul. A. Allulis
Trial Attorney, Tax Division
U.S. Department of Justice
P. O. Box 14198
Ben Franklin Station
Washington, D.C. 20044
T: (202) 514-5880
F: (202) 514-9868
paul.a.allulis@usdoj.gov

<u>Counsel to Lead Plaintiffs in *In re Colonial BancGroup, Inc. Securities Litigation*</u>
Lowenstein Sandler PC
(Attn: Michael S. Etkin, Esq. and Ira M. Levee, Esq.)
65 Livingston Avenue
Roseland, NJ 07068
T: (973) 597-2500
F: (973) 597-2400
metkin@lowenstein.com
ilevee@lowenstein.com

<u>Internal Revenue Service</u>
John W. Sheffield, III
Associate Area Counsel, Internal Revenue Service
(Attn: Patty Koehler)
801 Tom Martin Drive, Room 257
Birmingham, AL 35211
T: (205) 912-5464
john.w.sheffield@irscounsel.treas.gov

2