**UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

```
-------------------------------------------------------------x
                                          :
In re                                     :          Chapter 11
                                          :
THE COLONIAL BANCGROUP, INC.,             :          Case No.  09-32303 (DHW)
                                          :
         Debtor.                          :
                                          :
-------------------------------------------------------------x
```

**DEBTOR'S OBJECTION TO PROOF OF CLAIM OF**
**BANK OF AMERICA, NATIONAL ASSOCIATION**

**PURSUANT TO LBR 3007-1, THE COURT WILL TAKE THIS OBJECTION UNDER ADVISEMENT AND RULE, WITHOUT FURTHER NOTICE OR HEARING, UNLESS THE CLAIMANT FILES WITH THE COURT, WITH SERVICE UPON THE OBJECTING PARTY, A RESPONSE WITHIN 30 DAYS OF THE DATE OF SERVICE OF THIS OBJECTION.**

The Colonial BancGroup, Inc. (the "Debtor") hereby objects to the Proof of Claim filed by Bank of America, National Association (successor by merger to LaSalle Bank National Association), as Indenture Trustee, Collateral Agent and Custodian or in another representative capacity for the Ocala Funding, LLC Short Term Notes and Subordinated Notes (collectively, in each capacity, "BofA") on November 30, 2009 (the "Proof of Claim") [Claim No. 139].

In support of this Objection, the Debtor attaches as Exhibit A the Declaration of Kevin O'Halloran, its Plan Trustee, and states and shows the following:

**Background**

1.      On August 25, 2009 (the "Petition Date"), the Debtor filed with this Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2.     The Debtor is a Delaware corporation that had its headquarters in Montgomery, Alabama.  Prior to the Petition Date, the Debtor owned Colonial Bank and also owned certain non-banking subsidiaries.

3.     By order of the Alabama State Banking Department dated August 14, 2009, Colonial Bank was closed and the Federal Deposit Insurance Corporation was appointed as its receiver (the "FDIC-Receiver").  On the same date, the FDIC-Receiver sold all or substantially all of the former assets of Colonial Bank to Branch Banking and Trust Company.

4.     On June 2, 2011, the Court entered an order confirming the Debtor's Second Amended Chapter 11 Plan of Liquidation (the "Plan").  The Debtor's affairs and disposition of its assets are now overseen by Mr. O'Halloran, the Plan Trustee under (and as defined in) the Plan.

### Jurisdiction and Legal Predicates

5.     The Debtor is authorized to object to any proof of claim pursuant to Section 6.1 of the Plan.  Under Section 13.1 of the Plan, the Court retained jurisdiction over a number of matters relating to the Debtor's Chapter 11 case, including jurisdiction to resolve all claim objections.  Accordingly, the Court has jurisdiction over this Objection pursuant to the Plan and 28 U.S.C. §§ 157 and 1334.

6.     This is a core proceeding pursuant to 28 U.S.C. § 157(b).

7.     The legal predicates for the relief requested in this Objection are Section 502 of the Bankruptcy Code, Bankruptcy Rule 3007 and Local Rule 3007-1.

### Summary of the Proof of Claim

8.     On November 30, 2009, BofA filed the Proof of Claim in the Debtor's Chapter 11 bankruptcy case.  The Proof of Claim is filed as both a secured claim (without any specification

Case 09-32303   Doc 1583   Filed 10/31/11   Entered 10/31/11 09:50:21   Desc Main
Document      Page 2 of 91

of the nature or value of any collateral security therefor) and an unsecured claim, in each case for an unliquidated amount that is stated to be, on "information and belief," up to $1.75 billion plus accrued and unpaid interest and other charges. No judgment has been rendered on the claims set forth in the Proof of Claim. As filed, the Proof of Claim, at its upper limit, is the largest claim filed in the Debtor's bankruptcy case, eclipsing by a factor of five the aggregate claims of the holders of the Debtor's publicly issued debentures.

9. Prior to filing the Proof of Claim in the Debtor's Chapter 11 case, BofA filed substantially similar claims in the separate receivership proceedings for Colonial Bank and Platinum Community Bank (both banks now in receivership with the FDIC-Receiver).[1] In addition, on April 6, 2010, BofA filed two proofs of claim that are substantially similar to the Proof of Claim in Chapter 11 bankruptcy cases pending before the United States Bankruptcy Court for the Middle District of Florida (the "Florida Bankruptcy Court").[2] Finally, on June 15, 2010, BofA filed a fifth proof of claim that is substantially similar to the Proof of Claim in the Chapter 11 bankruptcy case of Taylor, Bean & Whitaker Mortgage Corp. ("TBW"), which is also pending before the Florida Bankruptcy Court. Copies of these five proofs of claim are attached hereto as Exhibit B and are referred to herein collectively as the "Substantially Similar Claims."[3]

---

[1] The FDIC-Receiver has disallowed BofA's claims in the receivership proceedings for Colonial Bank and Platinum Community Bank. BofA has sought review of this disallowance in the United States District Court for the District of Columbia, in a case styled as Bank of America, National Association v. FDIC, Case No. 1:10-cv-01681-JEB (D. Col.).

[2] The two cases are styled as In re REO Specialists, LLC, Case No. 09-10022-JAF (Bankr. M.D. Fla.) and In re Home America Mortgage, Inc., Case No. 09-10023-JAF (Bankr. M.D. Fla.).

[3] Each of the five proofs of claim was prepared by and filed on behalf of BofA by the law firm of Hunton & Williams LLP.

10.     BofA avers in the Proof of Claim that it acts as indenture trustee, collateral agent and custodian, and in other representative capacities with respect to certain Short Term Notes and Subordinated Notes (the "Notes") issued by Ocala Funding, LLC ("Ocala Funding"), a special purpose entity owned and managed by TBW; Ocala Funding created a funding facility (the "Ocala Funding Facility") under which Ocala Funding periodically purchased residential mortgage loans from TBW; Ocala Funding granted a security interest in its mortgage loans and the proceeds thereof to BofA as collateral security for payment of the Notes; Ocala Funding initially financed its mortgage loan purchases with the proceeds from issuance of the Notes, and financed subsequent mortgage loan purchases with the proceeds from sales of the mortgage loans it previously purchased; and BofA, Ocala Funding and TBW worked together in servicing and managing the various mortgage loans that Ocala Funding purchased from TBW.

11.     In paragraph 4 of the Proof of Claim, BofA contends that "TBW and/or the Debtor, either acting on its own behalf, together with Colonial Bank, or though Colonial Bank as its agent"[4]:

(a)     arranged for BofA to advance funds to Ocala Funding to purchase mortgage loans without causing all related liens and other encumbrances to have been satisfied (including liens and other encumbrances held by, or granted by TBW to, Colonial Bank);

(b)     deposited mortgage payments on Ocala Funding's mortgage loans into accounts maintained at Colonial Bank (none identified) and thereafter

---

[4]  The Proof of Claim is carefully worded to leave open the possibility that only TBW (and not the Debtor) committed or caused to be committed the acts in question.

converted certain of those collections for the "benefit of one or both of them";

(c) deposited proceeds from Note issuances and mortgage loans sales by Ocala Funding into accounts maintained at Colonial Bank (none identified) and thereafter converted certain of those proceeds for the "benefit of one or both of them";

(d) used TBW's authority over mortgage payments on Ocala Funding's mortgage loans to the detriment of BofA and thereafter converted certain of those collections for the "benefit of one or both of them"; and

(e) used TBW's authority over servicing of Ocala Funding's mortgage loans to convert those mortgage loans for the "benefit of one or both of them."

12. In paragraph 5 of the Proof of Claim, BofA asserts that it "has or may have" the following claims against the Debtor[5]:

(a) ownership claims, including —

i. trust claims with respect to proceeds of Note issuances, mortgage loans and sales of property of Ocala Funding; records relating to mortgage loans; and all other property of Ocala Funding, in each case to the extent received and held by the Debtor "and/or" Colonial Bank; and

ii. claims with respect to (i) civil theft committed by TBW "and/or" the Debtor, acting individually or together with Colonial Bank, or through Colonial Bank as its agent; and (ii) property stolen from

---

[5] Again, the Proof of Claim carefully leaves open the possibility that BofA has no claim against the Debtor.

Ocala Funding or BofA and that was received by the Debtor "and/or" Colonial Bank.

(b)     secured claims arising from property of Ocala received by the Debtor "and/or Colonial Bank" as to which BofA either had a security interest or a claim entitled to priority over claims of the Debtor's other creditors; and

(c)     general unsecured claims arising from (i) breach of contract, (ii) fraud, fraudulent inducement and misrepresentation, (iii) conversion, (iv) unjust enrichment, (v) replevin, (vi) breach of fiduciary duty, (vii) subrogation arising from the Ocala assets received by the Debtor "and/or" Colonial Bank, and (viii) all other "statutory, common law or other claims" that BofA may have against the Debtor "under the laws of any jurisdiction, for which the Debtor may be liable as principal or may be vicariously liable through the conduct of Colonial Bank."

13.     In paragraph 6 of the Proof of Claim, BofA acknowledges that its claims were unliquidated at the time of the filing of the Proof of Claim, but maintains that the sum of its various claims is "up to" $1.75 billion, plus accrued and unpaid interest and other charges, including attorneys' fees and legal costs.

14.     BofA states in the Proof of Claim that it will amend and supplement the Proof of Claim as additional facts become known and purports to reserve the right to make such amendments and supplements to "include any previously undiscovered claims that it may have against the Debtor with respect to the Ocala Funding Facility, including any claims based on events, information and/or documents obtained from the Debtor, Colonial Bank, the FDIC-Receiver, TBW, Navigant or others." As of this date, and despite the passage of almost two

years since the filing of its Proof of Claim, BofA has not amended or supplemented the Proof of Claim.[6]

15.     The only supporting documentation annexed to the Proof of Claim (other than the 16-paragraph summary discussed above) is a two-page schedule setting forth the documents relating to the issuances of the Notes and the Ocala Funding Facility.  The Debtor is not a party to any of the documents set forth on this schedule.  The Proof of Claim does not assert the existence of any agreement between the Debtor and BofA, Ocala Funding, TBW or any other person that would form the basis for the claims asserted against the Debtor by BofA.

### BofA's Participation in Bankruptcy Case

16.     Although BofA filed the Proof of Claim some 90 days after commencement of this Chapter 11 case, and asserted the largest claim against the Debtor's estate (alleged to be secured, in whole or in part, by unspecified assets owned by or in the possession of the Debtor), BofA did not even enter an appearance in the Debtor's Chapter 11 case.

17.     While BofA asserts in the Proof of Claim that its claims are secured, in whole or in part, by liens granted to BofA by Ocala Funding with respect to assets that are, or may be, in the possession of the Debtor, BofA took no steps during the pendency of the Debtor's Chapter 11 case to discover the existence or whereabouts of any assets of Ocala Funding that were, or might ever have been, in the possession, custody or control of the Debtor; never contacted the Debtor to inquire whether the Debtor had such possession, custody or control; never sought to take any examinations under Bankruptcy Rule 2004 of any past or current officers, directors or employees

---

[6] In connection with voting on the Plan in April of 2011, BofA purported to cast a ballot in favor of the Plan in an amount "up to $1.75 billion" despite the fact that BofA had been provided with a ballot pre-marked at $1.00 in accordance with the Court-approved voting procedures for unliquidated claims.

of the Debtor in the Debtor's Chapter 11 case[7]; never commenced an adversary proceeding to determine the validity, priority, or extent of any lien or other interest in property of the Debtor or in its possession or control; and never filed any motion for turnover or for adequate protection of any interest in any property of the Debtor, or property of Ocala Funding in the possession or under the control of the Debtor.

18.    Other than the filing of the Proof of Claim, BofA's sole activity over the two-year period of the Chapter 11 case was to cast a ballot in favor of the Debtor's Plan.[8]

19.    Prior to the filing of this Objection, counsel to the Debtor inquired whether BofA (i) was in possession of any facts with which to supplement the Proof of Claim; and (ii) would withdraw its Proof of Claim.   Counsel to BofA did not offer any supplementary facts and declined to withdraw the Proof of Claim.

## **Basic Law Relating to Proofs of Claim**

20.    Although a claimant is not required to file a proof of claim under oath, a claimant does file a proof of claim under penalty of perjury.   Jones v. Wells Fargo Home Mortg., Inc. (In re Jones), 418 B.R. 687, 699 (Bankr. E.D. La. 2009) ("[T]he Official Form for a Proof of

---

[7]  It appears that BofA has undertaken discovery in TBW's bankruptcy case and may also be undertaking discovery in its litigation against the FDIC-Receiver.  Whatever facts BofA may have uncovered in these efforts, it has not amended or supplemented the Proof of Claim — or taken any other action in the Debtor's case — to provide any additional information in support of the allegations set forth therein.

[8]  BofA received a copy of this Court's order approving the Debtor's disclosure statement [Doc. No. 1112].  That order provided that the amount of any contingent or unliquidated claims would be temporarily allowed, solely for purposes of voting on the Plan, "only at $1.00."  [Doc. No. 1112 at 12, ¶ 24(b)].  The order allowed parties holding unliquidated claims to seek estimation of their claims under Bankruptcy Rule 3018(a).  BofA did not seek to have its claim estimated for purposes of voting on the Plan even though the Debtor's disclosure statement repeatedly mentioned that the Debtor believed the Proof of Claim would be withdrawn or disallowed.  [See Doc. No. 1111-1 at 110 of 207 ("Assuming that General Unsecured Claims total (in a worst case scenario) in excess of $435 million (which assumes that the Bank of America asserted proof of claim of up to $1.75 billion is withdrawn or disallowed) . . . Assuming that General Unsecured Claims total (in a best case scenario) approximately $421 million (which also assumes that the Bank of America asserted proof of claim of up to approximately $1.75 billion is withdrawn or disallowed) . . .") (emphases added); Doc. No. 1111-1 at 204 of 207, ¶ 20(d) (noting that the one of the estimates in the Debtor's liquidation analysis assumed that "BofA does not hold any allowed claim against the Debtor, despite the proof of claim filed in an amount in excess of $1,750,000,000.") (emphasis in original)].

Claim. . . must be signed by the creditor and notes the penalty for presenting a fraudulent claim."). See also, In re Kolstad, 928 F.2d 171, 174 (5th Cir. 1991) (recognizing that while "parties often legitimately disagree on the amount and legal basis for claims," such disagreement does not "detract from the fact that proofs of claim are declared under penalty of perjury.").[9]

21.    A proof of claim is in the nature of a complaint, see In re National Cattle Congress, 247 B.R. 259, 271 (Bankr. N.D. Iowa 2000), and accordingly should set forth the amount and legal basis for the claim with a degree of specificity sufficient to put the Debtor and its other creditors on notice of the claim. In re Mid-American Waste Systems, Inc., 284 B.R. 53, 65 (Bankr. D. Del. 2002). A claimant should provide supporting documentation for its proof of claim in understandable language and must specifically set forth the basis for its claim, including its calculation of any interest or attorneys' fees that are part of the claim. See In re Sandifer, 318 B.R. 609, 611 (Bankr. M.D. Fla. 2004). A proof of claim is facially defective if it states no amount and no basis or documentation that would make it a legally enforceable claim as a matter of bankruptcy law. See, e.g., In re Goldberg, 234 B.R. 159 (Bankr. N.D. Fla. 1999); In re MK Lombard Group I, Ltd., 301 B.R. 812 (Bankr. E.D. Pa. 2003) (proof of claim was seriously deficient because it failed to set forth the basis for the claim, to attach any supporting documentation or to provide some explanation for a lack of documentation). A creditor filing a proof of claim must generally indicate the amount of the claim and the extent to which it is secured or unsecured. In re 183 Lorraine St. Assocs., 198 B.R. 16 (E.D.N.Y. 1996). The failure to attach to a proof of claim the writing on which the claim is based does not automatically invalidate the claim, but it does deprive the claim of its prima facie validity. In re Mazzoni, 318

---

[9]   The form of the Proof of Claim states that the penalty for presenting a fraudulent claim is a fine of up to $500,000 or imprisonment for up to 5 years, or both, citing 18 U.S.C. §§ 152 and 3571.

B.R. 576, 578 (Bankr. D. Kan. 2004); In re Kemmer, 315 B.R. 706, 713 (Bankr. E.D. Tenn. 2004). In short, a proof of claim must be sufficiently specific to give notice of the claim, see In re marchFirst, Inc., 431 B.R. 436 (Bankr. N.D. Ill. 2010), and must contain a demand by a creditor against the debtor's estate and manifest an intent to hold the estate liable. In re Sheffield, 281 B.R. 67, 73 (Bankr. S.D. Ala. 2001).

22.     If a proof of claim asserts that the claim is secured in whole or in part by assets of the estate, the proof of claim must be accompanied by the writing on which the secured claim is based and by evidence of the perfection of the security interest. See Bankruptcy Rule 3001; In re Simmons, 765 F.2d 547, 551 (5th Cir. 1985). Moreover, there must be a disclosure in the proof of claim of any fees, costs and other charges sought by an oversecured creditor and the disclosure must be specific, with an itemization of the fees, costs and other charges claimed so that any interested party may object if they so desire. In re Madison, 337 B.R. 99, 103 (Bankr. N.D. Miss. 2005); In re Ransom, 361 B.R. 895 (Bankr. D. Mont. 2007).

23.     If the proof of claim alleges sufficient facts to support the claim, the claim is deemed to be prima facie valid, subject to objection by the debtor or other interested parties. In re Holm, 931 F.2d 620 (9th Cir. 1999); see In re Benninger, 357 B.R. 337, 347 (Bankr. W.D. Pa. 2006). However, a proof of claim does not make out a prima facie case for validity if the allegations in the proof of claim are insufficient to support a legally viable claim against the debtor or its estate. See, e.g., In re InterBank Funding Corp., 310 B.R. 238 (Bankr. S.D.N.Y. 2004) (claims were subject to disallowance and expungement when they were asserted against the debtor based on equitable claims to title where the debtor did not own the real property underlying the claims or hold title to the property in any manner). This is especially the case where the proof of claim is contingent or for an unliquidated amount. See, e.g., In re DJK

Residential LLC, 416 B.R. 100 (Bankr. S.D.N.Y. 2009) (proof of claim failed to state with sufficient particularity the causes of action against the debtors for alleged violations of RICO, the Lanham Act, and the Sherman Act as a result of a volume incentive program, where the claim was "littered with allegations" of bribery and assertions that a "kickback scheme" was in place that harmed the claimants, but failed to explain why a volume incentive program was illegal and how it caused compensable damages); In re Hongisto, 293 B.R. 45 (N.D. Cal. 2003), aff'd 86 Fed. Appx. 331 (9th Cir. 2004) (allegations in state court complaint attached to proof of claim that debtor was contacted about joining a conspiracy to have creditor arrested were insufficient absent assertion that debtor agreed to join conspiracy or intentionally acted in furtherance thereof, to state the basis for imposing legal liability on debtor for creditor's arrest, and proof of claim therefore did not constitute prima facie evidence of creditor's claim with result that initial burden of proof was placed on creditor in claim objection proceeding). See also, In re Wallace's Bookstores, Inc., 317 B.R. 709 (Bankr. E.D. Ky. 2004) (unliquidated claim allegedly arising under RICO).

24.     Where, as here, the claim is deficient by reason of its failure to allege sufficiently specific facts to establish the basis of the claim, to assert an unequivocal demand against the estate, and to attach any documents demonstrating the existence of a valid and perfected security interest in estate property, the claim is not prima facie valid and the burden of proof shifts to the claimant to prove by a preponderance of the evidence the validity and the amount of the claim. Stancill v. Harford Sands Inc. (In re Harford Sands Inc.), 372 F.3d 637, 640 (4th Cir. 2004); In re Allegheny Int'l, Inc., 954 F.2d 167, 173-74 (3d Cir. 1992). While the burden of proof for claims brought in bankruptcy court under Section 502(a) of the Bankruptcy Code rests on different parties at different times, the claimant must initially allege facts sufficient to support the claim.

Stancill, 372 F.3d at 640. The ultimate burden of persuasion is always on the claimant. Holm, 931 F.2d at 623 (internal citations omitted).

25.     In an apparent "shotgun approach" to protect its purported interests relating to the Notes and Ocala Funding, BofA filed five proofs of claim across multiple insolvency proceedings between November 19, 2009 (the apparent date of the filing of a Substantially Similar Claim in the receivership proceeding for Colonial Bank) and June 15, 2010 (the date of the filing of a Substantially Similar Claim in TBW's Chapter 11 bankruptcy case). BofA has not amended or supplemented the Proof of Claim and the Debtor is unaware of BofA having made any amendments or supplements to the Substantially Similar Claims to provide any detail supporting the allegations that the Debtor (not other individuals or entities) is liable to BofA for "up to $1.75 billion."

26.     The Proof of Claim, while long-winded on allegations of misconduct by someone, is short of breath when it comes to pleading any facts to support a prima facie claim against the Debtor. Indeed, as previously noted, BofA carefully hedges its assertion of a claim against the Debtor by stating that the Debtor "may" be liable; the Debtor "and/or" TBW committed the wrongful acts forming the basis for the claims; the Debtor "and/or" Colonial Bank stole property from, or received stolen property of, Ocala Funding; and TBW "and/or" the Debtor converted property of Ocala Funding for the "benefit of one or both of them."

### Basis of Objection

27.     The Debtor objects to the Proof of Claim because:

(a)     The allegations contained in the Proof of Claim are vague, unspecific and uncertain and do not state without qualification that a claim is owed by the Debtor to BofA.

(b)     The claims set forth in the Proof of Claim are both contingent and unliquidated, and the Proof of Claim does not set forth the amount of any alleged liability that the Debtor has to BofA (other than to state that the Debtor "and/or" other persons may have liability for an amount "up to" $1.75 billion).[10]

(c)     The Proof of Claim fails to state a claim against the Debtor for theft (civil or criminal) or conversion of assets of Ocala Funding, or for receiving any stolen or converted assets of Ocala Funding, inasmuch as the Proof of Claim does not identify the property involved, the date of the alleged tortious or unlawful acts, or any responsible officer or director of the Debtor with knowledge of any of the alleged wrongful acts.

(d)     The Proof of Claim does not set forth any statutory basis for liability on the part of the Debtor for any wrongful acts committed by the Debtor or of any other person on account of which the Debtor would have any liability to BofA, other than unsupported allegations of civil theft.[11]

(e)     The Proof of Claim does not state any liability that the Debtor may have to BofA under any written contract to which the Debtor is a party (and no such contract is attached to the Proof of Claim or alluded to therein).

---

[10]  To say that a debtor is liable to a creditor for an "up to" amount puts a ceiling on the amount of an asserted claim but not a floor.  It leaves open the possibility that the amount of the claim is *de minimis* or even $0.00.

[11]  To accuse the Debtor of theft or receiving stolen property without a factual basis for the allegation and with hedging language that the misdeed was perpetrated by the Debtor "and/or" Colonial Bank is highly questionable, particularly where no discovery to date has prompted BofA to amend its Proof of Claim with a specific statement of supporting facts.

(f)     The Proof of Claim does not allege any tortious conduct by the Debtor or by any other person on account of which the Debtor would have any liability to BofA, other than generalized assertions of alleged theft and conversion by someone (with the Debtor being identified only as a possibly complicit party) of unspecified Ocala Funding assets, fraud and misrepresentations (with the nature of fraud, party defrauded and other details undisclosed), fraudulent inducement (with the details of the alleged inducement, identity of party induced and subject of misrepresentation undisclosed) and breach of fiduciary duty (with the nature and date of breach and identity of party to whom duty allegedly owed undisclosed).

(g)     To the extent that the Proof of Claim is filed as a secured claim, it fails to describe the nature, extent, location or other identifying information with respect to any collateral security for the alleged claim; attach proof of the existence or perfection of any lien granted by the Debtor to BofA; or specify the approximate value of any such collateral security.

(h)     To the extent the Proof of Claim seeks recovery under equitable or contract principles relating to unjust enrichment, the Proof of Claim does not set forth any details concerning the manner in which (or the date on which) the Debtor was allegedly unjustly enriched, by whom or in what amount.

(i)     To the extent the Proof of Claim seeks recovery for "replevin," the Debtor notes that replevin is a remedy and not a cause of action or claim.

(j)     To the extent the Proof of Claim seeks recovery under principles of subrogation, the Debtor notes that subrogation depends upon proof that BofA paid a claim jointly owed to the Debtor by BofA and a third party, none of which is alleged in the Proof of Claim.[12]

(k)     BofA has not amended or supplemented the Proof of Claim with any information regarding amounts recovered on account of any of the Substantially Similar Claims or otherwise from third parties.[13]

(l)     BofA is not entitled to interest, fees or other charges on account of its alleged claims against the Debtor unless (i) contractual documentation between the Debtor and BofA provides for the recovery of such interest, fees or other charges and, with respect to post-petition interest, fees or other charges, either (x) the Debtor is solvent (which it is not) or (y) the value of liens held by BofA in respect of property of the Debtor's estate exceeds the value of BofA's purported claim; and (ii) the amount and calculation of such interest, fees or other charges are clearly set forth in the Proof of Claim.  The Proof of Claim does not specify any factual or legal basis for BofA's asserted entitlement to any such interest, fees or other charges, the existence of any documentation supporting a right to recover such interest, fees or other charges from the Debtor's estate or the calculation of such interest, fees or other charges.

---

[12]   It is possible that BofA seeks to assert a claim as subrogee against the Debtor by virtue of paying a claim of a third party on which BofA and the Debtor are jointly liable.  Even so, such details are utterly lacking in the Proof of Claim.

[13]   BofA states that it seeks only a "single recovery" of the amounts asserted to be owed in the Proof of Claim.

(m)     The Proof of Claim does not contain any facts to support the averments that the Debtor acted in concert with or as agent for either TBW or Colonial Bank with respect to any of the wrongful acts alleged in the Proof of Claim or that the Debtor is vicariously liable for any of such acts.

(n)     To the extent that the Proof of Claim is based upon "[a]ll other statutory, common law or other claims that [BofA] may have against the Debtor under the laws of any jurisdiction, for which the Debtor may be liable as principal or may be vicariously liable through the conduct of Colonial Bank," the Proof of Claim is so wanting in detail that it may not be regarded as stating a viable prima facie claim in a bankruptcy case.

(o)     The Debtor does not currently have, and did not have or possess at the time of the commencement of the Chapter 11 case, any property of Ocala Funding[14]; the Debtor does not believe that it ever received, and has no record of ever having received, any property of Ocala Funding or BofA; and the Debtor is unaware of any evidence that it participated in any act, whether alone or in concert with Colonial Bank or TBW (or any other person), to convert, seize, or steal any property of Ocala Funding or BofA or knowingly to receive any such property from TBW, Colonial Bank or any other person.

---

[14]   The Debtor's schedules, operating reports and disclosure statement detail all of the assets of the Debtor's estate, none of which include any assets identified as mortgage loans or proceeds derived from the sale or collections in respect of any such loans.  It is noteworthy that BofA never objected to or questioned the accuracy of any of the Debtor's disclosures concerning its assets, including representations in the Debtor's disclosure statement for the Plan.

## Conclusion

28.     The Proof of Claim should be disallowed in its entirety and the Debtor should be awarded all of its costs, including reasonable attorneys' fees incurred by it in the investigation and analysis of the Proof of Claim and the drafting and prosecution of this Objection.

Dated:  October 31, 2011

 /s/ Andrew Campbell
One of the Attorneys for Debtor,
The Colonial BancGroup, Inc.

Andrew Campbell, Esq.
(Bar. No. ASB-1555-L40a)
Leitman, Siegal, Payne & Campbell
420 20th Street North
Suite 2000
Birmingham AL 35203

Benjamin I. Finestone, Esq.
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

## Exhibit A


## Declaration of Kevin O'Halloran

04518.62171/4419694.1

**UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

```
------------------------------------------------------------x
                                     :
In re                                :          Chapter 11
                                     :
THE COLONIAL BANCGROUP, INC.,        :          Case No. 09-32303 (DHW)
                                     :
         Debtor.                     :
                                     :
------------------------------------------------------------x
```

### DECLARATION OF KEVIN O'HALLORAN, DEBTOR'S PLAN TRUSTEE, IN SUPPORT OF DEBTOR'S OBJECTION TO PROOF OF CLAIM OF BANK OF AMERICA, NATIONAL ASSOCIATION

Pursuant to 28 U.S.C. § 1746, KEVIN O'HALLORAN, declares:

1.      I am the Plan Trustee for The Colonial BancGroup, Inc. (the "Debtor") under, (and as defined in), the Second Amended Chapter 11 Plan of Liquidation of The Colonial BancGroup, Inc. (the "Plan").[1]

2.      I make this declaration pursuant to Local Rule 3007-1(b) of the United States Bankruptcy Court for the Middle District of Alabama in support of the Objection.

3.      The information set forth in this Declaration is based upon my personal knowledge, information provided to me by my professional advisors and information that I have gathered from documents that I have reviewed and pleadings filed in this Chapter 11 case. Due to the fact that the FDIC-Receiver has been in possession of all or substantially all of the books and records of the Debtor since August 14, 2009, and, until June of 2011, had denied the Debtor access to most of its books and records and the records of its subsidiaries (collectively, the "Books and Records"), it is possible that the Debtor's review of the Books and Records will

---

[1]  Capitalized terms used, but not otherwise defined, herein shall have the meanings ascribed to them in the foregoing objection.

reveal information that will require the filing of a supplement or amendment to this Declaration that may add to or correct the factual statements set forth below, all of which (based upon information currently available to me) are believed to be accurate.

4.      Based upon my review of the Books and Records available to me to date:

(a)      the Debtor was not a party to any agreement with BofA or Ocala Funding;

(b)      the Debtor never granted a security interest or other lien to or in favor of BofA or Ocala Funding;

(c)      the Debtor never received any mortgage loans (or proceeds of mortgage loans), business records relating to such mortgage loans, or any other property of Ocala Funding; and

(d)      the Debtor has no records indicating its participation in any scheme or conspiracy to defraud BofA or Ocala Funding, to seize or otherwise unlawfully obtain possession, custody or control of any property of Ocala Funding or BofA or knowingly to receive any property of Ocala Funding or BofA.

5.      During the pendency of the Debtor's Chapter 11 case, no person purporting to be an officer, employee, or agent of, or attorney for, BofA, TBW or Ocala Funding ever contacted me, in my capacity as chief recovery officer of the Debtor, for the purpose of making any inquiry into whether or not the Debtor had possession, custody or control of any property of Ocala Funding or BofA, and I have never been advised by the attorneys for the Debtor during the pendency of the Chapter 11 case or thereafter that they received any such inquiry.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and information this 31st day of October 2011.

                                                   /s/ *Kevin O'Halloran*
                                                   Kevin O'Halloran, Plan Trustee

**Exhibit B**

**Substantially Similar Claims**

**<u>BofA Claim Against Colonial Bank</u>**


**November 19, 2009**

04518.62171/4419694.1

**Federal Deposit Insurance Corporation as Receiver for:**
<u>10103 – Colonial Bank, Montgomery, AL</u>
(Name of Bank/Financial Institution and Location)

# PROOF OF CLAIM

SSN/Tax ID # (1) _____ <u>94-1687665[1]</u>

The undersigned, (2) ____ <u>Cynthia A. Grim</u> _____
(Name of person making the claim)

says that the ___ <u>Colonial Bank</u> _____ now in liquidation is
(Name of Bank/Financial Institution)

justly indebted to (3) <u>Bank of America, National Association, as Trustee (as defined in Exhibit A hereto)</u>, in the sum of
(Individual/Joint/Corporation/Partnership/Firm/Agency)

(4) __ <u>up to $1.75 billion plus charges (subject to Exhibit A hereto)</u> _____ Dollars upon the following Claim:[2]

| | Description of (invoice) claim: | Liability Number | Amount of Claim |
|---|---|---|---|
| C L A I M S | (5) Trust or preferred claims, secured claims, deposit liability claims (including FDIC guarantee and deposit insurance claims), claims for stolen property and senior unsecured claims, as more particularly described in Exhibit A hereto[3] | FDIC will complete | Each up to $1.75 billion plus charges, subject to Exhibit A hereto |
| | | Total Claim:(6) | |

The undersigned further states that he/she makes this claim on behalf of

(7) __ <u>the Trustee for the secured parties on the Ocala Funding, LLC Short Term and Subordinated Notes</u> _____ ,

that no part of said debt has been paid, that

(8) __ <u>the Trustee</u> _____
(Individual/Joint/Corporation/Partnership/Firm/Agency)

has given no endorsement or assignment of the same or any part thereof, and that there is no set-off or

counterclaim, or other legal or equitable defense to said claim or any part thereof.

NAME (9) _<u>Cynthia A. Grim</u>_     Cynthia A. Grim,
(Signature of Person making the claim)     <u>Senior Vice President</u>
                   (Title)

FIRM     <u>Bank of America, National Association, as Trustee</u> _____
(If applicable)

ADDRESS (10)   <u>540 West Madison Street</u>

CITY/STATE/ZIP <u>Chicago, IL 60661</u>

TELEPHONE NUMBER ____ <u>(312) 904-8001</u>

The penalty for knowingly making or inviting reliance of any false, forged, or counterfeit statement, document, or thing for the purpose of influencing in any way the action of the Federal Deposit Insurance Corporation is a fine of not more than $1,000,000 or imprisonment for not more than thirty years, or both (18 U.S.C. §1007).

---

[1] The tax ID number shown is for Bank of America, National Association ("Bank of America"). Many of the claims described in this proof of claim, however, are made by Bank of America in its capacity as Trustee on behalf of the secured parties with respect to the Ocala Funding, LLC Short Term and Subordinated Notes. The tax ID number for Ocala Funding, LLC is 30-0292188.

[2] The Federal Deposit Insurance Corporation did not serve the Trustee with a claims notice and may not consider the Trustee to be a claimant subject to the administrative claims process.

[3] This Proof of Claim should not, in any way, be construed as a waiver of any rights, substantive or procedural, that the Trustee has or may have to proceed in the district court action, *Bank of America, N.A. v. FDIC*, 09-22384-Civ-Jordan (S.D. Fla.), or to assert any and all available claims, defenses and arguments in that proceeding or otherwise outside the administrative process set forth in 12 U.S.C. §1821.

RLS7214

**EXHIBIT A**

**Federal Deposit Insurance Corporation as Receiver for:
10103 - Colonial Bank, Montgomery, AL**

---

**Exhibit A to Proof of Claim
of
Bank of America, National Association
(successor by merger to LaSalle Bank National Association),
as Indenture Trustee, Collateral Agent and Custodian
or in another representative capacity
for the
Ocala Funding, LLC Short Term Notes and Subordinated Notes**

1.      Bank of America, National Association, successor by merger to LaSalle Bank National Association ("*Bank of America*"), acts as indenture trustee, collateral agent and custodian and in other representative capacities (in any and all such capacities, the "*Trustee*") with respect to the Short Term Notes and the Subordinated Notes (collectively, the "*Notes*") issued by Ocala Funding, LLC ("*Ocala*"). Ocala is a special purpose entity owned and managed by Taylor, Bean & Whitaker Mortgage Corp. ("*TBW*"), which now is a debtor in bankruptcy and for which its restructuring agent is Navigant Capital Advisors, LLC ("*Navigant*").

2.      The Trustee acts on behalf of the Secured Parties, as defined in the documents related to the Notes (collectively, the "*Facility Documents*"), with respect to the transactions effected under the Facility Documents (the "*Ocala Funding Facility*"). The Trustee submits this Exhibit A to its proof of claim (together, this "*Proof of Claim*") on behalf of the Secured Parties in connection with the Ocala Funding Facility against Colonial Bank and such of its affiliates (collectively, "*Colonial Bank*") for which the Federal Deposit Insurance Corporation (the "*FDIC*") acts as receiver.

## Basis for Claims

3.     The Ocala Funding Facility is a financing facility under which Ocala periodically purchased residential mortgage loans from TBW.  Ocala granted a security interest in, among other things,  its mortgage loans and the proceeds thereof (including the claims set forth in this Proof of Claim) to the Trustee as collateral security for payment of the Notes and other obligations owed by it to the Secured Parties, and the Trustee is authorized to file this Proof of Claim pursuant to the Facility Documents.  Ocala initially financed its mortgage loan purchases with the proceeds from issuance of the Notes, and Ocala financed subsequent mortgage loan purchases with the proceeds from sales of the mortgage loans that it previously purchased.  As seller, TBW arranged Ocala's mortgage loan purchases and caused the legal files for the related mortgage loans to be delivered to the Trustee.  As Ocala's manager, TBW directed the Trustee in the use of proceeds from Note issuances and sales of mortgage loans by Ocala (including by causing the Trustee to transfer those proceeds into accounts maintained at Colonial Bank).  TBW also serviced Ocala's mortgage loans and, as servicer, collected principal and interest on the mortgage loans (including by depositing the related principal and interest collections into accounts maintained at Colonial Bank), sold the mortgage loans for Ocala, directed the related mortgage loan buyers as to where to make their purchase price payments and directed the Trustee in delivering the legal files for Ocala's mortgage loans to TBW as servicer, to the related buyers or to others designated by TBW or the buyers (including to Colonial Bank under bailee letters).

4.     Upon information and belief, TBW and/or Colonial Bank:

(a)     arranged for Ocala to purchase mortgage loans, delivered the legal files for those mortgage loans to the Trustee and caused the Trustee to advance funds to Ocala and

2

pay for those mortgage loans in accordance with their instructions without causing all related liens and other encumbrances known to exist by them to be satisfied (including liens and other encumbrances held by, or granted by TBW to, Colonial Bank);

(b)     deposited principal and interest collections on Ocala's mortgage loans into fiduciary, custodial and/or general accounts maintained at Colonial Bank (including mortgage servicing accounts and noninterest-bearing transaction accounts as to which deposits were insured or guaranteed by the FDIC under 12 C.F.R. §330.7(d) and 12 C.F.R. §370.4, respectively) and converted certain of those collections for the benefit of one or both of them (including by using such collections to replenish funds previously converted by one or both of them from such FDIC-insured or guaranteed accounts, or from other accounts, and/or distributing such collections to third parties);

(c)     deposited the proceeds from Note issuances and mortgage loan sales by Ocala into fiduciary, custodial and/or general accounts maintained at Colonial Bank (including noninterest-bearing transaction accounts as to which deposits were insured or guaranteed by the FDIC under 12 C.F.R. §370.4) and converted certain of those proceeds for the benefit of one or both of them (including by using such proceeds to replenish funds previously converted by one or both of them from mortgage servicing accounts and noninterest-bearing transaction accounts as to which deposits were insured or guaranteed by the FDIC under 12 C.F.R. §330.7(d) and 12 C.F.R. §370.4, respectively, or from other accounts, and/or distributing such proceeds to third parties);

(d)     used TBW's power and authority to control principal and interest collections on Ocala's mortgage loans, and to direct buyers of mortgage loans sold for Ocala in where to make their purchase price payments and direct the Trustee in the

3

use of proceeds from Note issuances and mortgage loan sales by Ocala (such as by causing the Trustee to withdraw such proceeds from one or more accounts it maintained and transfer such proceeds to accounts maintained at Colonial Bank), to convert certain of those collections and other proceeds for the benefit of one or both of them (including by using such collections and other proceeds to replenish funds previously converted by one or both of them from mortgage servicing accounts and noninterest-bearing transaction accounts as to which deposits were insured or guaranteed by the FDIC under 12 C.F.R. §330.7(d) and 12 C.F.R. §370.4, respectively, or from other accounts, and/or distributing such proceeds to third parties); and

(e)     used TBW's power and authority to service and administer, and to direct the Trustee in delivering the legal files for, Ocala's mortgage loans to convert those mortgage loans for the benefit of one or both of them (including by acting as bailee of legal files for mortgage loans being sold by or serviced for Ocala under bailee letters and/or release requests sent by the Trustee to and/or signed and sent to the Trustee by one or both of them and then failing to return those legal files or transfer the proceeds of the related mortgage loans upon the Trustee's demand and, also, by transferring the servicing of Ocala's mortgage loans and/or causing those mortgage loans to be serviced for the benefit of one or both of them or the benefit of third parties).

### Trustee's Claims

5.     The Trustee hereby asserts all claims it has or may have against Colonial Bank as of the date on which Colonial Bank was closed by the FDIC (the "_Date of Closing_"), including the following (whether or not any of those claims may overlap):

4

(i)     Trust or Preferred Claims.   Claims with respect to (A) principal and interest collections, proceeds from Note issuances and mortgage loan sales by Ocala and all other Ocala amounts received by Colonial Bank or held in fiduciary or custodial accounts maintained at Colonial Bank (or that should have been held therein or should be so held), (B) the mortgage loans as to which legal files or sale proceeds were received by Colonial Bank as bailee and/or custodian for the Trustee, including claims that Colonial Bank was required to hold legal files and sale proceeds for mortgage loans on a temporary basis in trust, as agent, custodian and bailee for the Trustee, and that Colonial Bank failed to deliver such legal files or sale proceeds to the Trustee both as required under the related bailee letters, other applicable agreements and/or statutory and common law principles and upon demand by the Trustee after the Trustee terminated Colonial Bank's temporary right to hold such legal files and sale proceeds in trust as agent, custodian and bailee for the Trustee (which legal files and sale proceeds never were the property of Colonial Bank and which Colonial Bank lacked any right even to possess after the Trustee terminated the temporary custodial relationship under which Colonial Bank held them), and (C) all other Ocala funds, mortgage loans and other property that were received by Colonial Bank or that are held by or on behalf of or in an account maintained at Colonial Bank (or that should have been held therein or should be so held), including (i) property that, in equity, should be treated as "special" deposits or claims as to which the Trustee is entitled to be paid in full before other creditors of Colonial Bank, (ii) Ocala funds that TBW and/or Colonial Bank used to replenish funds previously converted by one or both of them or that TBW and/or Colonial Bank distributed to third parties by or for the benefit of one or both of them and

5

(iii) Ocala mortgage loans as to which servicing was transferred for the benefit of TBW and/or Colonial Bank or which TBW and/or Colonial Bank caused to be serviced for the benefit of one or both of them or the benefit of third parties;

(ii)    <u>Secured Claims</u>.    Claims with respect to all Ocala "instruments", "deposit accounts", "investment property", "money" and related "proceeds" within the meaning of the Uniform Commercial Code as in effect in any applicable jurisdiction, and all other Ocala property, which were received by Colonial Bank or are held by or on behalf of or in an account maintained at Colonial Bank (or that should have been held therein or should be so held) and as to which the Trustee has a security interest, including property that, in equity, should be treated as "special" deposits or claims as to which the Trustee is entitled to be paid in full before other creditors of Colonial Bank;

(iii)    <u>Deposit Liability, Guaranty and Insurance Claims</u>.  Claims with respect to (A) deposits of principal and interest collections, proceeds from Note issuances and mortgage loan sales by Ocala and all other Ocala funds received by Colonial Bank or held in fiduciary, custodial or general accounts maintained at Colonial Bank (or that should have been held therein or should be so held), (B) the proceeds of all related FDIC guarantees and deposit insurance coverage (including coverage for mortgage servicing accounts as to which deposits are insured by the FDIC under 12 C.F.R. §330.7(d), guarantees or coverage for noninterest-bearing transaction accounts as to which deposits are guaranteed or insured by the FDIC under 12 C.F.R. §370.4 and all other FDIC guarantees and deposit insurance coverage) and (C) as subrogee, the proceeds of all FDIC guarantees and deposit insurance coverage for any mortgage servicing accounts or other insured or guaranteed accounts which are or were maintained

at Colonial Bank and as to which deposits are or were insured or guaranteed by the FDIC under 12 C.F.R. §330.7(d), under 12 C.F.R. §370.4 or otherwise, to the extent that amounts previously converted by TBW and/or Colonial Bank from such accounts for the benefit of one or both of them were replenished by TBW and/or Colonial Bank using Ocala funds converted by TBW and/or Colonial Bank for the benefit of one or both of them, including in each case claims with respect to any deposit liability distributions that were not made ratably and that resulted from the assumption of Colonial Bank's deposit liabilities by any other institution;

(iv)    <u>Stolen Property and Other Priority Claims</u>.    Claims with respect to (A) civil theft committed by TBW and/or Colonial Bank for the benefit of one or both of them under Florida Statute §812.014(1) and otherwise when Colonial Bank failed to return the legal files for mortgage loans or pay the related sale proceeds received by Colonial Bank as bailee and/or custodian for the Trustee upon the Trustee's demand, when the servicing of Ocala mortgage loans was transferred for the benefit of TBW and/or Colonial Bank and when TBW and/or Colonial Bank caused those mortgage loans to be serviced for the benefit of one or both of them or the benefit of third parties, (B) civil theft committed by TBW and/or Colonial Bank for the benefit of one or both of them under Florida Statute §812.014(1) and otherwise when it or they converted Ocala funds for the benefit of one or both of them and (C) the foregoing Ocala funds and mortgage loans and all other property which was stolen from Ocala or the Trustee and which was received by Colonial Bank, is held by or on behalf of or in an account maintained at Colonial Bank or is serviced or administered for the benefit of Colonial Bank, including claims for the imposition of a constructive trust over

7

all such Ocala funds, mortgage loans and other property and, also, including claims that Colonial Bank was required to hold legal files and sale proceeds for mortgage loans on a temporary basis in trust, as agent, custodian and bailee for the Trustee, and that Colonial Bank failed to deliver such legal files or sale proceeds to the Trustee both as required under the related bailee letters, other applicable agreements and/or statutory and common law principles and upon demand by the Trustee after the Trustee terminated Colonial Bank's temporary right to hold such legal files and sale proceeds in trust as agent, custodian and bailee for the Trustee (which legal files and sale proceeds never were the property of Colonial Bank and which Colonial Bank lacked any right even to possess after the Trustee terminated the temporary custodial relationship under which Colonial Bank held them); and

    (v)   <u>Senior Unsecured Claims</u>.  Claims with respect to (A) breach of contract, including under bailee letters, other applicable agreements and/or statutory and common law principles pursuant to which legal files and sale proceeds related to mortgage loans were received by Colonial Bank as bailee and/or custodian for the Trustee, (B) fraud, fraudulent inducement and misrepresentation, (C) conversion, (D) unjust enrichment, (E) replevin, (F) breach of fiduciary duty and (G) all other statutory or common law claims that the Trustee may have against Colonial Bank under the laws of any jurisdiction.

6.    The amounts of the Trustee's claims currently are unliquidated and cannot be determined at this time.  However, upon information and belief, the sum of each such claim is up to $1.75 billion (one billion, seven hundred fifty million dollars, or $1,750,000,000.00) plus accrued and unpaid interest through the Date of Closing and other charges

8

(including attorney's fees and legal costs), but the Trustee seeks only a single recovery of such sum. The Trustee will amend and supplement this Proof of Claim as additional facts relevant to its claims in connection with the Ocala Funding Facility become known to it.

7. No judgment has been rendered on the claims set forth in this Proof of Claim, and no part of those claims has been paid.

8. The Trustee has given no endorsement or assignment of the claims set forth in this Proof of Claim or any part thereof, and to the best of the Trustee's knowledge, there is no valid setoff or counterclaim, or other legal or equitable defense, to the Trustee's claims or any part thereof; provided, however, that the Trustee expressly reserves and does not waive any setoff or recoupment rights that it may possess either by contract or under applicable law.

9. The claims set forth in this Proof of Claim shall be general or senior liabilities of Colonial Bank (which are neither obligations subordinated to its depositors or general creditors nor obligations arising as a result of the Trustee's status as a shareholder or member of Colonial Bank or as a shareholder or creditor of any depository institution holding company) except as they may be alleged to be trust or preferred claims, secured claims, deposit liability claims (including FDIC guarantee and deposit insurance claims) or priority claims or as they may be determined to be administrative expense claims or subject to setoff or recoupment.

10. This Proof of Claim is without prejudice to any claims that Claimant has or may have for payment of an administrative expense allowable under 12 U.S.C. §1821(d)(11)(A)(i) or otherwise with respect to, arising out of or related to the Ocala Funding Facility, whether or not such amounts are included in this Proof of Claim, and the Trustee expressly reserves its rights to file such claims or any similar claims at an appropriate time.

11.     The Facility Documents and other supporting data are voluminous, may contain proprietary information and, as a result, are not attached hereto.  In addition, the Trustee still is in the process of identifying all of the documents that relate to this Proof of Claim.  However, the FDIC has copies of certain Facility Documents and other supporting data.  The Trustee lacks access to the records of TBW, Colonial Bank and other third parties, which may include information that supports the Trustee's claims, but will furnish the Facility Documents and other supporting data in its possession to the FDIC promptly upon its request.

12.     This Proof of Claim is filed with a full reservation of rights and without prejudice to the filing by the Trustee or by Bank of America or any of its affiliates of additional proofs of claim with respect to any other liability or indebtedness of Colonial Bank.  The Trustee specifically preserves all of its procedural and substantive defenses and rights with respect to any claim that may be asserted against the Trustee, whether in its individual capacity or in its representative capacities as described herein, by Colonial Bank, any other party in interest in its receivership or any other person or entity whatsoever.

13.     The Trustee specifically reserves the right to amend and supplement this Proof of Claim from time to time to include any previously undiscovered claims that it may have against Colonial Bank with respect to the Ocala Funding Facility, including any claims based on events, information and/or documents obtained from the FDIC, Colonial Bank, TBW, Navigant or others through discovery or otherwise.  Without in any way limiting the foregoing, the Trustee reserves its rights to assert any claim it may have against Colonial Bank, TBW or any other party or against any property, as applicable.

10

14.    All notices and other communications in respect of this Proof of Claim should be forwarded to:

>      Hunton & Williams LLP
>      101 South Tryon Street, 35th Floor
>      Charlotte, North Carolina 28280
>      Attention:  Frank E. Emory, Jr., Esq.

15.    Filing of this Proof of Claim is not and should not be construed to be (a) a waiver or release of the Trustee's rights against any property or against any other entity or person liable for all or part of any claim described herein, (b) a waiver of any right to the subordination, in favor of the Trustee, of indebtedness or liens held by creditors of Colonial Bank or (c) an election of remedy which waives or otherwise affects any other remedy of the Trustee.

16.    The Trustee reserves the right to amend and supplement this Proof of Claim as additional specific, reliable information becomes known to it.

17.    The Trustee maintains that its claims are not subject to the administrative procedures for determination of claims set forth in 12 U.S.C. § 1821(d)(3), *et seq.*, at least insofar as its claims are trust or preferred claims, secured claims and priority claims, but files this Proof of Claim to preserve its rights and the rights of the secured parties on whose behalf it is making the claims set forth in this Proof of Claim.  The Trustee, by presenting the claims set forth in this Proof of Claim, does not waive any cause of action set forth in the complaint filed in *Bank of America v. Federal Deposit Insurance Corp.*, 09-22384-Civ-Jordan (S.D. Fla.), hereinafter referred to as the "district court action."

18.    The Trustee's filing of this Proof of Claim (a) does not constitute (i) an admission or concession that assets and sums claimed by the Trustee are for any reason within the FDIC's jurisdiction or the receivership estate of Colonial Bank, (ii) a waiver, compromise or abandonment of any of the Trustee's various legal positions, arguments or rights in the district

11

court action or (iii) a waiver or concession of any right to assert any claim, defense or argument relating to ownership and priority interests with respect to assets and funds held by or on behalf of Colonial Bank, or the appropriate forum to adjudicate and determine any and all disputes between the Trustee and the FDIC, (b) shall not preclude the Trustee from raising any argument regarding the allocation of burdens of production or of proof with respect to such claims, defenses or arguments or any other substantive and procedural issues that may support such claims, defenses or arguments that the Trustee has previously asserted as well as new claims, defenses and arguments that the Trustee has not previously asserted, including jurisdictional arguments, and (c) shall not be referenced or otherwise used in any manner by the FDIC in any argument relating to jurisdiction over assets and sums claimed by the Trustee, or the proper forum to adjudicate disputes relating to the Trustee's claims.

12

# PROOF OF SERVICE

| | |
|---|---|
| **Case Style:** N/A | **Case #** N/A |
| VS           N/A | |

**Service on Process on:** Mr. Thomas J. Dujenski, Regional Director, Federal Deposit Insurance Company

**Name of Server:** Brandon Sachse _____, undersigned, being duly sworn, deposes and says that he/she was at the time of service, over the age of twenty-one, was not a party to this action;

**Date of Service:** November 19, 2009      **Time of Service:** 1:40 pm

**Location of Service:** (Address) 1601 Bryan Street, 38th Floor

| (City) Dallas | (State) Texas | (Zip) 75201 | (County) Dallas |
|---|---|---|---|

**Documents Served:** Proof of Claim

**Person Served:** A true and correct copy of the aforesaid papers were served on the above-named party or witness in the following manner:

☐ By personally delivering them into the hands of the person to be served.

☐ (Substitute) by leaving a copy at his/her usual place of abode with some person of suitable age and discretion then residing therein, to wit: _____

☐ By delivering them to an officer or managing agent whose name and title is: _____

☒ Other: by delivering to Ausie McKinley, authorized to accept _____

**Description of Person Receiving Documents:** The person receiving documents is described as follows:
Sex _____ ; Skin Color _____ ; Hair Color _____ ; Facial Hair _____
Age _____ ; Height _____ ; Weight _____

☐ To the best of my knowledge and belief, said person was not engaged in the U.S. Military at the time of service.

**Signature of Server:** Undersigned declares under Penalty of perjury that the Foregoing is true and correct.

Subscribed & Sworn to before me this 19th day of November , 20 09 .

**Name of Server**
Lawyers Civil Process
400 S. Houston Street, Suite 105
Dallas, Texas 75202
214-651-7111
Fax: 214-651-7114

**Notary Public**

MELISSA PEREZ
MY COMMISSION EXPIRES
December 4, 2012

Brandon Sachse
Supreme Court No. SC000001082

**BofA Claim Against Platinum Community Bank**


**December 9, 2009**

04518.62171/4419694.1

**Federal Deposit Insurance Corporation as Receiver for:**
**10115 – Platinum Community Bank, Rolling Meadows, IL**

## PROOF OF CLAIM

SSN/Tax ID # (1) _94-1687665 [1]_

The undersigned, (2) _Cynthia A. Grim_
(Name of person making the claim)

says that the _Platinum Community Bank_ _____ now in liquidation is
(Name of Bank/Financial Institution)

justly indebted to (3) _Bank of America, National Association, as Trustee (as defined in Exhibit A hereto)_ in the sum of
(Individual/Joint/Corporation/Partnership/Firm/Agency)

(4) _up to $1.75 billion plus charges (subject to Exhibit A hereto)_ _____ Dollars upon the following Claim: [2]

| | Description of (Invoice) claim: | Liability Number | Amount of Claim |
|---|---|---|---|
| C L A I M S | (5) Trust or preferred claims, secured claims, deposit liability claims (including FDIC guarantee and deposit insurance claims), claims for stolen property and senior unsecured claims, as more particularly described in Exhibit A hereto.[3] | FDIC will complete | Each up to $1.75 billion plus charges, subject to Exhibit A hereto |
| | | Total Claim:(6) | |

The undersigned further states that he/she makes this claim on behalf of

(7) _the Trustee for the secured parties on the Ocala Funding, LLC Short Term and Subordinated Notes_

that no part of said debt has been paid, that

(8) _the Trustee_
(Individual/Joint/Corporation/Partnership/Firm/Agency)

has given no endorsement or assignment of the same or any part thereof, and that there is no set-off or

counterclaim, or other legal or equitable defense to said claim or any part thereof.

NAME (9) _Cynthia A. Grim_                Cynthia A. Grim,
(Signature of Person making the Claim)    Senior Vice President
                                                                          (Title)

FIRM     _Bank of America, National Association, as Trustee_
(If applicable)

ADDRESS (10) _540 West Madison Street_

CITY/STATE/ZIP _Chicago, IL 60661_

TELEPHONE NUMBER _(312) 904-8001_

The penalty for knowingly making or inviting reliance of any false, forged, or counterfeit statement, document, or thing for the purpose of influencing in any way the action of the Federal Deposit Insurance Corporation is a fine of not more than $1,000,000 or imprisonment for not more than thirty years, or both (18 U.S.C. § 1007).

1 The tax ID number shown is for Bank of America, National Association ("Bank of America"). Many of the claims described in this proof of claim, however, are made by Bank of America in its capacity as Trustee on behalf of the secured parties with respect to the Ocala Funding, LLC Short Term and Subordinated Notes. The tax ID number for Ocala Funding, LLC is 30-0292188.

2 The Federal Deposit Insurance Corporation did not serve the Trustee with a claims notice and may not consider the Trustee to be a claimant subject to the administrative claims process.

RLS7214

3 This Proof of Claim should not, in any way, be construed as a waiver of any rights, substantive or procedural, that the Trustee has or may have to proceed in the district court action, *Bank of America, N.A. v. FDIC, et al.* 09-22384-Civ-Jordan (S.D. Fla.), or to assert any and all available claims, defenses, and arguments in that proceeding or otherwise outside the administrative process set forth in 12 U.S.C. §1821.

# GENERAL INFORMATION AND INSTRUCTIONS FOR
# COMPLETING A PROOF OF CLAIM FORM

This form is being sent to you in the event you believe the failed institution owes you funds for services rendered or goods purchased prior to the date of closing.  If the institution does not currently owe you any money, it is not necessary for you to complete this form.

The following blanks must be completed in order for your Proof of Claim to be considered:  (The numbers correspond with those located on the proof of claim form.)

    1)       A company's tax identification number or an individual's social security number.

    2)       Name of the person making the claim.

    3)       Review this name. Make corrections as needed. Fill in name if blank.

    4)       Written dollar amount of the claim (ex. One hundred and no/100.)

    5)       Detailed description of what is being claimed (i.e., the invoice number, type of service being claimed, account number, etc.).

    6)       Total amount of claim.  Total should NOT include interest or late fees accrued since institution closing.

    7)       Review this name. Make corrections as needed. Fill in name if blank.

    8)       Review this name. Make corrections as needed. Fill in name if blank.

    9)       Signature of the person making claim and the title of that person if they are representing a company making a claim.

    10)     The address and telephone number of the individual or company making the claim.

Should the above information be missing, your information will be entered into our tracking system, but your Proof of Claim form will be returned to you for completion.

## REQUIRED DOCUMENTATION

    1)       Claims for Goods Purchased by the Former Institution: You must forward a copy of the Purchase order or other correspondence from the institution requesting the goods, a copy of your invoice and a receipt signed by the institution indicating that the goods were received.

    2)       Claims for Services Rendered: You must forward a copy of the correspondence or signed initial contract sent by the institution to request your services and an invoice.  In the case of legal fees, an itemized invoice must be sent indicating your prorated charges.  For appraisal services, submit proof the appraisal was completed.

RLS7214

2

## EXHIBIT A

### Federal Deposit Insurance Corporation as Receiver for:
### 10115 – Platinum Community Bank, Rolling Meadows, IL

Exhibit A to Proof of Claim
of
**Bank of America, National Association**
**(successor by merger to LaSalle Bank National Association),**
**as Indenture Trustee, Collateral Agent and Custodian**
**or in another representative capacity**
**for the**
**Ocala Funding, LLC Short Term Notes and Subordinated Notes**

1.      Bank of America, National Association, successor by merger to LaSalle Bank National Association ("*Bank of America*"), acts as indenture trustee, collateral agent and custodian and in other representative capacities (in any and all such capacities, the "*Trustee*") with respect to the Short Term Notes and the Subordinated Notes (collectively, the "*Notes*") issued by Ocala Funding, LLC ("*Ocala*"). Ocala is a special purpose entity owned and managed by Taylor, Bean & Whitaker Mortgage Corp. ("*TBW*"), which now is a debtor in bankruptcy and for which its restructuring agent is Navigant Capital Advisors, LLC ("*Navigant*").

2.      The Trustee acts on behalf of the Secured Parties, as defined in the documents related to the Notes (collectively, the "*Facility Documents*"), with respect to the transactions effected under the Facility Documents (the "*Ocala Funding Facility*"). The Trustee submits this Exhibit A to its proof of claim (together, this "*Proof of Claim*") on behalf of the Secured Parties in connection with the Ocala Funding Facility against Platinum Community Bank and such of its affiliates (collectively, "*Platinum*") for which the Federal Deposit Insurance Corporation (the "*FDIC*") acts as receiver.   Upon information and belief, Platinum is owned by Platinum Bancshares, Inc. ("*Bancshares*"), and TBW owns a controlling interest in Bancshares.

### Basis for Claims

3.     The Ocala Funding Facility is a financing facility under which Ocala periodically purchased residential mortgage loans from TBW.   Ocala granted a security interest in, among other things,  its mortgage loans and the proceeds thereof (including the claims set forth in this Proof of Claim) to the Trustee as collateral security for payment of the Notes and other obligations owed by it to the Secured Parties, and the Trustee is authorized to file this Proof of Claim pursuant to the Facility Documents.  Ocala initially financed its mortgage loan purchases with the proceeds from issuance of the Notes, and Ocala financed subsequent mortgage loan purchases with the proceeds from sales of the mortgage loans that it previously purchased. As seller, TBW arranged Ocala's mortgage loan purchases and caused the legal files for the related mortgage loans to be delivered to the Trustee.  As Ocala's manager, TBW directed the Trustee in the use of proceeds from Note issuances and sales of mortgage loans by Ocala (including by causing the Trustee to directly or indirectly transfer those proceeds into accounts held by or on behalf of or maintained at Platinum).   TBW also serviced Ocala's mortgage loans and, as servicer, collected principal and interest on the mortgage loans (including by directly or indirectly depositing the related principal and interest collections into accounts held by or on behalf of or maintained at Platinum), sold the mortgage loans for Ocala to buyers selected by it (including Platinum), directed the related mortgage loan buyers as to where to make their purchase price payments (including by directing Platinum to make its purchase price payments other than to the Trustee) and directed the Trustee in delivering the legal files for Ocala's mortgage loans to TBW as servicer, to the related buyers or to others designated by TBW or the buyers (including to or for the benefit of Platinum).

2

4.     Upon information and belief, TBW and/or Platinum, either acting on its own behalf, together with TBW, Bancshares and/or a third party or through TBW, Bancshares and/or a third party as its agent:

(a)     arranged for Ocala to purchase mortgage loans, delivered the legal files for those mortgage loans to the Trustee and caused the Trustee to advance funds to Ocala and pay for those mortgage loans in accordance with their instructions without causing all related liens and other encumbrances known to exist by them to be satisfied (including liens and other encumbrances held by, or granted by TBW to, Platinum);

(b)     directly or indirectly deposited principal and interest collections on Ocala's mortgage loans into fiduciary, custodial and/or general accounts held by or on behalf of or maintained at Platinum (including mortgage servicing accounts and noninterest-bearing transaction accounts as to which deposits were insured or guaranteed by the FDIC under 12 C.F.R. §330.7(d) and 12 C.F.R. §370.4, respectively) and converted certain of those collections for the benefit of one or both of them (including by using such collections to directly or indirectly replenish funds previously converted by one or both of them from such FDIC-insured or guaranteed accounts, or from other accounts, and/or directly or indirectly distributing such collections to third parties);

(c)     directly or indirectly deposited the proceeds from Note issuances and mortgage loan sales by Ocala into fiduciary, custodial and/or general accounts held by or on behalf of or maintained at Platinum (including noninterest-bearing transaction accounts as to which deposits were insured or guaranteed by the FDIC under 12 C.F.R. §370.4) and converted certain of those proceeds for the benefit of one or both of them (including by using such proceeds to directly or indirectly replenish funds

3

previously converted by one or both of them from mortgage servicing accounts and noninterest-bearing transaction accounts as to which deposits were insured or guaranteed by the FDIC under 12 C.F.R. §330.7(d) and 12 C.F.R. §370.4, respectively, or from other accounts, and/or directly or indirectly distributing such proceeds to third parties);

(d)     used TBW's power and authority to control principal and interest collections on Ocala's mortgage loans, and to direct buyers of mortgage loans sold for Ocala in where to make their purchase price payments and direct the Trustee in the use of proceeds from Note issuances and mortgage loan sales by Ocala (such as by causing the Trustee to withdraw such proceeds from one or more accounts it maintained and directly or indirectly transfer such proceeds to accounts held by or on behalf of or maintained at Platinum), to convert certain of those collections and other proceeds for the benefit of one or both of them (including by using such collections and other proceeds to directly or indirectly replenish funds previously converted by one or both of them from mortgage servicing accounts and noninterest-bearing transaction accounts as to which deposits were insured or guaranteed by the FDIC under 12 C.F.R. §330.7(d) and 12 C.F.R. §370.4, respectively, or from other accounts, and/or directly or indirectly distributing such proceeds to third parties); and

(e)     used TBW's power and authority to service and administer, and to direct the Trustee in delivering the legal files for, Ocala's mortgage loans to convert those mortgage loans for the benefit of one or both of them (including by acquiring mortgage loans and, also, by transferring the servicing of Ocala's mortgage loans and/or causing those mortgage loans to be serviced for the benefit of one or both of them or for the benefit of third parties).

4

**Trustee's Claims**

5.      The Trustee hereby asserts all claims it has or may have against Platinum as of the

date on which Platinum was closed by the FDIC (the "*Date of Closing*"), including the following

(whether or not any of those claims may overlap):

(i)      Trust or Preferred Claims.  Claims with respect to (A) principal and

interest collections, proceeds from Note issuances and mortgage loan sales by Ocala and

all other Ocala amounts received by Platinum or held in fiduciary or custodial accounts

maintained at Platinum (or that should have been held therein or should be so held) and

(B) all other Ocala funds, mortgage loans and other property that were received by

Platinum or that are held by or on behalf of or in an account maintained at Platinum

(or that should have been held therein or should be so held), including (1) property that,

in equity, should be treated as "special" deposits or claims as to which the Trustee is

entitled to be paid in full before other creditors of Platinum, (2) Ocala funds that TBW

and/or Platinum used to replenish funds previously converted by one or both of them or

that TBW and/or Platinum distributed to third parties by or for the benefit of one or

both of them, (3) Ocala mortgage loans which Platinum acquired without paying the

related purchase price to the Trustee or as to which servicing was transferred for

the benefit of TBW and/or Platinum or which TBW and/or Platinum caused to be

serviced for the benefit of one or both of them or for the benefit of third parties,

(4) approximately $50 million (fifty million dollars, or $50,000,000) of Ocala's

note issuance and mortgage loan sale proceeds which, on information and belief,

TBW and/or Platinum caused the Trustee to withdraw from one or more accounts

it maintained and transfer to Platinum or to one or more accounts maintained at Platinum

5

(including Platinum account no. 0030270065) for the benefit of one or both of them to fund an escrow account created by TBW as part of financing that TBW was to provide to a depository institution holding company it was to acquire and (5) the legal files and/or sale proceeds that, on information and belief, Platinum holds for approximately 85 (eighty five) of Ocala's mortgage loans, which have an original principal balance of more than $13 million (thirteen million dollars, or $13,000,000);

        (ii)    <u>Secured Claims</u>.    Claims with respect to all Ocala "instruments", "deposit accounts", "investment property", "money" and related "proceeds" within the meaning of the Uniform Commercial Code as in effect in any applicable jurisdiction, and all other Ocala property, which were received by Platinum or are held by or on behalf of or in an account maintained at Platinum (or that should have been held therein or should be so held) and as to which the Trustee has a security interest, including (A) property that, in equity, should be treated as "special" deposits or claims as to which the Trustee is entitled to be paid in full before other creditors of Platinum and (B) the funds, mortgage loans and other property specified in paragraphs 5(i)(B)(4) and (5) above;

        (iii)    <u>Deposit Liability, Guaranty and Insurance Claims</u>.  Claims with respect to (A) deposits of principal and interest collections, proceeds from Note issuances and mortgage loan sales by Ocala and all other Ocala funds received by Platinum or held in fiduciary, custodial or general accounts maintained at Platinum (or that should have been held therein or should be so held), including the funds specified in paragraphs 5(i)(B)(4) and (5) above, (B) the proceeds of all related FDIC guarantees and deposit insurance coverage (including coverage for mortgage servicing accounts as to which deposits are

6

insured by the FDIC under 12 C.F.R. §330.7(d), guarantees or coverage for noninterest-bearing transaction accounts as to which deposits are guaranteed or insured by the FDIC under 12 C.F.R. §370.4 and all other FDIC guarantees and deposit insurance coverage) and (C) as subrogee, the proceeds of all FDIC guarantees and deposit insurance coverage for any mortgage servicing accounts or other insured or guaranteed accounts which are or were maintained at Platinum and as to which deposits are or were insured or guaranteed by the FDIC under 12 C.F.R. §330.7(d), under 12 C.F.R. §370.4 or otherwise, to the extent that amounts previously converted by TBW and/or Platinum from such accounts for the benefit of one or both of them were replenished by TBW and/or Platinum using Ocala funds converted by TBW and/or Platinum for the benefit of one or both of them, including in each case claims with respect to any deposit liability distributions that were not made ratably;

(iv)    <u>Stolen Property and Other Priority Claims</u>.    Claims with respect to (A) civil theft committed by TBW and/or Platinum for the benefit of one or both of them under Florida Statutes §812.014(1) and otherwise when Platinum acquired Ocala mortgage loans without paying the related purchase price to the Trustee or the servicing of Ocala mortgage loans was transferred for the benefit of TBW and/or Platinum and when TBW and/or Platinum caused those mortgage loans to be serviced for the benefit of one or both of them or for the benefit of third parties, (B) civil theft committed by TBW and/or Platinum for the benefit of one or both of them under Florida Statutes §812.014(1) and otherwise when it or they converted Ocala funds for the benefit of one or both of them and (C) the foregoing Ocala funds and mortgage loans and all other property which was stolen from Ocala or the Trustee and

7

which was received by Platinum, is held by or on behalf of or in an account maintained at Platinum or is serviced or administered for the benefit of Platinum, including in each case (A) claims for the imposition of a constructive trust over all such Ocala funds, mortgage loans and other property and (B) claims for the funds, mortgage loans and other property specified in paragraphs 5(i)(B)(4) and (5) above; and

(v)     Senior Unsecured Claims.   Claims with respect (A) misrepresentation, fraud and fraudulent inducement, (B) conversion, (C) unjust enrichment, (D) replevin, (E) breach of fiduciary duty, (F) breach of contract, express or implied, and (G) all other statutory, common law and other claims that the Trustee may have against Platinum under the laws of any jurisdiction.

6.     The amounts of the Trustee's claims currently are unliquidated and cannot be determined at this time.  However, upon information and belief, the sum of each such claim is up to $1.75 billion (one billion, seven hundred fifty million dollars, or $1,750,000,000.00) plus accrued and unpaid interest through the Date of Closing and other charges (including attorney's fees and legal costs), but the Trustee seeks only a single recovery of such sum.  The Trustee will amend and supplement this Proof of Claim as additional facts relevant to its claims in connection with the Ocala Funding Facility become known to it.

7.     No judgment has been rendered on the claims set forth in this Proof of Claim, and no part of those claims has been paid.

8.     The Trustee has given no endorsement or assignment of the claims set forth in this Proof of Claim or any part thereof, and to the best of the Trustee's knowledge, there is no valid setoff or counterclaim, or other legal or equitable defense, to the Trustee's claims or any

8

part thereof; provided, however, that the Trustee expressly reserves and does not waive any setoff or recoupment rights that it may possess either by contract or under applicable law.

9.     The claims set forth in this Proof of Claim shall be general or senior liabilities of Platinum (which are neither obligations subordinated to its depositors or general creditors nor obligations arising as a result of the Trustee's status as a shareholder or member of Platinum or as a shareholder or creditor of any depository institution holding company) except as they may be alleged to be trust or preferred claims, secured claims, deposit liability claims (including FDIC guarantee and deposit insurance claims) or priority claims or as they may be determined to be administrative expense claims or subject to setoff or recoupment.

10.    This Proof of Claim is without prejudice to any claims that Claimant has or may have for payment of an administrative expense allowable under 12 U.S.C. § 1821(d)(11)(A)(i) or otherwise with respect to, arising out of or related to the Ocala Funding Facility, whether or not such amounts are included in this Proof of Claim, and the Trustee expressly reserves its rights to file such claims or any similar claims at an appropriate time.

11.    The Facility Documents and other supporting data are voluminous, may contain proprietary information and, as a result, are not attached hereto.  In addition, the Trustee still is in the process of identifying all of the documents that relate to this Proof of Claim.  However, the FDIC has copies of certain Facility Documents and other supporting data.  The Trustee lacks access to the records of TBW, Platinum, and other third parties, which may include information that supports the Trustee's claims, but will furnish the Facility Documents and other supporting data in its possession to the FDIC promptly upon its request.

12.    This Proof of Claim is filed with a full reservation of rights and without prejudice to the filing by the Trustee or by Bank of America or any of its affiliates of additional proofs of

9

claim with respect to any other liability or indebtedness of Platinum. The Trustee specifically preserves all of its procedural and substantive defenses and rights with respect to any claim that may be asserted against the Trustee, whether in its individual capacity or in its representative capacities as described herein, by Platinum, any other party in interest in its receivership or any other person or entity whatsoever.

13.     The Trustee specifically reserves the right to amend and supplement this Proof of Claim from time to time to include any previously undiscovered claims that it may have against Platinum with respect to the Ocala Funding Facility, including any claims based on events, information and/or documents obtained from the FDIC, Platinum, TBW, Navigant or others through discovery or otherwise. Without in any way limiting the foregoing, the Trustee reserves its rights to assert any claim it may have against Platinum, TBW or any other party or against any property, as applicable.

14.     All notices and other communications in respect of this Proof of Claim should be forwarded to:

> Hunton & Williams LLP
> 101 South Tryon Street, 35[th] Floor
> Charlotte, North Carolina  28280
> Attention:  Frank E. Emory, Jr., Esq.

15.     Filing of this Proof of Claim is not and should not be construed to be (a) a waiver or release of the Trustee's rights against any property or against any other entity or person liable for all or part of any claim described herein, (b) a waiver of any right to the subordination, in favor of the Trustee, of indebtedness or liens held by creditors of Platinum, or (c) an election of remedy which waives or otherwise affects any other remedy of the Trustee.

16.     The Trustee reserves the right to amend and supplement this Proof of Claim as additional specific, reliable information becomes known to it.

10

17.    The Trustee maintains that its claims are not subject to the administrative procedures for determination of claims set forth in 12 U.S.C. § 1821(d)(3), *et seq.*, at least insofar as its claims are trust or preferred claims, secured claims and priority claims, but files this Proof of Claim to preserve its rights and the rights of the secured parties on whose behalf it is making the claims set forth in this Proof of Claim.  The Trustee, by presenting the claims set forth in this Proof of Claim, does not waive any cause of action set forth in the complaint filed in *Bank of America v. Federal Deposit Insurance Corp.*, 09-22384-Civ-Jordan (S.D. Fla.), hereinafter referred to as the "district court action."

18.    The Trustee's filing of this Proof of Claim (a) does not constitute (i) an admission or concession that assets and sums claimed by the Trustee are for any reason within the FDIC's jurisdiction or the receivership estate of either Platinum or Colonial Bank, (ii) a waiver, compromise or abandonment of any of the Trustee's various legal positions, arguments or rights in the district court action or (iii) a waiver or concession of any right to assert any claim, defense, or argument relating to ownership and priority interests with respect to assets and funds held by or on behalf of Platinum or Colonial Bank, or the appropriate forum to adjudicate and determine any and all disputes between the Trustee and the FDIC, (b) shall not preclude the Trustee from raising any argument regarding the allocation of burdens of production or of proof with respect to such claims, defenses or arguments or any other substantive or procedural issues that may support such claims, defenses or arguments that the Trustee has previously asserted as well as new claims, defenses and arguments that the Trustee has not previously asserted, including jurisdictional arguments, and (c) shall not be referenced or otherwise used in any manner by the FDIC in any argument relating to jurisdiction over assets and sums claimed by the Trustee, or the proper forum to adjudicate disputes relating to the Trustee's claims.

11

46124.000930 EMF_US 29092030v3

# PROOF OF SERVICE

**Case Style:**  Re: Platinum Community Bank                    **Case #** _____ n/a _____

VS _____

**Service on Process on:**  Federal Deposit Insurance Company

**Name of Server:**  Brandon Sachse _____, undersigned, being duly sworn, deposes and says that he/she was at the time of service, over the age of twenty-one, was not a party to this action;

**Date of Service:**  December 9, 2009          **Time of Service:**   2:30 pm

**Location of Service:** (Address)   1601 Bryan Street

(City) Dallas        (State) Texas        (Zip) 75201        (County) Dallas

**Documents Served:**   Proof of Claim
_____
_____
_____

**Person Served:**        A true and correct copy of the aforesaid papers were served on the above-named party or witness in the following manner:

☐        By personally delivering them into the hands of the person to be served.
☐        (Substitute) by leaving a copy at his/her usual place of abode with some person of suitable age and discretion then residing therein, to wit: _____

☐        By delivering them to an officer or managing agent whose name and title is: _____

☒        Other:   by delivering to Ausie L. McKinley, authorized to accept
_____
_____

**Description of Person Receiving Documents:**    The person receiving documents is described as follows:
Sex _____ ; Skin Color _____ ; Hair Color _____ ; Facial Hair _____
Age _____ ; Height _____ ; Weight _____

☐ To the best of my knowledge and belief, said person was not engaged in the U.S. Military at the time of service.

**Signature of Server:**    Undersigned declares under Penalty of perjury that the Foregoing is true and correct.

Subscribed & Sworn to before me this 11th day of December , 20 09 .

_Name of Server_                         _Notary Public_

Lawyers Civil Process
400 S. Houston Street, Suite 105
Dallas, Texas 75202
214-651-7111
Fax: 214-651-7114

MELISSA PEREZ
MY COMMISSION EXPIRES
December 4, 2012

Brandon Sachse
Supreme Court No. SC000001082

# PROOF OF SERVICE

**Case Style:** Re: Platinum Community Bank _____     **Case #** ___ n/a ___

VS _____

**Service on Process on:** Mr. Thomas J. Dujenski, Regional Director for Federal Deposit Insurance

**Name of Server:** Brandon Sachse _____, undersigned, being duly sworn, deposes and says that he/she was at the time of service, over the age of twenty-one, was not a party to this action;

**Date of Service:** December 9, 2009                    **Time of Service:** 2:30 pm

**Location of Service:** (Address)  1601 Bryan Street

(City) Dallas        (State)  Texas      (Zip)  75201      (County)   Dallas

**Documents Served:** Proof of Claim _____

**Person Served:**     A true and correct copy of the aforesaid papers were served on the above-named party or witness in the following manner:

☐     By personally delivering them into the hands of the person to be served.
☐     (Substitute) by leaving a copy at his/her usual place of abode with some person of suitable age and discretion then residing therein, to wit: _____

☐     By delivering them to an officer or managing agent whose name and title is: _____

☒     Other:  by delivering to Aussie L. McKinley, authorized to accept _____

**Description of Person Receiving Documents:**     The person receiving documents is described as follows:
Sex _____ ; Skin Color _____ ; Hair Color _____ ; Facial Hair _____
Age _____ ; Height _____ ; Weight _____

☐ To the best of my knowledge and belief, said person was not engaged in the U.S. Military at the time of service.

**Signature of Server:**     Undersigned declares under Penalty of perjury that the Foregoing is true and correct.

Subscribed & Sworn to before me this 11th day of December, 20 09 .

**Name of Server**
Lawyers Civil Process
400 S. Houston Street, Suite 105
Dallas, Texas 75202
214-651-7111
Fax: 214-651-7114

**Notary Public**

MELISSA PEREZ
MY COMMISSION EXPIRES
December 4, 2012

Brandon Sachse
Supreme Court No. SC000001082

**BofA Claim Against REO Specialists, LLC**

**April 6, 2010**

04518.62171/4419694.1

| UNITED STATES BANKRUPTCY COURT | PROOF OF CLAIM |
|---|---|

| Name of Debtor: REO Specialists, LLC | Case Number: 09-10022-JAF |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property): Bank of America, National Association, as Trustee (as defined in attached Exhibit A) | ☐ Check this box to indicate that this claim amends a previously filed claim. |
| Name and address where notices should be sent: Andrew Zaron, Esq. Hunton & Williams LLP 1111 Brickell Avenue. Suite 2500 Miami, FL 33131 Telephone number: 305-810-2500 | **CLAIM FILED** JACKSONVILLE, FLORIDA APR 06 2010 | Court Claim Number: *(If known)* Filed on:_____ |
| Name and address where payment should be sent (if different from above): CLERK, U. S. BANKRUPTCY COURT MIDDLE DISTRICT OF FLORIDA Telephone number: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. ☐ Check this box if you are the debtor or trustee in this case. |

| | |
|---|---|
| 1. **Amount of Claim as of Date Case Filed:** $ Unknown<br><br>If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5.<br><br>☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | 5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**<br><br>Specify the priority of the claim. |
| 2. **Basis for Claim:** See Attached<br>(See instruction #2 on reverse side.) | ☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). |
| 3. **Last four digits of any number by which creditor identifies debtor:** _____<br><br>3a. Debtor may have scheduled account as: _____<br>(See instruction #3a on reverse side.) | ☐ Wages, salaries, or commissions (up to $10,950* ) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4). |
| 4. **Secured Claim** (See instruction #4 on reverse side.)<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>**Nature of property or right of setoff:** ☒Real Estate  ☐Motor Vehicle  ☒Other<br>**Describe:** See Attached<br><br>**Value of Property:** $ Unknown  **Annual Interest Rate** _____%<br><br>**Amount of arrearage and other charges as of time case filed included in secured claim,**<br><br>if any: $_____  **Basis for perfection:** _____<br><br>**Amount of Secured Claim:** $_____  **Amount Unsecured:** $_____ | ☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).<br><br>☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).<br><br>☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8). |
| 6. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | ☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(___). |
| 7. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*<br><br>DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.<br><br>If the documents are not available, please explain: | **Amount entitled to priority:**<br><br>$_____<br><br>*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* |

| | |
|---|---|
| Date: 4/5/2010 | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>*Cynthia A Grim*<br>Cynthia A. Grim, Senior Vice President<br>Bank of America, National Association, as Trustee | FOR COURT USE ONLY<br>T, B & W Mortgage Corp.<br><br>01380 |

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

## EXHIBIT A

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE MIDDLE DISTRICT OF FLORIDA

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **REO SPECIALISTS, LLC,** | : | **Case No. 09-10022-JAF** |
| | : | |
| Debtor. | : | |
| | : | |
| _____/ | | |

**Exhibit A to Proof of Claim**
of
**Bank of America, National Association**
**(successor by merger to LaSalle Bank National Association),**
**as Indenture Trustee, Collateral Agent and Custodian**
**or in another representative capacity**
**for the**
**Ocala Funding, LLC Short Term Notes and Subordinated Notes**

1.      Bank of America, National Association, successor by merger to LaSalle Bank National Association ("*Bank of America*"), acts as indenture trustee, collateral agent and custodian and in other representative capacities (in any and all such capacities, the "*Trustee*") with respect to the Short Term Notes and the Subordinated Notes (collectively, the "*Notes*") issued by Ocala Funding, LLC ("*Ocala*"). Ocala is a special purpose entity owned and managed by Taylor, Bean & Whitaker Mortgage Corp. ("*TBW*"), which now is a debtor in bankruptcy and for which its restructuring agent is Navigant Capital Advisors, LLC ("*Navigant*").

2.      The Trustee acts on behalf of the Secured Parties, as defined in the documents related to the Notes (collectively, the "*Facility Documents*"), with respect to the transactions effected under the Facility Documents (the "*Ocala Funding Facility*"). The Trustee submits this Exhibit A to its proof of claim (together, this "*Proof of Claim*") on behalf of the Secured Parties in connection with the Ocala Funding Facility against REO Specialists, LLC. ("*the Debtor*").

3.	The Debtor is a wholly-owned subsidiary of TBW. In connection with TBW's mortgage servicing business, TBW foreclosed on real property assets ("REO Assets") for others, including the Trustee, and allegedly for itself. According to the Debtor, it was responsible for the preservation and disposition of the REO Assets, and its operations were inextricably tied to those of TBW.

**Basis for Claims**

4.	The Ocala Funding Facility is a financing facility under which Ocala periodically purchased residential mortgage loans from TBW. Ocala granted a security interest in, among other things, its mortgage loans and the proceeds thereof (including the claims set forth in this Proof of Claim) to the Trustee as collateral security for payment of the Notes and other obligations owed by it to the Secured Parties, and the Trustee is authorized to file this Proof of Claim pursuant to the Facility Documents. Ocala initially financed its mortgage loan purchases with the proceeds from issuance of the Notes, and Ocala financed subsequent mortgage loan purchases with the proceeds from sales of the mortgage loans that it previously purchased. As seller, TBW arranged Ocala's mortgage loan purchases and caused the legal files for the related mortgage loans to be delivered to the Trustee. As Ocala's manager, TBW directed the Trustee in the use of proceeds from Note issuances and sales of mortgage loans by Ocala. TBW also serviced Ocala's mortgage loans and, as servicer, collected principal and interest on the mortgage loans, sold the mortgage loans for Ocala, directed the related mortgage loan buyers as to where to make their purchase price payments and directed the Trustee in delivering the legal files for Ocala's mortgage loans to TBW as servicer, to the related buyers or to others designated by TBW or the buyers. The Debtor is the TBW's wholly owned subsidiary, and the Debtor may be vicariously liable for the acts of TBW.

2

5.     Upon information and belief, TBW, either acting on its own behalf, or with others, including potentially the Debtor:

(a)     arranged for Ocala to purchase mortgage loans, delivered the legal files for those mortgage loans to the Trustee and caused the Trustee to advance funds to Ocala and pay for those mortgage loans in accordance with their instructions without causing all related liens and other encumbrances known to exist by them to be satisfied;

(b)     deposited principal and interest collections on Ocala's mortgage loans into fiduciary, custodial and/or general accounts maintained at Colonial Bank and converted certain of those collections for the benefit of TBW or others, including potentially the Debtor;

(c)     deposited the proceeds from Note issuances and mortgage loan sales by Ocala into fiduciary, custodial and/or general accounts maintained at Colonial Bank and converted certain of those proceeds for the benefit of TBW or others, including potentially the Debtor;

(d)     used TBW's power and authority to control principal and interest collections on Ocala's mortgage loans, and to direct buyers of mortgage loans sold for Ocala in where to make their purchase price payments and direct the Trustee in the use of proceeds from Note issuances and mortgage loan sales by Ocala, to convert certain of those collections and other proceeds for the benefit of TBW or others, including potentially the Debtor;

(e)     used TBW's power and authority to service and administer, and to direct the Trustee in delivering the legal files for Ocala's mortgage loans to convert those mortgage loans for the benefit of TBW others, including potentially the Debtor; and

3

(f)     used funds or other assets belonging to Ocala, or to which Ocala was entitled, to satisfy TBW's repurchase obligations to certain third parties, and foreclosed on the repurchased mortgages, taking title to the real property in the name of TBW and in certain instances, the Debtor.

**Trustee's Claims**

6.     The Trustee hereby asserts all claims it has or may have against the Debtor, including the following (whether or not any of those claims may overlap):

(a)     Ownership Claims.

(i)     Trust Claims.  Claims with respect to Ocala assets that were taken or received by the Debtor, including, without limitation, (i) the REO Assets, and (ii) the proceeds thereof; and

(ii)     Stolen Property/Civil Theft Claims.  Claims with respect to civil theft committed by TBW, acting on its own behalf, together with the Debtor, or through the Debtor as its agent, for the benefit of one or both of them under Florida Statutes § 812.014(1), and other applicable law, when it or they converted Ocala assets for the benefit of one or both of them;

(b)     Secured Claims. Claims with respect to all Ocala property which was received by the Debtor and as to which the Trustee has a security interest or mortgage;

(c)     General Unsecured Claims.  Claims with respect to:

(i)     Fraudulent transfers received by the Debtor;

(ii)     Fraud, fraudulent inducement and misrepresentation;

(iii)     Conversion;

(iv)     Unjust enrichment;

4

(v)   Replevin;

(vi)   Breach of fiduciary duty;

(vii)   Subrogation claims; and

(viii)   All other statutory, common law or other claims that the Trustee may have against the Debtor under the laws of any jurisdiction, for which the Debtor may be liable as principal or may be vicariously liable through the conduct of TBW.

7.   The amounts of the Trustee's claims currently are unliquidated and cannot be determined at this time.   However, upon information and belief, the sum of each such claim is up to $1.75 billion (one billion, seven hundred fifty million dollars, or $1,750,000,000.00) plus accrued and unpaid interest and other charges (including attorney's fees and legal costs), but the Trustee seeks only a single recovery of such sum.   The Trustee will amend and supplement this Proof of Claim as additional facts relevant to its claims in connection with the Ocala Funding Facility become known to it.

8.   No judgment has been rendered on the claims set forth in this Proof of Claim, and no part of those claims has been paid.

9.   The Trustee has given no endorsement or assignment of the claims set forth in this Proof of Claim or any part thereof, and to the best of the Trustee's knowledge, there is no valid setoff or counterclaim, or other legal or equitable defense, to the Trustee's claims or any part thereof; provided, however, that the Trustee expressly reserves and does not waive any setoff or recoupment rights that it may possess either by contract or under applicable law.

10.   The claims set forth in this Proof of Claim shall be as described above except as may be determined to be administrative expense claims or subject to setoff or recoupment.

5

11.     This Proof of Claim is without prejudice to any claims that Claimant has or may have for payment of an administrative expense allowable under Section 503(b) of the Bankruptcy Code with respect to, arising out of or related to the Ocala Funding Facility, whether or not such amounts are included in this Proof of Claim, and the Trustee expressly reserves its rights to file such claims or any similar claims at an appropriate time.

12.     The Facility Documents and other supporting data are voluminous, may contain proprietary information and, as a result, are not attached hereto. In addition, the Trustee still is in the process of identifying all of the documents that relate to this Proof of Claim. The Facility Documents are identified on Schedule I attached hereto.

13.     This Proof of Claim is filed with a full reservation of rights and without prejudice to the filing by the Trustee or by Bank of America or any of its affiliates of additional proofs of claim with respect to any other liability or indebtedness of the Debtor. The Trustee specifically preserves all of its procedural and substantive defenses and rights with respect to any claim that may be asserted against the Trustee, whether in its individual capacity or in its representative capacities as described herein, by the Debtor, any other party in interest in its bankruptcy case or any other person or entity whatsoever.

14.     The Trustee specifically reserves the right to amend and supplement this Proof of Claim from time to time to include any previously undiscovered claims that it may have against the Debtor with respect to the Ocala Funding Facility. Without in any way limiting the foregoing, the Trustee reserves its rights to assert any claim it may have against the Debtor, Colonial Bank, the FDIC, TBW or any other party or against any property, as applicable.

15.     All notices and other communications in respect of this Proof of Claim should be forwarded to:

6

Hunton & Williams LLP
1111 Brickell Avenue, Suite 2500
Miami, FL 33131
Attention: Andrew Zaron, Esq.

16.     Filing of this Proof of Claim is not and should not be construed to be (a) a waiver

or release of the Trustee's rights against any property or against any other entity or person liable

for all or part of any claim described herein, (b) a waiver of any right to have the reference

withdrawn with respect to (i) the subject matter of these claims, (ii) any objection or other

proceedings commenced with respect thereto, or (iii) any other proceedings commenced in this

case against or otherwise involving the Trustee, (c) a waiver of any right to the subordination,

in favor of the Trustee, of indebtedness or liens held by creditors of the Debtor or (d) an election

of remedy which waives or otherwise affects any other remedy of the Trustee.

17.     The Trustee reserves the right to amend and supplement this Proof of Claim as

additional specific, reliable information becomes known to it.

46124.000930 EMF_US 30384425v1

## SCHEDULE I
## "FACILITY DOCUMENTS"

| NO | TITLE | DATE | PARTIES |
|---|---|---|---|
| 1. | Second Amended and Restated Base Indenture | June 30, 2008 | Ocala Funding, LLC and LaSalle Bank National Association, as Indenture Trustee |
| 2. | Second Amended and Restated Series 2005-1 Short Term Note Supplement to Second Amended and Restated Base Indenture | June 30, 2008 | Ocala Funding, LLC, as Issuer and LaSalle Bank National Association, as Indenture Trustee and Paying Agent |
| 3. | Series 2008-1 Short Term Note Supplement to Second Amended and Restated Base Indenture | June 30, 2008 | Ocala Funding, LLC, as Issuer and LaSalle Bank National Association, as Indenture Trustee and Paying Agent |
| 4. | Series 2005-A Subordinated Notes Supplement to Base Indenture | April 5, 2005 | Ocala Funding, LLC, as Issuer and LaSalle Bank National Association, as Indenture Trustee and Paying Agent |
| 5. | Series 2006-A Subordinated Notes Supplement to Amended and Restated Base Indenture | March 27, 2006 | Ocala Funding, LLC, as Issuer and LaSalle Bank National Association, as Indenture Trustee and Paying Agent |
| 6. | Series 2006-B Subordinated Notes Supplement to Amended and Restated Base Indenture | March 27, 2006 | Ocala Funding, LLC, as Issuer and LaSalle Bank National Association, as Indenture Trustee and Paying Agent |
| 7. | Series 2007-A Subordinated Notes Supplement to Amended and Restated Base Indenture | March 27, 2006 | Ocala Funding, LLC, as Issuer and LaSalle Bank National Association, as Indenture Trustee and Paying Agent |
| 8. | Second Amended and Restated Security Agreement | June 30, 2008 | Ocala Funding, LLC, LaSalle Bank National Association, as Indenture Trustee, and LaSalle Bank National Association, as Collateral Agent |
| 9. | Second Amended and Restated Mortgage Loan Purchase and Servicing Agreement | June 30, 2008 | Ocala Funding, LLC as Purchaser and Taylor, Bean Whitaker Mortgage Corp., as Seller and Servicer |

| | | | |
|---|---|---|---|
| 10. | Second Amended and Restated Custodial Agreement | June 30, 2008 | Ocala Funding, LLC, as Issuer, Taylor, Bean Whitaker Mortgage Corp., as Seller and Servicer and LaSalle Bank National Association, as Custodian, and LaSalle Bank National Association, as Custodian, as Collateral Agent |
| 11. | Second Amended and Restated Limited Liability Company Agreement | June 30, 2008 | Ocala Funding, LLC, as Issuer, Taylor, Bean Whitaker Mortgage Corp. as Manager and Member, and Colleen A. Devries, as Special Member |
| 12. | Series 2005-1 Amended and Restated Depositary Agreement | June 30, 2008 | Ocala Funding, LLC and LaSalle Bank National Association, as Depository |
| 13. | Series 2008-1 Depositary Agreement | June 30, 2008 | Ocala Funding, LLC and LaSalle Bank National Association, as Depository |
| 14. | Interest Rate Swap Agreements with BNP Paribas | | |
| (a) | ISDA Master Agreement | April 5, 2005 | BNP Paribas and Ocala Funding, LLC |
| (b) | Second Amended and Restated Schedule to the Master Agreement | June 30, 2008 | BNP Paribas and Ocala Funding, LLC |
| (c) | Second Amended and Restated Confirmation | June 30, 2008 | BNP Paribas and Ocala Funding, LLC |
| 15. | Interest Rate Swap Agreements with Deutsche Bank, AG, London Branch | | |
| (a) | ISDA Master Agreement | June 30, 2008 | Deutsche Bank, AG, London Branch and Ocala Funding, LLC |
| (b) | Schedule to the Master Agreement | June 30, 2008 | Deutsche Bank, AG, London Branch and Ocala Funding, LLC |
| (c) | Confirmation | June 30, 2008 | Deutsche Bank, AG, London Branch and Ocala Funding, LLC |
| 16. | Series 2005-1 Short Term Note Dealer Agreement | April 5, 2005 | Ocala Funding, LLC as Issuer, Taylor, Bean Whitaker Mortgage Corp. as Seller, and BNP Paribas Securities Corp. |

| 17. | Series 2008-1 Short Term Note Dealer Agreement | June 30, 2008 | Ocala Funding, LLC as Issuer and Deutsche Bank Securities Inc. |
|---|---|---|---|
| 18. | Variable Rate Subordinated Notes, Series 2005-A Purchase Agreement | April 5, 2005 | Ocala Funding, LLC as the Issuer and Lehman Brothers Inc. as the Initial Purchaser |
| 19. | Variable Rate Subordinated Notes, Series 2006-A Purchase Agreement | April 7, 2006 | Ocala Funding, LLC as the Issuer and Lehman Brothers Inc. as the Initial Purchaser |
| 20. | Variable Rate Subordinated Notes, Series 2006-B Purchase Agreement | June 21, 2006 | Ocala Funding, LLC as the Issuer and Lehman Brothers Inc. as the Initial Purchaser |
| 21. | Variable Rate Subordinated Notes, Series 2007-A Purchase Agreement | May 25, 2007 | Ocala Funding, LLC as the Issuer and UBS Securities LLC and BNP Paribas Securities Corp. as the Initial Purchasers |

**BofA Claim Against Home America Mortgage, Inc.**


**April 6, 2010**

04518.62171/4419694.1

| UNITED STATES BANKRUPTCY COURT | PROOF OF CLAIM |
|---|---|

| Name of Debtor: **Home America Mortgage, Inc.** | Case Number: **09-10023-JAF** |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property): **Bank of America, National Association, as Trustee (as defined in attached Exhibit A)** | ❏ Check this box to indicate that this claim amends a previously filed claim. |
|---|---|

Name and address where notices should be sent:
Andrew Zaron, Esq.
Hunton & Williams LLP
1111 Brickell Avenue. Suite 2500
Miami, FL 33131
Telephone number:
305-810-2500

**CLAIM FILED**
JACKSONVILLE, FLORIDA

**APR 06 2010**

Court Claim Number: _____
*(If known)*

Filed on: _____

Name and address where payment should be sent (if different from above):

CLERK, U. S. BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA

Telephone number:

❏ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

❏ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:**  $ ___Unknown_____

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

❏ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** ___See Attached_____
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** _____

  **3a. Debtor may have scheduled account as:** _____
  (See instruction #3a on reverse side.)

**4. Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

  **Nature of property or right of setoff:** ☒Real Estate  ❏Motor Vehicle  ☒Other
  **Describe:**  See Attached

  **Value of Property:** $ _Unknown_____  **Annual Interest Rate** _____%

  **Amount of arrearage and other charges as of time case filed included in secured claim,**

  **if any:** $ _____  **Basis for perfection:** _____

  **Amount of Secured Claim:** $ _____  **Amount Unsecured:** $ _____

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim.

❏ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

❏ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

❏ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

❏ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

❏ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

❏ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$ _____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| Date: 4/5/2010 | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. *Cynthia A. Grim*  Cynthia A. Grim, Senior Vice President  Bank of America, National Association, as Trustee | FOR COURT USE ONLY  T, B & W Mortgage Corp.  01379 |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

**EXHIBIT A**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| HOME AMERICA MORTGAGE, INC., | : | Case No. 09-10023-JAF |
| | : | |
| Debtor. | : | |
| | : | |
| _____/ | | |

**Exhibit A to Proof of Claim**
**of**
**Bank of America, National Association**
**(successor by merger to LaSalle Bank National Association),**
**as Indenture Trustee, Collateral Agent and Custodian**
**or in another representative capacity**
**for the**
**Ocala Funding, LLC Short Term Notes and Subordinated Notes**

1.      Bank of America, National Association, successor by merger to LaSalle Bank National Association ("*Bank of America*"), acts as indenture trustee, collateral agent and custodian and in other representative capacities (in any and all such capacities, the "*Trustee*") with respect to the Short Term Notes and the Subordinated Notes (collectively, the "*Notes*") issued by Ocala Funding, LLC ("*Ocala*").  Ocala is a special purpose entity owned and managed by Taylor, Bean & Whitaker Mortgage Corp. ("*TBW*"), which now is a debtor in bankruptcy and for which its restructuring agent is Navigant Capital Advisors, LLC ("*Navigant*").

2.      The Trustee acts on behalf of the Secured Parties, as defined in the documents related to the Notes (collectively, the "*Facility Documents*"), with respect to the transactions effected under the Facility Documents (the "*Ocala Funding Facility*").  The Trustee submits this Exhibit A to its proof of claim (together, this "*Proof of Claim*") on behalf of the Secured Parties in connection with the Ocala Funding Facility against Home America Mortgage, Inc. ("*the Debtor*").

3. The Debtor is a wholly-owned subsidiary of TBW. According to the Debtor, it originated mortgage loans that were subsequently assigned primarily to TBW, and its operations were inextricably tied to those of TBW.

## Basis for Claims

4. The Ocala Funding Facility is a financing facility under which Ocala periodically purchased residential mortgage loans from TBW. Ocala granted a security interest in, among other things, its mortgage loans and the proceeds thereof (including the claims set forth in this Proof of Claim) to the Trustee as collateral security for payment of the Notes and other obligations owed by it to the Secured Parties, and the Trustee is authorized to file this Proof of Claim pursuant to the Facility Documents. Ocala initially financed its mortgage loan purchases with the proceeds from issuance of the Notes, and Ocala financed subsequent mortgage loan purchases with the proceeds from sales of the mortgage loans that it previously purchased. As seller, TBW arranged Ocala's mortgage loan purchases and caused the legal files for the related mortgage loans to be delivered to the Trustee. As Ocala's manager, TBW directed the Trustee in the use of proceeds from Note issuances and sales of mortgage loans by Ocala. TBW also serviced Ocala's mortgage loans and, as servicer, collected principal and interest on the mortgage loans, sold the mortgage loans for Ocala, directed the related mortgage loan buyers as to where to make their purchase price payments and directed the Trustee in delivering the legal files for Ocala's mortgage loans to TBW as servicer, to the related buyers or to others designated by TBW or the buyers. The Debtor is the TBW's wholly owned subsidiary, and the Debtor may be vicariously liable for the acts of TBW.

5. Upon information and belief, TBW, either acting on its own behalf, or with others, including potentially the Debtor:

2

(a) arranged for Ocala to purchase mortgage loans, delivered the legal files for those mortgage loans to the Trustee and caused the Trustee to advance funds to Ocala and pay for those mortgage loans in accordance with their instructions without causing all related liens and other encumbrances known to exist by them to be satisfied;

(b) deposited principal and interest collections on Ocala's mortgage loans into fiduciary, custodial and/or general accounts maintained at Colonial Bank and converted certain of those collections for the benefit of TBW or others, including potentially the Debtor;

(c) deposited the proceeds from Note issuances and mortgage loan sales by Ocala into fiduciary, custodial and/or general accounts maintained at Colonial Bank and converted certain of those proceeds for the benefit of TBW or others, including potentially the Debtor;

(d) used TBW's power and authority to control principal and interest collections on Ocala's mortgage loans, and to direct buyers of mortgage loans sold for Ocala in where to make their purchase price payments and direct the Trustee in the use of proceeds from Note issuances and mortgage loan sales by Ocala, to convert certain of those collections and other proceeds for the benefit of TBW or others, including potentially the Debtor;

(e) used TBW's power and authority to service and administer, and to direct the Trustee in delivering the legal files for Ocala's mortgage loans to convert those mortgage loans for the benefit of TBW others, including potentially the Debtor; and

(f) used funds or other assets belonging to Ocala, or to which Ocala was entitled, to satisfy TBW's repurchase obligations to certain third parties, and foreclosed

3

on the repurchased mortgages, taking title to the real property in the name of TBW and potentially the Debtor.

## Trustee's Claims

6.  The Trustee hereby asserts all claims it has or may have against the Debtor, including the following (whether or not any of those claims may overlap):

(a)  <u>Ownership Claims</u>.

(i)  <u>Trust Claims</u>.  Claims with respect to Ocala assets that were taken or received by the Debtor, including, without limitation, (i) any real estate owned by the Debtor, and (ii) the proceeds thereof; and

(ii)  <u>Stolen Property/Civil Theft Claims</u>.  Claims with respect to civil theft committed by TBW, acting on its own behalf, together with the Debtor, or through the Debtor as its agent, for the benefit of one or both of them under Florida Statutes § 812.014(1), and other applicable law, when it or they converted Ocala assets for the benefit of one or both of them;

(b)  <u>Secured Claims</u>. Claims with respect to all Ocala property which was received by the Debtor and as to which the Trustee has a security interest or mortgage;

(c)  <u>General Unsecured Claims</u>.  Claims with respect to:

(i)  Fraudulent transfers received by the Debtor;

(ii)  Fraud, fraudulent inducement and misrepresentation;

(iii)  Conversion;

(iv)  Unjust enrichment;

(v)  Replevin;

(vi)  Breach of fiduciary duty;

4

(vii)   Subrogation claims; and

(viii)   All other statutory, common law or other claims that the Trustee may have against the Debtor under the laws of any jurisdiction, for which the Debtor may be liable as principal or may be vicariously liable through the conduct of TBW.

7.      The amounts of the Trustee's claims currently are unliquidated and cannot be determined at this time.  However, upon information and belief, the sum of each such claim is up to $1.75 billion (one billion, seven hundred fifty million dollars, or $1,750,000,000.00) plus accrued and unpaid interest and other charges (including attorney's fees and legal costs), but the Trustee seeks only a single recovery of such sum.  The Trustee will amend and supplement this Proof of Claim as additional facts relevant to its claims in connection with the Ocala Funding Facility become known to it.

8.      No judgment has been rendered on the claims set forth in this Proof of Claim, and no part of those claims has been paid.

9.      The Trustee has given no endorsement or assignment of the claims set forth in this Proof of Claim or any part thereof, and to the best of the Trustee's knowledge, there is no valid setoff or counterclaim, or other legal or equitable defense, to the Trustee's claims or any part thereof; provided, however, that the Trustee expressly reserves and does not waive any setoff or recoupment rights that it may possess either by contract or under applicable law.

10.     The claims set forth in this Proof of Claim shall be as described above except as may be determined to be administrative expense claims or subject to setoff or recoupment.

11.     This Proof of Claim is without prejudice to any claims that Claimant has or may have for payment of an administrative expense allowable under Section 503(b) of the

5

Bankruptcy Code with respect to, arising out of or related to the Ocala Funding Facility, whether or not such amounts are included in this Proof of Claim, and the Trustee expressly reserves its rights to file such claims or any similar claims at an appropriate time.

12.     The Facility Documents and other supporting data are voluminous, may contain proprietary information and, as a result, are not attached hereto.  In addition, the Trustee still is in the process of identifying all of the documents that relate to this Proof of Claim.  The Facility Documents are identified on Schedule I attached hereto.

13.     This Proof of Claim is filed with a full reservation of rights and without prejudice to the filing by the Trustee or by Bank of America or any of its affiliates of additional proofs of claim with respect to any other liability or indebtedness of the Debtor.  The Trustee specifically preserves all of its procedural and substantive defenses and rights with respect to any claim that may be asserted against the Trustee, whether in its individual capacity or in its representative capacities as described herein, by the Debtor, any other party in interest in its bankruptcy case or any other person or entity whatsoever.

14.     The Trustee specifically reserves the right to amend and supplement this Proof of Claim from time to time to include any previously undiscovered claims that it may have against the Debtor with respect to the Ocala Funding Facility.  Without in any way limiting the foregoing, the Trustee reserves its rights to assert any claim it may have against the Debtor, Colonial Bank, the FDIC, TBW or any other party or against any property, as applicable.

15.     All notices and other communications in respect of this Proof of Claim should be forwarded to:

                    Hunton & Williams LLP
                    1111 Brickell Avenue, Suite 2500
                    Miami, FL 33131
                    Attention:  Andrew Zaron, Esq.

6

16. Filing of this Proof of Claim is not and should not be construed to be (a) a waiver or release of the Trustee's rights against any property or against any other entity or person liable for all or part of any claim described herein, (b) a waiver of any right to have the reference withdrawn with respect to (i) the subject matter of these claims, (ii) any objection or other proceedings commenced with respect thereto, or (iii) any other proceedings commenced in this case against or otherwise involving the Trustee, (c) a waiver of any right to the subordination, in favor of the Trustee, of indebtedness or liens held by creditors of the Debtor or (d) an election of remedy which waives or otherwise affects any other remedy of the Trustee.

17. The Trustee reserves the right to amend and supplement this Proof of Claim as additional specific, reliable information becomes known to it.

46124.000930 EMF_US 30384425v1

## SCHEDULE I
## "FACILITY DOCUMENTS"

| NO | TITLE | DATE | PARTIES |
|---|---|---|---|
| 1. | Second Amended and Restated Base Indenture / | June 30, 2008 | Ocala Funding, LLC and LaSalle Bank National Association, as Indenture Trustee |
| 2. | Second Amended and Restated Series 2005-1 Short Term Note Supplement to Second Amended and Restated Base Indenture | June 30, 2008 | Ocala Funding, LLC, as Issuer and LaSalle Bank National Association, as Indenture Trustee and Paying Agent |
| 3. | Series 2008-1 Short Term Note Supplement to Second Amended and Restated Base Indenture | June 30, 2008 | Ocala Funding, LLC, as Issuer and LaSalle Bank National Association, as Indenture Trustee and Paying Agent |
| 4. | Series 2005-A Subordinated Notes Supplement to Base Indenture | April 5, 2005 | Ocala Funding, LLC, as Issuer and LaSalle Bank National Association, as Indenture Trustee and Paying Agent |
| 5. | Series 2006-A Subordinated Notes Supplement to Amended and Restated Base Indenture | March 27, 2006 | Ocala Funding, LLC, as Issuer and LaSalle Bank National Association, as Indenture Trustee and Paying Agent |
| 6. | Series 2006-B Subordinated Notes Supplement to Amended and Restated Base Indenture | March 27, 2006 | Ocala Funding, LLC, as Issuer and LaSalle Bank National Association, as Indenture Trustee and Paying Agent |
| 7. | Series 2007-A Subordinated Notes Supplement to Amended and Restated Base Indenture | March 27, 2006 | Ocala Funding, LLC, as Issuer and LaSalle Bank National Association, as Indenture Trustee and Paying Agent |
| 8. | Second Amended and Restated Security Agreement | June 30, 2008 | Ocala Funding, LLC, LaSalle Bank National Association, as Indenture Trustee, and LaSalle Bank National Association, as Collateral Agent |
| 9. | Second Amended and Restated Mortgage Loan Purchase and Servicing Agreement | June 30, 2008 | Ocala Funding, LLC as Purchaser and Taylor, Bean Whitaker Mortgage Corp., as Seller and Servicer |

| | | | |
|---|---|---|---|
| 10. | Second Amended and Restated Custodial Agreement | June 30, 2008 | Ocala Funding, LLC, as Issuer, Taylor, Bean Whitaker Mortgage Corp., as Seller and Servicer and LaSalle Bank National Association, as Custodian, and LaSalle Bank National Association, as Custodian, as Collateral Agent |
| 11. | Second Amended and Restated Limited Liability Company Agreement | June 30, 2008 | Ocala Funding, LLC, as Issuer, Taylor, Bean Whitaker Mortgage Corp. as Manager and Member, and Colleen A. Devries, as Special Member |
| 12. | Series 2005-1 Amended and Restated Depositary Agreement | June 30, 2008 | Ocala Funding, LLC and LaSalle Bank National Association, as Depository |
| 13. | Series 2008-1 Depositary Agreement | June 30, 2008 | Ocala Funding, LLC and LaSalle Bank National Association, as Depository |
| 14. | Interest Rate Swap Agreements with BNP Paribas | | |
| (a) | ISDA Master Agreement | April 5, 2005 | BNP Paribas and Ocala Funding, LLC |
| (b) | Second Amended and Restated Schedule to the Master Agreement | June 30, 2008 | BNP Paribas and Ocala Funding, LLC |
| (c) | Second Amended and Restated Confirmation | June 30, 2008 | BNP Paribas and Ocala Funding, LLC |
| 15. | Interest Rate Swap Agreements with Deutsche Bank, AG, London Branch | | |
| (a) | ISDA Master Agreement | June 30, 2008 | Deutsche Bank, AG, London Branch and Ocala Funding, LLC |
| (b) | Schedule to the Master Agreement | June 30, 2008 | Deutsche Bank, AG, London Branch and Ocala Funding, LLC |
| (c) | Confirmation | June 30, 2008 | Deutsche Bank, AG, London Branch and Ocala Funding, LLC |
| 16. | Series 2005-1 Short Term Note Dealer Agreement | April 5, 2005 | Ocala Funding, LLC as Issuer, Taylor, Bean Whitaker Mortgage Corp. as Seller, and BNP Paribas Securities Corp. |

| | | | |
|---|---|---|---|
| 17. | Series 2008-1 Short Term Note Dealer Agreement | June 30, 2008 | Ocala Funding, LLC as Issuer and Deutsche Bank Securities Inc. |
| 18. | Variable Rate Subordinated Notes, Series 2005-A Purchase Agreement | April 5, 2005 | Ocala Funding, LLC as the Issuer and Lehman Brothers Inc. as the Initial Purchaser |
| 19. | Variable Rate Subordinated Notes, Series 2006-A Purchase Agreement | April 7, 2006 | Ocala Funding, LLC as the Issuer and Lehman Brothers Inc. as the Initial Purchaser |
| 20. | Variable Rate Subordinated Notes, Series 2006-B Purchase Agreement | June 21, 2006 | Ocala Funding, LLC as the Issuer and Lehman Brothers Inc. as the Initial Purchaser |
| 21. | Variable Rate Subordinated Notes, Series 2007-A Purchase Agreement | May 25, 2007 | Ocala Funding, LLC as the Issuer and UBS Securities LLC and BNP Paribas Securities Corp. as the Initial Purchasers |

**BofA Claim Against TBW**

**June 15, 2010**

04518.62171/4419694.1

| UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF FLORIDA | PROOF OF CLAIM |
|---|---|

| Name of Debtor: **TAYLOR, BEAN & WHITAKER MORTGAGE CORP.** | Case Number: **09-07047-JAF** |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
**Bank of America, N.A., in its representative capacity as described on Exhibit A**

☐ Check this box to indicate that this claim amends a previously filed claim.

Name and address where notices should be sent:
Andrew Zaron, Esq.
Hunton & Williams LLP
1111 Brickell Avenue, Suite 2500
Miami, FL 33131

**CLAIM FILED**
JACKSONVILLE, FLORIDA

JUN 15 2010

Telephone number:
305-810-2500

Court Claim Number: _____
*(If known)*

Filed on: _____

Name and address where payment should be sent (if different from above):
CLERK, U. S. BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

Telephone number:

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:** $ _at least $1,750,000,000*_

*The amount of the claim may exceed $1,750,000,000 because, among other things, certain of the grounds for the claim permit treble damages, certain grounds for the claim are currently contingent for an unknown amount, and the amount does not include prepetition interest, costs, or other charges.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** __See Attached__
(See instruction #2 on reverse side.)

**3.** Last four digits of any number by which creditor identifies debtor: _____

**3a.** Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff: ☒ Real Estate  ☐ Motor Vehicle  ☒ Other
Describe: **See Attached**

Value of Property:$ _Unknown_   Annual Interest Rate _____%

Amount of arrearage and other charges as of time case filed included in secured claim,

if any: $_____   Basis for perfection: _____

Amount of Secured Claim: $ _Unknown_   Amount Unsecured: $ _Unknown_

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☒ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(_2_).

**Amount entitled to priority:**

$ _Unknown_

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**FOR COURT USE ONLY**

Date:
**June 11, 2010**

Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

*Cynthia A. Grim*

Cynthia A. Grim, Senior Vice Presid
Bank of America, National Association, as Trustee

T. B & W Mortgage Corp.

03063

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Scanned: 6/15/2010-12:39:10 PM

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **TAYLOR, BEAN & WHITAKER** | : | |
| **MORTGAGE CORP.,** | : | **Case No. 09-07047-JAF** |
| | : | |
| **Debtor.** | : | |
| | : | |
| _____/ | | |

**Exhibit A to Proof of Claim**
**of**
**Bank of America, National Association**
**(successor by merger to LaSalle Bank National Association),**
**as Indenture Trustee, Collateral Agent, Custodian and Depositary Agent**
**for the**
**Ocala Funding, LLC Short Term Notes and Subordinated Notes**

1.      Bank of America, National Association, successor by merger to LaSalle Bank National Association ("_Bank of America_"), acts as indenture trustee, collateral agent, custodian and depositary agent (in any and all such capacities, the "_Claimant_") with respect to certain short term notes and subordinated notes (collectively, the "_Notes_") issued by Ocala Funding, LLC ("_Ocala_"). Ocala is a special purpose entity owned and managed by Taylor, Bean & Whitaker Mortgage Corp. ("_TBW_" _or_ "_Debtor_"), which filed a voluntary bankruptcy petition under chapter 11 of title 11 of the United States Code (the "_Bankruptcy Code_") on August 24, 2009 (the "_Petition Date_"). The Debtor's restructuring agent is Navigant Capital Advisors, LLC ("_Navigant_").

2.      The Claimant acts for the benefit of the Secured Parties, as defined in the documents related to the Notes (collectively, the "_Facility Documents_"), with respect to the transactions effected under the Facility Documents (the "_Ocala Funding Facility_"). The

Claimant submits this Exhibit A to its proof of claim (together, this "*Proof of Claim*") on behalf of the Secured Parties in connection with the Ocala Funding Facility against the bankruptcy estate of the Debtor.

## Basis for Claims

3.      The Ocala Funding Facility is a financing facility under which Ocala periodically purchased residential mortgage loans from TBW. Ocala granted a security interest in, among other things, its mortgage loans and the proceeds thereof for the purposes set out in that certain Second Amended and Restated Security Agreement by and among Ocala and Bank of America (as Indenture Trustee and Collateral Agent), dated June 30, 2008. Ocala initially financed its mortgage loan purchases with the proceeds from issuance of the Notes, and Ocala financed subsequent mortgage loan purchases with the proceeds from sales of the mortgage loans that it previously purchased and sales of the securities for which those mortgage loans were exchanged. As seller, TBW arranged Ocala's mortgage loan purchases and caused the legal files for the related mortgage loans to be delivered to the Claimant. As Ocala's manager, TBW directed the Claimant in the use of proceeds from Note issuances and sales of mortgage loans and related securities by Ocala. TBW also serviced Ocala's mortgage loans and, as servicer, collected principal and interest on the mortgage loans, sold the mortgage loans and related securities for Ocala, directed the buyers of those mortgage loans and related securities as to where to make their purchase price payments and directed the Claimant in delivering the legal files for Ocala's mortgage loans to TBW as servicer, to the related buyers or to others designated by TBW or the buyers.

4.      Upon information and belief, TBW:

(a)     arranged for Ocala to purchase mortgage loans, delivered the legal files for those mortgage loans to the Claimant, caused the Notes to be issued by Ocala and directed that the proceeds of the Notes and subsequent sales of the mortgage loans and related securities be used to pay for the purchased mortgage loans in accordance with TBW's instructions without causing all related liens and other encumbrances known to exist by TBW to be satisfied;

(b)     deposited principal and interest collections on Ocala's mortgage loans into fiduciary, custodial and/or general accounts maintained at Colonial Bank, Platinum Community Bank or other banks and converted certain of those collections for the benefit of itself or others;

(c)     deposited the proceeds from Note issuances and the sales of mortgage loans and related securities by Ocala into fiduciary, custodial and/or general accounts maintained at Colonial Bank, Platinum Community Bank or other banks and converted certain of those proceeds for the benefit of itself or others;

(d)     used its power and authority to control principal and interest collections on Ocala's mortgage loans, and to direct buyers of mortgage loans and related securities sold by it for Ocala in where to make their purchase price payments and direct the Claimant in the use of proceeds from Note issuances and the sales of mortgage loans and related securities by Ocala, to convert certain of those collections and other proceeds for the benefit of itself or others;

(e)     used its power and authority to service and administer, and to direct the Claimant in delivering the legal files for, Ocala's mortgage loans and related securities to convert those mortgage loans and related securities for the benefit of itself or others;

(f)     as Seller, manager, servicer and otherwise, committed fraud, breach of contract, negligence, breach of fiduciary duties and other wrongdoing against Ocala, the Claimant and the Secured Parties causing them to suffer damages;

(g)     conspired with third parties (including without limitation, Colonial Bank) in fraud or other wrongdoing;

(h)     received assets, through constructive or actual fraud, from entities which are debtors to the Claimant; and

(i)     potentially created liability to the Claimant, thus creating a claim for contribution and similar types of claims.

5.     In addition, upon information and belief, at or around the Petition Date and thereafter, TBW:

(a)     continued to service certain loans for a period of months, and deposited at least $133,729,000 in collections on such loans into accounts at Regions Bank. The Claimant is entitled to the portion of such collections to the extent they derive from mortgage loans owned by Ocala; and

(b)     transferred mortgage loans held by it as of the Petition Date to successor servicers, including without limitation, upon information and belief, at least 183 mortgage loans owned by Ocala (the "*Owned Mortgage Loans*") to RoundPoint Mortgage Servicing Corporation ("RoundPoint"), without the permission of the Claimant.

6.     The Claimant hereby asserts all claims it has or may have against the Debtor, including without limitation the following (whether or not any of those claims may overlap):

(a)     Ownership Claims.

(i)    <u>Trust Claims</u>.  Claims with respect to Ocala assets that were taken, received or otherwise converted by the Debtor, including without limitation (i) mortgage loans and related securities; (ii) the proceeds thereof, including without limitation that portion of the at least $133,729,000 in the Regions Bank account arising from the Debtor's servicing of Ocala loans after the Petition Date; (iii) cash; (iv) real estate; and (v) other assets, including without limitation receivables relating to principal, interest, tax, insurance and other servicing advances made by the Debtor, and real estate owned property arising out of repurchased mortgage loans, and funded by Ocala cash.

(ii)    <u>Stolen Property/Civil Theft Claims</u>.  Claims with respect to civil theft committed by TBW, for the benefit of itself or others, under Florida Statutes § 812.014(1), and other applicable law, when it converted Ocala assets for its benefit or the benefit of others;

(b)    <u>Secured Claims</u>. Claims with respect to all Ocala property which the Debtor received, possesses or owns, and as to which the Claimant has a security interest, mortgage, lien or other encumbrance, including without limitation certain of the claims described in paragraph 6(a) hereof ;

(c)    <u>Priority Claims</u>.  Claims arising under 11 U.S.C. § 503(b) and 507, including without limitation those relating to: (i) funds received by the Debtor after the Petition Date in connection with its servicing of mortgage loans owned by Ocala and (ii) the Owned Mortgage Loans.

(d)    <u>General Unsecured Claims</u>. Claims with respect to:

(i)    Fraudulent transfers received by the Debtor;

Scanned: 6/15/2010-12:39:12 PM

(ii)   Fraud, fraudulent inducement and misrepresentation;

(iii)  Aiding and abetting fraud;

(iv)   Conversion;

(v)    Civil Theft;

(vi)   Unjust enrichment;

(vii)  Replevin;

(viii) Breach of fiduciary duty;

(ix)   Aiding and abetting breach of fiduciary duty;

(x)    Subrogation;

(xi)   Contribution;

(xii)  Civil RICO;

(xiii) Breach of contract;

(xiv)  Negligence; and

(xv)   All other statutory, common law or other claims that the Claimant may have against the Debtor under the laws of any jurisdiction, for which the Debtor may be liable as principal or in any other capacity or for which it may be vicariously liable through the conduct of others.

7.     The amounts of the Claimant's claims currently are unliquidated and cannot be determined at this time. However, upon information and belief, the sum of the claim is at least $1.75 billion (one billion, seven hundred fifty million dollars, or $1,750,000,000.00); to the extent applicable law permits treble damages, at least $5.25 billion (five billion, two hundred fifty million dollars, or $5,250,000,000); plus additional amounts for certain contingent claims; plus accrued and unpaid interest, fees, costs, and other charges (including without

limitation attorneys' fees and legal costs). The Claimant will amend and supplement this Proof of Claim as additional facts relevant to its claims in connection with Ocala become known to it.

8.    No judgment has been rendered on the claims set forth in this Proof of Claim, and no part of those claims has been paid.

9.    The Claimant has given no endorsement or assignment of the claims set forth in this Proof of Claim or any part thereof, and to the best of the Claimant's knowledge, there is no valid setoff or counterclaim, or other legal or equitable defense, to the Claimant's claims or any part thereof; provided, however, that the Claimant expressly reserves and does not waive any setoff or recoupment rights that it may possess either by contract or under applicable law.

10.    This Proof of Claim is without prejudice to any claims that Claimant has or may have for payment of an administrative expense allowable under section 503(b) of the Bankruptcy Code, whether or not such amounts are included in this Proof of Claim, and the Claimant expressly reserves its rights to file such claims or any similar claims at an appropriate time. The Court has not, as of the date hereof, established a deadline to file administrative expense claims.

11.    The Facility Documents and other supporting data are voluminous, may contain proprietary information and, as a result, are not attached hereto. The Facility Documents are identified on Schedule I attached hereto.

12.    This Proof of Claim is filed with a full reservation of rights and without prejudice to the filing by the Claimant or by Bank of America or any of its affiliates of additional proofs of claim with respect to any other liability or indebtedness of the Debtor. The Claimant specifically preserves all of its procedural and substantive defenses and rights with respect to any claim that may be asserted against the Claimant, whether in its individual capacity or in its representative

capacities as described herein, by the Debtor, any other party in interest in its bankruptcy case or any other person or entity whatsoever.

13.     The Claimant specifically reserves the right to amend and supplement this Proof of Claim from time to time to include any previously undiscovered claims that it may have against the Debtor. Without in any way limiting the foregoing, the Claimant reserves its rights to assert any claim it may have against TBW or any other party, or against any property, as applicable.

14.     All notices and other communications in respect of this Proof of Claim should be forwarded to:

> Bank of America, National Association
> Bank of America Corporate Center
> 100 North Tryon Street
> NC1-007-16-13
> Charlotte, NC 28255
> Attention: Cynthia A. Grim
>
>     -and-
>
> Hunton & Williams LLP
> 1111 Brickell Avenue, Suite 2500
> Miami, FL 33131
> Attention: Andrew Zaron, Esq.

15.     Filing of this Proof of Claim is not and should not be construed to be: (a) a waiver or release of the Claimant's rights against any property or against any other entity or person liable for all or part of any claim described herein, (b) a waiver of any right to have the reference withdrawn with respect to (i) the subject matter of these claims, (ii) any objection or other proceedings commenced with respect thereto, or (iii) any other proceedings commenced in this case against or otherwise involving the Claimant, (c) a waiver of any right to the subordination,

Scanned: 6/15/2010-12:39:14 PM

in favor of the Claimant, of indebtedness or liens held by creditors of the Debtor or (d) an election of remedy which waives or otherwise affects any other remedy of the Claimant.

16.     The Claimant reserves the right to amend and supplement this Proof of Claim as additional specific, reliable information becomes known to it.

9
Scanned: 6/15/2010-12:39:14 PM
Case 09-32303   Doc 1583   Filed 10/31/11   Entered 10/31/11 09:50:21   Desc Main
Document   Page 87 of 91

## SCHEDULE I
## "FACILITY DOCUMENTS"

| NO | TITLE | DATE | PARTIES |
|----|-------|------|---------|
| 1. | Second Amended and Restated Base Indenture | June 30, 2008 | Ocala Funding, LLC and LaSalle Bank National Association, as Indenture Trustee |
| 2. | Second Amended and Restated Series 2005-1 Short Term Note Supplement to Second Amended and Restated Base Indenture | June 30, 2008 | Ocala Funding, LLC, as Issuer and LaSalle Bank National Association, as Indenture Trustee and Paying Agent |
| 3. | Series 2008-1 Short Term Note Supplement to Second Amended and Restated Base Indenture | June 30, 2008 | Ocala Funding, LLC, as Issuer and LaSalle Bank National Association, as Indenture Trustee and Paying Agent |
| 4. | Series 2005-A Subordinated Notes Supplement to Base Indenture | April 5, 2005 | Ocala Funding, LLC, as Issuer and LaSalle Bank National Association, as Indenture Trustee and Paying Agent |
| 5. | Series 2006-A Subordinated Notes Supplement to Amended and Restated Base Indenture | March 27, 2006 | Ocala Funding, LLC, as Issuer and LaSalle Bank National Association, as Indenture Trustee and Paying Agent |
| 6. | Series 2006-B Subordinated Notes Supplement to Amended and Restated Base Indenture | March 27, 2006 | Ocala Funding, LLC, as Issuer and LaSalle Bank National Association, as Indenture Trustee and Paying Agent |
| 7. | Series 2007-A Subordinated Notes Supplement to Amended and Restated Base Indenture | March 27, 2006 | Ocala Funding, LLC, as Issuer and LaSalle Bank National Association, as Indenture Trustee and Paying Agent |
| 8. | Second Amended and Restated Security Agreement | June 30, 2008 | Ocala Funding, LLC, LaSalle Bank National Association, as Indenture Trustee, and LaSalle Bank National Association, as Collateral Agent |
| 9. | Second Amended and Restated Mortgage Loan Purchase and Servicing Agreement | June 30, 2008 | Ocala Funding, LLC as Purchaser and Taylor, Bean Whitaker Mortgage Corp., as Seller and Servicer |

| | | | |
|---|---|---|---|
| 10. | Second Amended and Restated Custodial Agreement | June 30, 2008 | Ocala Funding, LLC. as Issuer, Taylor, Bean Whitaker Mortgage Corp., as Seller and Servicer and LaSalle Bank National Association, as Custodian, and LaSalle Bank National Association, as Custodian, as Collateral Agent |
| 11. | Second Amended and Restated Limited Liability Company Agreement | June 30, 2008 | Ocala Funding, LLC, as Issuer, Taylor, Bean Whitaker Mortgage Corp. as Manager and Member, and Colleen A. Devries, as Special Member |
| 12. | Series 2005-1 Amended and Restated Depository Agreement | June 30, 2008 | Ocala Funding, LLC and LaSalle Bank National Association, as Depository |
| 13. | Series 2008-1 Depositary Agreement | June 30, 2008 | Ocala Funding, LLC and LaSalle Bank National Association, as Depository |
| 14. | Interest Rate Swap Agreements with BNP Paribas | | |
| (a) | ISDA Master Agreement | April 5, 2005 | BNP Paribas and Ocala Funding, LLC |
| (b) | Second Amended and Restated Schedule to the Master Agreement | June 30, 2008 | BNP Paribas and Ocala Funding, LLC |
| (c) | Second Amended and Restated Confirmation | June 30, 2008 | BNP Paribas and Ocala Funding, LLC |
| 15. | Interest Rate Swap Agreements with Deutsche Bank, AG, London Branch | | |
| (a) | ISDA Master Agreement | June 30, 2008 | Deutsche Bank, AG, London Branch and Ocala Funding, LLC |
| (b) | Schedule to the Master Agreement | June 30, 2008 | Deutsche Bank, AG, London Branch and Ocala Funding, LLC |
| (c) | Confirmation | June 30, 2008 | Deutsche Bank, AG, London Branch and Ocala Funding, LLC |
| 16. | Series 2005-1 Short Term Note Dealer Agreement | April 5, 2005 | Ocala Funding, LLC as Issuer, Taylor, Bean Whitaker Mortgage Corp. as Seller, and BNP Paribas Securities Corp. |

| | | | |
|---|---|---|---|
| 17. | Series 2008-1 Short Term Note Dealer Agreement | June 30, 2008 | Ocala Funding, LLC as Issuer and Deutsche Bank Securities Inc. |
| 18. | Variable Rate Subordinated Notes, Series 2005-A Purchase Agreement | April 5, 2005 | Ocala Funding, LLC as the Issuer and Lehman Brothers Inc. as the Initial Purchaser |
| 19. | Variable Rate Subordinated Notes, Series 2006-A Purchase Agreement | April 7, 2006 | Ocala Funding, LLC as the Issuer and Lehman Brothers Inc. as the Initial Purchaser |
| 20. | Variable Rate Subordinated Notes, Series 2006-B Purchase Agreement | June 21, 2006 | Ocala Funding, LLC as the Issuer and Lehman Brothers Inc. as the Initial Purchaser |
| 21. | Variable Rate Subordinated Notes, Series 2007-A Purchase Agreement | May 25, 2007 | Ocala Funding, LLC as the Issuer and UBS Securities LLC and BNP Paribas Securities Corp. as the Initial Purchasers |

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing document was electronically served on October 31, 2011, by transmission of Notices of Electronic Filing generated by CM/ECF to persons registered as of issuance of filing and by first class U.S. mail upon counsel to BofA, addressed as follows:

> Hunton & Williams LLP
> Attn: Frank E. Emory, Jr., Esq.
> 101 S. Tryon Street, 35th Floor
> Charlotte, NC 28280

Dated:  October 31, 2011                          /s/ Andrew Campbell
                                                  One of the Attorneys for Debtor,
                                                  The Colonial BancGroup, Inc.