## UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

```
-----------------------------------------------------------x
                                    :
In re                               :              Chapter 11
                                    :
THE COLONIAL BANCGROUP, INC.,       :              Case No.  09-32303 (DHW)
                                    :
                Debtor.             :
                                    :
-----------------------------------------------------------x
```

### OBJECTION TO CLAIM NO. 134 OF TITAN TECHNOLOGY PARTNERS, LIMITED

> **PURSUANT TO LBR 3007-1, THE COURT WILL TAKE THIS OBJECTION UNDER ADVISEMENT AND RULE, WITHOUT FURTHER NOTICE OR HEARING, UNLESS THE CLAIMANT FILES WITH THE COURT, WITH SERVICE UPON THE OBJECTING PARTY, A RESPONSE WITHIN 30 DAYS OF THE DATE OF SERVICE OF THIS OBJECTION.**

Pursuant to Section 502 of the Bankruptcy Code, Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules for the United States Bankruptcy Court for the Middle District of Alabama, The Colonial BancGroup, Inc. (the "Debtor") files this objection (the "Objection") to Proof of Claim No. 134 filed by TITAN Technology Partners, Limited ("TITAN") and requests that the Court enter an Order disallowing the Claim (as defined below), a form of which proposed Order is attached hereto as Exhibit B.  In support of this Objection, the Debtor shows the Court as follows:

### Jurisdiction And Venue

1.      This Court has jurisdiction over this Objection pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      The statutory predicates for the relief requested in this Objection are Section 502 of the Bankruptcy Code, Bankruptcy Rule 3007, and Local Rule 3007-1.

## Background

### A.  Bankruptcy Proceeding

3.  On August 25, 2009 (the "Petition Date"), the Debtor filed with this Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

4.  The Debtor is a corporation formed under the laws of the State of Delaware and, prior to the Petition Date, was headquartered and conducted business at 100 Colonial Bank Boulevard, Montgomery, Alabama 36117.

5.  Prior to the Petition Date, the Debtor owned Colonial Bank and also owned certain non-banking, non-debtor subsidiaries.  As the Debtor's banking subsidiary, Colonial Bank was overseen by various federal and state authorities.

6.  On August 14, 2009, Colonial Bank was closed by the Alabama State Banking Department, and the Federal Deposit Insurance Corporation was appointed as receiver for Colonial Bank (the "FDIC-Receiver").  On August 14, 2009, the FDIC-Receiver sold all or substantially all of the former assets of Colonial Bank to Branch Banking and Trust Company ("BB&T").

7.  On June 2, 2011, the Court entered an order confirming the *Second Amended Chapter 11 Plan of Liquidation of The Colonial BancGroup, Inc.* (the "Plan").

### B.  Contract Between TITAN And Debtor

8.  On or about December 1, 2005, the Debtor and TITAN entered into a certain HRO Utility Master Agreement (the "TITAN Contract").

9.  Pursuant to the terms of the TITAN Contract, TITAN agreed to provide, among other things, the following services to the Debtor and its subsidiaries (including Colonial Bank and Colonial Brokerage, Inc.): (i) facilitating the processing of payroll, including, without limitation, the payment of payroll taxes and associated obligations; (ii) processing and coordinating employee benefits; and (iii) storing and maintaining employee personnel, benefits and payroll information and other historical employee data.

2136530_5

10.     The term of the TITAN Contract ended on June 30, 2012, unless sooner terminated by the parties.

11.     TITAN and the Debtor were the only parties to the TITAN Contract, but the services provided under the TITAN Contract by TITAN were primarily for the benefit of the Debtor's subsidiaries, which employed substantially all of the workforce whose payroll was processed and benefit information maintained by TITAN pursuant to the TITAN Contract.

12.     In connection with its acquisition of assets of Colonial Bank from the FDIC-Receiver on August 14, 2009, BB&T hired substantially all of the former employees of Colonial Bank. On and after August 14, 2009, Colonial Bank had no need for, and did not benefit from, any services purportedly rendered by TITAN under the TITAN Contract.

13.     Eleven days later, on August 25, 2009, the Debtor filed this Chapter 11 bankruptcy case.

**C.      Repudiation By TITAN Of TITAN Contract**

14.     After learning of the Debtor's commencement of this Chapter 11 case, TITAN representatives contacted representatives of both BB&T and the Debtor and threatened to terminate the performance of services under the TITAN Contract for the benefit of former employees of Colonial Bank who had been hired by BB&T ("Former Colonial Bank Employees") and officers and employees of Colonial Brokerage (the "Colonial Brokerage Employees"). Initially, in early September 2009, despite its continuing obligations under the TITAN Contract, TITAN shuttered access to its system by all interested parties, including all Former Colonial Bank Employees and Colonial Brokerage Employees. As a condition to processing payroll and allowing access to its system, TITAN demanded substantial cash payments from BB&T and the Debtor and, on information and belief, assurances of an ongoing business relationship with BB&T.

15.     BB&T offered to pay TITAN the monthly base compensation provided for under the TITAN Contract for each month from September through December 2009, if TITAN would continue to process payroll and allow access to the TITAN system through December 31, 2009, but TITAN refused.

16. Unable to reach an accord with TITAN, and faced with the dire consequences of being unable to meet payroll for the newly hired Former Colonial Bank Employees, BB&T undertook, at substantial effort and expense over the Labor Day weekend (September 5 through September 7, 2009), to construct an internal processing system for the payroll of Former Colonial Bank Employees and Colonial Brokerage Employees. As a result of those efforts, the payroll and other benefits payable to Former Colonial Bank Employees and Colonial Brokerage Employees were handled through the newly-constructed internal system developed by BB&T, and no further utilization of the TITAN payroll processing system was necessary.

17. Absent the extraordinary efforts undertaken by BB&T, over 3,000 employees, including Former Colonial Bank Employees and some 100 Colonial Brokerage Employees, would not have been paid their wages.

**D.      Court-Approved Rejection Of TITAN Contract**

18. Following TITAN's repudiation of its obligations under the TITAN Contract, the Debtor, on September 29, 2009, filed a motion to reject the TITAN Contract [Doc. No. 131]. After a hearing, and with the consent of TITAN, the Court entered an Order on October 6, 2009 (the "Rejection Order"), granting the Debtor's motion and authorizing the Debtor to reject the TITAN Contract *nunc pro tunc* to September 29, 2009 [Doc. No. 162].

19. Despite the entry of the Rejection Order a month earlier, TITAN filed with the Court on November 6, 2009 a motion, improperly characterized by TITAN as an "emergency motion," in which TITAN asked the Court for leave to terminate services that it was purportedly continuing to provide under the rejected TITAN Contract [Doc. No. 267] (the "Termination Motion"). In the Termination Motion, TITAN disclosed that it had prepared a "tape" containing historical employee information which TITAN would deliver to the Debtor. Prior to the Termination Motion, TITAN did not advise the Debtor (or, on information and belief, the FDIC-Receiver or BB&T) that TITAN intended to prepare the tape, the medium in which the tape would be prepared, the information that the tape would contain, or the cost that

TITAN would charge for preparing the tape. Neither the Debtor nor, on information and belief, the FDIC-Receiver nor BB&T, requested the tape.

20.     The Termination Motion was completely unnecessary in light of the rejection of the TITAN Contract (without condition or qualification) pursuant to the Rejection Order entered on October 6, 2009, as a result of which TITAN was no longer obligated to perform under the TITAN Contract, and in any event clearly was not an "emergency."

21.     On November 13, 2009, the Debtor, the FDIC-Receiver and BB&T filed separate responses to the Termination Motion [Doc. Nos. 288, 289 & 290], in which, among other things, they consented to the relief requested in the Termination Motion provided that the tape TITAN voluntarily prepared and produced was in a readable and usable format. As TITAN was well aware, historical employee information gathered and maintained by TITAN was needed not by the Debtor but by the FDIC-Receiver for the purpose of filing employee tax returns with state and federal authorities for Former Colonial Bank Employees.

22.     Both the Debtor and BB&T advised TITAN in writing, and announced in open court during the hearing on November 17, 2009 on the Termination Motion, that they did not have any need for the tape or the information on the tape, but the FDIC-Receiver had or may have an interest in that information.

23.     By Order entered December 18, 2009 [Doc. No. 372], the Court granted the Termination Motion.

**E.     TITAN'S Frivolous Administrative Claim**

24.     TITAN's unnecessary and frivolous filings did not end with the Termination Motion.

25.     On November 30, 2009, TITAN filed a proof of claim against the Debtor, designated on the registry of proofs of claim maintained by the Court as Claim No. 132 (the "Administrative Claim"), for a priority claim in the amount of $313,193.00.

26.     On the same day, in connection with filing the Administrative Claim, TITAN also filed the Application for Allowance and Immediate Payment of Administrative Expenses (the "Administrative

Claim Application") [Doc. No. 315], through which TITAN sought approval and immediate payment of the Administrative Claim. Despite refusing to provide post-petition payroll processing services and access to its system, thus forcing BB&T to essentially re-create the payroll system over the course of a holiday weekend in order to meet payroll for over 3,000 employees, and despite knowing that on August 14, 2009, BB&T had acquired substantially all of the assets of Colonial Bank and had hired the Former Colonial Bank Employees, TITAN contended in the Administrative Claim Application that the "Debtor's use of TITAN's services after the . . . [Petition Date] made it possible for Debtor to meet its obligations to its employees and the employees of its subsidiaries and affiliates." (Administrative Claim Application ¶ 10, at 2). The Administrative Claim Application, however, otherwise was silent on how the value of the services was calculated by TITAN and the nature of the benefit to the Debtor's estate so as to qualify for administrative expense status under Section 503 of the Bankruptcy Code.

27.     The Debtor filed an objection to the relief requested in the Administrative Claim Application on December 15, 2009 [Doc. No. 366]. On the same day the Official Committee of Unsecured Creditors also filed an objection to the Administrative Claim Application [Doc. No. 364].

28.     The Debtor and TITAN ultimately entered into a settlement agreement on March 2, 2010 (the "Settlement Agreement"), resolving the Administrative Claim Application and the Administrative Claim. Under the terms of the Settlement Agreement, TITAN agreed to withdraw the Administrative Claim Application and the Administrative Claim in return for the Debtor's payment to TITAN of only $572.00, less than one-half of one percent of the $313,193.00 administrative expenses asserted by TITAN.

29.     On April 15, 2010, in accordance with the Settlement Agreement, TITAN withdrew with prejudice the Administrative Claim Application and the Administrative Claim [Doc. No. 669]. In withdrawing the Administrative Claim Application and the Administrative Claim with prejudice, TITAN, however, retained the right to pursue its alleged pre-petition claim against the Debtor for damages under the TITAN Contract.

**F.      Pre-Petition Claim Of TITAN**

30.      By Order entered August 26, 2009 [Doc. No. 5], the Court established November 30, 2009, as the bar date for all interested parties (other than governmental entities) to file proofs of claim against the Debtor.  In accordance with the Court's direction, the clerk of court sent notice of the Bar Date on August 28, 2009, to over 150 parties [Doc. No. 32].  Notice of the Bar Date also was published once in *The Wall Street Journal*, the *Montgomery Advertiser* and the *Business Wire*.

31.      On November 30, 2009, TITAN filed a proof of claim against the Debtor, designated on the registry of proofs of claim filed in this case maintained by the Court as Claim No. 134, for an unsecured claim in the amount of $816,750.45.

32.      On April 15, 2010, TITAN filed an amendment to its proof of claim (as amended, the "TITAN Pre-Petition Claim") against the Debtor to explain that its alleged $816,750.45 claim consisted of (i) "$90,750.45 for unpaid services rendered pursuant to the [TITAN] Contract before the. . . [Petition Date]" and (ii) "$726,000.00 for a termination fee pursuant to Section 2.4 of the [TITAN] Contract."

<div align="center">

**Relief Requested**

</div>

33.      The Debtor seeks entry of an Order, substantially in the form of the Order attached hereto as Exhibit B (the "Objection Order"), disallowing the TITAN Pre-Petition Claim.

<div align="center">

**Objections To TITAN Pre-Petition Claim**

</div>

**A.      TITAN Is Not Entitled To Recover Rejection Damages**

34.      Through the TITAN Pre-Petition Claim, TITAN seeks to recover rejection damages under Section 365(g) of the Bankruptcy Code arising from the Court-approved rejection of the TITAN Contract.

35.      To be entitled to recover any such damages, TITAN must establish, among other things, that it would be entitled to recover breach of contract damages under applicable law.

36.      Here the parties have specified in the TITAN Contract that Alabama law is the governing law.  Under Alabama law, a party cannot prevail on a breach of contract claim when, among other requirements, the party has repudiated the contract.  E.g., Federal Ins. Co. v. I. Kruger, Inc., 829 So. 2d

732, 737 (Ala. 2002) (when a party to a contract materially breaches the contract by repudiating the agreement, the other party is excused from performance).

37.     As set forth above, after the Debtor filed this bankruptcy case, TITAN repudiated the TITAN Contract by refusing to continue to provide payroll processing services or to allow access to its payroll system, each of which it was obligated to do under the TITAN Contract.

38.     Having repudiated the TITAN Contract, TITAN is not entitled to recover any rejection damages, and the TITAN Pre-Petition Claim should be disallowed.

**B.     TITAN Failed To Provide Documentation To Support Its Claim For Alleged Unpaid Services**

39.     As part of the TITAN Pre-Petition Claim, TITAN seeks $90,750.45 for allegedly unpaid services provided to the Debtor pre-petition.  TITAN refers to unpaid invoices in its proof of claim, as amended, but does not provide copies of any of these invoices.

40.     "When a proof of claim is executed and filed in accordance with the provisions of Bankruptcy Rule 3001 (including Official Form 10), it constitutes prima facie evidence of the validity and amount of the claim."  Bareford v. AAFES (In re Bareford), 2010 Bankr. LEXIS 3114, *4 (Bankr. S.D. Ga. Aug. 3, 2010).  Item 9 of Official Form 10 directs as follows with regard to supporting documents for a claim:

> Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien.  Do not send original documents. If the documents are not available, explain.  If the documents are voluminous, attach a summary.

41.     However, if a creditor fails to provide sufficient evidence to support its claim, the claim is not entitled to be deemed prima facie valid.  See In re Shank, 315 B.R. 799, 810 (Bankr. N.D. Ga. 2004) ("Creditors who want their claims to have the evidentiary presumption that a claim is prima facie allowable must meet the requirements of Rule 3001.").

42.     Here, TITAN failed to include copies of the invoices which TITAN alleges were never paid.  Accordingly, $90,750.45 of the TITAN Pre-Petition Claim should be disallowed.

43.     Should the Court permit TITAN to provide the Debtor with copies of the documents supporting its alleged claim, the Debtor expressly reserves the right to object to the TITAN Pre-Petition Claim on any other ground, including as to validity, priority, and amount.

**C.     TITAN Is Not Entitled To Recover The Termination Fee**

44.     The remaining part of the TITAN Pre-Petition Claim is TITAN's claim for $726,000 as a termination fee (the "Termination Fee") based upon Section 2.4 of the TITAN Contract.

45.     Section 2.4 of the TITAN Contract, in relevant part, provides that:

> Colonial may, without cause, terminate the AGREEMENT by providing at least four (4) months' advance written notice to TITAN.  In addition to the advance written notice, TITAN will invoice Colonial, and Colonial agrees to pay immediately an early termination fee using the following formula:
>
> $22,000 multiplied times the number of months remaining in the then-current term.

46.     As is readily apparent from the face of the TITAN Pre-Petition Claim, TITAN is entitled to the Termination Fee only if the Debtor terminates the contract.  As a matter of undisputed fact and law, however, the Debtor has not terminated the TITAN Contract.  While the Debtor, with Court approval, rejected the TITAN Contract, this rejection does not operate to terminate the agreement.  See 11 U.S.C. § 365(g) ("the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease. . . "); e.g., Thompkins v. Lil' Joe Records, Inc., 476 F.3d 1294, 1306 (11th Cir.) (rejection of contract is breach), cert. denied, 552 U.S. 1022 (2007); Matter of Austin Development Co., 19 F.3d 1077, 1082 (5th Cir.) (finding that the language in Section 365(g) "does not mean that the executory contract. . . has been terminated, but only that a breach has been deemed to occur"), cert. denied, 513 U.S. 874 (1994).

47.     Because the TITAN Contract has not been terminated, TITAN is not entitled to recover the Termination Fee, and the TITAN Pre-Petition Claim should be disallowed.

**D.**     **The Termination Fee Is An Unenforceable Penalty**

48.    Even assuming, however, that the Debtor terminated the TITAN Contract, TITAN still is not entitled to recover the Termination Fee because this fee is a penalty and is unenforceable against the Debtor.

49.    Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that it "is unenforceable against the debtor and property of the debtor, under any agreement or applicable law."  11 U.S.C. § 502(b).  The TITAN Pre-Petition Claim should be disallowed as an unenforceable claim against the Debtor because the Termination Fee is punitive in nature.

50.    Whether a liquidated damages provision is enforceable is a question of law.  See In re Montgomery Ward Holding Corp., 326 F.3d 383, 387 (3rd Cir. 2003).

51.    By its terms, the TITAN Contract is governed by Alabama law.  The Alabama Supreme Court set forth the criteria for assessing the validity of a liquidated damages clause in Camelot Music, Inc. v. Marx Realty & Improvement Co., 514 So. 2d 987 (Ala. 1987):

> It is true in Alabama that, because penalty provisions are void as against public policy, "Courts. . . are disposed to lean against any interpretation of a contract which will make the provision one for liquidated damages and, in all cases of doubtful intention, will pronounce the stipulated sum a penalty."  Cook v. Brown, 408 So. 2d 143, 144 (Ala.Civ.App.1981); see also, Keeble v. Keeble, 85 Ala. 552, 5 So. 149 (1888).  In Alabama, liquidated damages are a sum to be paid in lieu of performance, Forsyth v. Central Foundry Co., 240 Ala. 277, 198 So. 706 (1940), while a penalty is characterized as a security for the performance of the agreement or as a punishment for default.  Standard Tilton Milling Co. v. Toole, 223 Ala. 450, 137 So. 13 (1931).  The courts generally identify three criteria by which a valid liquidated damages clause may be distinguished from a penalty.  First, the injury caused by the breach must be difficult or impossible to accurately estimate; second, the parties must intend to provide for damages rather than for a penalty; and, third, the sum stipulated must be a reasonable pre-breach estimate of the probable loss.  See, C. Gamble and D. Corley, *Alabama Law of Damages,* § 5–4 (1982).  Determining whether a liquidated damages provision is valid is a question of law to be determined by the trial court based on the facts of each case.  Cook v. Brown, 408 So. 2d 143 (Ala. Civ. App. 1981).

514 So. 2d at 990.

52.    If a liquidated damages clause fails to meet any one of the three criteria, then, the clause is deemed an unenforceable penalty.

53.     The Termination Fee fails to satisfy any of the three criteria.  First, any injury allegedly suffered by TITAN as a result of the Debtor's termination of the TITAN Contract would not be difficult or impossible to estimate.  Even assuming that TITAN had not repudiated the TITAN Contract and that the Debtor had terminated the TITAN Contract, any damages suffered by TITAN as a result of the cessation of its payroll processing services could be determined with reasonable certainty.

54.     Second, based on the totality of the circumstances, the Termination Fee was intended to be a penalty and not liquidated damages.  The Termination Fee is the same regardless of whether the Contract is terminated with or without cause.  Clearly, the purpose of the Termination Fee is to dissuade the Debtor from terminating the TITAN Contract under any circumstances.

55.     Third, the Termination Fee is not a reasonable pre-breach estimate of the loss TITAN might be expected to suffer if the Debtor terminated the TITAN Contract.  It is not clear from the TITAN Contract how the $22,000 per month multiplier was determined.  The Termination Fee does not appear to bear any reasonable relation to any damages TITAN would suffer if the TITAN Contract was terminated and TITAN was no longer required to perform any of the services under the agreement.

56.     The Termination Fee is punitive in nature and, therefore, is an unenforceable penalty. The TITAN Pre-Petition Claim should be disallowed.

**D.      The TITAN Pre-Petition Claim Should Be Equitably Subordinated**

57.     Even if TITAN has a valid pre-petition claim against the Debtor, that claim should be equitably subordinated to the claims of all general unsecured creditors due to TITAN's inequitable conduct.

58.     Pursuant to Section 6.1(b) of the Plan, after the Effective Date (as such term is defined in the Plan), the Debtor is entitled to object to a pre-petition claim on the ground that the claim should be equitably subordinated under Section 510(c)(1) of the Bankruptcy Code.

59.     Section 510(c)(1) of the Bankruptcy Code adopts the long-standing judicially developed doctrine of equitable subordination under which a bankruptcy court has power to subordinate claims against the debtor's estate to claims it finds ethically superior under the circumstances.  In re N & D

Properties Inc., 799 F.2d 726, 731 (11th Cir. 1986). See also, Pepper v. Litton, 308 U.S. 295 (1939); 9A Am.Jur.2d. *Bankruptcy* §§ 745-49 (1980). Typically, courts require that the following elements be established for a claim to be equitably subordinated:

    (1)    The claimant engaged in some type of inequitable conduct,

    (2)    The misconduct resulted in injury to the creditors or conferred an unfair advantage on the claimant,

    (3)    Subordination of the claim is not inconsistent with the provisions of the Bankruptcy Code.

E.g., In re Mobile Steel, 563 F.2d 692, 700 (5th Cir. 1977).

    60.    As a matter of undisputed fact, TITAN engaged in inequitable conduct:

    (i)    TITAN violated the automatic stay by refusing to provide the payroll processing services it was required to provide under the TITAN Contract;

    (ii)    TITAN attempted to exploit the dire situation the Debtor and BB&T were in with respect to the payroll for over 3,000 employees to gain an unfair and undeserved advantage for itself;

    (iii)    By its unauthorized and unfair conduct, TITAN forced BB&T to incur the expense of essentially re-creating the payroll processing system TITAN already was obligated to provide under the TITAN Contract, so that BB&T could meet the payroll for over 3,000 employees;

    (iv)    TITAN filed the Termination Motion on an emergency basis even though the Court already had entered the Rejection Order relieving TITAN of any further obligation to perform under the TITAN Contract, thus causing the Debtor's estate to unnecessarily incur the expense of responding to this frivolous motion; and

    (v)    TITAN filed the Administrative Claim and the Administrative Claim Application seeking to recover over $300,000 in administrative expenses when TITAN did not provide any services to the Debtor or anyone else that benefitted the bankruptcy estate and ultimately settled the alleged claim for roughly $500.

    61.    By virtue of its inequitable conduct, TITAN caused the Debtor's bankruptcy estate to incur significant costs, thereby unnecessarily and unfairly reducing the amount available to ultimately be distributed to the Debtor's legitimate creditors.

    62.    Equitably subordinating the TITAN Pre-Petition Claim would not be inconsistent with any provision of the Bankruptcy Code.

2136530_5
- 12 -
Case 09-32303   Doc 1598   Filed 10/31/11   Entered 10/31/11 19:00:46   Desc Main
Document   Page 12 of 22

63.     To the extent any amount of the TITAN Pre-Petition Claim is allowed, that claim should be equitably subordinated to all other unsecured claims.

**E.     The TITAN Pre-Petition Claim Should Be Disallowed On Equitable Grounds**

64.     Even if the TITAN Pre-Petition Claim cannot be equitably subordinated, the claim should be disallowed on equitable grounds.

65.     Bankruptcy courts are courts of equity, and equity has a place in the bankruptcy claims process. See, e.g., Dabney v. Addison, 65 B.R. 348, 350 (E.D. Va. 1985) (equitable considerations are a factor in considering amendments to proofs of claim) (citing Wheeling Valley Coal Co. v. Mead, 171 F.2d 916, 920-21 (4th Cir. 1949)). See also, In re Uwimana, 284 B.R. 218, 222 (D. Md. 2002) (equitable considerations are a factor in considering informal proofs of claims); In re Distrigas Corp., 75 B.R. 770, 774 (Bankr. D. Mass. 1987) ("The bankruptcy court, under its equitable jurisdiction, has the power to analyze the circumstances surrounding any claim and to disallow those claims that would not be fair or equitable to other creditors. . . [and] a bankruptcy court may disallow a claim 'by simply the violation of rules of fair play and good conscience by the claimant.'"); Matter of Nuisance Corp., 17 B.R. 80, 83 (Bankr. D.N.J. 1981) ("In the exercise of its equitable jurisdiction, the bankruptcy court has the power to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankruptcy estate."). Equitable considerations are appropriate when a bankruptcy court is passing upon the scope or validity of a timely filed claim. See, e.g., Pepper v. Litton, 308 U.S. 295, 295 (1939) ("Courts of bankruptcy, in passing upon the validity and priority of claims, exercise equity powers. . . "). See also, In re Kolstad, 928 F.2d 171 (5th Cir.) ("[W]e must consider more broadly the role of bar dates and claims adjudication in bankruptcy cases. Although bankruptcy law has elements of gamesmanship and the consequences for missing various deadlines are severe, the bankruptcy law is not supposed to function merely as a procedural gauntlet. . . "), cert. denied, 502 U.S. 958 (1991).

66.     As set forth above, TITAN has engaged in inequitable conduct which has caused the Debtor's bankruptcy estate to unnecessarily incur substantial costs.

67. Having knowingly and voluntarily pursued this course of inequitable conduct, TITAN should not be permitted to recover any funds from the Debtor's bankruptcy estate, and, therefore, the TITAN Pre-Petition Claim should be disallowed.

**F.    The TITAN Pre-Petition Claim Is Subject To Setoff Or Counterclaim**

68. If allowed in any amount, the TITAN Pre-Petition Claim is subject to setoff or counterclaim for the damages the Debtor's estate has suffered as a result of TITAN's unfair and improper conduct.

69. As set forth above, as a direct result of TITAN's wrongful conduct in violating the automatic stay and pursuing frivolous motions and administrative claims, the Debtor's estate has incurred considerable expense unnecessarily. These costs caused by TITAN total not less than $66,000 in the aggregate.[1]

70. To the extent that TITAN has an allowed claim against the Debtor, the amount of that claim should be reduced by these costs the Debtor's estate has unnecessarily incurred.

## Compliance With LBR 3007-1

71. LBR 3007-1 requires that each objection to a claim "be supported by a declaration or affidavit setting forth the factual basis for the objection." Pursuant to LBR 3007-1, the Debtor submits the Declaration of Kevin O'Halloran, which is attached hereto as Exhibit A.

## Reservation Of Rights

72. The Debtor has not had sufficient time to complete its investigation of the TITAN Pre-Petition Claim. In asserting this Objection, the Debtor does not intend to waive any other objections, defenses, claims, counterclaims, rights of setoff or recoupment, preference claims, fraudulent transfer claims, rights, remedies or other claims the Debtor may have against TITAN. The Debtor expressly reserves all such objections, defenses, claims, counterclaims, rights of setoff or recoupment, preference

---

[1] No less than $45,000 of these costs constitute legal fees incurred by the Debtor's counsel, *see* Doc. Nos. 489 and 725 and the exhibits thereto, and the balance represents legal fees incurred by the Official Committee of Unsecured Creditors' counsel, *see* Doc. Nos. 488 and 721.

claims, fraudulent transfer claims, rights, remedies or other claims and reserves the right to object in the future to the TITAN Pre-Petition Claim on any additional grounds, including, without limitation, the alleged amount of such claim. The Debtor further reserves the right to amend, modify and supplement this Objection as the Debtor may deem necessary or appropriate.

### Notice Of Objection; No Prior Request

73.     The Debtor shall give notice of this Objection by transmission of Notices of Electronic Filing generated by CM/ECF to persons registered as of issuance of filing and to TITAN.

74.     No previous request for the relief requested herein has been made to this Court or any other court.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an Order substantially in the form annexed hereto as <u>Exhibit B</u>, and grant the Debtor such other and further relief as this Court deems just and proper.

Dated: October 31, 2011
        Montgomery, Alabama

<div style="margin-left:40%;">

C. Edward Dobbs
E-mail: ced@phrd.com

Rufus T. Dorsey, IV
E-mail: rtd@phrd.com

PARKER, HUDSON, RAINER & DOBBS LLP
1500 Marquis Two Tower
285 Peachtree Center Avenue, N.E.
Atlanta, Georgia  30303
Telephone No.:  (404) 523-5300
Facsimile:  (404) 522-8409


By:  /s/ *Rufus T. Dorsey, IV*
        Rufus T. Dorsey, IV

Attorneys for Debtor

</div>

## Exhibit A

## Declaration

**UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

```
-------------------------------------------------------x
                                          :
In re                                     :          Chapter 11
                                          :
THE COLONIAL BANCGROUP, INC.,             :          Case No.  09-32303 (DHW)
                                          :
                  Debtor.                 :
                                          :
-------------------------------------------------------x
```

### DECLARATION OF KEVIN O'HALLORAN

Pursuant to 28 U.S.C. § 1746, KEVIN O'HALLORAN declares:

1.      I am over 21 years of age and am otherwise competent to make this Declaration, which I make based on personal knowledge.

2.      I am the plan trustee for The Colonial BancGroup, Inc. (the "Debtor"), pursuant to an order confirming the *Second Amended Chapter 11 Plan of Liquidation of The Colonial BancGroup, Inc.*, entered June 2, 2011, in the above-captioned matter.

3.      The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on August 25, 2009.

4.      All capitalized terms used in this Declaration, unless otherwise defined herein, shall have the meanings ascribed to such terms in the attached Objection.

5.      The Debtor did not terminate the HRO Utility Master Agreement dated December 1, 2005, between the Debtor and TITAN.

6.      The Debtor's estate incurred substantial expense in (i) responding to TITAN's unjustified repudiation of the TITAN Contract, (ii) responding to the unnecessary and frivolous Termination Motion, and (iii) opposing the frivolous Administrative Claim and the Administrative Claim Application.

7.      I have reviewed the Objection, and, to the best of my knowledge, information and belief, the facts stated in the Objection are true and correct.

2136530_5

Under penalty of perjury, I declare that, to the best of my knowledge and belief, the facts presented herein are true, correct, and complete.

Executed this 31st day of October, 2011.

_/s/ Kevin O'Halloran_
Kevin O'Halloran
Plan Trustee
The Colonial BancGroup, Inc.

**Exhibit B**

**Objection Order**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

-------------------------------------------------------------x
                        :

In re                     :           **Chapter 11**
                        :

**THE COLONIAL BANCGROUP, INC.,**  :         **Case No.  09-32303 (DHW)**
                        :

           **Debtor.**      :
                        :
-------------------------------------------------------------x

<u>**ORDER GRANTING DEBTOR'S OBJECTION TO CLAIM NO. 134**</u>

This matter is before the Court on the objection (the "<u>Objection</u>") of The Colonial BancGroup,

Inc. (the "<u>Debtor</u>") for entry of an Order pursuant to Section 502 of the Bankruptcy Code and Bankruptcy

Rule 3007 disallowing Proof of Claim No. 134 (the "<u>TITAN Claim</u>") filed by TITAN Technology

Partners, Limited ("<u>TITAN</u>").[1]

NOW, THEREFORE, based upon the Objection and all of the proceedings before this Court; and

after due deliberation and sufficient cause appearing therefore; and it appearing that due and proper notice

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Objection.

2136530_5

of the Objection has been given and that the relief requested in the Objection is warranted and in the best interests of the Debtor's estate and other parties in interest, it is hereby:

**ORDERED** that the Objection is granted; and it is further

**ORDERED** that the TITAN Claim is hereby disallowed for all purposes, pursuant to Section 502 of the Bankruptcy Code; and it is further

**ORDERED** that this Order shall be without prejudice to the rights of the Debtor to assert or pursue any other objections, defenses, claims, counterclaims, rights of setoff or recoupment, preference claims, fraudulent transfer claims, rights, remedies or other claims the Debtor may have against TITAN; and it is further

**ORDERED** that the Court shall retain jurisdiction to hear and determine all matters arising from or relating to this Order.

<center>###END OF ORDER###</center>

<u>Submitted by</u>:

 */s/ Rufus T. Dorsey, IV*
Rufus T. Dorsey, IV
PARKER, HUDSON, RAINER & DOBBS LLP
1500 Marquis Two Tower
285 Peachtree Center Avenue, N.E.
Atlanta, Georgia  30303
(404) 523-5300
rdorsey@phrd.com

## <u>CERTIFICATE OF SERVICE</u>

  The undersigned hereby certifies that a true and correct copy of the foregoing document was mailed by first class U.S. mail, postage prepaid, addressed to the party listed below and electronically served by transmission of Notices of Electronic Filing generated by CM/ECF to persons registered as of issuance of filing.

      Robert L. Shields, III, Esq.
      Tanner & Guin, LLC
      418 Lorna Square
      Birmingham, Alabama 35216

      Mr. John P. Roberts
      TITAN Technology Partners, Limited
      2105 Water Ridge Parkway
      Suite 500
      Charlotte, North Carolina 28217

This 31st day of October, 2011.

        C. Edward Dobbs
        E-mail: ced@phrd.com

        Rufus T. Dorsey, IV
        E-mail: rtd@phrd.com

        PARKER, HUDSON, RAINER & DOBBS LLP
        1500 Marquis Two Tower
        285 Peachtree Center Avenue, N.E.
        Atlanta, Georgia  30303
        Telephone No.:  (404) 523-5300
        Facsimile:  (404) 522-8409

        By:  /s/ *Rufus T. Dorsey, IV*
         Rufus T. Dorsey, IV

        Attorneys for Debtor