## <u>Exhibit A</u>

## <u>Settlement Agreement</u>

The enclosed settlement agreement includes the following:

    (1)    Settlement and Release Agreement
    (2)    Exhibit A – Form of Debtor's 9019 Motion to Approve Settlement Agreement
    (3)    Exhibit B – Form of Approval Order on Debtor's 9019 Motion
    (4)    Exhibit C – Consent Dismissal Order in Bond Claim Lawsuit
    (5)    Exhibit D – Joint Motion for Stay in Bond Claim Lawsuit
    (6)    Exhibit E – Consent Order Staying Case in Bond Claim Lawsuit

<u>**SETTLEMENT AND RELEASE AGREEMENT**</u>

This Settlement and Release Agreement ("<u>Agreement</u>") is made as of this 12th day of September, 2014, by and among the following undersigned parties: the Federal Deposit Insurance Corporation, as Receiver of Colonial Bank ("<u>FDIC-R</u>"), The Colonial BancGroup, Inc. ("<u>CBG</u>"), and Federal Insurance Company ("<u>Federal</u>"). Individually, the FDIC-R, CBG, and Federal may be referred to herein as "<u>Party</u>" and collectively as the "<u>Parties</u>."

**SECTION 1. RECITALS**

**WHEREAS**,

1.1    Prior to August 14, 2009, Colonial Bank (the "<u>Bank</u>") was a state, nonmember depository institution organized and existing under the laws of the State of Alabama.

1.2    On August 14, 2009, the Bank was closed by the Alabama State Department of Banking, and, pursuant to 12 U.S.C. § 1821(c), the FDIC-R was appointed receiver.

1.3    On August 25, 2009, CBG filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Alabama (the "<u>Bankruptcy Court</u>") in a case styled: *In re: The Colonial BancGroup, Inc.*, No. 09-32303 (DHW), U.S.B.C., M.D. Ala. (the "<u>Bankruptcy Case</u>"). CBG was the holding company for the Bank prior to the order closing the Bank.

1.4    CBG and the Bank are "Assureds" under and as defined in the following insurance policies issued by Federal: (i) Financial Institution Bond No. 81158390 DFI, effective from March 1, 2009 to March 1, 2010 ("<u>Form A</u>"); (ii) Financial Institution Bond No. 81910594 DFI, effective from July 16, 2009 to July 16, 2010 ("<u>Form B</u>"); and (iii) Financial Institution Electronic and Computer Crime Policy No. 81260198 DFI, effective from March 1, 2009 to

March 1, 2010 (together with Forms A and B and the predecessors to those bonds issued by Federal to CBG and the Bank, collectively referred to as the "Bonds");

1.5     Notice of the loss was given to Federal on August 10, 2009, and was supplemented thereafter. On February 1, 2010, a proof of loss was submitted to Federal ("Proof of Loss").

1.6     The FDIC-R and CBG have filed the Bond Claim Lawsuit (as defined below) against Federal.

1.7     The Parties deem it in their best interests to enter into this Agreement to avoid the uncertainty, trouble, and expense of further litigation of the Bond Claim Lawsuit.

**NOW, THEREFORE,** in consideration of the promises, undertakings, payments, and releases stated herein, the sufficiency of which consideration is hereby acknowledged, the undersigned Parties agree, each with the other, as follows:

**SECTION 2.  DEFINITIONS; RULES OF CONSTRUCTION.**

2.1     <u>Definitions</u>.     As used herein, the following terms shall have these meanings:

"<u>Account Orders</u>" shall mean the orders of the Bankruptcy Court entered in the Bankruptcy Case at Docket Numbers 972 and 1020 which relate to the establishment of the Insurance Proceeds Holding Account and the disposition of the Settlement Funds.

"<u>Approval Motion</u>" shall mean a motion which in all material respects is in accordance with the proposed motion attached hereto as <u>Exhibit A</u>, subject to any modifications mutually agreeable to the Parties.

"<u>Approval Order</u>" shall mean an order entered by the Bankruptcy Court which in all material respects is in accordance with the proposed order attached hereto as <u>Exhibit B</u>, subject to any modifications mutually agreeable to the Parties.

"<u>Approval Period</u>" shall have the meaning ascribed to it in Section 5.4.

"<u>Bankruptcy Condition</u>" shall mean entry by the Bankruptcy Court of the Approval Order that becomes a Final Order.

"<u>Bond Claim Lawsuit</u>" shall mean *Federal Deposit Insurance Corporation, et al. v. Federal Insurance Company*, No. 2:11-CV-610-MHT-WC (M.D. Ala.).

"CBG v. FDIC-R Lawsuits" shall mean the lawsuits styled: *The Colonial BancGroup, Inc. v. Federal Deposit Insurance Corporation, as Receiver for Colonial Bank*, No. 2:10-cv-198-MHT (M.D. Ala. filed Mar. 5, 2010) and *In re The Colonial BancGroup, Inc.*, No. 2:10-cv-0409-MHT (M.D. Ala. filed May 11, 2010).

"Claims" shall mean any and all actual or potential claims, rights to payment or other relief, demands, obligations, damages, actions and causes of action, suits, controversies, interest, costs, attorneys' fees, expenses, damages, or judgments whatsoever, direct or indirect, in law or in equity, whether known or unknown, now existing or hereafter arising, whether contingent or liquidated, contractual, extra-contractual, non-contractual, statutory, in tort or otherwise, of every kind, nature and description.

"Confidentiality Orders" shall mean the Confidentiality and Protective Order entered on November 14, 2011 [Doc. No. 54] in the Bond Claim Lawsuit, and the Stipulated Non-Waiver Order Pursuant to Federal Rule of Evidence 502(d) entered on May 1, 2012 [Doc. No. 77] in the Bond Claim Lawsuit.

"Dismissal Order" shall mean an order entered by the District Court which in all material respects is in accordance with the proposed order attached hereto as Exhibit C, subject to any modifications mutually agreeable to the Parties.

"District Court" shall mean United States District Court, Middle District of Alabama, Montgomery Division.

"Excluded Claims" shall mean: (a) any and all Claims relating to the Excluded Policies; (b) any and all Claims reserved in Sections 4.5, 4.6 and 4.7 herein; (c) any and all Claims under the Confidentiality Orders; (d) any and all Claims by CBG or FDIC-R against PricewaterhouseCoopers LLP, Crowe Horwath LLP and Ernst & Young LLP, including Claims asserted in the lawsuits styled *The Colonial BancGroup, Inc. et al. v. PricewaterhouseCoopers LLP et al.*, Case No. 2:11-cv-00746-MHT-DHW (M.D. Ala.); *The Colonial BancGroup, Inc., et al., v. PricewaterhouseCoopers LLP, et al.*, Adv. Proc. No. 11-03063*SEALED* (Bankr. M.D. Ala.), *The Colonial BancGroup, Inc., et al., v. Ernst & Young LLP*, Adv. Proc. No. 11-03065 (Bankr. M.D. Ala.); and *Federal Deposit Insurance Corporation v. PricewaterhouseCoopers LLP, et al.*, Case No. 2:12-cv-00957-WKW-TFM (M.D. Ala.), provided that nothing in this sub-paragraph (d) shall be deemed to preserve any claim against the aforementioned entities arising out of professional services performed directly for Federal or any of its affiliates in connection with the Bonds or Federal's investigation of any Claim made on the Bonds by the FDIC-R or CBG; (e) any and all Claims under this Agreement, including claims for attorneys' fees and expenses; and (f) any and all demands, defenses and/or counterclaims, unless otherwise released herein, that may be asserted in response to the Excluded Claims identified in sections (a) through (e) of this definition.

"Excluded Policies" shall mean any and all Federal policies of insurance other than the Bonds. Without limiting the generality of the foregoing, "Excluded Policies" shall include, but are not limited to, that certain directors' and officers' liability policy known as Federal Insurance Company Policy No. 7144-2614, and any settlement related thereto.

"Final Order" shall mean an order or judgment that has not been reversed, stayed, modified or amended and as to which (i) any right to appeal or seek certiorari, review, reargument, stay or rehearing has expired and no appeal or petition for certiorari, review, reargument, stay or rehearing is pending, or (ii) an appeal has been taken or petition for certiorari, review, reargument, stay or rehearing has been filed and (a) such appeal or petition for certiorari, review, reargument, stay or rehearing has been resolved by the highest court to which the order or judgment was appealed or from which certiorari, review, reargument, stay or rehearing was sought and (b) the time to appeal further or seek certiorari, review, reargument, stay or rehearing has expired and no such further appeal or petition for certiorari, review, reargument, stay or rehearing is pending, provided that no order shall fail to become a Final Order solely because of the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 may be filed with respect to such order.

"Funding Transactions" shall mean Investment Funding Agreement dated October 23, 2012 among CBG and the "Investor Parties" (as defined therein) and the Term Loan and Security Agreement dated October 23, 2012 among CBG and the "Lender Parties" (as defined therein).

"Insurance Claims" shall mean any Claims arising out of the Bonds or the Bond Claim Lawsuit, including any Claims based upon or arising from: (i) the Proof of Loss; (ii) coverage of any kind under the Bonds; (iii) any notice of Claim or notice of potential Claim under the Bonds; (iv) Federal's investigation of any Claim made on the Bonds by the FDIC-R or CBG; or (v) any alleged misrepresentations, fraud, indemnity rights, contribution rights, subrogation rights, whether legal, equitable or otherwise, breach of contract, prejudgment interest, breach of any oral or written promise or breach of any duty grounded in law or in contract, negligence, bad faith, violation of any statute or regulation, unfair claims handling, or damages of any kind whatsoever arising from the matters described within this definition.

"Insurance Proceeds Holding Account" shall mean the holding account established by the Account Orders.

"Payment Date" shall mean the tenth (10th) business day following the date on which the Approval Order becomes a Final Order.

"Person" shall mean any individual, partnership, corporation, limited liability company, limited liability partnership, joint venture, trust, or unincorporated organization or association, any "doing business as" entity, any other form of business or commercial entity, or a government or any governmental agency or political subdivision.

"Plaintiffs" shall mean the FDIC-R and CBG, as co-plaintiffs in the Bond Claim Lawsuit.

"Plan" shall mean the Second Amended Chapter 11 Plan of Liquidation of The Colonial BancGroup, Inc. as amended and confirmed in the Bankruptcy Case.

"Plan Committee" shall have the meaning ascribed to that term in the Plan.

"<u>Plan Trustee</u>" shall have the meaning ascribed to it in the Plan.

"<u>Retained Professionals</u>" shall mean accountants, auditors, advisors, attorneys, agents, and representatives who are not a past or present employee, officer, director or owner in any capacity of a Party or Parties and who were either retained by a Party or a Party's counsel for the purpose of assisting in the Bond Claim Lawsuit or, in the case of Federal, performed assigned duties for Federal in connection with the Bonds, the Bond Claim Lawsuit or any matters described within the definition of "Insurance Claims."

"<u>Settlement Funds</u>" shall have the meaning ascribed to such term in Section 3.1 of this Agreement.

"<u>Stay Motion</u>" shall mean a motion which in all material respects is in accordance with the proposed motion attached hereto as <u>Exhibit D</u>, subject to any modifications mutually agreeable to the Parties.

"<u>Stay Order</u>" shall mean an order entered by the District Court which in all material respects is in accordance with the proposed order attached hereto as <u>Exhibit E</u>, subject to any modifications mutually agreeable to the Parties.

2.2     <u>Rules of Construction</u>.  The terms "herein," "hereof," "hereunder" and "below" and other words of similar import refer to this Agreement as a whole and not to any particular section, paragraph or subdivision.  Any pronoun used herein shall be deemed to cover all genders.  The word "including" shall be understood to mean "including, without limitation." Words in the singular shall be deemed to include the plural and the plural to include the singular when the sense requires.  References to any Person shall include such Person's successors and assigns.  The descriptive headings of this Agreement are for convenience only and shall not affect the construction or interpretation of this Agreement.

**SECTION 3.  PAYMENT OF SETTLEMENT PAYMENT**

3.1     <u>Settlement</u>.  As an essential covenant and condition to this Agreement, and subject to the satisfaction of the Bankruptcy Condition which is a condition precedent to this Agreement and in consideration for the releases contained herein and other valuable consideration, Federal agrees to pay the sum of $30,000,000.00 (the "<u>Settlement Funds</u>") to settle the Insurance Claims pursuant to the terms of this Agreement.

3.2 <u>Federal's Payment of Settlement Funds</u>. By no later than the Payment Date, Federal shall directly wire the Settlement Funds into the Insurance Proceeds Holding Account in accordance with the following wire transfer instructions:

| | |
|---|---|
| Account Name: | Colonial Bancgroup Inc |
| Account Number: | 0196989246 |
| Name of Bank: | Regions Bank |
| Bank Address: | 150 4th Avenue North |
| | Suite 900 |
| | Nashville, TN 37219 |
| ABA Routing #: | 062005690 |

3.3 <u>Interest</u>. In the event that the Settlement Funds are not transferred in accordance with the Agreement by the Payment Date, interest shall accrue on all unpaid amounts at the rate of 5% per annum from such date until the date of payment in full. Payment of such interest, if any, shall be transferred by wire in accordance with this Section 3.2.

3.4 <u>Disputes Under the Agreement</u>. The Parties agree that, subject to prior satisfaction of the Bankruptcy Condition, and to the fullest extent permitted by the District Court, any and all disputes regarding this Agreement, including the enforcement thereof, shall be submitted to Magistrate Judge Wallace Capel, Jr. of the District Court, or, in the event of his unavailability, another Magistrate Judge of that Court, and each Party consents to the authority of the Magistrate Judge to enter a final judgment regarding any resolution of a dispute or enforcement request relating to this Agreement. **Each of the Parties further waives any right to jury trial in connection with any such request for resolution of a dispute relating to the Agreement, including enforcement of the Agreement**.

3.5 <u>Attorneys' Fees</u>. In any proceeding before the Magistrate to resolve a dispute relating to this Agreement, including the enforcement thereof, the prevailing Party or Parties shall be entitled to recover its or their reasonable attorneys' fees and expenses. All issues with regard to the amount or reasonableness of an award of attorneys' fees or expenses against CBG

shall be subject to review and approval of the Bankruptcy Court. Payment of reasonable attorneys' fees and expenses owed will be made directly to the Party entitled thereto.

## SECTION 4. RELEASES

4.1 <u>FDIC-R's Release of Federal</u>. Effective only upon payment by Federal of the Settlement Funds, together with any accrued interest under Section 3.3 to the extent due, (i) the FDIC-R, for itself and, to the extent of its authority, the FDIC-R's directors, officers, employees, successors and assigns, releases and discharges Federal and its past and present parents, subsidiaries, affiliates, reinsurers, employees, officers, directors, representatives (i.e., Retained Professionals) and shareholders and each of their respective predecessors, successors and assigns from its Insurance Claims and (ii) all rights and interests the FDIC-R may have in the Bonds shall be extinguished and Federal shall have no further obligations to the FDIC-R thereunder, <u>provided</u>, <u>however</u>,

> (a) the release granted in this Section 4.1 shall not extend to or affect any Excluded Claims; and

> (b) the extinguishment described in this Section 4.1 shall not extend to any Excluded Policies.

4.2 <u>CBG's Release of Federal</u>. Effective only upon payment by Federal of the Settlement Funds, together with any accrued interest under Section 3.3 to the extent due, (i) CBG, for itself and the Plan Trustee, and, as to CBG and to the extent of its authority, its past and present subsidiaries, affiliates, directors, officers, employees, shareholders, Retained Professionals, predecessors, successors and assigns, releases and discharges Federal and its past and present parents, subsidiaries, affiliates, reinsurers, employees, officers, directors, Retained Professionals and shareholders and each of their respective predecessors, successors and assigns from its Insurance Claims and (ii) all rights and interests CBG may have in the Bonds shall be

Case 09-32303    Doc 2101-1    Filed 09/17/14    Entered 09/17/14 11:17:27    Desc
Settlement Agreement    Page 8 of 55

extinguished and Federal shall have no further obligations to CBG thereunder, <u>provided</u>, <u>however</u>,

      (a)    the release granted in this Section 4.2 shall not extend to or affect any Excluded Claims; and

      (b)    the extinguishment described in this Section 4.2 shall not extend to any Excluded Policies.

4.3    <u>Federal's Release of FDIC-R</u>.  Effective simultaneously with the release granted in Section 4.1, Federal, for itself and, to the extent of its authority, its past and present parents, subsidiaries, affiliates, reinsurers, directors, officers, employees, shareholders, representatives (i.e., Retained Professionals), and each of their respective predecessors, successors and assigns, releases and discharges the FDIC-R and the FDIC-R's employees, officers and directors and each of their respective predecessors, successors and assigns, from its Insurance Claims, <u>provided</u>, <u>however</u>,

      (a)    the release granted in this Section 4.3 shall not extend to or affect any Excluded Claims.

4.4    <u>Federal's Release of CBG</u>.  Effective simultaneously with the release granted in Section 4.2, Federal, for itself and, to the extent of its authority, its past and present parents, subsidiaries, affiliates, reinsurers, directors, officers, employees, shareholders, Retained Professionals, predecessors, successors and assigns, releases and discharges CBG and the Plan Trustee, and as to each, its past and present parents, subsidiaries, affiliates, employees, officers, directors,  Retained Professionals and shareholders and each of their respective predecessors, successors and assigns from its Insurance Claims, <u>provided</u>, <u>however</u>,

      (a)    the release granted in this Section 4.4 shall not extend to or affect any Excluded Claims.

4.5    <u>Express Reservations From Releases by FDIC-R</u>.

(a) Notwithstanding any other provision in this Agreement, the FDIC-R does not release, and expressly preserves fully and to the same extent as if this Agreement had not been executed, any Claims:

(i) against any Person for liability, if any, incurred as the maker, endorser or guarantor of any promissory note or indebtedness payable or owed by such Person to the FDIC-R, the Bank, other financial institutions, or any other Person, including any such liability to the FDIC-R as successor in interest to the Bank or any Person other than the Bank;

(ii) against any Person not expressly released in this Agreement by specific name, position or other reference;

(iii) under or relating to any Excluded Policies; or

(iv) which are not expressly released in Section 4.1 above.

(b) Notwithstanding any other provision, this Agreement does not waive or release any Claims, other than Insurance Claims, that could be brought by any agency or instrumentality of the United States government including the Department of Justice and/or the United States Attorney's Office for any federal judicial district, other than the FDIC-R. In addition, the FDIC-R specifically reserves the right to seek court-ordered restitution pursuant to the relevant provisions of the Victim and Witness Protections Act, 18 U.S.C. § 3663, et seq., if appropriate.

(c) Notwithstanding any other provisions, nothing in this Agreement shall be construed or interpreted as limiting, waiving, releasing, or compromising the jurisdiction of the Federal Deposit Insurance Corporation, in its corporate capacity, in the exercise of its supervisory or regulatory authority or to diminish its ability to institute administrative

enforcement proceedings seeking removal, prohibition or any other administrative enforcement action which may arise by operation of law, rule, or regulation.

4.6    <u>Express Reservations From Releases by CBG</u>.

(a)    Notwithstanding any other provision in this Agreement, CBG does not release, and expressly preserves fully and to the same extent as if this Agreement had not been executed, any Claims:

(i)    against any Person not expressly released in this Agreement by specific name, position or other reference;

(ii)    under or relating to any Excluded Policies; or

(iii)    which are not expressly released in Sections 4.2 above.

4.7    <u>Express Reservations From Releases by Federal</u>.

(a)    Notwithstanding any other provision in this Agreement, Federal does not release, and expressly preserves fully and to the same extent as if this Agreement had not been executed, any Claims:

(i)    against any Person not expressly released in this Agreement by specific name, position or other reference;

(ii)    under or relating to any Excluded Policies; or

(iii)    which are not expressly released in Sections 4.3 and 4.4 above.

4.8    <u>No Assignment of Insurance Claims</u>.  The Parties represent and warrant that they have not assigned to any other Person any Insurance Claims, excluding for the purpose of this representation and warranty the grant of a security interest in and lien upon the Insurance Claims under the Funding Transactions.

**SECTION 5.  BANKRUPTCY APPROVAL REQUIREMENT**

5.1     Bankruptcy Condition.    Satisfaction of the Bankruptcy Condition shall be a condition precedent to Federal's obligation to make payment of the Settlement Funds as described in Section 3.1 of this Agreement.

5.2     Pursuit of Bankruptcy Court Approval.   Within a reasonably prompt amount of time after the date of this Agreement, CBG will: (a) notify the Plan Committee in writing of this Agreement in accordance with Section 9.4(b) of the Plan; and (b) file with the Bankruptcy Court, pursuant to the applicable provisions of the Plan, the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure, the Approval Motion.

5.3     Cooperation in Approval Process.   The Parties shall cooperate with one another in taking whatever steps that are reasonably necessary or appropriate to obtain entry of the Approval Order, including causing counsel for such Parties to appear at any hearing on the Approval Motion and to advocate the Bankruptcy Court's entry of the Approval Order, provided that, nothing in this Agreement shall be deemed to require Federal, its counsel or agents to perform any act or make any appearance that shall subject Federal to the jurisdiction of the Bankruptcy Court for any purpose whatsoever, other than to obtain, or be subject to, an Approval Order or an order extending the Approval Period, as provided for in Section 5.4 of this Agreement. Each Party covenants and agrees that after entry of the Approval Order it will not appeal the Approval Order or encourage or support any other Person's appeal of the Approval Order.

5.4     Termination. If the Bankruptcy Court fails to enter the Approval Order within one hundred twenty (120) days of the date of the filing of the Approval Motion ("Approval Period"), then any Party may terminate the Agreement by issuing written notice of termination to all other Parties, provided, however, the Approval Period may be extended by mutual written agreement

of the Parties or, in absence of mutual agreement, order of the Bankruptcy Court upon request by one or more of the Parties. If the Bankruptcy Court enters the Approval Order within the Approval Period, the Parties may not terminate the Agreement unless and until the Approval Order is reversed and such reversal becomes a Final Order. On or after the first date that any reversal order becomes a Final Order, any Party may terminate this Agreement by issuing written notice of termination to all other Parties. If this Agreement is terminated pursuant to Section 5.4, then this Agreement shall be of no force and effect except to the extent of the tolling provision in Section 5.4. The Parties agree that all statutes of limitation, statutes of repose, or timing defenses with respect to Insurance Claims that the Parties had against each other prior to the date of the Agreement are tolled from the date of the Agreement until fifteen (15) days after the date this Agreement is terminated pursuant to Section 5.4.

**SECTION 6.  MISCELLANEOUS.**

6.1     <u>Stay of Bond Claim Lawsuit</u>.  By no later than the tenth (10th) business day after the date of the Agreement, the Parties will execute and file with the District Court the Stay Motion and the Stay Order.

6.2     <u>Dismissal of Bond Claim Lawsuit</u>.  By no later than the tenth (10th) business day after CBG and FDIC-R receive confirmation that both (a) the Settlement Funds, and any interest thereon as provided for in Section 3.3 of the Agreement, have been transferred in accordance with Section 3.2 of the Agreement and such funds represent collected funds for banking purposes and (b) any attorneys' fees and expenses due to CBG or FDIC-R as provided for in Section 3.5 of the Agreement, if any, have been received by CBG and FDIC-C and represent collected funds for banking purposes, the Parties will execute and submit to the District Court the Dismissal Order.

Case 09-32303    Doc 2101-1    Filed 09/17/14    Entered 09/17/14 11:17:27    Desc
Settlement Agreement    Page 13 of 55

6.3     No Inference or Impact on CBG v. FDIC-R Lawsuits.  No presumption or inference shall exist or arise as a result of this Agreement or actions taken in accordance herewith, with respect to any of the following:  (a) the issue of ownership of the Settlement Funds in the CBG v. FDIC-R Lawsuits; and (b) the nature of the relationship and any obligation flowing between the FDIC-R and CBG raised in the CBG v FDIC-R Lawsuits, including, without limitation, the existence or non-existence of (i) a debtor-creditor relationship between the FDIC-R and CBG; (ii) a constructive trust in favor of either the FDIC-R or CBG; or (iii) the nature or scope of any duties between the FDIC-R and CBG.

6.4     No Impact or Effect on Account Orders.  Nothing in this Agreement, including the fact that the Settlement Funds will be deposited into and held in the Insurance Proceeds Holding Account, shall alter or affect the Account Orders.

6.5     Waiver of Subrogation by Federal.  Without limiting the generality of the releases granted herein, Federal agrees to, and hereby does, irrevocably waive any rights of subrogation, both legal and equitable, it may have under the Bonds relating to the Insurance Claims, including those subrogation rights which may arise from Federal's payment of the Settlement Funds, or involving the underlying properties or assets or claims involved in the Insurance Claims and all rights to recovery thereof; provided, however, that this waiver of subrogation rights does not extend to or affect any Excluded Policies.  Federal does not warrant the value of any right of subrogation it is waiving.

6.6     No Admission of Liability.  The undersigned Parties each acknowledges and agrees that the matters set forth in this Agreement constitute the settlement and compromise of the Insurance Claims, and that this Agreement is not an admission or evidence of any liability, coverage, wrongdoing, or responsibility on its part or on the part of any of those released

regarding any Claims nor is it intended to be, nor shall it be construed as, an interpretation of the Bonds or any other insurance policy.

6.7     <u>Cooperative Drafting</u>.  Parties to this Agreement have participated jointly in the negotiation and preparation of this Agreement. Accordingly, each Party agrees not to assert that any other Party is the sole or principal drafter of the Agreement. The Parties also agree not to assert that any canon of construction applicable to sole or principal drafters should be applied against any Party.

6.8     <u>Counterparts; Electronic Signature</u>.  The Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but together shall constitute one and the same instrument.  A facsimile or an electronic mail copy of the signature of any Party shall have the same binding legal effect as an original signature.

6.9     <u>Binding Effect</u>.  Each of the undersigned Parties represents and warrants that he or she is authorized to sign this Agreement on behalf of the respective Party, and that he or she has the full power and authority to bind such Party to each and every provision of this Agreement, subject to satisfaction of the Bankruptcy Condition. This Agreement shall be binding upon and inure to the benefit of the undersigned Parties and their respective successors and assigns.

6.10     <u>Learned Later Facts</u>.  Each Party understands, acknowledges and agrees that if any fact now believed to be true is found hereafter to be other than, or different from, that which is now believed, each expressly assumes the risk of such difference in fact and agrees that this Agreement shall and will remain effective notwithstanding any such difference in fact.

6.11     <u>Possible Unknown Losses</u>.  Each Party acknowledges it may have sustained damages, losses, fees, costs or expenses that are presently unknown and unsuspected in

connection with the subject matter of the Bond Claim Lawsuit, which, if known or suspected, may have materially affected the Parties decision to enter into this Agreement, and that such damages, losses, fees, costs or expenses as the Party may have sustained might give rise to additional damages, losses, fees, costs or expenses in the future. Nevertheless, each Party acknowledges that the releases herein have been negotiated and agreed upon in light of such possible damages, losses, fees, costs or expenses, and each expressly waives any and all rights under any federal or state statute or law concerning any potential presently-unknown Insurance Claims.

6.12 <u>Limits on Admissibility</u>. The Parties agree that this Agreement shall not be admissible in any other action or proceeding between the Parties except in the CBG v. FDIC-R Lawsuits or in any action or proceeding to approve the Agreement, resolve a dispute as to the Agreement, or enforce this Agreement.

6.13 <u>Notices</u>. If any Party is required to give notice to another Party under this Agreement, such notice shall be (i) delivered personally, (ii) sent by Federal Express (or another recognized overnight or two-day courier) requesting next or second business day delivery, (iii) sent by facsimile, or (iv) sent by United States certified or registered mail, postage prepaid, return receipt requested. Any such notice shall be deemed given when (i) so delivered personally, (ii) if sent by express courier, one or two business days (as the case may be) following delivery to the courier, (iii) on the date sent by facsimile, with confirmation of transmission, if sent during normal business hours of the recipient, or, if not, then on the next business day, or (iv) if sent by certified or registered mail, five business days after the date of deposit in the United States mail to the respective address of the Party as set forth below, with copies sent to the persons indicated below:

**To the FDIC-R:**

Charles B. Lee, Esq.
Miller & Martin PLLC
Suite 1000, Volunteer Building
832 Georgia Avenue
Chattanooga, TN 37402-2289
Telecopy: (423) 321-1541

and

Federal Deposit Insurance Corporation, as Receiver for Bank
Thomas J. O'Brien, Esq.
3501 Fairfax Drive, Room VS-E-7012
Arlington, VA 22226-3500
Telecopy: (703) 516-5067

**To The Colonial BancGroup, Inc.:**

Kevin O'Halloran,
P. O. Box 723657
Atlanta, Georgia 31139
Telecopy: (404) 522-8409

and

Andy Campbell, Esq.
Campbell, Guin, Williams, Guy & Gidiere, LLC
505 North 20th Street, Suite 1600
Birmingham, AL 35203
Telecopy: (205) 383-2641

**To Federal Insurance Company:**

Matt J. Farley, Esq.
Krebs, Farley & Pelleteri, PLLC
400 Poydras Street, Suite 2500
New Orleans, LA 70130
Telecopy: (504) 229-3571

and

M. Patricia Duffy
AVP-Fidelity Claims
Chubb & Son, a division of Federal Ins. Co.
15 Mountain View Road
Warren, New Jersey 07059
Telecopy: (908) 903-5300

or to such other address as the recipient Party has specified by prior written notice to the sending Party (or in the case of counsel, to such other readily ascertainable business address as such counsel may hereafter maintain). If more than one method for sending notice as set forth above is used, the earliest notice date established as set forth above shall control.

6.14 <u>Choice of Law</u>. This Agreement shall be interpreted, construed and enforced according to applicable federal law, or in its absence, the laws of the State of Alabama.

6.15 <u>Entire Agreement and Amendments</u>. This Agreement constitutes the entire agreement and understanding between and among the undersigned Parties concerning the settlement of the Bond Claim Lawsuit and any prior agreements or understandings between Federal, on the one hand, and CBG or the FDIC-R, on the other hand, are fully superseded by this Agreement; provided, however, that the obligations set forth in the Confidentiality Orders shall remain in effect. This Agreement does not supersede any agreements or understandings between the FDIC-R and CBG. The Parties acknowledge that, except as expressly set forth herein, no representations of any kind or character have been made to them by any of the other Parties to induce the execution of this Agreement. This Agreement may not be amended or modified except by another written instrument signed by the Party or Parties to be bound thereby, or by their respective authorized attorney(s) or other representative(s).

6.16 <u>Reasonable Cooperation</u>. The undersigned Parties agree to cooperate in good faith to effectuate all the terms and conditions of this Agreement, including doing or causing their agents and attorneys to do whatever is reasonably necessary to effectuate the signing, delivery, execution, filing, recording, and entry of any documents necessary to perform the terms of this Agreement, <u>provided that</u>, nothing in this Agreement shall be deemed to require that Federal, its counsel or agents perform any act or make any appearance that shall subject Federal

to the jurisdiction of the Bankruptcy Court for any purpose whatsoever, other than to obtain, or be subject to, an Approval Order or an order extending the Approval Period, as provided for in Section 5.4 of this Agreement.

6.17    Advice of Counsel.  Each Party hereby acknowledges that it has consulted with and obtained the advice of counsel prior to executing this Agreement, and that this Agreement has been explained to that Party by its counsel.  Each of the Parties acknowledges and represents that it is entering into this Agreement knowingly and voluntarily and that this Agreement is a product of good faith negotiations between the Parties.

6.18    Authorization.  The Parties declare, warrant and represent that they have agreed to the terms of this Agreement.  Each of the Parties represents and warrants that it is authorized to enter into this Agreement, subject to the Bankruptcy Condition being satisfied; that the execution and delivery of this Agreement and the consummation of this transaction will not conflict with or result in any violation or default under any provision of its articles of incorporation, charter, by-laws or of any decree, statute, law, ordinance, rule or regulation applicable to it; and that except as otherwise provided for herein no further consent, approval, order, authorization or filing with any governmental authority is required in connection with the execution and delivery of this Agreement or the consummation of the transactions described in this Agreement.

6.19    Severability.  If any provision, other than Sections 3.1, 3.2, 3.3, 4.1, 4.2, 4.3, 4.4, 4.5, 4.6, 4.7, 4.8 5.1, 5.2, 5.4 and the subparts of each, are held invalid or unenforceable in general or in application to any Party or circumstance, that provision shall be severed from the remainder of this Agreement, and the Agreement shall otherwise remain in full force and effect. Further if any of the provisions of the Sections enumerated in this Section 6.19, or the subparts of each, are held invalid or unenforceable in general or in application to any Party or

circumstance the Parties may mutually agree, in writing, that the provision shall be severed from the remainder of this Agreement or modified, and the Agreement shall otherwise remain in full force and effect.  If no such agreement is reached then the Agreement in its entirety will be deemed invalid and unenforceable.

[Signature Page Follows -- The Remainder Of This Page Intentionally Left Blank]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by each of them or their duly authorized representatives on the dates hereinafter subscribed.

FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of Colonial Bank

Date: *September 16, 2014*

By: *Thomas J O'Brien*

Title: *COUNSEL*

Print Name: *THOMAS J. O'BRIEN*

THE COLONIAL BANCGROUP, INC.

Date:_____

By:_____

Title:_____

Print Name:_____

FEDERAL INSURANCE COMPANY

Date:_____

By:_____

Title:_____

Print Name:_____

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by each of them or their duly authorized representatives on the dates hereinafter subscribed.

FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of Colonial Bank

Date:_____  By:_____

Title:_____  Print Name:_____

THE COLONIAL BANCGROUP, INC.

Date: _9 - 16 - 2014_  By: _Kevin O'Hall_

Title: _Trustee_  Print Name: _Kevin O'Hallopan_

FEDERAL INSURANCE COMPANY

Date:_____  By:_____

Title:_____  Print Name:_____

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by each of them or their duly authorized representatives on the dates hereinafter subscribed.

FEDERAL DEPOSIT INSURANCE
CORPORATION, as Receiver of Colonial
Bank

Date:_____     By:_____

Title:_____     Print Name:_____

THE COLONIAL BANCGROUP, INC.

Date:_____     By:_____

Title:_____     Print Name:_____

FEDERAL INSURANCE COMPANY

Date: September 11, 2014     By: M P Duffy

Title: AVP     Print Name: M P DUFFY

# Exhibit A

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| In re: | Chapter 11 |
| THE COLONIAL BANCGROUP, INC., | Case No. 09-32303 (DHW) |
| Debtor. | |

## DEBTOR'S MOTION PURSUANT TO BANKRUPTCY RULE 9019 TO APPROVE SETTLEMENT AND RELEASE AGREEMENT AMONG THE FDIC-RECEIVER, THE DEBTOR AND FEDERAL INSURANCE COMPANY

**PURSUANT TO LBR 9007-1, THIS MOTION WILL BE TAKEN UNDER ADVISEMENT BY THE COURT AND MAY BE GRANTED UNLESS A PARTY IN INTEREST FILES A RESPONSE WITHIN 21 DAYS OF THE DATE OF SERVICE. RESPONSES MUST BE FILED WITH THE CLERK AND SERVED UPON THE MOVING PARTY. RESPONSES MUST BE FILED ELECTRONICALLY WITH THE CLERK OR BY U.S. MAIL ADDRESSED TO THE CLERK, U.S. BANKRUPTCY COURT, ONE CHURCH STREET, MONTGOMERY ALABAMA 36104.**

The Colonial BancGroup, Inc. (the "Debtor"), by this motion (the "Motion"), seeks entry of an order pursuant to Section 105 of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9007-1 of the Local Rules of this Court, approving the *Settlement and Release Agreement* attached hereto as Exhibit A (the "Settlement Agreement") among the Federal Deposit Insurance Corporation, as receiver for Colonial Bank (the "FDIC-Receiver"), the Debtor and Federal Insurance Company ("Federal").

In support of this Motion, the Debtor states and shows as follows:

3085259_4

## Background

1.      The Debtor is a Delaware corporation that had its headquarters in Montgomery, Alabama and was the parent corporation of Colonial Bank.  By order of the Alabama State Banking Department dated August 14, 2009, Colonial Bank was closed and the FDIC-Receiver was appointed its receiver.  By operation of law, upon its appointment the FDIC-Receiver succeeded to the rights, titles, powers and privileges of Colonial Bank.   12 U.S.C. § 1821(d)(2)(A).

2.      On August 25, 2009 (the "Petition Date"), the Debtor filed a petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Alabama (the "Bankruptcy Court").   On June 3, 2011, the Bankruptcy Court confirmed the Debtor's second amended plan of liquidation (the "Plan").  The Debtor's affairs and disposition of its assets are now overseen by a plan trustee under the Plan.

## Overview of Dispute

3.      The Debtor and Colonial Bank are "Assureds" under and as defined in the following insurance policies issued by Federal:  (i) Financial Institution Bond No. 81158390 DFI, effective from March 1, 2009 to March 1, 2010 ("Form A"); (ii) Financial Institution Bond No. 81910594 DFI, effective from July 16, 2009 to July 16, 2010 ("Form B"); and (iii) Financial Institution Electronic and Computer Crime Policy No. 81260198 DFI, effective from March 1, 2009 to March 1, 2010 (the "Electronic and Computer Crime Policy"; and together with Forms A and B, the "Bonds").

4.      The Debtor and the FDIC-Receiver determined Losses that they believed to be covered under the Bonds.  The Debtor and the FDIC-Receiver asserted that the Bonds provided coverage as follows:  (i) Form A provided coverage up to the policy limit of liability of $25

million; (ii) Form B provided coverage up to the policy limit of liability of $500,000; and the Electronic and Computer Crime Policy provided coverage up to the policy limit of liability of $25 million. Thus, the Debtor and the FDIC-Receiver believed that the total coverage under the Bonds amounted to $50.5 million. As discussed below, Federal disputed this belief, contending, among other things, the maximum amount of insurance coverage at issue was $25 million, and, in any event, that there is no coverage for the claimed Losses.

5.      Pursuant to the Settlement Agreement, Federal will pay $30 million in settlement of the claims which amount will be deposited into an insurance proceeds holding account pursuant to two applicable orders of the Bankruptcy Court pending the resolution of the FDIC-Receiver's and the Debtor's disputes over the ownership of these funds. [See Bankr. Doc. Nos. 972 & 1020].

**A.      Notice of Loss; Commencement of Bond Claim Lawsuit**

6.      Notice of loss was given to Federal in 2009, followed by the submission of sworn proofs of loss to Federal in 2010. The Debtor and the FDIC-Receiver alleged that the losses set forth in the notice of loss and proofs of loss constituted recoverable losses under the Bonds up to the full aggregate policy limits of liability of the Bonds.

7.      Federal did not pay to either the FDIC-Receiver or the Debtor their claimed losses under the Bonds.

8.      On July 29, 2011, the Debtor and the FDIC-Receiver filed suit against Federal in the United States District Court for the Middle District of Alabama (the "District Court") for breach of contract as a result of Federal's alleged failure to pay claims under the Bonds for covered losses. See FDIC, et al., v. Federal Insurance Company, Case No. 2:11-cv-00610 (M.D. Ala.) (the "Bond Claim Lawsuit").

9.      Federal answered the complaint in the Bond Claim Lawsuit on September 16, 2011.  Federal also asserted counterclaims for reformation against the FDIC-Receiver and the Debtor, seeking to amend an alleged scrivener's error in one of the Bonds.  The FDIC-Receiver and the Debtor denied that Federal was entitled to the relief sought in the counterclaims.

10.      Subsequently, the parties engaged in preliminary fact discovery, and deposed one witness.

**B.      Ongoing Discovery and Motion Practice; Mediations of Bond Claim Lawsuit**

11.      While discovery proceeded, the District Court ordered that the parties mediate their dispute.  This mediation took place over two days in May of 2012.  The mediation did not result in a settlement.

12.      Thereafter, in February of 2013, the parties participated in a second mediation of their disputes before a United States Magistrate Judge.  This second mediation also did not result in a settlement of the Bond Claim Lawsuit.

13.      On March 13, 2013, Federal moved to dismiss the Debtor as a plaintiff in the case, asserting a purported lack of subject matter jurisdiction.  The Debtor opposed the motion to dismiss.  The District Court then suspended dates related to the Bond Claim Lawsuit pending resolution of the motion to dismiss.

14.      After conducting additional discovery, including the deposition of two representatives of Federal, and engaging in motion practice, the parties have now reached a settlement of the Bond Claim Lawsuit subject to Bankruptcy Court approval, as described in further detail below and as specifically set forth in the Settlement Agreement attached as Exhibit A.

## **Procedural Overview**

15.     The Settlement Agreement does not dispose of, or in any way impact, the FDIC-Receiver's and the Debtor's disputes over the ownership of the proceeds to be paid by Federal in connection with the settlement of the Bond Claim Lawsuit.  See Settlement Agreement, Section 6.3.  These ownership disputes are pending in the District Court.  See The Colonial BancGroup, Inc. v. FDIC, Case No. 2:10-cv-00198 (M.D. Ala.); and In re: The Colonial BancGroup, Inc., Case No. 2:10-cv-00409 (M.D. Ala.).  Neither the FDIC-Receiver nor the Debtor can predict at this time when these ownership disputes will be resolved, either by final judicial determination or settlement.

16.     If the Settlement Agreement is approved by this Court by a final order, Federal will pay $30 million which will be deposited in the  Regions Bank depository account (the "Insurance Proceeds Holding Account") established by two orders of the Bankruptcy Court (the "Account Orders") [Bankr. Doc. Nos. 972 & 1020].  The release of the $30 million in settlement proceeds from the Insurance Proceeds Holding Account to either the FDIC-Receiver or the Debtor is governed by the Account Orders.  See Account Orders, Doc. No. 972, ¶ 5; Doc. No. 1020, ¶ 6.  The Settlement Agreement does not alter the Account Orders in any way.  See Settlement Agreement, Section 6.4.

17.     The Debtor encourages parties in interest to review the Settlement Agreement and the Account Orders in full, as the terms of those documents control over this overview.  Even if the Debtor prevails over the FDIC-Receiver in the ownership disputes with respect to proceeds of the Settlement Agreement, the Account Orders permit both the Debtor and the FDIC-Receiver to reimbursement of reasonable fees and expenses for professional services rendered to them and expenses incurred by such professionals on behalf of them (the "Professional Expenses") in

5

certain instances.  <u>See</u> Account Orders, Doc. No. 1020, ¶ 6(a)-(b).  The Debtor and the FDIC-Receiver are each entitled to reimbursement of Professional Expenses from proceeds of the Settlement Agreement relating to the preparation and submission of the proof of loss, any subsequent submission to Federal or the pursuit and prosecution of claims relating to the Bonds, subject to the terms of the Account Orders.  However, Professional Expenses related to the question of ownership of proceeds of the Bonds are not subject to reimbursement from proceeds of the Settlement Agreement.  Any dispute regarding reimbursement will be resolved by mediation or, if mediation does not resolve the dispute, by the Bankruptcy Court.

18.     Thus, even if the Debtor prevails in its ownership dispute with the FDIC-Receiver, the Debtor may, and likely will, receive less than $30 million.  The FDIC-Receiver's position is that all of the funds are property of the FDIC-Receiver subject to the rights under the Account Orders.  It is difficult at this time to ascertain with any certainty how much of the proceeds will be devoted to the reimbursement of Professional Expenses in accordance with the Account Orders.

<u>**Jurisdiction and Venue**</u>

19.     Under Section 13.1 of the Plan, the Court retained jurisdiction over a number of matters relating to the Debtor's Chapter 11 case, including jurisdiction to resolve estate causes of action such as the Bond Claim Lawsuit.  Accordingly, the Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  The Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of this Chapter 11 case and this Motion in this district is appropriate pursuant to 28 U.S.C. §§ 1408 and 1409.  The predicates for the relief sought herein are Section 105 of the Bankruptcy Code and Bankruptcy Rule 9019.

## Basis for Settlement Agreement and Relief Requested

20.     Subject to Court approval, the Debtor, the FDIC-Receiver and Federal have now determined that it is in their mutual best interests to reach a settlement of the Bond Claim Lawsuit.  Without conceding the merits of any claim or argument asserted by any other party, the Debtor, the FDIC-Receiver and Federal each has agreed to the settlement described below in order to avoid the risk, delay and expense that would arise from litigation of their disputes to resolution.  Pursuant to Section 105 of the Bankruptcy Code and Bankruptcy Rule 9019, the Debtor respectfully requests that this Court approve the terms of the Settlement Agreement.

21.     The Settlement Agreement sets forth and controls the terms of the settlement.  All interested parties should review carefully the precise terms of the Settlement Agreement for a full and accurate understanding of the settlement.  In the event of any inconsistency between the Settlement Agreement and the summary contained below, the terms of the Settlement Agreement govern and control.  However, for the convenience of the Court and parties in interest, the Debtor has attempted to summarize the main components of the proposed settlement:

(a)     By no later than the tenth (10th) business day following the date that the order approving the Settlement Agreement becomes final, Federal will pay $30 million which will be wire transferred by Federal into the Insurance Proceeds Holding Account;

(b)     Effective upon payment by Federal of the Settlement Funds, the FDIC-Receiver and the Debtor will release Federal from any and all claims arising out of the Bond or the Bond Claim Lawsuit (as more specifically defined in the Settlement Agreement as the "Insurance Claims"), but not any "Excluded Claims" (as defined in the Settlement Agreement);

(c)     Upon the FDIC-Receiver and the Debtor's release of Federal, Federal will release the FDIC-Receiver and the Debtor from any "Insurance Claims," but not any "Excluded Claims"; and

(d)     By no later than the tenth (10th) business day after the FDIC-Receiver and the Debtor receive confirmation of its receipt of the settlement funds and any other funds due and owing to them by Federal under the Settlement Agreement, the parties will execute and submit to the District Court a

stipulated order of dismissal of the Bond Claim Lawsuit in substantially the form attached to the Settlement Agreement.

### Applicable Law

22.     Under Bankruptcy Rule 9019, the Court has the authority to approve a compromise of a controversy or dispute.  See Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968); Continental Airlines, Inc. v. Air Line Pilots' Ass'n Int'l. (In re Continental Airlines, Inc.), 907 F.2d 1500, 1508 (5th Cir. 1990). Moreover, compromises are favored in bankruptcy.  Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3rd Cir. 1996).  Whether to approve a proposed settlement is a matter within the sound discretion of the bankruptcy court.  In re Munford, Inc., 97 F.3d 449, 455 (11th Cir. 1996).

23.     The Courts of Appeals generally agree that, in deciding whether to approve a proposed settlement, a bankruptcy court should evaluate the following:

    (a)     the probability of success in litigation, with due consideration for the uncertainty of the facts and the law;

    (b)     the difficulties, if any, to be encountered in collecting on a judgment;

    (c)     the complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay; and

    (d)     the paramount interest of the creditors and a proper deference to their reasonable views.

See In re Justice Oaks II, Ltd., 898 F.2d 1544, 1549 (11th Cir. 1990) (internal citations omitted); Connecticut Gen. Life Ins. Co. v. United Cos. Fin. Corp.(In re Foster Mortgage Corp.), 68 F.3d 914, 917 (5th Cir. 1995); Jeffrey v. Desmond, 70 F.3d 183, 185 (1st Cir. 1995).  These criteria essentially require the Court to "assess and balance the value of the claim that is being compromised against the value to the estate of the compromise proposal."  Myers, 91 F.3d at 393.  In other words, bankruptcy courts are charged with determining whether the proposed

settlement is fair and equitable and in the best interests of the bankruptcy estate. <u>Depoister v. Mary M. Holloway Found.</u>, 36 F.3d 582, 586 (7th Cir. 1994).

24.     In evaluating a proposed settlement of a matter that has not proceeded to judgment, the bankruptcy court is not required to hold a full evidentiary hearing or even to conduct a "mini-trial." <u>In re Cajun Elec. Power Coop.</u>, 119 F.3d 349, 356 (5th Cir. 1997) (internal citations omitted).

25.     Bankruptcy courts need not even determine that the settlement constitutes the "best result obtainable." <u>Tri-State Fin., LLC v. Lovald</u>, 525 F.3d 649, 654 (8th Cir. 2008) (internal citations omitted). Rather, in taking into account the aforementioned factors, bankruptcy courts "need only determine that the settlement does not fall below the lowest point in the range of reasonableness." <u>Id.</u> (internal punctuation omitted). The Debtor believes that the proposed settlement is reasonable, fair and equitable and satisfies the standards for approval of a settlement.

<b><u>Basis for Relief Requested</u></b>

26.     The settlement set forth in the Settlement Agreement is in the best interests of the Debtor and its estate for the following reasons:

> (a)     Federal has strenuously resisted the FDIC-Receiver's and the Debtor's efforts to establish that the aggregate policy limits of the Bonds equals $50.5 million, rather than approximately $25 million as Federal has contended. This contested issue alone could cap recovery at a level below the settlement amount if ruled upon in favor of Federal.
>
> (b)     Further, Federal has consistently maintained that, regardless of the aggregate policy limits of the Bonds, no coverage exists for the loss

claimed by the FDIC-Receiver and the Debtor. Federal alleges that none of the conduct detailed in the notice of loss and proofs of loss triggered coverage under the Bonds, and, in any event, coverage is barred by multiple exclusions and conditions in the Bonds. By way of illustration, Federal asserted Sixty-One (61) defenses in answer to the Bond Claim Lawsuit. Among Federal's asserted defenses are that, under the express terms of the Bonds, coverage automatically terminated before discovery of the loss as to the employees at the heart of the schemes underlying the loss (in 2002) and later as to the totality of coverage provided under the Bonds.

(c)     By settling this matter in accordance with the Settlement Agreement, the FDIC-Receiver and the Debtor avoid the expense and risk attendant to litigation of the Bond Claim Lawsuit, and the possibility that Federal could prevail on any of its affirmative defenses or counterclaims.

## Notice

27.     The Debtor proposes to give notice of the Motion by CM/ECF notification to those parties registered as of issuance of filing. In light of the nature of the relief requested, the Debtor submits that no other or further notice need be provided.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an order substantially in the form annexed hereto as Exhibit B, and grant such other and further relief as this Court deems just and proper.

Dated: September _____, 2014


 /s/ Rufus T. Dorsey, IV_____         /s/ Andrew P. Campbell_____
C. Edward Dobbs, Esq.                           Andrew P. Campbell, Esq.
Rufus T. Dorsey IV, Esq.                        Campbell, Guin, Williams, Guy & Gidiere,
Parker, Hudson, Rainier & Dobbs LLP             LLC
1500 Marquis Two Tower                          505 North 20th Street, Suite 1600
285 Peachtree Center Avenue, N.E.               Birmingham, Alabama  35203
Atlanta, Georgia  30303                         Tel: (205) 224-0750
(404) 420-5550
ced@phrd.com                                    Andy.Campbell@Campbellguin.com
rtd@phrd.com
                                                Special Litigation Counsel for Debtor
Attorneys for Debtor                              The Colonial BancGroup, Inc.
  The Colonial BancGroup, Inc.

**Exhibit A**

**Settlement Agreement**

**Exhibit B**


**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **THE COLONIAL BANCGROUP, INC.,** | **Case No. 09-32303 (DHW)** |
| **Debtor.** | |

**ORDER GRANTING DEBTOR'S MOTION PURSUANT TO BANKRUPTCY**
**RULE 9019 TO APPROVE SETTLEMENT AND RELEASE AGREEMENT AMONG**
**THE FDIC-RECEIVER, THE DEBTOR AND FEDERAL INSURANCE COMPANY**

This matter is before the Court upon the motion (the "Motion") of The Colonial

BancGroup, Inc. (the "Debtor") for entry of an order pursuant to Section 105 of Title 11 of the

United States Code (the "Bankruptcy Code"), Rule 9019 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), and Rule 9007-1 of the Local Rules of this Court,

approving the *Settlement and Release Agreement* (the "Settlement Agreement") among the

Debtor, the Federal Deposit Insurance Corporation, as receiver for Colonial Bank (the "FDIC-Receiver") and Federal Insurance Company ("Federal").[1]

NOW, THEREFORE, based upon the Motion and all of the proceedings before this Court, and after due deliberation and sufficient cause appearing therefor, *[and no objection to the Motion having been raised,]* it is hereby:

**ORDERED** that the Motion is granted *[, all objections to the Motion having been withdrawn, settled or overruled]*; and it is further

**ORDERED** that the Settlement Agreement is approved and authority is granted for the performance of all of the obligations thereunder; and it is further

**ORDERED** that notice of the Motion as provided therein shall be deemed good and sufficient notice thereof; and it is further

**ORDERED** that this Order shall be immediately effective and the stay otherwise provided for in Rule 6004(h) of the Federal Rules of Bankruptcy Procedure, to the extent applicable, is hereby waived; and it is further

**ORDERED** that the Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

###END OF ORDER###

---

[1] Capitalized terms used, but not otherwise defined, herein shall have the meaning ascribed to them in the Motion.

Submitted by:


 /s/ Rufus T. Dorsey, IV                                                                                                     /s/ Andrew P. Campbell                
C. Edward Dobbs, Esq.                                                                       Andrew P. Campbell, Esq.
Rufus T. Dorsey IV, Esq.                                                               Campbell, Guin, Williams, Guy & Gidiere,
Parker, Hudson, Rainier & Dobbs LLP                                          LLC
1500 Marquis Two Tower                                                              505 North 20th Street, Suite 1600
285 Peachtree Center Avenue, N.E.                                        Birmingham, Alabama  35203
Atlanta, Georgia  30303                                                            Tel: (205) 224-0750
(404) 420-5550
ced@phrd.com                                                                Andy.Campbell@Campbellguin.com
rtd@phrd.com


Attorneys for Debtor                                                                Special Litigation Counsel for Debtor
  The Colonial BancGroup, Inc.                                                     The Colonial BancGroup, Inc.

3

# Exhibit B

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

| | |
|---|---|
| In re: | Chapter 11 |
| **THE COLONIAL BANCGROUP, INC.,** | Case No. 09-32303 (DHW) |
| Debtor. | |

**ORDER GRANTING DEBTOR'S MOTION PURSUANT TO BANKRUPTCY
RULE 9019 TO APPROVE SETTLEMENT AND RELEASE AGREEMENT AMONG
THE FDIC-RECEIVER, THE DEBTOR AND FEDERAL INSURANCE COMPANY**

This matter is before the Court upon the motion (the "Motion") of The Colonial BancGroup, Inc. (the "Debtor") for entry of an order pursuant to Section 105 of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9007-1 of the Local Rules of this Court, approving the *Settlement and Release Agreement* (the "Settlement Agreement") among the Debtor, the Federal Deposit Insurance Corporation, as receiver for Colonial Bank (the "FDIC-Receiver") and Federal Insurance Company ("Federal").[1]

---

[1] Capitalized terms used, but not otherwise defined, herein shall have the meaning ascribed to them in the Motion.

NOW, THEREFORE, based upon the Motion and all of the proceedings before this Court, and after due deliberation and sufficient cause appearing therefor, *[and no objection to the Motion having been raised,]* it is hereby:

**ORDERED** that the Motion is granted *[, all objections to the Motion having been withdrawn, settled or overruled]*; and it is further

**ORDERED** that the Settlement Agreement is approved and authority is granted for the performance of all of the obligations thereunder; and it is further

**ORDERED** that notice of the Motion as provided therein shall be deemed good and sufficient notice thereof; and it is further

**ORDERED** that this Order shall be immediately effective and the stay otherwise provided for in Rule 6004(h) of the Federal Rules of Bankruptcy Procedure, to the extent applicable, is hereby waived; and it is further

**ORDERED** that the Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

###END OF ORDER###

Submitted by:


  /s/ Rufus T. Dorsey, IV                          /s/ Andrew P. Campbell
C. Edward Dobbs, Esq.                  Andrew P. Campbell, Esq.
Rufus T. Dorsey IV, Esq.               Campbell, Guin, Williams, Guy & Gidiere,
Parker, Hudson, Rainier & Dobbs LLP     LLC
1500 Marquis Two Tower                 505 North 20th Street, Suite 1600
285 Peachtree Center Avenue, N.E.      Birmingham, Alabama  35203
Atlanta, Georgia  30303                Tel: (205) 224-0750
(404) 420-5550
ced@phrd.com                           Andy.Campbell@Campbellguin.com
rtd@phrd.com

Attorneys for Debtor                   Special Litigation Counsel for Debtor
  The Colonial BancGroup, Inc.           The Colonial BancGroup, Inc.

# Exhibit C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

|  |  |  |
|---|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for COLONIAL BANK, and THE COLONIAL BANCGROUP, INC., | ) ) ) ) ) | CIVIL ACTION FILE NO. 2:11-CV-610-MHT-WC |
| Plaintiffs, | ) ) |  |
| V. | ) ) |  |
| FEDERAL INSURANCE COMPANY, | ) ) |  |
| Defendant. | ) ) ) |  |

## CONSENT DISMISSAL ORDER

Upon consideration of the joint motion of the parties to dismiss this action with prejudice, it is ORDERED that:

1. The Motion is GRANTED as provided herein;

2. All claims and counterclaims are DISMISSED WITH PREJUDICE;

3. Each party shall bear its own costs, attorneys' fees, and expenses of litigation;

4. This Court shall retain jurisdiction over any and all disputes related to the parties' Settlement and Release Agreement, including the enforcement thereof; and

5. With the consent of the parties pursuant to 28 U.S.C. Section 636(c) and as indicated below, such disputes are referred to United States Magistrate Judge Wallace Capel, Jr., or, in the event of his unavailability, another United States Magistrate Judge of this Court, to be assigned randomly by the Clerk of Court, to conduct any and all proceedings related to such disputes, including any trial and entry of a final judgment,

with direct review by the United States Court of Appeals for the Eleventh Circuit, if an appeal is filed.

6.   All other relief not expressly granted herein is hereby denied.

Done this _____ day of _____, 2014


_____
UNITED STATES DISTRICT JUDGE

Consented to by:

By:      /s/ Charles B. Lee                     By:      /s/ Matt J. Farley
         Charles B. Lee                                  Matt J. Farley
MILLER & MARTIN PLLC                    KREBS, FARLEY & PELLETERI, PLLC
1180 W. Peachtree Street, NW, Suite 2100   400 Poydras Street, Suite 2500
Atlanta, Georgia 30309                  New Orleans, Louisiana 70130
Tel: (404) 962-6100                     Tel: (504) 299-3570
Fax: (404) 962-6300                     Fax: (504) 299-3582


And                                     And


By:      /s/Dennis R. Bailey            By:      /s/Robert David Segall
         Dennis R. Bailey                        Robert David Segall
RUSHTON, STAKELY, JOHNSTON &            COPELAND FRANCO SCREWS & GILL
GARRETT, PC                             PO Box 347
Post Office Box 270                     Montgomery, AL 36101-0347
Montgomery, Alabama 36101-0270          Tel: (334) 834-1180
Tel: (334)206-3234                      Fax: (334) 834-3172
Fax: (334)481-0031


*Attorneys for the Federal Deposit Insurance*     *Attorneys for Federal Insurance Company*
*Corporation as Receiver for Colonial Bank*

                                        By:      /s/ Andrew S. Campbell
                                                 Andrew P. Campbell, Esq.
                                        CAMPBELL, GUIN, WILLIAMS, GUY
                                        & GIDIERE, LLC
                                        505 North 20th Street, Suite 1600
                                        Birmingham, Alabama 35203
                                        Tel: (205) 224-0750


                                        *Attorneys for Colonial BancGroup, Inc.*

# Exhibit D

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for COLONIAL BANK, and THE COLONIAL BANCGROUP, INC., | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | 2:11-cv-00610-MHT -WC |
| FEDERAL INSURANCE COMPANY, | ) ) | |
| Defendant. | ) | |

_____

**JOINT MOTION FOR STAY**
_____

All parties, the FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Colonial Bank, THE COLONIAL BANCGROUP, INC. ("BancGroup") and FEDERAL INSURANCE COMPANY, (collectively the "Parties") jointly move the Court to stay this matter in its entirety pending the ruling by the bankruptcy court on BancGroup's request for approval of the Settlement and Release Agreement ("Agreement") which Agreement is attached hereto as "Exhibit A." As grounds for this request, the Parties jointly state as follows:

1. On May 29, 2013, the Court entered an Order (Doc. No. 115) staying all deadlines and the dates for pretrial and trial in the uniform scheduling order.

2. The Parties have entered into an Agreement which provides for the settlement and dismissal of all claims and counterclaims in this action.

3. The Agreement requires the approval of the United States Bankruptcy Court for the Middle District of Alabama in the case styled *In re: The Colonial BancGroup, Inc.*, No. 09-32303 (DHW), U.S.B.C., M.D. Ala. (the "Bankruptcy Court"), because BancGroup

filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court and, as a party to the Agreement, its authorization to enter into the Agreement is subject to the Bankruptcy Court approving the Agreement. The Agreement, to the extent approved by the Bankruptcy Court and performed by the Parties thereto, requires the submission to the Court of a dismissal order in the form attached to the Agreement.

4. Pending the Bankruptcy Court's ruling on the Agreement, the Parties respectfully request that this matter be stayed in its entirety. The requested stay is in furtherance of the proposed settlement and will conserve judicial resources and expenses pending the review of the Bankruptcy Court. The Agreement and approval documents have already been filed by BancGroup in the Bankruptcy Court and the applicable bankruptcy procedure of "negative notice" applicable thereto (Local Bankruptcy Rule 9007-1) requires noticed parties to file written objections to the settlement, if any are to be asserted, within 21 days of service of the motion, thus assuring that the issue will be heard expeditiously by the Bankruptcy Court.

5. A draft form of order is attached hereto as "Exhibit B".

WHEREFORE, PREMISES CONSIDERED, the Parties jointly request and move the Court to stay this matter in its entirety.

Charles B. Lee and Dennis R. Bailey (Counsel for Plaintiff FDIC-Receiver), Andrew S. Campbell (Counsel for Plaintiff Colonial BancGroup, Inc.) and Matt J. Farley and Robert David Segall (Counsel for the Defendant), have consented to the use of their e-signatures on this document.

Respectfully Submitted

Dated: _____

By: _/s/ Charles B. Lee_
    Charles B. Lee

By: _/s/ Matt J. Farley_
    Matt J. Farley

MILLER & MARTIN, PLLC
1180 W. Peachtree Street, NW, Suite 2100
Atlanta, Georgia  30309
Tel: (404) 962-6100
Fax: (404) 962-6300

KREBS, FARLEY & PELLETERI, PLLC
400 Poydras Street, Suite 2500
New Orleans, Louisiana  70130
Tel: (504) 299-3570
Fax: (504) 299-3582

And

And
And

By: _/s/Dennis R. Bailey_
    Dennis R. Bailey

By: _/s/Robert David Segall_
    Robert David Segall

RUSHTON, STAKELY, JOHNSTON &
GARRETT, PC
Post Office Box 270
Montgomery, Alabama  36101-0270
Tel: (334)206-3234
Fax: (334)481-0031

COPELAND FRANCO SCREWS & GILL
PO Box 347
Montgomery, AL 36101-0347
Tel: (334) 834-1180
Fax: (334) 834-3172

*Attorneys for the Federal Deposit Insurance
Corporation as Receiver for Colonial Bank*

*Attorneys for Federal Insurance Company*

By: _/s/ Andrew S. Campbell_
    Andrew S. Campbell

CAMPBELL, GUIN, WILLIAMS, GUY &
GIDIERE, LLC
505 North 20th Street, Suite 1600
Birmingham, Alabama  35203
Tel: (205) 224-0750

*Attorneys for Colonial BancGroup, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the **JOINT MOTION FOR STAY**, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties, if any, will be served by regular U.S. Mail, electronic mail, and/or facsimile.  Parties may access this filing through the Court's electronic filing system.

/s/ Charles B. Lee
Charles B. Lee

# Exhibit E

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| FEDERAL DEPOSIT INSURANCE | ) | |
| CORPORATION, as Receiver for | ) | |
| Colonial Bank, and THE | ) | |
| COLONIAL BANCGROUP, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | 2:11-cv-00610-MHT |
| | ) | |
| v. | ) | |
| | ) | |
| FEDERAL INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## CONSENT ORDER STAYING CASE

This matter is before the Court on the Joint Motion For Stay pending the ruling of the bankruptcy court on the Parties proposed Settlement and Release Agreement, a copy of which is attached to the Joint Motion as Exhibit A.

It is ORDERED that this case is stayed in its entirety pending further order of the Court.

DONE, this the _____ day of _____, 2014

_____

UNITED STATES DISTRICT JUDGE

Consented to by:


By:   /s/ Charles B. Lee
      Charles B. Lee

MILLER & MARTIN, PLLC
1180 W. Peachtree Street, NW, Suite 2100
Atlanta, Georgia  30309
Tel: (404) 962-6100
Fax: (404) 962-6300


And

By:   /s/Dennis R. Bailey
      Dennis R. Bailey

RUSHTON, STAKELY, JOHNSTON &
GARRETT, PC
Post Office Box 270
Montgomery, Alabama  36101-0270
Tel: (334)206-3234
Fax: (334)481-0031

*Attorneys for the Federal Deposit Insurance*
*Corporation as Receiver for Colonial Bank*


By:   /s/ Matt J. Farley
      Matt J. Farley

KREBS, FARLEY & PELLETERI, PLLC
400 Poydras Street, Suite 2500
New Orleans, Louisiana  70130
Tel: (504) 299-3570
Fax: (504) 299-3582


And


By:   /s/Robert David Segall
      Robert David Segall

COPELAND FRANCO SCREWS & GILL
PO Box 347
Montgomery, AL 36101-0347
Tel: (334) 834-1180
Fax: (334) 834-3172


*Attorneys for Federal Insurance Company*



By:   /s/ Andrew S. Campbell
      Andrew S. Campbell


CAMPBELL, GUIN, WILLIAMS, GUY &
GIDIERE, LLC
505 North 20th Street, Suite 1600
Birmingham, Alabama  35203
Tel: (205) 224-0750
Fax: (205) 383-2641


*Attorneys for Colonial BancGroup, Inc.*